1  Brad Seligman (SBN 083838)
   Jocelyn D. Larkin (SBN 110817)
2  THE IMPACT FUND
   125 University Avenue
3  Berkeley, CA  94710
   Telephone:   510.845.3473
4  Facsimile:    510.845.3654

5  Steven Stemerman (SBN 067690)
   Elizabeth A. Lawrence (SBN 111781)
6  DAVIS, COWELL & BOWE, LLP
   595 Market Street, Suite 1400
7  San Francisco, CA  94105
   Telephone: 415.621.0672
8
   Arcelia Hurtado (SBN 191481)
9  Noreen Farrell (SBN 191600)
   EQUAL RIGHTS ADVOCATES
10 180 Howard Street, Suite 300
   San Francisco, CA  94105
11 Telephone:  415.621.0672

12 Sheila Y. Thomas (SBN 161403)
   LAW OFFICE OF SHEILA THOMAS
13 5260 Proctor Avenue
   Oakland, CA  94618
14 510.339.3739

15 *Attorneys for Plaintiffs*

Joseph M. Sellers
Christine E. Webber
Jenny R. Yang
COHEN MILSTEIN SELLERS  & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC  20005
Telephone:   202.408.4600
Facsimile:  202.408.4699

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
505.983.9834

Debra Gardner
PUBLIC JUSTICE CENTER
1 N. Charles Street, Suite 200
Baltimore, MD  21201
410.625.9409

Stephen Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone:   (505) 982-8533
set@tinklernm.com

16

17

18

19

20

21

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 22 BETTY DUKES, PATRICIA SURGESON, EDITH ARANA, DEBORAH GUNTER and CHRISTINE KWAPNOSKI, on | Case No.  C-01-2252-CRB |
| 23 behalf of themselves and all others similarly situated, | PLAINTIFFS' FOURTH AMENDED COMPLAINT |
| 24                    Plaintiffs, | [CLASS ACTION] |
| 25 v. | |
| 26 WAL-MART STORES, INC., | DEMAND FOR JURY TRIAL |
| 27                    Defendant. | |
| 28 | |

COHEN MILSTEIN
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB

Plaintiffs Betty Dukes, Patricia Surgeson, Edith Arana, Deborah Gunter and Christine Kwapnoski ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## INTRODUCTION

1.      Over ten years ago, this action was commenced as a national class against Wal-Mart Stores, Inc., the largest retailer in the world and the largest private employer in the United States.  The action alleged that female employees in Wal-Mart and Sam's Club retail stores were discriminated against based on their gender, with respect to pay and promotion to management track positions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

2.      In 2004, this Court certified a national class of female employees challenging retail store pay and management promotion policies and practices under Fed. R. Civ. Pro 23(b)(2).  The United States Supreme Court reversed that class certification order on June 20, 2011.  The high court, issuing new guidelines for class actions and Title VII employment discrimination cases, held that the national class could not be certified, based on the facts it outlined in its opinion.  The Supreme Court did not rule on the merits of the action, but only ruled that the class as certified could not proceed.  It did not preclude prosecution of a class that was consistent with its newly announced guidelines and standards.

3.      Accordingly, this Fourth Amended Complaint alleges claims on behalf of a class of present and former female Wal-Mart retail store employees who have been subjected to gender discrimination as a result of specific policies and practices in Wal-Mart's regions located in whole or in part in California ("California Regions").  Plaintiffs allege gender discrimination as follows:

a.      Denial of equal pay for hourly retail store positions;

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB

b.    Denial of equal pay for salaried management positions up to and including Co-Manager;

c.    Denial of equal opportunities for promotion to management track positions up to and including Co-Manager.

4.    The class membership period commences on December 26, 1998, 300 days prior to the earliest class EEOC charge by a former class member.  Based on evidence produced in discovery in this matter, interviews with class members and witnesses, and publicly available information, plaintiffs allege that the challenged practices, and therefore the class period, extends at least until June 2004, and, on information and belief, they allege that members of the class have been denied equal opportunities for promotion and equal pay through the present.  With renewed discovery, plaintiffs will plead more specific time periods for each of the claims.

5.    Plaintiffs allege that defendant maintained a pattern or practice of gender discrimination in compensation and promotion and that its compensation and promotion policies and practices had a disparate impact not justified by business necessity on its female employees whose claims arise in Wal-Mart's regions that include stores located in California.  As used in this Fourth Amended Complaint, Wal-Mart's California Regions and California Districts refer to those Wal-Mart and Sam's Club regions and districts that encompass, in whole or in part, Wal-Mart's California retail stores.

6.    This action seeks an end to Wal-Mart's discriminatory policies and practices in the California Regions, make whole relief for the class, and punitive damages.

## JURISDICTION AND VENUE

7.    Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.  This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).  The Court has supplemental jurisdiction pursuant to 28 U.S.C. 1367 over claims under the California Fair Employment & Housing Act, Government Code § 12920, et. seq.

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE No. C-01-2252- CRB      - 2 -

8.      Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391(b) & (c).  Named plaintiffs' claims arose in California.  Many of the acts complained of occurred in this judicial district and gave rise to the claims alleged.  Wal-Mart currently operates 212 Wal-Mart stores and Sam's Clubs in California where it employs more than 70,000 workers.  It operates at least 20 stores in the Northern District of California.

## PARTIES

9.      Plaintiff Betty Dukes is an African-American woman and a resident of Contra Costa County, California.  She is currently employed by Wal-Mart Stores, Inc. in Contra Costa County in Wal-Mart Store 1615, in Wal-Mart District 45, Region 19.

10.     Plaintiff Patricia Surgeson is a woman and a resident of Sacramento County, California.  She was employed in Solano County by Wal-Mart Stores, Inc. from August 1997 to March 2001 in Store 1704, in Wal-Mart District 42, Region 19.  Plaintiffs are informed and believe she is eligible for rehire.

11.     Plaintiff Christine Kwapnoski is a woman and a resident of Contra Costa County, California.  She has been employed by Wal-Mart Stores, Inc. since 1986, and has worked for a Sam's Club in Concord, California since 1994.  She continues to work at that Sam's Club at Store 6612, in Sam's Club District 63, Region 5.

12.     Plaintiff Deborah Gunter is a woman and a resident of Riverside County, California.  She was employed by Wal-Mart Stores, Inc. in California from April 1996 until August 1999.  She worked in Store 2028 (District 10, Region 16), Store 1747 (District 205, Region 16) and Store 2077 (District 10, Region 16).  Plaintiffs are informed and believe she is eligible for rehire.

13.     Plaintiff Edith Arana is an African-American woman and a resident of Los Angeles County, California.  She was employed by Wal-Mart in California from 1995 until October 2001.  She worked in Store 2401, in Wal-Mart District 333, Region 16.

14.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with stores throughout California.  Its corporate headquarters is located in Bentonville, Arkansas.  Wal-Mart Stores, Inc.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                    - 3 -

operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters and Sam's Clubs Stores (collectively "Wal-Mart") in California.

## CLASS ALLEGATIONS

15.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of:  a) all women who are currently employed or will be employed at any Wal-Mart retail store in a California Wal-Mart Region ("Injunctive Relief Class) and b) all women employed at any Wal-Mart retail store in a California Region at any time from December 26, 1998 ("Monetary Relief Class"), who have been or may be subject to the following policies and practices:

    i.     Denial of equal pay for hourly retail store positions;

    ii.    Denial of equal pay for salaried management positions up to and including Co-Manager; and

    iii.   Denial of promotion to management track positions up to and including Co-Manager.

The proposed classes do not include Store Managers or licensed Pharmacists.

16.     Plaintiffs are members of the classes they seek to represent.

17.     The members of the classes are sufficiently numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe that the Injunctive Relief Class and the Monetary Relief Class each exceed 45,000 women.

18.     There are questions of law and fact common to the classes and these questions predominate over individual questions.  Such questions include, without limitation, whether defendant, through its California Region managers with final authority to make the challenged decisions, has engaged in a pattern or practice of discrimination in pay and management track promotions against its female employees in its California Regions, whether there are statistical patterns adverse to female employees in pay and management track promotions in defendant's California Regions, whether defendant's policies in its California Regions have an adverse impact

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                      - 4 -

upon the classes and, if so, whether this impact can be justified by business necessity; and whether injunctive relief and punitive damage relief for the classes are warranted.

19.     The claims alleged by the plaintiffs are typical of the claims of the classes.  Each plaintiff has worked in Wal-Mart's California Regions and has been subjected to the discriminatory policies and practices alleged.

20.     The named plaintiffs will fairly and adequately represent and protect the interests of the classes.

21.     The Injunctive Relief  Class is properly maintainable under Federal Rule of Civil Procedure Rule 23(b)(2) because defendant has acted or refused to act on grounds generally applicable to this class, thereby making appropriate final injunctive relief or corresponding declarative relief with respect to this class as a whole.

22.     The Monetary Relief Class is properly certified under Rule 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this case.

23.     Alternatively, class-wide liability and punitive damages liability under the theories advanced in this action are properly certified under Rule 23(c)(4) for both classes because such claims present only common issues, the resolution of which would advance the interests of the parties in an efficient manner.

### ORGANIZATIONAL AND STORE STRUCTURE WITHIN CALIFORNIA REGIONS

24.     *Store Formats* – Within the California Regions, Wal-Mart has operated in three primary formats:  Wal-Mart Discount Stores, Supercenters and Sam's Clubs.  The basic organizational structure for these stores has been the same across the California Regions.

25.     *Common Hourly Jobs Within Stores* - All stores within the California Regions have used common job titles and job descriptions, and the same job hierarchies.  Although the Wal-Mart Stores and Sam's Clubs use somewhat different nomenclature, their personnel and

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                          - 5 -

human resources policies, job titles and hierarchies, and compensation and promotion policies have been virtually identical.

26.     *Most Common Positions* - While there are numerous job titles at Wal-Mart, the majority of hourly employees have worked as sales workers, cashiers, department managers and stockers.  The most common management position is assistant manager.

27.     *Common Department Structure* - Stores within the California Regions have been divided into numerous departments, which have been staffed by hourly paid employees. Some departments have been designated as specialty departments.  The departmental structure is the same throughout the stores in the California Regions.

