Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
   RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:     626.585.9600
Facsimile:     626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF EDITH ARANA IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA  94105
Telephone:  415.597-7200
Facsimile:  415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA  94105
San Francisco, CA  94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
Telephone:  505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
Telephone:  505.982-8533
Facsimile:  505.982.6698
set@tinklernm.com

I, EDITH ARANA, declare:

1.    I have personal knowledge of each and every fact set forth in this Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

2.    I was employed by Wal-Mart, Inc. from September 5, 1995 through October 19, 2001 in Duarte, California. I am female. I am the mother of five children and had more than ten years' experience working in retail and grocery stores, including supervisory and management experience, prior to beginning my Wal-Mart career. During the six years I worked at Wal-Mart, I never rose above a Support Manager position despite my consistent "above average" or "exceeds expectations" performance evaluations and constant requests for advancement opportunities.

3.    I decided to become a named plaintiff in this action because I was unfairly denied promotional opportunities, training, and equal pay throughout the time I worked at Wal-Mart. My main concern is to end all those employment practices at Wal-Mart that have prevented women from obtaining management positions and to ensure equal pay for comparable work and equal access to the training and mentoring necessary to advance in the Company. I understand the responsibilities of a named plaintiff. I am prepared to fulfill my duties to the women in the class so that they achieve fair and equitable treatment

4.    I first learned that a new Wal-Mart store was opening in my area in the summer of 1995. At the time, I was voluntarily unemployed but ready to re-enter the workforce. When I saw the ad in the newspaper, I knew Wal-Mart would be able to provide me a career in the field that best suits me: retail. I have always been really great with people and I love merchandising as well.

5.    The new store was going to be located in Duarte, California. I applied and was hired as the Personnel Manager, an hourly position. I was surprised that my pay rate was only $7.00 an

2

DECLARATION OF EDITH ARANA IN SUPPORT OF                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

hour, given my past experience and the fact that Wal-Mart was a larger company than I had worked for in the past. I trained for the Personnel Manager position by traveling with Assistant Manager Lori Whitehead to other Wal-Mart stores and working with her and other Personnel Managers for approximately three months. I learned that each of these stores, located in Upland, Rancho, Fontana, Pomona, Corona and Colton, California operated similarly and that the personnel policies and practices were consistent from store to store.

6. The Duarte store did not officially open until January 1996. During the period from September to January, I reported to a temporary location in Monrovia, California where I was responsible for creating the personnel files for prospective employees for the new Duarte store. I also helped the Assistant Managers any way I could and was often called out on the floor to assist in the various departments. Although my scheduled shift was from 7 a.m. through 4 p.m., many days I was required to work 10 to 12 hour shifts to get all my work done.

7. In January 1996, I received an "above average" rating on my initial 90-day evaluation and a $0.40 raise. I thought I should have received an "outstanding" evaluation and asked Co-Manager Greg Boynton why he had not given me the higher ranking. His response was "payroll can't handle it."

8. As the Duarte store reached full employment, the Assistant Managers began delegating more responsibilities to me. This interfered with the time I had available to do the paper work associated with personnel and payroll so I asked Store Manager Bernie Seaman if he could provide me with an assistant. He never did this so in March 1996, I told Mr. Seaman that I did not want to continue as the Personnel Manager because I was overworked and underpaid. Store Manager Seaman apologized for not having given me additional help and assigned me to train as a Test Scanner without any change in pay.

3

DECLARATION OF EDITH ARANA IN SUPPORT OF                          Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

9. My duties as a Test Scanner included checking merchandise for the correct price and ensuring that the store's inventory was correct. This was a new position for Wal-Mart and required the use of special equipment, the Telzon machine. This hand held computer allowed pricing and inventory information from each Wal-Mart store to be communicated directly to corporate headquarters in Bentonville, Arkansas. The Telzon data was available to the Store Manager through the daily Store Manager Recap Reports as well as through the STAR reports. When I finished my Telzon training, I was the only Test Scanner in the Duarte store and I continued to work as a scanner concurrently with my other positions throughout my employment with Wal-Mart.

10. In August 1996, I received my annual evaluation with a "standard" ranking and a $0.30 raise. I had been evaluated by Assistant Manager Vanessa Rico who was new to the store and who did not know my work. I told Assistant Manager Lori Whitehead and Store Manager Seaman that I did not do "standard" work. They agreed and several months later, I received a merit raise.

11. On my 1996 annual evaluation, I wrote under the "Associate Comments/Goal Setting" category: "I would like to be able to do any thing in the store—invoicing, UPC, price changes, courtesy desk, layaway and support. The way I'm going to do that is to train and ask questions." (Attached hereto as Arana Exhibit A is a true and accurate copy of my August 1996 performance evaluation.)

12. In approximately July 1997, I overheard a co-worker talking about an open support manager position. I went to Store Manager Seaman and told him that I was interested in the position. I was not interviewed and I do not recall filling out an application for the job. Mr. Seaman told me that I had the job.

