Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
   RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:     626.585.9600
Facsimile:     626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF CHRISTINE KWAPNOSKI IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Christine Kwapnoski, declare:

1. I am a named plaintiff in this action. I have been employed by Wal-Mart, Inc. since 1986 and am currently in management training, having commenced the training in March 2003. I have spent most of my adult life working for Sam's Clubs and was promoted only after this lawsuit was filed. I am female and live in Concord, California.

2. I began my employment with Sam's Club in Grandview, Missouri in 1986 when I was 22 years old. I worked as a cashier, cash office associate and in claims. All of my evaluations while working in Missouri were very good. I expressed my interest in being promoted to management in a number of conversations with General Managers and Assistant Managers at the Grandview club, but received no promotions. I was never told what, if anything, I needed to do to become qualified for management training. I was unaware of any way to apply for a promotion or for management training. I observed co-workers, mostly male, suddenly being moved into positions as soon as the positions were opened and before I had an opportunity to express interest.

3. I was recognized by Sam's Club as having "expert" status in the area of claims while I was at the Grandview Club. This meant that associates at other clubs in the area, who had questions, could call me for advice and guidance.

4. In late 1993, I came to Concord, California, to help convert an existing Pace store to a new Sam's Club. There had been a posting in the Missouri club for this opportunity, which I understood was intended to be temporary. This posting was unusual, as I do not recall other job opportunities being posted. I signed up to express my interest, and was selected to go. Part of my responsibilities in helping to convert the club in Concord, California was to help the former Pace employees become Wal-Mart employees. I taught Wal-Mart/Sam's Club policies and practices to these new Wal-Mart employees. These policies and practices that I helped to implement in the new

Concord Club were the same policies and practices that I had learned and followed while working in Missouri.

5. While I was working to open the new club, I was approached by the General Manager, Robert Ortega, who asked me to transfer permanently to the Concord club and promised me a $2.00 an hour raise. As a result of this request, I did transfer to the Concord club in March 1994 but did not receive the promised raise.

6. My initial position at the Concord Sam's Club was in claims. Over the next seven years, I held the positions of dock associate, receiving clerk/exports, freezer/cooler associate, center section team lead, and auditing clerk. As a result of holding these positions and my experience in the Missouri club, I was familiar with almost all areas of the club. During these years, I received evaluations annually, which were always good. I received annual raises and merit raises upon occasion.

7. With my experience and good evaluations, I believed I could be a good manager at Sam's Club. I saw management at Sam's as an opportunity to have a career that would be both financially rewarding and satisfying. There was nothing in the handbook nor any other materials available to me to explain how to become a manager. I believed I would be eventually recognized with a promotion. I worked hard, and was available for whatever shifts and positions I was asked to fill. I succeeded at the variety of positions I was assigned. I continued to receive merit raises and good evaluations. I made my desire for promotion known to numerous managers over the years, as described below. However, I watched as men I had trained were selected to go into management training or received promotions above me, as detailed below.

8. When I was working on the dock, I told the dock lead, a man named Clark Holt, that I wanted his position as dock lead when he left it. I wanted this position because, based on my observation, I believed it would increase my chances for promotion and I knew I could do it well. I

Declaration of Christine Kwapnoski in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

also expressed my interest in this promotional opportunity to General Manager Alan Oshier, and to the Assistant Managers. The position became open a number of times in the 1990s. I was the employee with the most experience in that area, and I had expressed interest, but the job was given to a succession of male associates including Dion Denes and Joshua Reynolds. I had more experience in receiving and more tenure with Sam's Clubs than either of these men. None of these men lasted in this position.

9. When I was working as the freezer/cooler associate, I was passed over four times for the promotion to team lead, an hourly supervisor position, in three and a half years. During the mid to late 1990s, Doug Hailey, Mike Montgomery, Serge Orloff and a fourth male employee whose name I cannot recall, were given this position, despite my stronger qualifications.

