Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
 RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:    626.585.9600
Facsimile:    626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF DONNA ADAIR IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA  94105
Telephone:  415.597-7200
Facsimile:  415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA  94105
San Francisco, CA  94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
Telephone:  505.982-8533
Facsimile:  505.982.6698
set@tinklernm.com

ii

I, Donna Adair, declare:

1.     I make this statement on the basis of my personal knowledge, and, if called as a witness, could and would testify competently to the facts herein.

2.     I am a female former employee of Wal-Mart, and reside in Tennessee. I am currently a store manager at Parent-Teacher Store in Franklin, Tennessee. I have been in that position since September 2001. In my position, I have responsibility for supervising employees.

3.     I was employed by Wal-Mart from November 1993 to approximately April 2001. I worked in three Wal-Mart stores: in Clear Lake, California in Sacramento, California and in Franklin, Tennessee. Throughout my employment, I received above standard ratings and was commended for my ability to manage and supervise associates. I was never disciplined in any way while an employee of Wal-Mart. Despite my excellent management and supervisory skills, I was denied promotional opportunities offered to less qualified men. Also, I was paid less than men with whom I worked.

4.     Prior to joining Wal-Mart, I had worked in retail at J.C. Penney and a family-owned business, Circle F Western Shop. I applied at a new Wal-Mart Store in Clear Lake, California with little knowledge of the employment opportunities within the company. Initially, I was hired to help set up the store, which had not yet opened. After the store opened, I worked as a service desk clerk. for a short time and was then promoted to Customer Service Manager ("CSM") within three months after I was hired. A month later, I was promoted to Head CSM. Both my supervisors and the associates I supervised recognized my excellent supervisory skills and how the front-end ran smoothly during my shifts while I worked in the positions.

5.     I realized after joining Wal-Mart that there were opportunities to advance within the company and informed the Store Manager Randy Ward sometime in 1994 that I was interested in a promotion to Support Manager. I specifically expressed interest in a Support Manager position that was given to a male associate Simon Williams despite my qualifications. Subsequently, I expressed

2

DECLARATION OF DONNA ADAIR IN SUPPORT OF                    Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

interest in another Support Manager to Store Manager Ward position a number of months later and was promoted to the position in October 1994.

6.    While I was Support Manager, I continued to be interested in promotional opportunities and expressed this interest to Store Manager Randy Ward. In November 1995, I was promoted to the Assistant Manager in Training Program. I was in the program for approximately 16-20 weeks in the Clear Lake store and was then promoted to the position of Assistant Manager in the Clear Lake store. Each evaluation I received as an Assistant Manager rated me as "exceeding expectations".

7.    I fully expected to move up within the company and be promoted to Store Manager. However, experiences I had with former Divisional Vice President Kendall Schwindt and Regional Vice President J.R. Reed made it clear to me that because I am a woman I would not be promoted to Store Manager.

8.    The day after Easter in 1995 another female assistant manager, B.J. Black, and I reported to work at 4:00 a.m. to prepare for a visit from Kendall Schwindt. Randy Ward was on vacation and it was our responsibility to make sure that the store complied with company guidelines. Mr. Schwindt visited our store at approximately 9:00 a.m. that morning and toured the store with Ms. Black and me. During the tour, Mr. Schwindt ridiculed and talked down to both of us in front of associates we supervised. He told us that we were very poor examples of managers for the "fine young men" who were Assistant Manager Trainees and who were standing with us. In my experience as an employee of Wal-Mart, I had never observed anyone from Home Office speak to a manager in a store in the way Mr. Schwindt spoke to us. I had never heard Mr. Schwindt speak to male assistant managers with such contempt. I was very embarrassed by the comments Mr. Schwindt made. Ms. Black and I made an anonymous call to Mr. Maxie Carpenter, Vice-President of Personnel, in the Home Office, Bentonville, Arkansas to tell him about what had happened during the tour. I am not aware of any investigation that occurred as a result of our use of the Open Door. I

DECLARATION OF DONNA ADAIR IN SUPPORT OF                    Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

3

did not tell any of my supervisors about what happened because I feared that I would be retaliated against for doing so.