28.     *Common Management Jobs* – With the exception of Support Manager, management positions within the California Regions are salaried.  Each store has Assistant Managers.  Larger stores have had one or more Co-Managers who supervise Assistant Managers and other staff.  All stores have Store Managers who are in charge of the store.  Specialty departments managers, who report to Store Managers, also report to District and Regional Specialty Managers above the store level.

29.     *District Organization* – Until 2006, stores within the California Regions were grouped into districts which were supervised by District Managers and typically included six to eight stores.  Thereafter, districts have been expanded to include more stores.

30.     *District Managers' Role* - District Managers within the California Regions have been responsible for ensuring store compliance with company policies and culture.  District Managers have been based in their districts and spend their time visiting and monitoring the stores in their districts and reviewing all facets of the store operations.  District Managers also have made or approved compensation and promotion decisions for the stores.

31.     *Regional Organization* - Districts are grouped into regions, headed by a Regional Vice President.  As of 2003, each region contained approximately 80 - 85 stores.  As of 2003, there were two Wal-Mart regions (Regions 16 and 19) and two Sam's Club regions (Regions 1

and 5) that encompassed stores within California.  These regions together included, as of 2003, over 20 districts.  Most of these districts were comprised entirely of California stores.

32.     *Role of Regional Vice President* – The Regional Vice Presidents in California Regions monitor and implement corporate and regional policies regarding compensation and promotion.  Regional Vice Presidents regularly meet with District Managers and receive weekly reports from District Managers about the activities in the California Region stores they supervise.

33.     *Regional Personnel Managers' Role* – Each California Region has had a Regional Personnel Manager, who assists the California Regional Vice Presidents and District Managers in making pay and promotion decisions for employees working in the California Region stores.

34.     *Changes to California Regions and Districts* – Since 2003, Wal-Mart may have adjusted the borders of these regions and districts.

35.     *Divisional Organization* – The Regional Vice President reports to a Divisional Senior Vice President.

## COMPENSATION DISCRIMINATION WITHIN CALIFORNIA REGIONS

36.     *Common Compensation Policies* – Compensation of store-based employees has been set based upon a common set of guidelines applied consistently throughout the California Regions and which establish basic standards for setting pay rates at hire and subsequent pay adjustments of hourly and salaried employees, hereby referred to as Pay Guidelines.

37.     *Hourly Job Categories* - All hourly positions have been grouped into various job categories, which have been uniform across the various stores in the California Regions.  All employees with the same job title, such as sales associates, are placed in the same job category regardless of the department they work in.

38.     *Job Category Pay Rates* - The minimum pay levels at hire ("start rates") for each job category have been established for each store in California Regions with the approval of the District Managers and Regional Vice Presidents.  Thereafter, an employee's pay level may be adjusted:  1) after an initial probationary period, 2) if the employee is promoted to a higher job

class or into management, 3) on an annual basis if the employee satisfies minimum performance standards, or 4) if the employee has been awarded a special "merit" raise.

39.     *Process for Setting Hourly Pay* - The Store Manager has had the initial responsibility to set pay rates for individual hourly employees within the pay guidelines, subject to a number of constraints set by the California District and Regional Managers.  Where a Store Manager has set a pay rate above or below the guidelines, the rate is called an "exception."

40.     *Hourly Pay Exceptions* - The pay rate for a new employee may be set up to a maximum of $2 per hour above the start rate, but if the new employee's rate is more than 6% above the established start rate for that pay class, a computer program in the payroll system prohibited payment at this rate unless and until the Store Manager manually enters the pay rate for that employee.  A significant proportion of employees have been paid 6% or more above the start rate in virtually every Wal-Mart store in the California Regions.

41.     *Approval of Exceptions* - All hourly pay exceptions have been automatically reported to the District Manager who may approve or disapprove such exceptions.  Regional Personnel Managers have also been informed of all hourly pay exceptions and required to ensure that hourly compensation is consistent among employees in the California Regions.

42.     *Hourly Pay Reports and Audits* – California District Managers, Regional Personnel Managers and Regional Vice Presidents regularly receive reports of all employees whose hourly pay in a job category is more than 10% below or 5 % above the average pay in that class.  California District Managers perform quarterly audits of each store's compliance with company policies, including compensation policies, which are reported to Regional Personnel Managers and Regional Vice Presidents.

43.     California District Managers and Regional Vice Presidents have the ultimate authority whether, and by how much, to adjust the pay of all hourly employees, including those who are listed on exception reports.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                      - 8 -

44.     *Salaried Pay Guidelines* - Within California Regions, salaried employee compensation is required to be made in accordance with pay guidelines for each salaried position. These guidelines set broad pay ranges for each position.

45.     *Assistant Manager Salary* – California District Managers, with the concurrence of the Regional Vice Presidents and Regional Personnel Managers, set the compensation for Assistant Managers in the California Regions.

46.     *Co-Manager Compensation* – Within the California Regions, Co-Manager compensation is comprised of a base salary and profit sharing tied to the profitability of the Co-Manager's store.  Regional Vice Presidents determine base salary and assign the stores at which Co-Managers work, the profitability of which affects the profit-sharing component of the compensation they receive.

47.     *Pay Decisions Not Job Related Or Documented* - In each of California's Regions and Districts, Managers in California Regions are not required to use job related criteria such as job performance or experience in setting, adjusting, or approving compensation for individual employees.  California managers do not document the reason for setting, adjusting or approving the compensation of individual employees.  The California Regional Vice Presidents and District Managers do not hold the managers in the California Regions accountable for the factors they use in making pay decisions or in ensuring those factors comport with the law, nor do they require any documentation of the reasons for the compensation paid to individual employees.  Nor do Wal-Mart Managers specify the weight that should be accorded any requirement for setting or adjusting compensation.

48.     *Patterns in Compensation* - Women who hold salaried and hourly positions in the California Regions have been regularly paid less on average than similarly-situated men, although on average the women have more seniority and higher performance ratings than the men.  This gender pay difference adverse to women exists in each of the California Regions and Districts and in the vast majority of the stores in the California Regions, even when nondiscriminatory

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

Plaintiffs' Fourth amended complaint
Case No. C-01-2252- CRB                                                    - 9 -

objective factors, such as seniority, performance, store location and other factors are taken into account.

49.     *Management Knowledge of Compensation Discrimination* - California Regional Personnel Managers, Regional Vice Presidents and District Managers received regular reports about compensation for hourly and salaried employees within California showing that female employees were paid less than men on average.

50.     *Adverse Impact of Compensation System* - Wal-Mart's compensation policies, including its failure to require managers to base pay decisions for individual employees on job related criteria such as experience or documented performance, have had an adverse impact upon its female employees in the California Regions.  Because reasons for compensation decisions are not documented, elements of Wal-Mart's compensation decision-making are not capable of separation for analysis.

## PROMOTION DISCRIMINATION WITHIN CALIFORNIA REGIONS

51.     *Management Track Positions Below Assistant Manager Positions* - Within California Regions, Support Managers are the highest level hourly supervisory positions and assume the duties of Assistant Managers in their absence.  At Sam's Club, Salaried Area Managers serve similar functions.  Employees in these positions are often groomed for further advancement.  The vast majority of Support Manager and Area Manager vacancies have not been posted.  There has been no formal application process for selection for these positions or job related criteria for making selections of those to be promoted.

52.     *Promotion to Management Trainee* – Entry into the Management Trainee Program is a requirement for advancement into Assistant Manager and other salaried management positions.  Prior to 2003, there was no application process or job posting for Management Trainee positions.  Hourly employees in the California Regions were not provided any information regarding how to enter management, or what the requirements or qualifications were for entering management, or how to apply for the Management Trainee Program.

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' Fourth amended complaint
Case No. C-01-2252- CRB                                                          - 10 -

53.     *Criteria for Promotion to Management Trainee* – District Managers, assisted by Regional Personnel Managers, select management trainees.  Within California Regions, these managers have been provided uniform guidelines setting minimal eligibility criteria for promotion into the Management Trainee Program, including minimum tenure, age (18 years or older), absence of current "active" discipline, satisfactory recent performance evaluation and  willingness to relocate, but no job related criteria have been provided for making selections among those who meet the minimum criteria.  Employees selected into the Management Training program are required to transfer from their stores and often their districts as they enter training and Assistant Manager positions, subject to very limited exceptions which must be approved by the Regional Personnel Manager and Regional Vice President.

54.     *Promotion to Co-Manager* - Within California Regions, Regional Vice Presidents select Co-Managers subject to approval by the Divisional Senior Vice President.  The majority of Co-Manager promotions are transfers across district lines.  Co-Manager openings have rarely been posted and there has been no formal application process for such positions.  While there have been minimal eligibility requirements for promotion to co-manager such as satisfactory performance and willingness to relocate, there are no job related criteria for making selections among those who meet the minimum criteria or determining which store to assign to a co-manager.

55.     In each of California's Regions and Districts management track promotional policies and practices have denied interested and qualified females equal access to promotional opportunities because promotion opportunities are not posted, there is not an open application system, and employees are not informed of the criteria for promotion.  Moreover, Managers in California Regions do not require or use valid, job related factors in making the promotion selections within the California Regions.  Nor does Wal-Mart specify the weight that should be accorded any requirements for promotion.  As a consequence, qualified women were denied equal access to promotions because of their gender.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB

- 11 -

56.     *Management Trainee Registration of Interest* - In January 2003, Wal-Mart instituted within the California Regions an online application process for entry into the Management Training Program.  In order to be considered as an applicant, employees were required to agree to a set of conditions, many of which had the purpose and effect of discouraging women from seeking such positions.  Potential applicants for entry level store management positions were required to accept the conditions that, as Assistant Managers, they would travel for up to six weeks in duration, be subject to a varied and not regular schedule, including work on scheduled days off, work during days, overnights, weekends and holidays, scheduled days off not consecutive and rotated weekly, and scheduled hours changed or increased without notice.  None of these requirements is justified by business necessity, and it is untrue that Assistant Managers must normally travel up to six weeks.  Failure to accept all of these conditions precluded consideration as an applicant, which has resulted in the exclusion of interested and qualified women from the management training program.