13. A Support Manager is just below the Assistant Manager and has many of the same job duties, such as handling rude customers, checking voids off the cash registers, approving checks

4

DECLARATION OF EDITH ARANA IN SUPPORT OF                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

above a certain limit, keeping keys to the registers and the back office. As Support Manager, I still had to work my regular test scanning job but would then serve as Support Manager either on Friday evening and over the weekend or by returning several weekday evenings after having completed my regular shift. For these additional responsibilities and hours, I received a mere $0.40 an hour raise. My pay rate was then $8.50 an hour.

14. On my 1997 annual evaluation, I received an "above standard" ranking and a $0.45 raise. I also received two merit raises that year, one for $0.41 and the other for $0.56. The second Associate Commendation Form read: "Edith is doing an excellent job as Support. Goes beyond what is expected. She will receive a 6% increase for merit raise." (Attached hereto as Arana Exhibit B is a true and accurate copy of an Associate Commendation Form dated December 11, 1997.) Even with excellent performance evaluations and numerous merit raises, my pay rate was then only $10.00 an hour.

15. In approximately December 1997, I told Store Manager Seaman that I wanted to apply for the Assistant Manger Training Program. Information about this training program is not posted anywhere in the store and is not included in the employee handbook. There is no formal application process. I learned about the program by hearing other associates talk about the program. I understood that the only way to be considered for the program was by asking your Store Manager to recommend you. Store Manager Seaman told me that he would recommend me to the District Manager for the training program.

16. In early 1998 I was out on sick leave due to injuries I suffered in a car accident in late December. When I returned to work, I still had not heard anything from Mr. Seaman regarding when I would start the Assistant Manager Training Program. When I asked him why, he said he did not think I was still interested since the car accident. I reassured him that I was still interested in

5

management training and he said that he would recommend me the next time the District Manager asked for candidates for the Assistant Manager Training Program. During this same time period, I also discussed my interest in the Assistant Manager Training Program with Assistant Manager Lori Whitehead.

17. Despite having expressed interest in management training to both Store Manager Seaman and Assistant Manager Whitehead, I was not recommended for the Management Training Program at that time.

18. I worked as a Support Manager for about one year before I voluntarily stepped down from the position in July 1998. I stepped down because management repeatedly promised, but failed, to provide additional help when I worked on Friday nights and Sundays, the two busiest days at Wal-Mart. I did not mind working these days so long as I had adequate help. When management failed to provide additional support on these days, I asked to be taken off either Friday night or Sunday as I did not think it was fair that I had both of the two busiest days most of the time. Although Store Manager Seaman, and then the new male Store Manager Darren Rastad, repeatedly reassured me that I would not have to work both Friday night and Sunday, neither changed my schedule so I asked to step down. I was not being paid enough money or provided sufficient support to sacrifice my weekend time with my family.

19. In August 1998, I received another "above standard" evaluation and a $0.54 raise. I also applied for another Support Manager position when I saw one posted on Wal-Mart's computerized job posting system. I was not interviewed for the position. The promotion went to a male, Jerry Serrano.

20. Over the next two months, I worked in a number of different capacities, including the back-up UPC clerk , the UPC clerk, and as a sales associate in the Men's Wear Department. The

6

UPC clerk and back-up clerk were responsible for implementing price changes by ensuring that merchandise was correctly priced. I received a merit raise of $0.52 cents in November 1998.

21.    During 1999, I worked mostly on the sales floor in both the Women's and Men's Wear Departments and then with the Seasonal Products Department. I was still interested in management and began applying for Department Manager positions on the computer, including Manager of the Household Paper Goods Department in approximately June 1999. I was not interviewed for this position. Instead, I was passed over in favor of a male co-worker whose name I no longer remember. I was also denied Department Manager positions in the Ladies wear and Stationary Departments. In the Spring of 1999, John Kocharian replaced Bernie Seaman as the Store Manager.

22.    In late July 1999, my doctor ordered me to take a stress-related leave of absence. After I returned from that leave, my husband fell gravely ill and died in September 1999. This required me to take a two month leave of absence. Upon my return, I received an "exceeds expectations" performance evaluation and a $0.57 raise from Lori Whitehead Schmidt who had been promoted to Co-Manager.

23.    Early in 2000, Store Manager Kocharian asked me to return to the position of Test Scanner rather than working the floor. The store was getting ready for inventory and test scanning is very important to the inventory process. I agreed to this change and began not only test scanning but implementing the price changes in various departments whenever the department managers were unable to get this task done.

24.    On January 22, 2000, Co-Manager Lori Schmidt gave me a merit raise of $0.58 an hour. On the Commendation Form, Ms. Schmidt wrote: "Edith is being given a merit increase due to going above and beyond her job performance. Edith has covered most of my departments for

7

DECLARATION OF EDITH ARANA IN SUPPORT OF                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

extended periods of time during their absences, not having any one in dept. She does an outstanding job feeling (sic) in where she is needed—anywhere, anytime." (Attached hereto as Arana Exhibit C is a true and accurate copy of the January 2000 Commendation Form.)

25. In approximately February 2000, the Department Manager position in the Paper Goods and Chemical Department became open again when the current male Department Manager moved to a different department. I was still interested in this promotion and applied again through the computerized posting system. Again I was not even interviewed. Instead, Store Manager Kocharian informed me that he was giving the position to a male from another Wal-Mart store who had worked in that department. Later a male, Steve [last name unknown] transferred into the position from the Glendora store.