10. I wanted to become an hourly supervisor, but there was no application process. Neither was there an organized, formal method by which supervisory openings were routinely made known, as they were not always posted. I could only rely upon word of mouth or the club grapevine. The Club's grapevine was more available to male employees, as they spent more time talking and socializing with management employees. I did not apply for the position when I became Center Section Team Lead. The General Manager, Alan Oshier, simply approached me and asked if I wanted the position. A few months later, Mr. Oshier transferred me into the position of Audit Clerk. Again, I had not applied for the position.

11. While I was in the audit position, Mr. Oshier yelled at me upon frequent, almost daily, occasions. I witnessed him scream at other female employees, but seldom did he scream at men. I complained to Director of Operations Phil Goodwin about Mr. Oshier's conduct but received little response. Mr. Oshier told me that he was being demoted and was required to take anger management classes. In fact, he remained as our General Manager without a demotion and his abusive behavior continued.

12. By 2000, I was the longest tenured hourly employee at the Concord Sam's Club, with 14 years of experience. Despite these years of experience, I was paid virtually the same as a male associate with one-half my tenure. This male co-worker, Jon Salomone, had only seven years of experience at Sam's Clubs and did not have the responsibility I did, as he was only an unloader on the dock. When I asked General Manager Oshier why Mr. Salomone received nearly as much as I did, Mr. Oshier responded by saying that "some people make their beds, some people make them better." When I asked Mr. Oshier why he had given a large raise to another male employee, Jose Rivera, Mr. Oshier told me it was because Mr. Rivera had a family to support. John Naslund was hired in 2001 in the position of verifier on the dock and was paid nearly as much as me. Bryan Van Roo was hired in 2001 as a sales associate and was paid approximately $14.00 an hour. I was still not making a wage sufficient to support me in the San Francisco Bay Area. Consequently, throughout most of the years I have worked in Concord, I have also held a second job.

13. I worked hard and continued to get good evaluations and valuable experience but was not selected for a management position or training. My desire for advancement was discussed often at my annual evaluations, but I was not told how to apply for management training or what, if anything, I needed to do to become a manager. I discussed my interest in going into management at Sam's with General Managers Robert Ortega, Alan Oshier, and Mike Bruegger, and perhaps others. I discussed this interest to join management with Assistant Managers Nancy Hom, Ted McDavitt, and many others.

14. I continued to express interest in getting into a management position. Several times in 2000 and 2001, I approached General Manager Alan Oshier, and asked him what I needed to do to get promoted. I was never told of a process or application procedure and I was unaware of any application process which I could use to enter the Management Training Program. I have never seen or been told of any form to complete to document my interest in promotion (except for the one that

Declaration of Christine Kwapnoski in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

5

was available for approximately one week in January 2003, 18 months after this lawsuit was filed).

15. I was finally promoted to Receiving Area Manager at the end of June 2001, two weeks after this lawsuit was filed and 15 years after I first expressed my interest in management. This is an entry level managerial position. I reported to an Assistant Manager. I was paid a salary which resulted in a decrease in my hourly rate, as I no longer received overtime pay, and I was scheduled to work 48-52 hours a week. Unlike the Assistant Manager positions, Geographical Assistance Pay ("GAP") is not paid for Receiving Area Managers. In Concord, California, GAP results in payment of approximately 50% more of a manager's salary. As a result, my pay was approximately $38,000 as a Receiving Area Manager while the Assistant Managers at the Concord Club made over $50,000.

16. In late 2001, after I was promoted to Receiving Area Manager, Mr. Oshier told me to "doll up, " to wear some makeup, and to dress a little better. I responded by indicating that high heels on the receiving dock were not appropriate. About a month later, when standing by the time clock and in the presence of another employee, Mr Oshier told me to "blow the cobwebs off my make-up. " I worked in the receiving area of the club at the time, which is a hot and dirty job with little, if any, contact with the public. I never heard Mr. Oshier comment on the physical appearance of male co-workers.