9. Despite this experience, I continued to work hard and my performance continued to exceed expectations. In June or July of 1996, I transferred to a Wal-Mart store near Sacramento, California after my husband's job relocated him to the area. I remained at the store near Sacramento until December 1996. The store manager was Randy Ward who had been at the Wal-Mart store in Clear Lake. My responsibilities increased at the store because it was a much larger store than the one in Clear Lake.

10. In December 1996, I transferred to a store in Franklin, Tennessee after my husband accepted a new position in Tennessee. The practices and procedures I had learned in the two California stores were the same practices and policies used at the Tennessee store. The personnel policies were the same in Tennessee as in California. I did not receive any additional training in order to assume the duties of assistant manager in Tennessee. Britt Wood (male) was the store manager when I started in the Franklin store. Following Mr. Wood, the store managers were Cheryl Doyle and Keith Rinehart.

11. In approximately April of 1998, I stepped down from the position of Assistant Manager because of an incident that I felt was the last straw involving acting-Regional Vice-President J.R. Lee. Mr. Lee made an unexpected visit to the Franklin, Tennessee store on a day when Store Manager Doyle was off. I was assistant manager over soft lines at the time and I walked over to the department where Mr. Lee was located. As I walked over, I noticed that he was tearing something up and dropping it on the floor. I walked up to him and he told me "[w]ell you have a backer that's outdated and I ripped it up. And now, you need to clean it up" referring to the paper I had watched him drop on the floor. I had never seen a regional manager treat a manager in the store in that way and I was very upset. I did not see Mr. Lee treat any of the other male assistant managers who were in the store the way that he treated me even though it was not uncommon for departments to have expired backers.

DECLARATION OF DONNA ADAIR IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. C-01-2252 MJJ

12.    I immediately drafted a letter of resignation because of the treatment I received from Mr. Lee following the similar treatment from Mr. Schwindt. The two incidents convinced me that I had no future with the company as these superiors clearly did not view female managers as worthy of respect. I decided that the best thing for me to do was to leave. I agreed to stay only after Store Manager Doyle told me that I was too valuable to lose and offered me a position in the cash office. I worked in the cash office from approximately April 1998 until November 1999.

13.    I went through management training again beginning in November 1999 although I performed the actual duties of an assistant manager. My duties were essentially the same as those I had performed before I had stepped down to work in the cash office. I did not post for the position and entered into the program after Store Manager Rinehart encouraged me to do so. As part of my job responsibilities, I handled the payroll and had access to salary information for the associates in the store. I discovered that Rich Hailey, another trainee who had previously worked at Wal-Mart and left for several years, was earning approximately $4000 a year more than I. I spoke to the store manager Keith Rinehart, who did not deny the pay disparity. He offered no legitimate explanation for it, and told me that it was out of his hands. He promised to take care of me in my next evaluation. However, the pay disparity was never corrected.

14.    In handling payroll, I noticed that men frequently earned more money than women associates despite the fact that women were in higher positions and had worked for the company longer. For example, I observed that a newly hired male sales associate, James Ray, was paid approximately $15.00 an hour. None of the female hourly associates, including a department manager, Annie Garner, who had worked for the company for twenty years, earned $15.00 an hour at the time.

15.    Throughout the time that I worked as an Assistant Manager, I worked primarily in Soft lines. I noticed that the areas that most frequently led to promotion to store manager were the Garden Center and Sporting Goods. It was my understanding that Assistant Managers were to rotate and work in all areas of the store. However, in my experience I was not given the opportunity.

5

16.    In April 2000, I went out on medical leave after I broke my knee and did not return to work. I learned I was terminated sometime in 2001 when I received papers from the company concerning profit sharing.

17.    I observed throughout my employment with Wal-Mart that associates were often selected to fill open positions within stores without job posting. In the few instances in which I recall jobs were posted, management had already decided who would fill the positions.

I declare under penalty of perjury of the laws of the United States and State of Tennessee that the foregoing is true and correct.

This Declaration was signed by me on April 4, 2003, at _____.

Donna Adair

S:\SHARE\LEGAL\Walmart\Declarations\Donna Adair class cert dec.doc

DECLARATION OF DONNA ADAIR IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

6