57.     *No Documentation of Promotion Decisions* - Managers have not documented, and Wal-Mart had not tracked, the reason for selecting a particular employee for a management promotion.  Managers have not documented, and Wal-Mart has not tracked, which employees have been denied consideration for promotion because of their inability to comply with relocation, travel or scheduling requirements for promotion.

58.     *External Statistics* - Wal-Mart has had a significantly lower percentage of female managers in its California Regions compared to its largest competitors.

59.     *Internal Statistics on Promotion Rates* - Female employees in California Regions and Districts, including the regions and districts in which each named plaintiff worked, have been much less likely than their male counterparts to receive promotion to management track positions including Support and Area Managers, Management Trainee and Assistant Manager, and Co-Manager positions, despite the fact that they possess equal or better qualifications than their male counterparts.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                      - 12 -

60. *Internal Statistics on Time to Promotion* - Female employees must wait significantly longer to be promoted into management track positions than men with equal or lesser qualifications. This is true in each of California's Regions and Districts, including the Regions and Districts in which each named plaintiff worked.

61. *Management Knowledge of Promotion Discrimination* - Wal-Mart management has long known about gender disparities in promotion in the California Regions and have failed to take any remedial action.

62. *Reporting by Gender* - Every store, district, and region in the California Regions regularly compiles and reports to corporate headquarters the gender composition of its hourly and managerial workforce, employee turnover, exceptions to promotion policies, job posting data, entry into management training programs and other data. District Managers, Regional Personnel Managers and Regional Vice Presidents for the California Regions receive these reports.

63. *People Division Reports* - Wal-Mart's People division regularly prepares reports for senior management summarizing promotion and incumbency rates for store management positions by gender, and reports are regularly made to the Board of Directors.

64. *Store Visits* – District Managers, Regional Personnel Managers and Regional Vice Presidents in the California Regions regularly visit stores and are aware of the gender composition of the workforce.

65. *Warnings About Discrimination* - Senior management officials, senior People division officials, and outside consultants have warned Wal-Mart that women are not sufficiently represented in management positions, that women are paid less than male employees in the same jobs, and that Wal-Mart lags behind its competitors in the promotion of women to management positions.

66. *Discriminatory Practices Identified* - These officials and consultants have also identified policies and practices at Wal-Mart that have an adverse impact on its female employees, including lack of consistent job posting, the requirement of relocation as a condition of entry into and promotion through management, reliance on stereotypes in making pay and

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                    - 13 -

promotion decisions, lack of objective criteria for making promotion decisions, and lack of consistent and reliable scheduling for management level employees.

67.     *Relocation Unnecessary* - Wal-Mart's founder, Sam Walton, conceded in 1992 that Wal-Mart's policies, particularly its relocation requirement, were an unnecessary barrier to female advancement, yet this policy remained in place thereafter.

68.     *Changes Blocked* - Senior managers also blocked policy changes that would have reduced the impact of Wal-Mart's discriminatory policies including posting of managerial vacancies.

69.     *Failure to Analyze* - Wal-Mart had never studied nor analyzed whether any of its practices were consistent with business necessity or whether less discriminatory alternatives to these policies and practices could be adopted.

70.     *Adverse Impact of Promotion Policies* - Wal-Mart's promotion policies, including its failure to require managers to base promotion decisions for individual employees on job related criteria, have had a statistically significant adverse impact upon its female employees in the California Regions.  Because reasons for promotion decisions are not documented, and Wal-Mart does not create or maintain records which identify the impact of separate components of its promotion policies and practices, its promotion decision-making process is not capable of separation for analysis.

## **WAL-MART MANAGERS RELY ON DISCRIMINATORY STEREOTYPES**

71.     In the absence of job-related compensation and promotion criteria, Wal-Mart's managers rely on discriminatory stereotypes and biased views about women in making pay and promotion decisions in the California Regions and Districts.

72.     A 1998 survey of Wal-Mart managers revealed that there was a "good ol boy philosophy" at Wal-Mart, that many managers were "close minded" about diversity in the workplace, and that some District Managers "don't seem personally comfortable with women in leadership roles."

73.     A committee of Wal-Mart's few female executives, disbanded before this action was filed, noted that, "stereotypes limit the opportunities offered to women."

74.     All Wal-Mart Store Managers, including California Store Managers, have been required to attend training programs at the company's Walton Institute.  These managers were advised at the Institute that the reason there are few senior female managers at Wal-Mart is because men were "more aggressive in achieving those levels of responsibility" than women.  Managers were cautioned that efforts to promote women could lead to the selection of less qualified women over more qualified men.

75.     On January 24, 2004, at a meeting of all Wal-Mart's District Managers presided over by Wal-Mart Stores' CEO Thomas Coughlin, the District Managers were told  that they were the key to running the stores: "[y]ou are the culture."  The key to success was described as "single focus to get the job done. . . .women tend to be better at information processing.  Men are better at focus single objective."  The District Managers were instructed to create a "culture of execution" and a "culture of results" as they picked "[f]uture leaders."

76.     California Regional Vice President John Butler presumed that women did not seek management positions because of their "family commitments."

77.     John Scantlin, plaintiff Dukes' District Manager, concluded that women were uninterested in management, basing his conclusion on his mother, a woman who had never worked at Wal-Mart and, decades earlier, had not been interested in advancement.

78.      California Sam's Club District Manager Terry Moran justified denying a woman a promotion to an Assistant Manager position because of his concern that she had a small child.  He did not raise this concern with male candidates for Assistant Manager.  He also explained higher male pay rates as justified because they were the head of their households.

79.     California Sam's Club District Manager Phil Goodwin justified paying less to a female manager than a male employee on the ground that the male manager "supports his wife and two kids."

80.     Plaintiff Kwapnoski's Store Manager Alan Oshier justified giving a large raise to a male employee because he had a family to support.  He later suggested to plaintiff Kwapnoski that she "doll up" and "blow the cobwebs off" her make-up to make herself more promotable.

81.     Sam's Club El Monte Store Manager Jim Black told  a female assistant manager who had missed work due to a sick child, that the District Manager had said "this is why we are concerned about promoting women with children."

82.     Other California managers justified denying promotions to women or paying them less than their male employees because of perceived family obligations of the women and male responsibility to support their families or because of their presumed inability to relocate.

### WAL-MART'S INEFFECTIVE ANTI-DISCRIMINATION EFFORTS

83.     Prior to the filing of this action, Wal-Mart had no meaningful policies or practices to hold managers accountable, financially or otherwise, to equal employment and diversity policies and goals.

84.     Starting in 2000, Wal-Mart asked District Managers to set diversity "goals" for advancement of women in management.  The goals were based on each manager's individual views on what was attainable and were not tied to any objective measures of availability or qualifications.  Prior to 2004, failure to meet diversity goals had no financial or other consequence for managers.

85.     As late as 2003, Wal-Mart Stores' CEO Coughlin was not aware of any diversity goals or whether managers had met such goals.  Many Store Managers were also unaware of the existence of any diversity goals.

86.     Until at least 2003, there had never been any diversity goals set for individual stores, or for any compensation practices.

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' Fourth amended complaint
Case No. C-01-2252- CRB                                                    - 16 -

## ALLEGATIONS OF NAMED PLAINTIFFS

## BETTY DUKES

87.     Betty Dukes is an African American woman currently employed in Wal-Mart store 1615, located in Pittsburg, California.  She was hired as a part-time front-end cashier at the Pittsburg store in May 1994.  Within one year after her hire date, Ms. Dukes received an excellent 90-day review, a promotion to full-time status and a merit pay raise.  She was promoted to Customer Service Manager in June 1997, which also included an increase in salary.

88.     In September 1997, Ms. Dukes began to experience harsh and discriminatory treatment from head Customer Service Manager Leilani (Lonnie) Barrett and male Store Manager Ken Cagle.  In November 1997, she complained to male District Manager Chuck Salby about the discriminatory treatment.

89.     After she complained, Ms. Dukes experienced retaliation from Wal-Mart store management, beginning with a disciplinary write-up on February 13, 1998, for returning late from her breaks, even though male and/or Caucasian employees returned late from their breaks or failed to clock out for breaks and were not disciplined.  Ms. Dukes was also written up on March 31, 1998, for having a front-end cashier cover her lunch break, even though she had used this procedure many times before without incident and Caucasian employees used this procedure without being reprimanded.  Ms. Dukes complained to male District Manager Jay King but he simply referred her back to the Store Manager.

90.     On June 29, 1999, Ms. Dukes called in sick.  Store Manager Cagle reacted in a highly negative and unprofessional way towards her request, even though she was entitled to use sick leave.  Ms. Dukes called the district management office about Cagle and, ultimately, she spoke with the male Loss Prevention District Manager Charles Chibante.  Only after she threatened to make a complaint to the Wal-Mart home office in Arkansas did she receive a reluctant apology from Store Manager Cagle.  However, Cagle's apology only served to escalate the retaliation.

91.     In July 1999, Ms. Dukes expressed interest in becoming a department manager by requesting of Ken Cagle that she receive training for that position, but she was never given the opportunity to be trained.  Rather, shortly thereafter on August 14, 1999, Plaintiff was demoted from Customer Service Manager to cashier and falsely accused of violating company policy while performing a transaction that had been performed many times by Plaintiff and other employees without incident.  The demotion was Wal-Mart's retaliation for Plaintiff's numerous complaints of discrimination.

92.     On August 18, 1999, Ms. Dukes traveled to the Wal-Mart District Office in Livermore, California and made a complaint to male Wal-Mart District Manager John Scantlin about her demotion and her concerns about employment discrimination at the Pittsburg Wal-Mart store.  Wal-Mart took no steps to address Dukes' concerns.

93.     As a result of the demotion, Plaintiff became ineligible for several promotions to positions that she was qualified to perform from August 1999 to August 2000, the year following the demotion.  For example, a Support Manager position was filled in July or August 2000 by Rosa Trevino (Hispanic female).  Between July and September 2000, the position of Domestics Department Manager was open and filled by Joseph Topasna (Filipino male).  As a result of the demotion, Ms. Dukes' hours and hourly wage were reduced.