26. After the death of my husband, my interest in entering the Assistant Manager Training Program was even greater because I was now the sole support for my family. Although I do not recall the date, I told Store Manager Kocharian sometime after being denied the department manager position in the Paper Goods and Chemical Department that I wanted to apply for the Assistant Management Training Program. I told him that I had been with the store for five years and that I wanted a new challenge. Mr. Kocharian did not reply to me. He simply shrugged his shoulders and walked away from me.

27. I raised the Assistant Manager Training Program with Store Manager Kocharian again during the inventory of the store. Mr. Kocharian told me that if we had a good inventory, I would get a raise and he would recommend me for management training. I worked very hard and had excellent results. About a week after inventory was over, I went back to Store Manager Kocharian and reminded him that he had said he would recommend me for the Assistant Manager Training Program if inventory went well. He did not respond and brushed me off. I waited a few

8

more days and went back to Mr. Kocharian. I told him very forcefully that he had promised me management training if inventory went well. He told me that he did not recall our conversation. This response really frustrated me. Although I continued to work as hard as I could, I felt that no matter how well I performed, Store Manager Kocharian was denying me the opportunity to advance with the Company because I was a woman.

28.     During the months after I told Store Manager Kocharian that I wanted to apply for management training, I also told various Assistant Managers that I was interested in management opportunities, including John Moore, Jim Nolan, Nofoao Dorsey, and Dwight [last name unknown]. Each of these managers was supportive of me. One encouraged me to keep trying; another was skeptical, however, and told me that it probably would not happen in the Duarte store.

29.     In August 2000, my doctor again ordered me to take a medical leave of absence due to high blood pressure and stress.

30.     When I returned from leave in October 2000, Co-Manager Lori Schmidt gave me my annual performance evaluation. I received an "exceeds expectations" ranking and a $0.60 raise, which brought my pay rate to $12.85 an hour. I wrote under the Comments/Goal Settings section, "I would like more mgt. [management] duties so that I can get in mgt. training." (Attached hereto as Arana Exhibit D is a true and accurate copy of my evaluation for 2000.) At some point, I wrote a letter to Co-Manager Schmidt expressing my interest in joining the Assistant Manager Training Program. In response, she suggested that I write such a letter directly to the District Manager.

31.     In October 2000, I also saw another Support Manager position posted on the computer and applied for it. Again, I was not interviewed for this position. As best I recall, this job ended up being given to several different associates, including a male, none of who held the position very long.

9

32.     In or about December 2000, I wrote to District Manager Judy Evans informing her that I wanted to apply for the Assistant Manager Training Program. Ms. Evans wrote back to me, explaining that she was no longer District Manager but that she would forward my letter to the new District Manager, a male, Dave Riggs. I never heard anything from District Manager Riggs regarding management training.

33.     In December 2000, Store Manager Kocharian personally recognized me by awarding me a merit raise of $0.65 an hour. This brought my pay rate to $13.50 an hour. On the Commendation Form, he wrote, "Edith has done a commendable job in helping store scan for inventory." (Attached hereto as Arana Exhibit E is a true and accurate copy of the Commendation Form signed by Mr. Kocharian and dated December 16, 2000.) While I certainly felt that I could use the small amount of extra money to support my family, I was frustrated because my goal was a position in management, which would really make a difference for my children's future.

34.     In approximately January 2001, I called the 1-800 Wal-Mart number to complain about Store Manager Kocharian's unfair treatment of women, including his refusal to interview women candidates for department manager positions in certain departments. As far as I know, my complaint was never investigated.

35.     In approximately February 2001, I spoke to District Assistant Wanda Stoke in the District Office. I asked her when the new District Manager would be hiring for the Assistant Manager Training Program. She informed me that I should apply directly to the Store Manager. I told her that my Store Manager, John Kocharian, was not going to allow a woman into the Assistant Manager Training Program. She then told me to apply directly to the District Manager. I decided against this because Mr. Kocharian had represented to us, during the District Manager's store visits that he was a close friend with District Manager Riggs and I was afraid Mr. Kocharian would

10

DECLARATION OF EDITH ARANA IN SUPPORT OF                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

retaliate against me. Because I was the sole support of my children, I could not risk losing my job or having my hours cut.

36.    In approximately February 2001, Assistant Manager John Moore asked me to travel to the Covina store to assist with the test scanning necessary for its upcoming inventory. I was told this would be a one-day assignment. While I was at the Covina store, I learned that the man in charge of my work, one of the District Loss Prevention Managers named Rico [last name unknown], was expecting me to continue working as part of a traveling inventory/test scanning team six months out of the year. I complained to Assistant Manager Moore that I did not want to do this work or be part of an inventory team. I would have complained to Store Manager Kocharian but he was not in the office. Mr. Moore told me that he thought the work was for only one day. However, he kept sending me out to be part of this "team."