17. When I was given my annual review in the spring of 2002, I was told by General Manager Alan Oshier and by Director of Operations Phil Goodwin that I needed to be in the position of Receiving Area Manager for one year and then I could be considered for the Management Training Program. There is no guideline or written requirement that an employee be a Receiving Area Manager for one year or any time at all before going into Management Training to become an Assistant Manager. During my 17 years with Sam's Clubs, I have seen a large number of male employees begin their career with Sam's Clubs as Management Trainees. In the last year, for

example, Joshua Wilson joined Management Training upon completion of college. He had never worked at a Sam's Club before. He is now an Assistant Manager in the Concord Club. I have never known a man to be required to be Receiving Area Manager for one year, or for any time, before being permitted to go into Management Training.

18.     During the nearly two years that I have been Receiving Area Manager, I have received good evaluations, but no raises. Mr. Oshier and Mr.Goodwin told me that I would not receive any raises while in this position since I was at the "maximum rate."

19. After being a Receiving Area Manager for a year, I asked General Manager Alan Oshier and Mr. Goodwin when I could go into management training to become an Assistant Manager. They said I should just continue to do what I was doing and suggested I move to the front end to get experience there as an Area Manager. No other Assistant Manager had been required to be an Area Manager at all, let alone an Area Manager in two positions before being promoted.

20..     A new Director of Operations was assigned to supervise our club in approximately December 2002. I approached this man, Ross LaDoux, introduced myself, and asked when I could expect to go into management training. He said we would talk later, but he did not follow-up.

21.     In January 2003, Regional Vice President Greg Johnston toured our club. I had known Mr. Johnston when we worked in Missouri together. During the intervening years, I had been promoted to the lowest-level manager with an annual salary of less than $40,000 and no GAP, while my former coworker had risen to one of the highest positions at Sam's Club. Mr. Johnston remembered me and spoke with me about our days in Missouri and about my current situation. He told me that he respected my work ethic, and knew I was a good employee. Soon after my discussion with Regional Vice President Johnston, Director of Operations LaDoux approached me and said I could enter the Management Training Program in Vacaville, commuting from my home. I began the training in March 2003.

7

Declaration of Christine Kwapnoski in Support of Plaintiffs' Motion for Class Certification     Case No. C-01-2252 MJJ

22. Throughout most of my 17 years at Sam's Club, I have been willing to relocate to advance my goals of obtaining a managerial position. However, in the last year, I have been involved in a family law matter and have not wanted to move my home on short notice and more than once. I explained this to General Manager Oshier, Director of Operations Goodwin, and Director of Operations LaDoux. They each refused to make any accommodation, telling me that I could not go into management training unless I was willing to relocate for the approximate three months of training, and then move again for my first managerial assignment. No manager had ever told me that this was a requirement until after this lawsuit was filed. And, until the summer of 2002, I had no limits on relocating, and would have accepted such terms had they been offered. Once Regional Vice President Johnston became involved in my situation, as described above, this need to relocate no longer existed.

23. I decided to become a named plaintiff in this action because I have been unfairly denied promotional opportunities and equal pay for 17 years. I have observed countless male employees leap frog over me, despite my excellent reviews and persistent requests for advancement. Wal-Mart management has repeatedly and falsely promised pay increases and promotions and held me to non-

///

///

///

///

///

///

///

///

///

Declaration of Christine Kwapnoski in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

existent promotional requirements. My primary goals are to ensure that the employment practices at Wal-Mart which hinder the progress of women wishing to enter management be changed, and to ensure fair and equitable treatment of female employees. I understand the responsibilities of a named plaintiff and I am prepared to fulfill my duties to the women in the class.

24.    I have personal knowledge of all the foregoing facts and, if called as a witness, could and would testify competently to each. I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States and the State of California.

I declare under penalty of perjury of the laws of the United States and of the State of California that the foregoing is true and correct.

This declaration was signed by me on April _18_, 2003 at Concord, California.

_____
Christine Kwapnoski