94.     After August 14, 2000, when Ms. Dukes once again became eligible for promotion, at least four department manager and/or Support Manager positions at the Pittsburg store were filled by men.  None of these positions was posted.  Between October and December 2000, Richard Morales (Hispanic male) was promoted from night receiving stocker to night Support Manager.  In November 2000, Joseph Topasna (Filipino male) was promoted to Support Manager. Between October and December 2000 Robert (Aaron) Mendez (Hispanic male) was promoted to Support Manager.  In December 2000 or January 2001, Will Martines (Caucasian male) filled the position of Department Manager for Tire Lube Express (TLE).

95.     After the demotion, Ms. Dukes was discouraged from seeking other positions because of the way she and other women had been treated by Wal-Mart.  Dukes did not apply for

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                    - 18 -

1   three department manager positions open after August 14, 2000 (Hardware, Over-The-Counter

2   Pharmacy and Stationery) because she was discouraged after the discriminatory treatment she and

3   other women received from Wal-Mart managers.

4        96.     Furthermore, Ms. Dukes' knowledge of Wal-Mart's discriminatory practices

5   against other women at the Pittsburg store also discouraged her from seeking a promotion.  In

6   June 2000, Brooke Terrell (African American female) was demoted from department manager to

7   a sales floor position, although she continued to fulfill the responsibilities of a department

8   manager until a replacement was found.  The department manager position vacated by Terrell was

9   filled by Kevin Sims (African American male).  In 2000, Trina Wallace (African American

10  female) was demoted from a department manager position to a sales floor position and later

11  terminated.  The department manager position vacated by Wallace was ultimately filled by

12  Kendall Dimery (African American male).  In 1999, Darla Harper (Caucasian woman) was

13  denied a department manager job in which she had expressed an interest.  Without posting this

14  position, Wal-Mart selected Spencer Ostrom (Caucasian male) to fill this position.

15       97.     On or about June 1, 2000, Dukes filed a charge of discrimination with the

16  California Department of Fair Employment & Housing (DFEH), a copy of which is attached

17  hereto as Exhibit 1 and incorporated by reference.  On June 15, 2000, she received a right to sue

18  letter, and commenced this action in a timely manner.

19       98.     On or about May 2, 2001, Dukes submitted a charge of discrimination to the

20  United States Equal Opportunity Commission (EEOC), a copy of which is attached as Exhibit 2

21  and incorporated by reference.  She received a right to sue letter on or about May 22, 2001 and

22  commenced this action in a timely manner.

23       99.     Plaintiff Dukes was at all times interested in advancing to a management position.

24  In January 2003, Wal-Mart began an online application process for Management Trainee

25  positions.  She attempted to apply through this process but her attempted application was rejected

26  because she could not unconditionally agree to scheduling prerequisites.

27

28

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB

- 19 -

100.     Since July 2001, Plaintiff Dukes has worked as a Cashier/Greeter. In 2002, Wal-Mart hired a male to be a greeter at her store at a higher pay rate than Ms. Dukes received after nine years of employment.  Another male employee who had been hired by Wal-Mart several years after plaintiff Dukes, became a greeter in 1999 and was paid more than plaintiff Dukes.

101.     On or about April 4, 2003, Dukes submitted a charge of discrimination to the United States Equal Opportunity Commission (EEOC), a copy of which is attached as Exhibit 3 and incorporated by reference.  She received a right to sue notice on or about July 31, 2003 and commenced this action in a timely manner.

**PATRICIA SURGESON**

102.     Patricia Surgeson was hired by Wal-Mart in Vacaville, California in August 1997 as a sales associate.  She was assigned to the Tire and Lube Express department and, within two weeks of her hire, was subjected to sexually harassing remarks and touching by a co-worker. After reporting the harassment, she was transferred to the Health and Beauty Aids department. She repeatedly applied to transfer to other positions but was denied.

103.     In November 1998, Surgeson was assigned to the Lay-Away Department.  In approximately May 1999, she was made the Lay-Away Department manager.  Because she was assuming additional responsibilities, her Store Manager promised her a raise.  Despite repeated requests, Surgeson was never given the promised raise.

104.     In late 1999, the Store Manager decided that the Lay-Away Department no longer needed a manager.  Ms. Surgeson's department manager title was taken away but she was expected to continue performing manager responsibilities.  When she left the department, a male employee who was given the position and title of Lay-Away Department Manager replaced her. He was paid more than Ms. Surgeson had been paid for working in the same position with the same responsibilities.

105.     In June or July 2000, Ms. Surgeson was moved to a position in the Cash Office. Although she assumed greater responsibilities, she again did not receive a raise.  She was expected to work overtime without lunches or breaks, locked in the cash office.  In her position,

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                    - 20 -

she became aware that many male employees were being paid more than she was, although they had worked at Wal-Mart for less time and had less responsibility.

106.    In January 2001, she requested a merit increase.  Her request was ignored for two months.

107.    Ms. Surgeson was interested in attending the Assistant Manager Training program and in being promoted to Assistant Manager.  She asked one of her managers for information about how to qualify for the program, as she had not seen any information posted about such opportunities.  The manager refused to supply information, and provided only a vague response.

108.    As a result of the discriminatory pay and working conditions, Ms. Surgeson resigned in March 2001.

109.    On or about May 14, 2001, Surgeson filed a charge of discrimination with the EEOC, a copy of which is attached hereto as Exhibit 4 and incorporated by reference.  The EEOC issued a notice of right to sue on May 31, 2001, and this action was timely commenced thereafter.

**CHRISTINE KWAPNOSKI**

110.    Christine Kwapnoski was hired by Wal-Mart in 1986, and was originally assigned to a Sam's Club in Missouri.  Ms. Kwapnoski worked as a cashier in the cash office and in claims.

111.    While at the Sam's Club in Missouri, Ms. Kwapnoski was sent to help open a new Sam's Club in Concord, California.  Ms. Kwapnoski was encouraged to transfer permanently to the Concord store.  Both her abilities and her work ethic were praised.

112.    In 1994, Ms. Kwapnoski transferred to the Sam's Club in Concord, California.  She worked in auditing, freezer departments, claims, and in receiving.  She repeatedly made it known to the general managers at the Sam's Club and to the District Operations Manager that she sought promotion to a team leader position and an area manager position.  These jobs were not posted to permit formal applications.  Instead, these positions, as they became open, were repeatedly given to men who were less qualified than Ms. Kwapnoski.  Ms. Kwapnoski was required to train several of these men in order for them to assume the responsibilities of the

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                                            - 21 -

position.  Ms. Kwapnoski also observed men receiving higher rates of pay and more frequent increases in their pay rates.

113.    Ms. Kwapnoski requested upon more than one occasion the opportunity to join the "Management-in-Training" program, but was denied this opportunity.  In 1999, she was finally made a team leader, an hourly position.  In June 2001, shortly after this action was filed, Ms. Kwapnoski was promoted to a receiving area coach/manager position.  After that promotion, Ms. Kwapnoski was told that she had to be a receiving area manager for at least one year before she could be considered for the "Management-in-Training" program.  Men were not required to meet this same requirement.

114.    After a year as receiving area manager, Ms. Kwapnoski asked her store manager when she could enter the "Management-in-Training" program.  She was told that she should continue what she was doing and that she should move to the Front End to get experience in that area of the store.  Men were not required to have this breadth of experience before entering the "Management-in-Training" program.

115.    Ms. Kwapnoski filed a Charge of Discrimination with the EEOC on or about February 15, 2002, a copy of which is attached hereto as exhibit 5 and incorporated by reference. She received a right to sue notice in March 2002.

116.    Ms. Kwapnoski continued to request entry into the "Management-in-Training" program but was repeatedly denied.  In 2002, she was told that she had to relocate in order to join the program, a requirement she had never been told about before.  Although Ms. Kwapnoski could have relocated in prior years, she was unable to relocate at that time.  She was told by her store manager that because she could not relocate she could not join the program.  Finally, in January 2003, Ms. Kwapnoski entered the program, one year after filing the charge against Sam's Club and after becoming a Plaintiff in this lawsuit.

117.    Starting with her annual review for 2002, Ms. Kwapnoski began receiving annual reviews which stated that her performance was "below expectations."  She had never received

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                                          - 22 -

such low scores before she joined the lawsuit as a named plaintiff.  As a result of these low scores, she did not receive an annual raise until 2010.

118.    Upon completion of the "Management-in-Training" program in mid-2003, Ms. Kwapnoski was promoted to Bakery Manager, which is an Assistant Manager position.  Ms. Kwapnoski remains as an Assistant Manager.

119.    In late March/April 2004, Wal-Mart began an investigation against Ms. Kwapnoski for alleged sexual harassment of a co-worker.  After an investigation, the charges were dropped for having no merit.

120.    Ms. Kwapnoski filed a filed a Charge of Retaliation with the EEOC on or about April 23, 2005, a copy of which is attached hereto as exhibit 6 and incorporated by reference. She received a right to sue notice in May 2005 which was tolled by mutual agreement of the parties to this litigation.  This action was instituted timely thereafter.

121.    In 2008, Ms. Kwapnoski was disciplined for allegedly violating code-date policies. Upon receiving the discipline, Ms. Kwapnoski took photographs of the items that were supposedly out-of-date, proving that these items were, in fact, current and that the discipline was unwarranted.

122.    Twice in 2009, Sam's Club management opened a "Red Book" on Ms. Kwapnoski alleging serious charges against her that, if proven, would lead to her termination.  Both "Red Books" eventually were closed as no evidence was found to support either.

123.    In July 2011, Ms. Kwapnoski was scheduled to work eight straight days even though managers are normally scheduled for no more than six days in a row.  Ms. Kwapnoski complained to her store manager about the scheduling but he refused to change it.  The following month, August 2011, the store manager scheduled her for 11 straight days of work.  Upon complaining again to her manager and then the regional manager of human resources, Ms. Kwapnoski was given one day off in that 11-day span.  In October 2011, Ms. Kwapnoski was again scheduled to work 10 days in a row.  She again complained to her manager.  Other managers are routinely not scheduled to work more than six days in a row.  In addition, Ms.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                - 23 -

Kwapnoski has been scheduled to work every weekend for three months.  Other managers are routinely given weekends, or partial weekends, off.