37.    When Store Manager Kocharian returned, I told him that I did not want to be on a test scanning crew. He responded that each store needed to provide one team member and that I did not have a choice in the matter. When I asked him why the associate who had been on the team previously could not return to that position, Mr. Kocharian informed me that she was now over a department and did not want to leave. This explanation did not make sense to me. Instead, I believed Mr. Kocharian made me continue this work because I had complained about him on the 1-800 number.

38.    I was not satisfied with the traveling scanning team assignment. Even though Mr. Kocharian had denied me management training in the past, I still wanted to enter management training and I felt I would not be able to enter the Assistant Management Training Program if I was out of sight, on an inventory team going from store to store.

11

DECLARATION OF EDITH ARANA IN SUPPORT OF                                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

39.    While on the traveling scanning team, I was not required to punch in and out of a time clock. Instead, I would record my hours on a form that a manager would initial after we had finished the test scanning required by that particular store. I would record my hours from the time I left my home to the time I returned home. I would then either call my time into the Duarte store or complete a time adjustment sheet for the Duarte store.

40.    In May 2001, a new Co-Manager, Barbara Martin, called me into the office to explain changes that were being implemented in associate time keeping. I understood from this meeting that any deviation from a posted schedule would show up as a tardy or an absence. In other words, if I was scheduled to work from 7a.m. to 4 p.m. but an Assistant Manager told me not to come in until 9 a.m. the next day, my time the following day would reflect me being two hours late for work. I was still working on the inventory team, however, so I was not punching a time clock and did not fully understand how this new system would affect me. At some point Ms. Martin showed me a form entitled "Verbal Coaching" and told me that I had a number of unexcused absences and tardiest. To my knowledge I was not having any problems with my work schedule, attendance, punctuality, or tardiness. I asked her how the time clock could be reporting me as absent or tardy when I did not punch in to any time clock. Ms. Martin told me that Store Manager Kocharian had asked her to meet with me to discuss the new time-keeping policy and that was what she was doing.

41.    After I had been working on the traveling scanning team for a few months, a male Support Manager, Randy Powers, talked to me individually about another change in Wal-Mart's time-keeping procedures for associates who traveled from store to store. Mr. Powers explained that from that point forward, I was not to record the time I spent traveling to and from my home. Instead, I was only to record the time I spent in a store. He told me that he had already explained this policy to the other traveling test scanners and the associates in his store during a meeting occurred on a day

12

I was not working. This change in policy significantly affected my weekly pay since several of the stores I traveled to were quite a distance from my home in Pasadena, Los Angeles County. For instance, the Brea store was about a 45 mile one-way commute from my home while another store in Orange County was between a 1 ½ to 2 hour one-way commute from my home.

42.   In June 2001, this lawsuit was filed. I was not a named plaintiff at the time.

43.   At about this same time, we were preparing for inventory at my home store in Duarte. When I test scanned at the Duarte store, I generally worked the 7 a.m. to 4 p.m. shift and I did punch in and out on the time clock. Immediately prior to inventory, the pace at the Duarte store was frantic. Store Manager Kocharian wanted the back room impeccable and the floor scanned as accurately as possible. He walked the floor constantly and during our daily store meetings, he routinely stated, "if the inventory goes badly, we're going to blame Edith." Although he tried to make his remarks sound comical, I very much felt he was threatening me. During this period, I am certain I worked my full shift, and many extra hours as well.

44.   Sometime in September 2001, Co-Manager Martin called me while I was working at another store and asked me to bring in a record of my hours to the Duarte store. I brought my documentation to her and asked her why she needed it. (Attached hereto as Arana Exhibit H is a true and accurate copy of the time record submitted to Co-Manager Martin in September 2001.) She responded that there was a question about my hours. Aside from the May 5 meeting I had had with Ms. Martin and the September 14 meeting with Assistant Manager Rodriguez, none of my supervisors had questioned me about my hours or otherwise raised with me any concern about my attendance or punctuality.

45.   On or about September14, 2001, Assistant Manager Ben Rodriguez called me into the office and handed me a "Coaching For Improvement Form." The document states, "Edith has an

13

attendance problem. She has nineteen unapproved absences since 3-14-01 till now 9-14-01. This is unacceptable to Wal*Mart standards which is three unapproved absences in a six month rolling period. She also has twenty four tardies, five left early's." (Attached hereto as Arana Exhibit F is a true and accurate copy of this coaching form.) I asked Assistant Manager Rodriguez how could this be since I did not punch a time clock while I was on the road. I also asked him if he knew that Co-Manager Martin had already talked to me about this matter. Mr. Rodriguez informed me that Co-Manager Martin had instructed him to give me this form.

46.    At about this same time, Wal-Mart began reducing my hours.

47.    About two weeks later, on or about September 28, Assistant Manager Rodriguez called me back into the office again and handed me a "Verbal Coaching" form that stated, "Associate took only a 15 minute lunch on 9/25/01, which is in violation of Company policy and State Law. Associate needs to take at least a ½ hour lunch daily. Any further violations will result in a written type of coaching." (Attached hereto as Arana Exhibit G is a true and accurate copy of this coaching form.) I asked Mr. Rodriguez if he was kidding about this coaching. Mr. Rodriguez informed me that Wal-Mart was getting strict about how lunches and breaks were being taken so that associates could not later sue the Company because they did not get a lunch break. I explained to Mr. Rodriguez that I was the only person working the department on that particular shift and that while I was clocked out for lunch, a customer came onto the floor. I clocked back in to assist the customer and, because the store was very busy that night, it never occurred to me to return to lunch; that the night was over before I knew it. Mr. Rodriguez appeared quite uncomfortable and sheepish during this conversation, which led me to believe, he did not agree with the coaching.