124.    Ms. Kwapnoski filed a second Charge of Retaliation with the EEOC on or about October 19, 2011, a copy of which is attached hereto as exhibit 7 and incorporated by reference. She has requested a right to sue notice.

125.    Despite being an Assistant Manager for eight years, Ms. Kwapnoski is at the bottom range in salary for Assistant Managers in her region.

**DEBORAH GUNTER**

126.    Deborah Gunter was hired in April 1996 as a Photo Lab Clerk in Wal-Mart Store 2028 in Riverside, California.  She had 30 years of prior retail experience.

127.    While employed at Store 2028, Ms. Gunter sought promotion several times to the position of Pets Department Manager between the time she began her employment in 1996 and approximately March 1998.  Though none of the positions were posted, Ms. Gunter advised her supervisor that she was interested in them once she became aware that they were available.  Ms. Gunter was particularly interested in this position because of her extensive experience breeding and raising show dogs.  She never received the promotion, although the store Night Manager recommended her for the position.  The first time Ms. Gunter sought advancement into this position, a male employee with less experience was given the position.  The second time she sought advancement into this position, a male employee with less experience was given the position.

128.    In the fall of 1996, Ms. Gunter was transferred to the position of Night Stocker. While employed as a Night Stocker, Ms. Gunter learned that the male employees in the Receiving Department earned a higher wage than the female employees in the department.

129.    In March 1998, Ms. Gunter transferred to a position as Service Clerk in the Tire Lube Express Department of Store #1747 in Perris, California after the Perris Store Manager requested that she transfer there.  While employed at the Perris store from March 1998 until

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                    - 24 -

March 1999, Ms. Gunter performed the duties of Support Manager to the Tire Lube Express Department without the title or salary for that position.  Ms. Gunter requested training from the Tire Lube Express Manager and from the District Manager on numerous occasions.  She never received the training.  Ms. Gunter requested a promotion and pay increase from the Tire Lube Express Manager, but did not receive the promotion.  Instead the Tire Lube Express Manager directed her to train two male employees in the job responsibilities of the Support Manager.  After receiving training from Ms. Gunter, each male employee was promoted instead of her to the Support Manager position.  After the Tire Lube Express Manager told her she did not have sufficient training to fill the position of Support Manager (despite having trained two males eventually promoted), Ms. Gunter  again requested additional training and was denied it.

130.     Beginning in the summer of 1998, Ms. Gunter was subjected to sexually harassing remarks by the Tire Lube Express Manager.  She complained to the Store Manager in December 1998 and January 1999.  However, corrective action was not taken and Ms. Gunter's complaints were ignored.  Subsequently, her hours were reduced.

131.     Ms. Gunter transferred to Store 2077 in Lake Elsinore, California in March 1999 with the belief that she would get more hours.  At the Lake Elsinore store, Ms. Gunter was employed as a Cashier/Clerk in the Tire Lube Express Department.  As she had done in the Perris store, she trained a male employee in the job responsibilities of Support Manager for the Tire Lube Express Department.  After she trained him, the male employee was promoted to Support Manager, whereas Ms. Gunter's hours were reduced yet again.

132.     Ms. Gunter complained to the Lake Elsinore Tire Lube Express Manager after her hours were reduced.  She also requested a meeting with the District Manager to complain about the discriminatory treatment.  In August 1999, on the day that the meeting was scheduled, the Store Manager informed her that she had been terminated and handed Gunter her remaining wages and vacation pay.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                                    - 25 -

133.     Ms. Gunter filed a Charge of Discrimination with the EEOC on or about October 20, 2011, a copy of which is attached hereto as exhibit 8 and incorporated by reference. She has requested a right to sue notice.

**EDITH ARANA**

134.     Edith Arana is an African-American woman who was hired by Wal-Mart Store 2401 in Duarte, California, on September 5, 1995.  During her employment, she held the positions of Personnel Manager, Support Manager, Sales Associate, UPC clerk, Test Scanner and Inventory Clerk.  Prior to working at Wal-Mart, Ms. Arana had nine years of retail experience.  In December 1997, Ms. Arana told the Store Manager that she wanted to apply for the assistant manager-training program.  He informed Ms. Arana that he would recommend her to the District Manager for the training program.  However, he did not give Ms. Arana's name to the District Manager.  The Store Manager then said he would recommend Ms. Arana the next time the District Manager asked for names for the training program.  However, to her knowledge, he never submitted her name.

135.     In October 1999, Ms. Arana applied for the position of Paper Goods and Chemicals Department Manager.  Although Ms. Arana understood that Wal-Mart's policy is to interview every applicant, she was not interviewed.  A male employee was selected to fill the position.  During this same 1999-2000 period, Ms. Arana was denied promotion to several other positions, including to department manager positions in Ladies Sportswear and Stationary Departments. Ms. Arana applied a second time for the position of Paper Goods and Chemicals Department Manager between January and August 2000.  She was not interviewed, and a male employee was selected to fill the position.

136.     In approximately June 2000, Ms. Arana told the new Store Manager that she wanted to be promoted and that she was interested in the assistant manager-training program. The Store Manager gave only a vague response.  On another occasion, the Store Manager told her that there was no place for people like her in the program and confirmed that he was referencing

her gender and race. Ms. Arana is not aware of any woman recommended by that Store Manager for the assistant manager-training program.

137. During the months after Ms. Arana told the Store Manager that she wanted to apply for the assistant manager-training program, she also informed various Assistant Store Managers of her desire for a promotion. Ms. Arana also complained to several Assistant Managers about the Store Manager's discriminatory treatment of her. Ms. Arana also wrote a letter to an Assistant Manager expressing her desire to join the assistant manager-training program. That Assistant Manager suggested to Ms. Arana that she write a letter directly to the District Manager.

138. In December 2000, Ms. Arana wrote a letter to the District Manager expressing her interest in the assistant manager-training program. The District Manager replied via letter that Ms. Arana's letter would be forwarded to the new District Manager. Despite her repeated expressions of interest in the assistant manager-training program, Ms. Arana was never considered for that program.

139. In January 2001, Ms. Arana called Wal-Mart's toll free number to complain about the Store Manager's discriminatory refusal to interview women who applied for department manager positions in certain departments. Ms. Arana was informed that her complaint would be forwarded to the Regional Manager. However, to Ms. Arana's knowledge, no steps were taken in response to her complaint.

140. After Ms. Arana complained about the Store Manager's discriminatory treatment, she was transferred in February 2001 to the less desirable position of inventory traveler. Ms. Arana repeatedly told the Store Manager and two Assistant Managers that she did not want to be an inventory traveler because it was not a desirable position.

141. On October 19, 2001, Ms. Arana was falsely accused of "stealing time" and terminated in retaliation for her complaints regarding Wal-Mart's discriminatory failure to promote women.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB

- 27 -

142.    On or about December 11, 2001, Ms. Arana filed a charge of discrimination with the Equal Employment Opportunity Commission and the DFEH, a copy of which is attached hereto as Exhibit 9 and incorporated by reference.  The DFEH issued a right to sue notice on these charges on or about December 28, 2001.  On or about April 22, 2002, Ms. Arana received a right to sue notice from the EEOC on this charge.

## FIRST CLAIM FOR RELIEF

*(Violation of Title VII)*

143.    Plaintiffs incorporate Paragraphs 1 through 142.

144.    This claim is brought on behalf of all Named Plaintiffs and the classes they seek to represent.

145.    On or about October 22, 1999, January 4, 2000 and April 3, 2000, class member and former plaintiff Stephanie Odle filed charges of sex discrimination against Wal-Mart with the United States Equal Employment Opportunity Commission.  Ms. Odle thereafter received a right to sue notice and commenced this action as a named plaintiff in a timely fashion.  From the filing of her EEOC complaints through the initiation of this action, the class-wide nature of Ms. Odle's charges has been communicated to defendant.

146.    In June 2004, this Court certified this case as a national class action, a decision that was largely upheld by the Ninth Circuit Court of Appeals en banc.  On June 20, 2011, the Supreme Court reversed the Ninth Circuit decision. During the pendency of the former certified class, time periods for filing EEOC charges and subsequent litigation for all former class members were tolled.  This Court subsequently held that claims of class members would be tolled during the pendency of the national class action until the following dates: for former class members who had received an EEOC right to sue based on a claim encompassed by the former class: October 28, 2011; all other former class members in deferral states would have until May 25, 2012 to file EEOC charges based on conduct encompassed by the former class definition.

147.    The foregoing conduct violates Title VII of the Civil Rights Act of 1964. Wal-Mart has engaged in a pattern or practice of discriminating against its female employees in making compensation and management track promotion decisions in its California Regions.

148.    Wal-Mart has maintained a system for making decisions about compensation and promotions that has had an adverse impact on its female employees in its California Regions.  Its compensation policies for setting and adjusting pay collectively and individually, including its failure to require or use job related criteria for making compensation decisions, has had an adverse impact on women.  Its management track  promotion policies:  the absence of an open application process and job posting  its relocation and travel requirements for management positions, its scheduling requirements which deny managers a consistent schedule, and its failure to apply job-related objective criteria for making management selections have all individually and collectively caused this adverse impact on female employees in promotions.

149.    Wal-Mart has failed in California to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually.  Nor does Wal-Mart specify the weight that should be according to each of the requirements for pay and promotion.  Wal-Mart's pay and promotion policies and procedures are thus not capable of separation for analysis, and accordingly the entire decision-making process for compensation and promotions decisions may each be analyzed as one employment practice. 42 U.S.C. 2000e-2(k)(1)(B)(i).

150.    Wal-Mart's compensation and promotion policies are not job related or consistent with business necessity.  Wal-Mart's own consultants and human resources staff have proposed job posting, elimination of relocation requirements, adoption of more consistent and reliable scheduling, and the use of more objective criteria for management promotions.  Adopting these policies would have resulted in less discriminatory impact upon female employees while serving Wal-Mart's business needs more effectively than its current practices.

151.    Wal-Mart's discriminatory practices described above have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                                    - 29 -

152.    Plaintiffs request relief as provided in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*(Violation of Title VII)*

153.    Paragraphs 88-102, 111-126 and 135-142 are incorporated by reference.  This claim is brought on behalf of the Named Plaintiffs individually for their non-class claims.