48.    Several days later when I was working in the Duarte store, Co-Manager Martin paged me to the back office and advised me that she had documents showing that I had been paid for hours

14

that I had not worked at a particular store. I asked which hours and stores was she talking about and she asked about particular stores and hours. I stated that I had worked the hours recorded on the document I had given her. She next asked who had initialed my document and I replied that it was an Assistant Manager at whatever store I had worked. I did not know their names. Ms. Martin reviewed each set of initials with me but this did help me remember their names because I never knew their names. I knew they were Assistant Managers based on their badges. Co-Manager Martin then told me to return to the floor.

49.     I returned to the sales floor troubled, as, by now, it was clear that Wal-Mart was trying to get rid of me. About an hour or two later, Co-Manager Martin paged me to the back office a second time. This time she told me she had documents that said I did not work the hours on my paper and indicated that if I could not provide additional information, it would be a problem. I told her that everything I had was on the paper I had given her. At some point during this discussion, someone knocked on the door and handed Ms. Martin something. I sat there for some time while she reviewed the document and took care of other things. Then she told me that she had what she needed and that I could go. My last questions to her were whether she had everything she needed, and whether she had verified what she needed to verify. She said something to the effect that she was finished, that she would communicate with Store Manager Kocharian, and that I could leave.

50.     Over the next few weeks, the Company continued cutting my hours significantly. At some point, I went to the unemployment office to file a claim because I was not making enough to support my family.

51.     On or about October 19, 2001, I called Assistant Manager Ben Rodriguez to complain that I had only been given one hour of work on the schedule that had been posted the day before. Mr. Rodriguez told me that he thought he had more hours for me and asked me to come to the store.

15

DECLARATION OF EDITH ARANA IN SUPPORT OF                                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

52.     When I arrived at the store, I looked for Assistant Manager Rodriguez. He took me to Co-Manager Martin who informed me that I was being fired for being paid for hours I did not work. I was surprised and asked Co-Manager Martin why she had not fired me when we last met if she had evidence that I had been paid for hours I did not work. The only comment that I recall her making was that they had documents that proved I did not work the hours I was paid for. She did not show me these documents. Instead she asked for my badge, keys, and other Wal-Mart equipment. I was so furious that I refused to sign the exit interview form.

53.     On or about December 14, 2001, I filed a Charge of Discrimination against Wal-Mart, Inc. alleging that the Company had discriminated against me on the basis of my gender in promotion and training opportunities. My attorneys received a Right to Sue Notice on my behalf of August 19, 2002.

I declare under penalty of perjury of the laws of the United States and State of California that the foregoing is true and correct.

This Declaration was signed by me on April 21 2003, at Pasadena, California.

_____
Edith Arana, Declarant

S:\SHARE\LEGAL\Walmart\Declarations\Edith Arana Class Cert dec.doc

16

DECLARATION OF EDITH ARANA IN SUPPORT OF                    Case No. C-012252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT A

# ASSOCIATE EVALUATION

| | |
|---|---|
| NAME: *FAITH ARANA* | POSITION: *H/C* |
| SS#: *71-39-5129*   STORE: *2401* | AREA OF RESPONSIBILITY: |
| REVIEW PERIOD: | CURRENT PAY RATE: *7.40* |
| FROM: *2-5-95*   TO: *F-5-96* | NEW PAY RATE: *7.70* |

☐ 90 DAY          ☐ OUTSTANDING    ☒ STANDARD

☑ ANNUAL  ☐ FOLLOW-UP    ☐ ABOVE STANDARD  ☐ BELOW STANDARD

## ✦PERSONAL DEVELOPMENT✦

1. RESPECT FOR THE INDIVIDUAL:    (List strengths & areas of improvement)
• Servant Leadership  • People Development   • Honesty & Integrity Always    • Empowering Others
• Confidentiality   • Creates & supports a working environment that embraces the diverse backgrounds of others.

*Shows respect for associates. Express concerns for people. Knows and respect the confidentiality of others. Is honest.*
*Take initiative to go to dept. managers more with areas of concern*

2. SERVICE TO OUR CUSTOMERS (INTERNAL & EXTERNAL): (List strengths & areas of improvement)
• Quality Always    • 10-Foot Rule    • Dress Code (name badge, vest, smock, etc.)
• Satisfaction Guaranteed (consistently meets or exceeds the Customer's needs).