154.    Defendant discriminated against the Named Plaintiffs on the basis of their gender and in retaliation by demoting them, reducing hours, failing to increase pay, and otherwise adversely affecting the conditions of their employment  and terminating them and by subjecting them to a hostile work environment.

155.    Defendant's discriminatory and retaliatory practices have resulted in the loss of past and future wages and other job benefits, and have caused plaintiffs to suffer humiliation, embarrassment and emotional distress.

156.    Plaintiffs request relief as provided in the Prayer for Relief below.

## THIRD CLAIM FOR RELIEF

*(Violation of California Fair Employment and Housing Act -Race Discrimination)*

157.    Plaintiffs incorporate by reference Paragraphs 88-102.

158.    This claim for relief is brought on behalf of Plaintiff Dukes only.

159.    Defendant discriminated against plaintiff Dukes on the basis of her race African American.  The foregoing conduct violates the California Fair Employment and Housing Act, Government Code §§ 12940, et. seq.

160.    Defendant's discriminatory and retaliatory practices have resulted in the loss of past and future wages and other job benefits, and have caused plaintiff Dukes to suffer humiliation, embarrassment and emotional distress.

161.    Plaintiff Dukes requests relief as provided in the Prayer for Relief below.

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB                                                          - 30 -

**RELIEF ALLEGATIONS**

162.    Plaintiffs and the Injunctive Relief Class they represent have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs and the Injunctive Relief Class they represent are now suffering and will continue to suffer irreparable injury from Defendant's discriminatory acts and omissions.

163.    The actions on the part of Defendant have caused and continue to cause Plaintiffs and all Monetary Relief class members substantial losses in earnings, promotional opportunities and other employment benefits, in an amount to be determined according to proof.

164.    Defendant acted or failed to act as herein alleged with malice or reckless indifference to the protected rights of Plaintiffs' and Monetary Relief class members.  Plaintiffs and class members are thus entitled to recover punitive damages in an amount to be determined according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the proposed classes pray for relief as follows:

1)    Certification of the Injunctive Relief and Monetary Relief Classes as class actions under Rule 23 (b)(2) and (3),and designation of the Named Plaintiffs Dukes and Kwapnoski as representatives of the Injunctive Relief class and all Named Plaintiffs as representatives of the Monetary Relief class and their counsel of record as Class Counsel for both classes;

2)    All damages which the Named  Plaintiffs and the Monetary Relief Class have sustained as a result of Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits that they would have received but for the discriminatory practices of Defendant;

3)    For Plaintiffs' individual, non-class claims, all damages they have sustained as a result of defendant's conduct, including back pay, front pay, general and specific damages for lost

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

compensation and job benefits they would have received but for the discriminatory practices of

defendant, damages for emotional distress, and punitive damages, according to proof;

     4)     For plaintiffs and the Monetary Relief Class exemplary and punitive damages in

an amount commensurate with Defendant's ability to pay and to deter future conduct;

     5)     A preliminary and permanent injunction against Defendant and its directors,

officers, owners, agents, successors, employees and representatives, and any and all persons

acting in concert with them, from engaging in each of the unlawful practices, policies, customs

and usages set forth herein.  Such relief at minimum should include professional designed job

analyses of all job positions and identification of objective, nondiscriminatory criteria for

compensation and promotion decisions, record keeping that requires documentation of

compensation  and promotion decisions, open application and job posting procedures for

promotion,  training and accountability measures to ensure consistent, nondiscriminatory

decision-making, adjustment of the wage rates and benefits for Plaintiffs and the Injunctive Relief

Class to that level which Plaintiffs and the Injunctive Relief Class would be enjoying but for

Defendant's discriminatory practices, and affirmative action to provide lost promotion

opportunities to Plaintiffs and Injunctive Relief class members.

     6)     A declaratory judgment that the practices complained of in this Fourth Amended

Complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act

of 1964;

     7)     Costs incurred, including reasonable attorneys' fees, to the extent allowable by

law;

     8)     Pre-Judgment and Post-Judgment interest, as provided by law; and

COHEN, MILSTEIN,
SELLERS & TOLL
PLLC
ATTORNEYS AT LAW
WASHINGTON

PLAINTIFFS' FOURTH AMENDED COMPLAINT
CASE NO. C-01-2252- CRB
- 32 -

1        9)      Such other and further legal and equitable relief as this Court deems necessary,

2   just and proper.

3

4   Dated:  October 27, 2011              Respectfully submitted,

5                                        THE IMPACT FUND

6

7                                        By: /s/  Brad Seligman

8                                            BRAD SELIGMAN

9

10

11                                       Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cohen, Milstein,
Sellers & Toll
PLLC
Attorneys At Law
Washington

PLAINTIFFS' Fourth amended complaint
CASE No. C-01-2252- CRB

- 33 -

# EXHIBIT 1

## * * * EMPLOYMENT * * *

| COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT | DFEH# _____ |
|---|---|
| | DFEH USE ONLY |

CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

NAME (indicate Mr. or Ms.)
Ms. Betty G. Dukes

| ADDRESS 2999 Clearland Circle | TELEPHONE NUMBER (Include Area Code) (925) 550-8262 | | |
|---|---|---|---|
| CITY/STATE/ZIP Bay Point, CA 94656 | Contra Costa | COUNTY | COUNTY CODE |

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE/LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

| NAME Wal Mart, Inc., Ken Cagle | TELEPHONE NUMBER (Include Area Code) (925) 427-2022 | | |
|---|---|---|---|
| ADDRESS 2203 Loveridge Road | | / DFEH USE ONLY | |
| CITY/STATE/ZIP Pittsburg, CA 94565 | Contra Costa | COUNTY/ / | COUNTY CODE |
| # OF EMPLOYEES/MEMBERS (if known) more than 100 | DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) 8/14/99 | / / | RESPONDENT CODE |

PARTICULARS ARE:

On 8/97 & _____ , I was
          Continuing

| | | |
|---|---|---|
| ____ fired | XX denied employment | ____ denied family or medical leave |
| XX laid off | ____ denied promotion | ____ denied pregnancy leave |
| XX demoted | ____ denied transfer | ____ denied equal pay |
| XX harassed | ____ denied accommodation | ____ denied right to wear pants |
| ____ forced to quit | XX Other (Specify) Discriminated against & | Retaliated against |

Ken Cagle, Manager

Name of Person                    Job Title (supervisor/manager/personnel director/etc.)

Because of my:

| ____ sex | ____ national origin/ancestry | ____ physical disability | ____ (Circle one) filing; |
|---|---|---|---|
| ____ age | ____ marital status | ____ mental disability | protesting; participating in investigation (retaliation for) |
| XX race/color | ____ association | XX other (specify) Reports of discrimination | |
| ____ religion | ____ medical condition | | |

The reason given by Ken Cagle, Manager

Name of Person and Job Title

was because of    Purported policy violations.

Please state What you believe To be reason(s)    Discrimination and retaliation becuause of my race, African-

American.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a Complaint within 30 days of receipt of the DFEH "Notice of Case Closure", or within 300 days of the alleged discriminatory act, whichever is earlier.

I've not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand that it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of Complainant Elected Court Action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to those matters stated on my information and belief, and as to those matters I believe them to be true.

Dated 6/1/2000

Pittsburg
City

COMPLAINANT'S SIGNATURE
Betty J. Dukes

DATE FILED:

DFEH 300-03 (11/98)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

EXHIBIT 2

MAY-22-2001  15:00                                    *U.S. GPO: 1998-659-752/95101                          P.04/01

## CHARGE OF DISCRIMINATION

This form is effected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | |
| | | and EEOC |

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Betty Dukes | c/o   415-621-0672 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| c/o  1663 Mission St. #250, San Francisco, CA  94103 | 3/17/50 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Wal-Mart | +325 | 925-427-2022 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 2203 Loveridge Road, Pittsburg, CA  94565 | Contra Costa |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| N/A | |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE   ☐ COLOR  ☒ SEX   ☐ RELIGION   ☐ AGE | EARLIEST (ADEA/EPA)    LATEST (ALL) |
| ☒ RETALIATION  ☐ NATIONAL  ☐ DISABILITY  ☐ OTHER (Specify) | Aug. 1999 - Jan. 2001 |
|           ORIGIN | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| *Betty J. Dukes* | |
| Date  5/01/01   Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (10/94)

# EXHIBIT 3

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | |

_____ and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Betty Dukes | c/o 510/845-3473 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|
| c/o The Impact Fund, 125 University Avenue, Berkeley, Ca | 3/17/50 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Wal-Mart | +325 | 925/427-2022 |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 2203 Loveridge Rd, Pittsburg, CA  94565 | Contra Costa |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| n/a | |

| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| | RACE | | COLOR | X | SEX | | RELIGION | | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL ORIGIN | | DISABILITY | | OTHER (Specify) | | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)          LATEST (ALL)

April 2003

X  CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

_Betty J. Dukes_

4/9/04      _Betty J. Dukes_

Date      Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

EEOC FORM 5 (10/84)

EXHIBIT 4

U.S. GPO: 1996-459-475/25181

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 376A10366 |
| | and EEOC |

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mrs. Patricia Surgeson | 707 447-4732 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 293 Shasta Drive #156 | Vacaville      CA  95687 | 4-7-67 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Wal-Mart | 200 + | 707 451-0166 |

| STREET ADDRESS   CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 1501 Helen Power Drive, Vacaville CA  95687 | Solano |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS   CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ AGE
☐ RETALIATION   ☐ NATIONAL ORIGIN   ☐ DISABILITY   ☐ OTHER (Specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST (ADEA/EPA) | LATEST (ALL) |
| 5/99 | 3/17/2001 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a white female.  I was hired by Wal-Mart (#1704) in Vacaville in August 1997 as a sales associate.  While I worked at Wal-Mart, I believe that I was discriminated against based upon my gender with respect to pay, promotion and training.

In November 1998, I was assigned to the lay-away department.  Approximately six months later, I was made the lay-away department manager.  Because I was assuming additional responsibilities, the store manager, Allen Becker, promised me a raise.  Despite repeated requests, I was never given the promised raise.