*Has always followed code dress code*
*Practices the 10 ft rule*

3. STRIVE FOR EXCELLENCE (JOB SPECIFIC PERFORMANCE): (List strengths & areas of improvement)
• Continuous Improvement   • Results-Driven   • Associate Accountability    • Store Within A Store
• Competitive Position   • Expense/Budget Responsibility    • Productivity   • Innovative    • Follow-up

*Els cost aware of accidents and shares concerns with other associates.*
*Needs to be more focused on following up on the trot scanning results.*

4. COMMUNICATION:    (List strengths & areas of improvement)
• Expresses ideas clearly & concisely, written or verbal    • Asks questions when message is unclear
• Actively listens to, and keeps others informed

*Faith always asks and listens to others during safety meeting. Actively participates and expresses in relates very well*

Deft's _____ Exhibit __7__
Date 10/17/01 Page _1_ of _2_
Depo/Case___ Edith Arana
KAREN MOON, CSR 12450

CONFIDENTIAL
WMHO: 504601

ARANA EXHIBIT A

5. TEAMWORK / FLEXIBILITY:    (List strengths & areas of improvement)
• Dependable (i.s. attendance, punctuality)  •: Works well with others   • Promotes & maintains all safety requirements

_Very dependable - works scheduled hours_
_Very active on safety team and promotes_
_safety awareness_

6. INITIATIVE / SENSE OF URGENCY:    (List strengths & areas of improvement)
• Meets deadlines without daily direction  • CBL training complete   • Plans & organizes workload to react to changes

_CBL complete._

_Follow through needed on test scanning_

◆OVERALL STRENGTHS◆    Bullet-point comments are recommended

_Dependable - Honest_
_Good work ethic_

◆AREAS OF IMPROVEMENT◆    Bullet-point comments are recommended

_TO TAKE THE INIATIVE ON AREAS OF CONCERNS_

◆ASSOCIATE COMMENTS / GOAL SETTING◆
List goals that will aid in your personal development & impact your area of responsibility. Attach additional pages if necessary.

| OBJECTIVES | MEANS OF MEASUREMENT |
|---|---|
| _I would like to learn to do ??? program thing for the store. Invoices ??? price changes count sheet signature & supplies._ | |
| _the way I'm going to do that is to train ??? questions._ | |

SIGNATURES:

| Associate's Signature | (Print Associate's Name) | Date |
|---|---|---|
| _Edith V. Manns_ | _EDitH R. ANkWA_ | _8-1-96_ |
| Supervisor's Signature _Vanessa Clini_ | (Print Supervisor's Name) _Vanessa C. Lici_ | Date _8-1-96_ |
| Manager/Director Signature | (Print Mgr/Dir Name) | Date |

CONFIDENTIAL
WMHO 504602

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

### Declaration of Edith Arana in Support of
### Plaintiffs' Motion for Class Certification

# EXHIBIT B

WMF-32 (REV. 7/64)

ASSOCIATE'S COMMENDATION FORM

NAME: _Cdith Arana_ SS# _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_. STORE # _2407_

DATE HIRED: _____ POSITION: _Support Mgr._

This form is to be used to recognize any action for which an associate
should be commended. Please give all the details, including dates.

_Edith in doing + excelled Job as Support_
_staff Beyond what is expected. She will_
_Review a 68 increase for next review_

If a change in position occurs, please fill out the following:

| | | |
|---|---|---|
| POSITION: | FROM: _____ | TO: _____ |
| DEPARTMENT: | FROM: _____ | TO: _____ |
| SALARY: | FROM: _9.44_ | TO: _10.00_ |
| STATUS: | FROM: ___F___P___T___ | TO: ___F___P___T___ |

** F = FULL TIME ** P = PART TIME ** T = TEMPORARY **

ASSOCIATE SIGNATURE _Edith Arana_    DATE: _12-11-97_

MANAGER'S APPROVAL _____    DATE: _12/13/97_

EFFECTIVE DATE _12/13/97_

COPIES TO ASSOCIATE'S PERSONNEL FILE

Deft's ____ Exhibit _12_
Date _10/17/02_ Page _1_ of _1_    CONFIDENTIAL
Depo/Case _Edith Arana_    WMHO 504582
KAREN MOON, CSR 12450

ARANA EXHIBIT B

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT C

ASSOCIATE'S COMMENDATION FORM

NAME: Edith Arana        SS# 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  STORE# 2401
DATE HIRED: 11/95        POSITION: Test scanner/PETS

This form is to be used to recognize any action for which an associate
should be commended. Please give all the details, including dates.

Edith is being given a merit increase
due to going above and beyond her job
performance, Edith has covered most of
my departments for extended periods of
time during their absences, not having any
one in dept.
She does an outstanding job feeling in
where she is needed - anywhere, anytime

If a change in position occurs, please fill out the following:

POSITION:     FROM: 201              TO: 303 (testscan)
DEPARTMENT:   FROM: 8                TO: 3
SALARY:       FROM: $11.65           TO: $12.23
STATUS:       FROM: ☑ F ☐ P ☐ T     TO: ☑ F ☐ P ☐ T
              ** F = FULL TIME ** P = PART TIME ** T = TEMPORARY **

ASSOCIATE SIGNATURE Edith R. Arana        DATE: 1/22/00
MANAGER'S APPROVAL  Joni Schmidt          DATE: 1/22/00
EFFECTIVE DATE 1/22/00

COPIES TO ASSOCIATE'S PERSONNEL FILE

Deft's    Exhibit  21
Date 10/17/02  Page 1 of 1  CONFIDENTIAL
Depo/Case Edith Arana  WMHO 50-4573
KAREN MOON, CSR 12450