In late 1999, the store got a new manager who decided that the layaway dept. did not need to have a manager.  My title was taken away but I was still ex-

(continued on attached)

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| [signature] Pat Sug   05/14/01 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date   Charging Party (Signature) | |

EEOC FORM 5 (10/94)

RECEIVED

MAY 31 2001

EEOC-OLU

TOTAL P.02

ATTACHMENT TO EEOC CHARGE FOR PATRICIA SURGESON

pected to perform the job responsibilities. When I left this department in June or July 2000, a male employee, B.J.Jawanda, was given the position and title of Layaway Department Manager. He was paid more than I had been for working in the same position with the same responsibilities.

In June or July 2000, I was moved to the position of Cash Office. Although I assumed greater responsibilities, I did not receive a raise. I was expected to work overtime without lunches or breaks, locked in the cash office. In my position, I became aware that many male employees were being paid more than I was, although they had worked at Wal-Mart for less time and they had less responsibility. In January 2001, I asked in writing for a merit increase. My request was ignored for at least two months.

As a result of my unfair pay and the working conditions, I resigned on March 17, 2001.

I bring this charge on behalf of myself and similarly situated women who I believe receive less pay, promotions and training than male employees.

I declare under penalty of perjury that the foregoing is true and correct.

Patricia Surgeson

5/14/01
Date

RECEIVED
MAY 31 2001
EEOC-OLO

# EXHIBIT 5

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| XX | EEOC | |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Christine Kwapnoski | (925) 609-7745 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1486 Marclair Drive, Apt. D, Concord, CA   94521 | | 07-06-64 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Sam's Club | 200+ | (925) 687-8914 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1225 Concord Ave., Concord, CA   94520 | | Contra Costa |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| RACE | COLOR | X SEX | RELIGION | AGE |
| RETALIATION | NATIONAL ORIGIN | DISABILITY | OTHER (Specify) |

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   1994      LATEST (ALL)   Current

XX CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I am a white female. I was hired by Sam's Club originally in Missouri, in 1986. I was transferred to Sam's Club in Concord, California in 1994, and have been continuously employed there since that date. I believe that I was discriminated against based upon my gender, female, with respect to pay, promotion and training.

From 1994 until June 2001, I was repeatedly passed over for promotion to managerial positions, and these positions were given to men who were less than or no more qualified than I. The explanation given to me for this was that I needed to "blow the cobwebs off my make-up" and to "doll-up". From 1994 to the present, I have received less pay than men with less or comparable skills and experience. When I questioned why a man was receiving a large raise, I was told it was because he had a family to support. I have continued to be discriminated against, even after my recent promotion. I am excluded from managerial meetings, ignored, and have not been permitted to participate in the management training program, although I have expressed interest. I have requested upon more than one occasion the chance to join the "Management-in-Training" program, but have been denied. This denial of training is ongoing.

I bring this charge on behalf of myself and similarly situated women who I believe receive less pay, promotions and training than male employees.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | *Christ M. Kwapnoski* |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date 2/7/02   *Christ M. Kwapnoski*  Charging Party (Signature) | |

EEOC FORM 5 (Test 10/94)

EXHIBIT 6

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 376-2005-00571 |

| | and EEOC |
|---|---|

State or local Agency, if any

| NAME(Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Christine Kwapnoski | (925) 776-5254 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1109 W 5th Street, Antioch, CA 94509 | | 07-06-64 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Sam's Club | 200+ | (925) 687-8914 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1225 Concord Ave., Concord, CA 94520 | | Contra Costa |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)    LATEST (ALL)
February 2002          Current

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

SEE ATTACHMENT

RECEIVED

MAY 16 2005

EEOC - OLO

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| Date 4/23/05   Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

EEOC CHARGE # 376-2005-00571

### Attachment to Charge of Discrimination Form

I, CHRISTINE KWAPNOSKI, am a white female. I was hired by Sam's Club originally in Missouri, in 1986. I was transferred to Sam's Club in Concord, California in 1994, and have been continuously employed there since that date. I believe that I have been retaliated against for complaining about sex discrimination.

On February 7, 2002, I filed a complaint with the EEOC Oakland Local Office stating that Sam's Club discriminated against me based upon my gender, female, with respect to pay, promotion and training. After obtaining a Right-to-Sue letter from the EEOC, I joined the *Dukes v. Wal-Mart* sex discrimination class-action lawsuit against Wal-Mart and became a named plaintiff. I believe that since then, Sam's Club (a subsidiary of Wal-Mart) has taken a number of retaliatory actions against me. The retaliation has been ongoing, with Sam's Club taking action against me for pretextual reasons.

I have not received an annual raise in the three years since I've joined the lawsuit. Each time, I have been told at my annual review that my performance is "below expectations." I never received so low an evaluation before I joined the lawsuit. Most recently, during my annual evaluation in March 2005, I was given a score of 2.9, one tenth of a point short of the 3.0 needed to receive a raise. I believe that I am intentionally given low scores to prevent me from getting a raise as retaliation for my complaint and involvement in the lawsuit.

In December of 2003, the club's general manager refused to let me have any time off during the week after Christmas off so that I could be with my children. This was the first time during my then sixteen years at Sam's Club that I was not given that week off. I called Home Office to complain, and was told that vacation was at the manager's discretion and that they could not help me. I believe that I was denied this vacation time in retaliation for my complaint and involvement in the lawsuit.

In late March/early April 2004, Wal-Mart began a sham investigation against me for sexual harassment against a male co-worker. An "independent investigator" was brought in by the company. This "investigator" used the false and malicious claims (ultimately dropped) to conduct a fishing expedition where she asked numerous coworkers in the store about me and attempted to find other reasons to discipline or reprimand me. She then made unrelated "findings" about me. On August 31, 2004, Sam's Club then gave me a "D-Day," the final step before termination in the company's progressive disciplinary system. Prior to this, I had never before been given a written or verbal warning.

Last October, there was an audit of the Sam's Store. Wal-Mart found pretextual reasons to tell me that I wasn't doing my work properly. On December 14, 2004, I was given another D-day.

I declare under penalty of perjury that the foregoing is true and correct.

**RECEIVED**

MAY 16 2005

_____          4/23/05          EEOC - OLO
Signature                               Date

# EXHIBIT 7

October 19, 2011

Michael Baldonado EEOC –
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105-1260

Dear Mr. Baldonado:

| | |
|---|---|
| Name: | Christine Kwapnoski. |
| **Address:** | 20 Oceanview Drive, Baypoint, CA 94565 |
| **Phone number:** | (925) 285-0483 |
| **Date of birth:** | 07-06-1964 |

| | |
|---|---|
| **Employer:** | Sam's Club, store number 6612 |
| Address: | 1225 Concord Ave., Concord, CA 94520 (Contra Costa County) |
| **Phone number:** | (925) 687-8914 |
| **Number of employees:** | 200+ |

**Name of person who can contact me at any time:** Sarah Varela

| | |
|---|---|
| **Address:** | 595 Market Street, Suite 1400 |
| | San Francisco, CA 94105 |
| **Telephone:** | 415-597-7200 |

| | |
|---|---|
| **Cause of discrimination based on:** | Gender and Retaliation |
| **Dates Discrimination Took Place:** | 2002-Present (Continuing Action) |

**Description of the events I believe to be discriminatory:**

I, Christine Kwapnoski, was hired by Sam's Club originally in Missouri, in 1986. I was transferred to Sam's Club in Concord, California in 1994, and have been continuously employed there since that date.    On February 7, 2002, I filed a complaint with the EEOC Oakland Local Office stating that Sam's Club discriminated against me based upon my gender, female, with respect to pay, promotion and training. After obtaining a Right-To-Sue letter from the EEOC, I joined the *Dukes v. Wal-Mart* sex discrimination class-action lawsuit against Wal-Mart and became a named plaintiff. I believe that since then, Sam's Club (a subsidiary of Wal-Mart) has taken a number of retaliatory actions against me.

I filed a charge on April 3, 2005 alleging that I had been retaliated against for complaining about sex discrimination. Since that time, the retaliation has continued unabated. The April 2005 charge is incorporated in this charge hi its entirety. I believe Sam's Club continues to take action against me for pretextual reasons.

I repeatedly have been denied raises since I joined the lawsuit. I did not receive an annual raise until 2010, eight years after joining the lawsuit. At that time, I received a one percent raise. Despite my relatively long tenure as an Assistant Manager at Sam's Club, I am still at the bottom of the salary range for Assistant Managers at Sam's Club. Each time I was denied the annual raise, I was told at my annual review that my performance is "below expectations." As I alleged in my earlier charge, I never received so low an evaluation before I joined this lawsuit. I believe that I am intentionally given low scores to prevent me from getting a raise as retaliation for my complaint and involvement in the lawsuit.

Managers at Sam's Club have repeatedly initiated sham disciplinary proceedings against me which are all ultimately dismissed for lack of evidence. In addition to the examples in my 2005 charge, on December 19, 2008, I was written up for allegedly violating code date policies. After taking pictures of the items I allegedly put on the shelves with bad code dates which showed that those items were, in fact, current, the matter was dropped. On September 25, 2009, management opened a "Red Book" on me for allegedly removing a time clock punch for an associate. A "Red Book" is the term for an investigation done of a manager by higher-level management. If misconduct is proved, then the investigated manager will be terminated. In this case, after the investigation, the case was dropped because it was determined once again that I had done nothing to warrant discipline. Again on November 20, 2009, management opened a "Red Book" on me for allegedly discriminating against Latino co-workers. As always, these charges were dropped when no evidence was found to support the charge.

The retaliation continues. Current Club Manager Donald Taylor treats me unfairly and differently than he does other managers. For, example recently, in July 2011, when I returned from vacation, the Club Manager Donald Taylor scheduled me for eight straight days. Assistants are not normally scheduled for more than six days in a row. When I complained about the schedule, my manager refused to change it. Soon after in August 2011, the same manager scheduled me for 11 straight days. After I complained to Taylor and the regional human marketing manager of human resources, Pamela Zagrocki, I was given one day off in that 11-day span.

I declare under penalty of perjury that the foregoing is true and correct.