ARANA EXHIBIT C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of Plaintiffs' Motion for Class Certification**

# EXHIBIT D

PERFORMANCE APPRAISAL

Name: Edith Arana        Store # 2401        Position: Testscanner
SS#: 5107-25-5019                            Current Pay Rate: 12.25
Review Period: Annual                        Increase Amount:
From: 9-5-99            To: 9-5-00            New Pay Rate: 12.85

☐ 90 Day            ☒ Annual            ☐ Follow Up

STRENGTHS

• Willing to work whenever she is needed.
• Follows direction well - quick sence of urgency
  on notes given.
• Performs duties of cashier, sales, cmc backup,
  modular team, testscanner etc.
• understand co. policy
• understands Wal marts (3) basic beliefs

AREAS FOR IMPROVEMENT

• Attendance
• always remain positive - open with change.

ASSOCIATES COMMENTS/ GOAL SETTINGS

I would like more mgt. duties. So
that I can fit in the mgt. Training.

This is an evaluation of the Associate's _Overall_ Job Performance.

☒ EXCEEDS EXPECTATIONS    ☐ MEETS EXPECTATIONS    ☐ BELOW EXPECTATIONS

SIGNATURES

_Edith R. Arana_   Edith Arana   10-18-2000
Associate's Signature    Print Associate's Name        Date

_Lori Schmidt_    Lori Schmidt   8-10-00
Supervisor's Signature    Print Supervisor's Name        Date

_____    _____    _____
Signature of Next Level of    Print Supervisor's Name        Date
Supervision

return from list on 10/18/00

ARANA EXHIBIT D

CONFIDENTIAL
WMHO 504572

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT E

ASSOCIATE'S COMMENDATION FORM

NAME: _EDITH ARANA_    SS# _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_ STORE # _24d_

DATE HIRED: _____    POSITION: _____

This form is to be used to recognize any action for which an associate should be commended. Please give all the details, including dates.

_Edith has done a commendable job_
_in helping store scan for inventory._

If a change in position occurs, please fill out the following:

POSITION:      FROM: _____       TO: _____
DEPARTMENT:    FROM: _____       TO: _____
SALARY:        FROM: _12.85_               TO: _13.50_
STATUS:        FROM: ___F___P___T___       TO: ___F___P___T___
               ** F = FULL TIME ** P = PART TIME ** T = TEMPORARY **

ASSOCIATE SIGNATURE _Edith P. Arana_        DATE: _12-15-2000_
MANAGER'S APPROVAL _John Kocharn_           DATE: _12/16/2000_
EFFECTIVE DATE _12/16/2000_

COPIES TO ASSOCIATE'S PERSONNEL FILE

Deft's _____ Exhibit _23_
Date _10/17/02_ Page _1_ of _1_
Depo/Case_ Edith Arana_
KAREN MOON, CSR 12450

CONFIDENTIAL
WMHO 504570

# ARANA EXHIBIT E

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

### *Betty Dukes v. Wal-Mart Stores, Inc.*

### Case No. C 01-CV-2251-CRB

### Declaration of Edith Arana in Support of
### Plaintiffs' Motion for Class Certification

# EXHIBIT F

# COACHING FOR IMPROVEMENT FORM

NAME     SSN     LOCATION     DEPT. UPC

EDITH ARANA     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     2401

POSITION     DATE 09-14-01

TEST SCANNER

**PREVIOUS COACHINGS AND/OR DISCUSSIONS:**

NONE

**THE FOLLOWING WAS OBSERVED OF THIS ASSOCIATE'S BEHAVIOR AND/OR PERFORMANCE:**

EDITH HAS AN ATTENDANCE PROBLEM. SHE HAS NINETEEN UNAPPROVED ABSENCES SINCE 3-14-01 HER NOW 9-14-01. THIS IS UNACCEPTABLE TO WAL-MART STANDARDS WHICH IS THREE UNAPPROVED ABSENCES IN A SIX MONTH ROLLING PERIOD. SHE ALSO HAS TWENTY FOUR TARDIES, FIVE LEFT EARLYS.

**WHAT IS THE IMPACT OF THIS BEHAVIOR/PERFORMANCE ON CUSTOMER SERVICE, OTHER ASSOCIATES AND THE PROFITABILITY OF THE OPERATING UNIT?**

WHEN EDITH DOSEN'T FOLLOW HER SCHEDULE SHIFT IT CAUSES POOR ASSOCIATE MORALE DUE TO MORE WORK LOAD FOR OTHERS. IT ALSO CAUSES POOR CUSTOMER SERVICE DUE TO LESS ASSOCIATES ON THE FLOOR TO ASSIST THEM.

**THE BEHAVIOR OR PERFORMANCE EXPECTED NEXT TIME:**

EDITH NEEDS TO FOLLOW HER SCHEDULE BE ON TIME AND STAY FOR ENTIRE SHIFT.

**THE NEXT LEVEL OF CORRECTIVE ACTION IF THIS BEHAVIOR/PERFORMANCE CONTINUES WILL BE:**

DECISION-MAKING DAY.