Sincerely,

Christine Kwapnoski

# EXHIBIT 8



**Equal
Rights
Advocates**

Since 1974, Fighting for Women's Equality

October 24, 2011

Michael Baldonado, Michael.baldonado@eeoc.gov
Equal Employment Opportunity Commission
350 The Embarcadero
San Francisco, CA 94105-1260

RE:  Charge of Discrimination Against Wal-Mart Stores, Request for Immediate Right to Sue

To Whom It May Concern:

Please consider this a charge of discrimination to be filed and acted upon by the EEOC.  The following is my personal information:

Deborah Gunter
Post Office Box 1555
Yucca Valley CA 92286
Home: (760) 364-4846

However, I am represented by Equal Rights Advocates, The Impact Fund, and Davis, Cowell & Bowe in this matter.  Please direct future communications to Noreen Farrell, Managing Attorney at Equal Rights Advocates, address below, nfarrell@equalrights.org, 415.575.2398.

## I.       Information Relevant to Statute of Limitations

I was a member of the class in, *Dukes v. Wal-Mart Stores, Inc.*, Case No. 01-cv-02252 (N.D. Cal.) ("*Dukes*").  I have relied upon the *Dukes* lawsuit since its inception and continue to rely upon the representative EEOC charge filed by former named plaintiff and class member, Stephanie Odle, as permitted by the district court, which found that Ms. Odle's charge filed on October 22, 1999, tolled the statute of limitations for all class members beginning December 26, 1998.  Order Granting Leave to Amend, Dkt. 81 (Sept. 9, 2002).  The district court established time limits for former class members to file charges of discrimination with the EEOC alleging conduct encompassed by the former certified class: in non-deferral states, it held that timely charges could be filed by January 27, 2012. In deferral states, the deadline was set at May 25, 2012.  Order Granting in Part Plaintiffs' Motion to Extend the Statute of Limitations, Dkt. 760 (Aug. 19, 2011).

I was employed by Wal-Mart Stores for a brief period between 1993 and 1994.  I was then employed by Wal-Mart between April 1996 to August 1999 at Wal-Mart stores in three California locations - Riverside, Perris, and Lake Elsinore.

I believe that I was discriminated against because of my gender (female) in promotions.



180 Howard Street, Suite 300
San Francisco, CA 94105
www.equalrights.org

Phone  415-621-0672
Fax  415-621-6744
Advice  800-839-4372

## II.   Discrimination in Promotion

When I was hired in April 1996 as a Photo Lab Clerk in Wal-Mart Store #2028 in Riverside, California, I had 30 years of prior retail experience.

In March 1998, I transferred to a position as Service Clerk in the Tire Lube Express Department of Store #1747 in Perris, California after the Perris Store Manager requested that I transfer there. While employed at the Perris store from March 1998 until March 1999, I performed the duties of Support Manager to the Tire Lube Express Department without the title or salary for that position. I requested training from the Tire Lube Express Manager and from the District Manager on numerous occasions. I never received the training. I requested a promotion and pay increase from the Tire Lube Express Manager, but did not receive the promotion. Instead the Tire Lube Express Manager directed me to train two male employees in the job responsibilities of the Support Manager. After receiving training from me, each male employee was promoted instead of me to the Support Manager position. After the Tire Lube Express Manager told me that I did not have sufficient training to fill the position of Support Manager (despite having trained two males eventually promoted), I again requested additional training and was denied it.

I transferred to Store #2077 in Lake Elsinore, California in March 1999. At the Lake Elsinore store, I was employed as a Cashier/Clerk in the Tire Lube Express Department. As I had done in the Perris store, I trained a male employee in the job responsibilities of Support Manager for the Tire Lube Express Department. After I trained him, the male employee was promoted to Support Manager.

I contacted the Lake Elsinore Tire Lube Express Manager and the District Manager to complain about the discriminatory treatment. In August 1999, on the day that the meeting was scheduled, the Store Manager informed me that I had been terminated.

I believe I was denied promotion into management because of my gender and that this denial was part of a broader pattern or practice of discrimination in promotion at Wal-Mart.

## III.   Statement of Discrimination

I believe that I, and other female employees similarly situated, have been discriminated against because of our sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

## IV.   Request for an Immediate Right to Sue

Please consider this a request for an immediate right to sue.

NAME: _____                    DATED: 10-22-11
        Deborah Gunter

# EXHIBIT 9

U.S. GPO: 1996-459-475/25181

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 340A200387 |
| ☒ EEOC | |

Department of Fair Employment and Housing _____ and EEOC

*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Edith Arana | 626-345-0176 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1095 N.Raymond Av.  #205-6 | Pasadena CA 91103 | 9-11-60 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Wal-Mart | 501 + | 626-359-9488 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1600 S. Mountain Ave.  Duarte CA 91010 | | Los Angeles |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| John Kocharian | 626-359-9488 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 1600 S. Mountain Ave.  Duarte CA 91010 | | Los Angeles |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| | EARLIEST (ADEA/EPA)    LATEST (ALL) |
| ☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ AGE | 10/5/01 |
| ☒ RETALIATION   ☐ NATIONAL ORIGIN   ☐ DISABILITY   ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See Attached.

RECEIVED

DEC 1 4 2001

EEOC/LADO
INTAKE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| *Edith R. Arana* | |
| Date 12-10-2001   Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (10/94)

PWM-0002840

EDITH ARANA
CHARGE OF DISCRIMINATION AND RETALIATION

Factual Background

    I am a 41-year-old African-American woman.  On September 5, 1995, I started working at Wal-Mart Store #2401 in Duarte, California.  I worked as the personnel manager, a closing sales associate, and an inventory clerk.  Previous to working at Wal-Mart, I had nine years of retail experience.  On October 19, 2001, I was terminated from Wal-Mart in retaliation for complaining about Wal-Mart's discriminatory treatment of me.

    During the six years I worked for Wal-Mart, I repeatedly expressed interest in the assistant manager training program, but was never given the opportunity to apply.  I also applied twice for manager of the paper goods and chemicals department.  I was never interviewed, although Wal-Mart's policy is to interview everyone who applies for a department manager position.  Each time I applied, a man was hired instead of me or any other woman.  I was also informed by male department managers that they earned higher salaries than female department managers.

    Eventually, I was terminated after I complained that I was denied promotions and that the store manager harassed me.  I believe I was denied promotions because of my sex (female) and my race (African American).

Discriminatory Denial of Promotions

    In December 1997, I told the store manager, Bernie Siemen (white male), that I wanted to apply for the assistant manager training program.  He informed me that he would recommend me to the district manager for the training program.  However, he did not give my name to the district manager.  When I asked him why, he said it was because I had been out on sick leave due to a car accident and he didn't believe that I was still interested.  Mr. Siemen said he would recommend me the next time the district manager asked for names for the training program.  However, Mr. Siemen was no longer a store manager as of February 1998.

    In June 2000, I told the new store manager, John Kocharian (white male), that I wanted to be promoted and that I was interested in the assistant manager training program.  I told him I wanted to apply for the assistant manager training program because I had been at the store for five years and wanted a new challenge.  John did not reply to me.  He shrugged his shoulders and walked away from me.  I am not aware of any woman John recommended from our store for the assistant manager training program.

    During the months after I told John I wanted to apply for the assistant manager training program, I also told various assistant store managers that I wanted to apply.  I had conversations with John Moore (white male), Dwight (last name unknown) (African American male), Nofoa (last name unknown) (Samoan female), Jim Nolan (Hispanic or Asian male), and Lori White (white female).  In addition to telling these assistant managers that I wanted to apply for the

- 1 -

PWM-0002841

assistant manager training program, I also complained to them about the store manager's discriminatory treatment of me. I also wrote a letter to assistant manager Lori White (white female) expressing my desire to join the assistant manager training program. Lori suggested to me that I write a letter directly to the district manager.

In December 2000, I wrote a letter to Judy Evans, district manager, telling her I wanted to apply for the assistant manager training program. Judy wrote a letter back to me, explaining that she was no longer the district manager and that she would forward my letter to the new district manager. In February 2001,I asked the district manager's secretary, Wanda Stokes, when the new district manager would be hiring for the assistant manager training program. Wanda informed me that I should apply directly to the district manager, Dave Riggs. However, I was afraid to contact the district manager because I feared John would retaliate and decrease my hours. Despite my repeated requests to apply for the assistant manager training program, I was never allowed to apply.

I also applied for manager positions in the paper goods and chemicals department, as well as in other departments, while I worked at Wal-Mart. I applied once in October 1999 for a manager position in paper goods and chemicals and another time between January and August 2000 for a manager position in paper goods and chemicals. Although Wal-Mart's policy is to interview every applicant, I was not interviewed either time I applied. In each instance, a male candidate was selected to fill the position. The first time I applied, the store manager hired Steve (last name unknown) (white male) from another Wal-Mart store. I do not know the name of the male candidate who was hired the second time I applied. I observed during my six years at Wal-Mart that certain departments, including paper goods and chemicals, were considered by the store manager to be "men's departments."

### Retaliation

In January 2001, I called 1-800-WAL-MART to complain that John, the store manager, did not interview women who applied for department manager positions in certain departments. I was informed that my complaint would be forwarded to the regional manager. I am unaware of any steps taken in response to my complaint.

After I complained about John's discriminatory treatment, I was transferred in February 2001 to the less desirable position of inventory traveler. I repeatedly told John, the store manager, and Nefoa and Lori, assistant managers, that I didn't want to be an inventory traveler. Finally, on October 19, 2001, I was terminated for "stealing time." I did not charge Wal-Mart for hours I did not work. I believe I was terminated in retaliation for calling 1-800-Wal-MART to complain about the gender discrimination at the store in which I worked, and in retaliation for contacting Judy Evans, district manager, about a promotion to the assistant manager training program.

### Pattern of Sex Discrimination

I believe that the discrimination and retaliation I experienced is part of a larger and continuing pattern of sex discrimination at Wal-Mart. Few women are promoted to management

PWM-0002842

positions.  Women are often put in traditionally "female" departments, whereas men are placed in departments that increase their advancement opportunities.  Women are discriminated against because of their sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended, and are subjected to adverse terms and conditions of employment.  I make this claim on my own behalf and on behalf of all other women similarly situated.

I declare under penalty of perjury that the foregoing is true and correct.

_Edith Arana_                               12-10-2001
Edith Arana                                                     Date

- 3 -