**WRITTEN PLAN OF ACTION TO BE COMPLTED BY THE ASSOCIATE:**

**ASSOCIATE COMMENTS:**

| | PRINT NAME | SIGNATURES | LEVEL OF COACHING |
|---|---|---|---|
| | | | WRITTEN COACHING |
| ASSOCIATE COACHED: | Edith Arana | Edith R. Arana | DECISION-MAKING DAY |
| HOURLY SUPERVISOR: | Nubia Borra | | |
| SALARIED MEMBER OF MANAGEMENT: | | | |
| FACILITY MANAGER**: | | | |

** ONLY REQUIRED IF THE ASSOCIATE REFUSES TO SIGN THE COACHING FOR IMPROVEMENT FORM.

#9988664 - 3-01

Deft's Exhibit 25
Date 10/17/02 Page 1 of 1
Depo/Case Edith Arana
KAREN MOON, CSR 12450

CONFIDENTIAL
WMHO 504547

## ARANA EXHIBIT F

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT G

03/29/2001  16:27   8853497872                    WAL*MART STORE #2507              P.

# VERBAL COACHING
## STORE #~~2507~~ 2401

Associate Name: _Edith Arana_
Supervisor Name: _Ren Rodriguez_
Time of Coaching: _4:05pm_
Place of Coaching: _Training Room_
Date of Coaching: _9/28/01_

Content of Conversation:
_Associate took only a 15-minute lunch on 9/25/2001, which is in violation of Company Policy & State Law. Associate needs to take at least a 1/2 hour lunch daily. Any further violations will result in a written Type 7 coaching._

Coaching Manager's Signature: _____
_Sharon L Rice_

Store Manager's Signature: _____

Deft's ___ Exhibit _26_
Date 10/17/02 Page _1_ of _1_
Depo/Case _Edith Arana_
KAREN MOON, CSR 12450

CONFIDENTIAL
WMHO 504548

## ARANA EXHIBIT G

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Edith Arana in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT H

# WAL★MART
### You make the Difference

Edith Arana   2401
Associate    Store No:    Approved By

Departure

| Date | Mgr Initial | Store/Location | Time In | Time Out | Total Hours | Mileage | Meals | Mgr Initial | Notes |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 66/58 | ✓ | | LG Bro WMI |
| 7-17-01 | CA | | 9:30 | 3:00 | | 58/58 | | | |
| 7-18-01 | CB | 2517 | 9:15 | 2:3 | | 58/58 | ✓ | | |
| 7-19-01 | | 2517 | 9:00 | 2:30 | | 58/58 | ✓ | | |
| 7-20-01 | | 2517 | 8:00 | 5:00 | | 17/17 | ✓ | | |
| 7-24-01 | | Diturly | 8:00 | 3:00 | | 17/17 | ✓ | | |
| 7-23-01 | | 2251 | 8:00 | 5:00 | | 17/17 | ✓ | | |
| 7-26-01 | | 2251 | 8:00 | 5:00 | | 17/17 | ✓ | | |
| 7-26-01 | | 2251 | 1:00 | 2:00 | | 17/17 | ✓ | | |
| 7-29-01 | | 2251 | 8:00 | 2:00 | | 17/17 | ✓ | | |
| 8-1-01 | | 2251 | 8:00 | 3:00 | | 17/17 | ✓ | | |
| 8-2-01 | | 2251 | 8:00 | 3:00 | | 17/7 | ✓ | | |
| 8-3-01 | | 2251 | 8:00 | 5:00 | | 17/7 | ✓ | | |
| 8-6-01 | | 2251 | 8:00 | 3:00 | | 17/7 | ✓ | | |
| 8-7-01 | | 2251 | 8:00 | 3:00 | | | ✓ | | |
| 8-8-01 | | 2251 | 8:00 | 2:30 | | 17/7 | | | |
| 8-9-01 | | 2251 | 8:00 | 3:30 | | 17/7 | | | |
| 8-10-01 | | 2251 | 8:00 | 3:30 | | 17/7 | | | |
| 8-13-01 | | 2251 | 8:00 | 4:00 | | 17/7 | | | |
| 8-16-01 | | 2251 | 2:00 | 4:00 | | 17/7 | | | |
| 8-17-01 | | 2251 | 6:45 | 2:30 | | 17/7 | | | |
| 8-19-01 | | 2251 | 8:00 | 2:00 | | 17/7 | | | |
| 8-20-01 | | 2251 | 8:00 | 2:30 | | 17/7 | | | |
| 8-21-01 | | 225 | 9:00 | 3:0 | | 17/7 | | | |
| 8-23-01 | | 2251 | 12:00 | 8:30 | | 17/7 | | | |
| 8-24-01 | | 2251 | 12:00 | 9:30 | | 17/17 | | | |
| 8-28-01 | | 2251 | 12:30 | 8:30 | | 17/7 | | | |
| 8-27-01 | | 2251 | | | | | | | |

S  
Hours: 911    Mileage: 911    Meals: 999

55.09

Travel Expense/Time Track Sheet

CONFIDENTIAL
WMHO 504545

ARANA EXHIBIT H