Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
 RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:      626.585.9600
Facsimile:      626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated, <br><br> Plaintiff(s) <br><br> v. <br><br> WAL-MART STORES, INC. <br><br> Defendant. | Case No. C 01-CV-2252-CRB <br><br> **DECLARATION OF GRETCHEN ADAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT A

I, Gretchen Adams, declare:

1. I am female and reside in Florida. I was a managerial employee at Wal-Mart Supercenters from 1993 until December 2001. My husband is totally and permanently disabled and has been disabled throughout my employment with Wal-Mart. My teen-aged son also lives with me and is an amateur golfer with aspirations of turning professional soon.

2. During my years with Wal-Mart, I relocated my family eight times at the request of the company. Despite my very strong performance as Deli Manager, Assistant Manager, and Co-Manager, I never was promoted to Store Manager. I was aware that men doing the same job were paid more, and that I was even paid less than men I was training. I experienced retaliation for using the Open Door. Managers made comments reflecting derogatory stereotyping of women. Although I observed men being mentored by other men, I never was mentored and never met a female District Manager.

3. Prior to my employment with Wal-Mart, I was a teacher and Director of Education for a trade and technical school. I also had spent several years in the restaurant and retail industries, and had managed a restaurant. I had operated a family-owned oilfield and I had lived abroad when my husband was in the service.

4. I applied for an hourly position at the Wal-Mart Supercenter in Stillwater, Oklahoma in April 1993. I was hired in a support position in the Service Deli. The Service Deli prepares and sells hot food and bakes items from scratch. Brett Donnelly, the male Manager of the Deli, hired only women to work in that department and often made inappropriate, sexually-charged comments to the Deli employees. After a month of this conduct, Mr. Donnelly escalated his harassment and began calling one female employee at

2

Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

home. He also made physical moves towards her at the workplace, which I, among several others, observed. Finally, as a result of that female employee coming forward with her charge of sexual harassment, he took a two-week vacation, was demoted to a Department Manager position, and transferred to another store instead of being fired as required by Wal-Mart policy.

5. With the departure of Mr. Donnelly, I was approached by Store Manager Larry Wilcoxsen and District Manager Ed Robertson and offered the position of Deli Manager. The position had not been posted, and I had not applied for it, although I had indicated at my 90-day review that I was interested in a managerial career at Wal-Mart. I did not accept the promotion at first, as I did not think the salary was adequate. Mr. Wilcoxsen and Mr. Robertson assured me that everyone started within the same salary range for this position. They told me that the salary range was $23,500.00 to $26,500.00 and they offered to start me at what they claimed was the maximum, $26,500.00. Based on that representation, I accepted the position of Deli Manager. I later learned men were started at a higher salary, as detailed below.

6. I spent the next five years as a Deli Manager, moving my family four times as I traveled to help set up new Supercenters. I managed the Deli in Stillwater, Oklahoma for almost a year before being asked to go to Florida to help open new Supercenters there. Florida was considered to be a haven of new opportunity for advancement as many new Supercenters were to open there. I was assigned to set-up and open the Deli in Cape Coral, Florida. While waiting for the Cape Coral assignment, I moved my family for approximately 3 months to Jasper, Alabama where I was assigned to clean up a Deli Department that the

Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

local authorities were threatening to close down. I then moved to Cape Coral. After a few months in Cape Coral, I was asked to move to Titusville, Florida to help set-up and open another new Supercenter. Again, I moved my family and residence.

7. I stayed in Titusville, Florida for two and a half years as I wanted a promotion and thought it would be beneficial if a District Manager had a chance to get to know me well, see what I was capable of doing, and therefore support me in my promotional efforts. I was very successful in my efforts in the Titusville Supercenter Deli. My Deli was the number one in the district, number one in the region, and number three in the entire company.

8. I asked for my well-earned promotion to Assistant Manager from everyone that I thought could facilitate it. I repeatedly and frequently approached my District Manager, Powell Wallace, and asked for a promotion. I spoke with Joe Tapper, Regional Food Vice President from the Home Office in Bentonville, Arkansas, and Mark Schwartz, Vice President of Supercenters from the Home Office. They told me it would be simple to get a promotion; I only had to speak with my Store Manager and my District Manager. I continued to speak several times with District Manager Wallace about my wish for a promotion to Assistant Manager, but he just continued to put me off. I spoke with Cathy McWherter, Regional Personnel Manager, about my career and she offered me a promotion to Assistant Manager in Dallas, Georgia. However, after she spoke with Mr. Wallace, she retracted the offer without an explanation. Finally, Store Manager Jim Roulette confided in me that District Manager Wallace was not in favor of women being in upper management and that if I wanted a promotion I should first transfer to another district. Now, instead of continuing to ask Mr. Wallace for a promotion, I began to ask him for a transfer to another

Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification      Case No. C-01-2252 MJJ

district. Mr. Wallace told me he would talk about the promotion after my move to Kissimmee, Florida to open yet another Supercenter in his District. He told me that only the best employees were going to Kissimmee. I felt I had already proven myself, no longer trusted Mr. Wallace, and did not think this was fair to delay my promotion this way.

9. As my future aspirations were blocked by Mr. Wallace, I decided to use the Open Door, as I had little to lose. My understanding of the Open Door Policy was 'open door, shut the door, out the door' and I felt I was taking a risk of suffering retaliation by going above Mr. Powell in seeking a promotion. Nevertheless, my position was intolerable, and so I contacted Steve Wycoff, in Training and Development, and asked for his help. Mr. Wycoff suggested I contact Larry Patrick, Director of Personnel for Supercenters, if Mr. Wallace continued to refuse my request for a promotion or transfer. When I called Mr. Patrick, he was very protective of Mr. Wallace, defending and attempting to justify Mr. Wallace's actions. Mr. Patrick promised to look into the problem and get back to me. I never heard from Mr. Patrick again.

10. I then began a lengthy process of finding an open position in another district in which to transfer. I made countless telephone calls to Store Managers and Regional Personnel Managers to discover what openings they anticipated. Finally, in May 1997, I was able to transfer to Winston-Salem, North Carolina. I was still a Deli Manager.

11. I applied for a Meat/Deli Merchandiser position in June 1997, as I decided to try another avenue of promotion. I was not interviewed for the position even though I was told I would be by David Norman, Regional Vice President. Ken Sanford, a man I had trained as a Deli Manager in Cape Coral, was given the position. I pointed out to Ramona Truax, the

Regional Personnel Manager, that a man I had trained had received this promotion. Her only response was to raise her eyebrows and say that she would see what she could do. There was no further follow-up.

12. New merchandiser positions were available in late 1997. Again, I applied and followed up with many telephone calls. David Norman, Regional Vice President, told me that I was on the "recommended" list. I expressed my strong desire for the promotion, and my willingness to relocate anywhere. Again I was passed over. A man with only three months experience with Wal-Mart was chosen for one of the openings. When I tried to discover who the other successful applicants were, and the gender of the new Merchandisers, I was told by Mary Smith, Regional Personnel Director, that it was none of my business, and that it did not matter, the damage was done. I requested an explanation for the refusal to promote me. Fred Bunch, District Manager and Mary Smith both told me they were unable to give me a good reason. One of the merchandisers, Ken Sanford, said that he knew that I should have received one of the positions but it was based on "whom you knew, not what you knew". No one told me what I should do, if anything, to receive a promotion to Merchandiser.

13. From the fall of 1997 until July 1998, I was sent to approximately ten different stores in several states to help with various problems. Throughout this period, Fred Bunch, District Manager, continued to promise to put me into the Management Training Program so that I could be promoted to Assistant Manager.

14. Finally, in July 1998, I was promoted to Assistant Manager. I did not join the Management Training Program, but instead was promoted directly to Assistant Manager.

Regional Personnel Assistant Heather [last name unknown] told me that I would not receive the training because I earned too much. As Assistant Manager trainees are paid hourly, and receive overtime pay, Heather said that Mary Smith, Regional Personnel Manager, had told her to tell me that my hourly pay would be too high, and that Wal-Mart did not want to pay it. Instead, I was handed a manual and told by Debbie Plumadore, Store Manager, that I would learn on the job.

15. In November 1999, I was promoted to the position of Co-Manager by Ron Cook, after two men, Christopher Pierce and Shawn Stanley, turned down the position. I again relocated my family. I was never to receive another promotion.

16. As Co-Manager, I continued to relocate my family at the request of Wal-Mart. I was a Co-Manager in North Carolina, Nevada, and Florida, moving my family each time.

17. After I was Co-Manager in North Carolina for a few months, I learned that Supercenters were opening in Las Vegas, Nevada. I had lived previously in Las Vegas, and I knew that this was an area of expansion for Wal-Mart. I thought that a transfer to an area of growth would be beneficial for my career and my goal of becoming a Store Manager. I sought a transfer to Nevada. In April 2000, I became a Co-Manager at a Supercenter in Las Vegas. Within a few weeks of commencing my employment in Las Vegas, I learned that at least two male Co-Managers started at a higher pay rate than I did, as detailed below.

18. On or about October 23, 2000, the District Manager in Las Vegas, Chuck Salby, expressed his contempt for female managers within the first few weeks of my tenure in Las Vegas. I was in a car with Mr. Salby, Store Manager Jay Mossell, and Co-Manager Jim Eble, driving to a meeting in Utah. Mr. Salby responded to something I had said by

exclaiming "Gretchen, I just want to tell you how refreshing it is to finally have a female with your intelligence and knowledge in my district." None of the other male managers responded to this statement.

19. On or about October 23, 2000, there was a bomb threat at the Las Vegas Supercenter and the store was evacuated for several hours. When we were allowed back in, the store was in terrible shape, with full shopping carts abandoned throughout the store and pallets of merchandise that should have been unloaded left out. The following morning, the Supercenter had another bomb threat and a drive-by shooting threat. Meanwhile, even more carts were left to be re-stocked. The store was in a very chaotic state. That morning, Don Harris, Vice President of Operations from the Home Office in Bentonville, Arkansas, and Kendall Schwindt, Divisional Director, arrived at the Supercenter for a store tour. Mr. Harris was extremely angry at the condition of the store. He got even angrier when he learned that the Store Manager, Jay Mossell, and the District Manager, Chuck Salby, were both on vacation at the same time and a crisis had happened.

20. When this happened, I had been in the process of completing my final interview plans for a position in Training and Development. I had already been through three interviews including the preparation of a videotape. I received a call from Teri Ross, Training and Development, and was told that they could not consider me now that I was on probation. She told me that the Regional Manager, Jim Wilhem, had told her that all members of management in our store were on probation for a year and that no one would be transferred or promoted. I told her we knew nothing about it. I asked Jay Mossell, Store Manager, and Chuck Salby, District Manager, if they knew anything about it and they did

not. I felt that this was very unfair of upper management and decided to use the Open Door policy. I sent a letter to Jim Wilhem, Regional Director, Kendall Schwindt, Divisional Director, Lee Scott, CEO of Wal-Mart, Inc, Larry Ezell, Regional Personnel Manager and Andy Wilson, Director of Supercenter Personnel. A true and correct copy of this letter is attached hereto as Adams Exhibit A. I told these executives that respect for the individual, one of the basic beliefs at Wal-Mart, was not being followed in the way the Las Vegas store was being handled.

21. On November 10, 2000, the day after I faxed these letters to these executives, District Manager Chuck Salby came to talk with me. He said he knew about my letters and that the recipients were not happy. He told me that if I decided to send another letter, I should show it to him first. Mr. Salby said he would have advised me not to send this letter and that it was not a very "smart" move. I told Mr. Salby that we would find out if the company really supports the Open Door policy, that I had just told the truth in my letter, and that it was time for someone to stand up. Mr. Salby did not address the issues in my letter or tell me when I could expect a response.

22. On November 13, 2000 Jim Wilhem, Regional Director, came into the store. He was very angry but did not address the issues in my letter. Mr. Salby told me that Lee Scott, Wal-Mart CEO, would be in to see all of the members of management.

23. On November 24, 2000, Mr. Scott did come to the store. He did not address the particular issues of my letter but told me I was doing a good job. Mr. Scott returned on November 27, 2000 and addressed the management team. Mr. Scott said that either Mr.

9

Schwindt or Mr. Wilhem would be back in the store within two weeks to address the issue of my ability to apply for a promotion.

24. Before there was any follow-up to my Open Door letter, District Manager Salby called me into his office on December 13, 2000. He was very abusive in his language, and called me a "worthless broad." He gave me a choice of termination or immediate transfer from his district. Mr. Salby told me that I was not going to get the position I was applying for in Training and Development, and that I needed to decide that minute where I wanted to transfer to. I asked if I could speak with my husband about such an important decision and he told me he wanted my answer right then. I asked if it was my letter to the executives that had caused this, and he refused to answer. He gave me no explanation as to why he was acting this way, or what, if anything, I had done to deserve such treatment. Mr. Salby told me that Mr. Schwindt and Mr. Wilhem were aware of what he was doing to me. I told Mr. Salby that I would return to Florida, and he collected my keys and my walkie-talkie. He sent me home to wait.

25. I became Co-Manager in Greenacres, Florida, moving my family again. Mr. Salby's efforts to retaliate for my use of the Open Door continued, even though I had moved out of his district. He sent to my new District Manager a poor evaluation of me and a written coaching which he had told me had been torn up.

26. I renewed my efforts to be promoted to a position in Training and Development. I contacted Teri Ross, Director of Training and Development, and she told me that it would just be a matter of formality, but someone would call for a final interview. However, I was required to interview two more times. I was told by Irvin Young that I had done very well.

In September 2001, the prerequisites for this position changed without notice. I was told by Irvin Young that I was suddenly ineligible for the position because experience as Store Manager was now required and, as a Store Manager, one had to be on the "promotable" list. I had never been offered a Store Manager position.

27. I quit in December 2001.

28. In at least three of the stores where I worked, I learned that men were paid more than I was even though I had equal or more responsibility. In Jasper, Alabama in June and July 1994, I trained James O'Neil how to run a Deli. He was new to the company, and had no deli or retail experience. He had only worked in fast food. One week, he was sent out of town to help in a grand opening of another store, and he asked me to deposit his paycheck. When I took Mr. O'Neil's deposit slip to the bank in Jasper on July 15, 1994, I saw that he was being paid $30,000.00, approximately $3,500.00 more than I was receiving, even though I was an experienced Deli Manager and I was training him. I was concerned and spoke with the Regional Personnel Manager, Brian Hardin, the next week. Mr. Hardin explained that this was just a "fluke," and that there was nothing he could do about it. I accepted this at the time.

29. This practice of paying a male trainee more than me was repeated at the next store. When I moved to Cape Coral, Florida in 1994, I trained Ken Sanford as a Deli Manager. Again, Mr. Sanford was new to Wal-Mart and his experience was limited to bakery work. Mr. Sanford told me that he was earning $30,000.00 per year. I was being paid only $28,089, having received a yearly review with an above-standard rating. Mr. Sanford received the promotion to Merchandiser that I sought, as detailed above.

11

30. That this was a pattern of gender discrimination and not a series of flukes became very clear when I learned for a third time that men were being paid more than I was receiving. When I was a Co-Manager in Las Vegas, Nevada, in 2000, I learned that male Co-Managers Scott Jolley and Jim Eble were paid approximately $47,000. I was paid only $43,500.00. I had been told by District Manager Ron Cook and Regional Personnel Manager Mary Smith that all new Co-Managers were paid the same base pay. Upon learning that these two male Co-Managers, with no more experience than me, were being paid more, I spoke with Regional Personnel Manager Larry Ezell and with District Manager Chuck Salby. I asked Mr. Ezell why I had been told that all Co-Managers began at the same salary if this were not true. I received no meaningful response. Mr. Ezell and Mr. Salby agreed to give me an immediate raise to $47,000. The raise was not made retroactive to compensate me for the period when I was underpaid. I was given no explanation as to why two men, doing the same job I did, were paid more. I was given no assurance that there would be any review conducted to ensure other women were not being similarly underpaid. My request to look into past discrepancies was ignored.

///

///

///

///

///

///

///

Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

31. I learned about this litigation when, as a Co-Manager, I received "talking points" from the Home Office in Bentonville, Arkansas that were to be used when Managers discussed the class action with employees. When this case was filed, I realized that my experience of gender discrimination was not unique, and that other female employees were taking action. I quit Wal-Mart six months after this case was filed, and became an organizer for the United Food and Commercial Workers International Union. I was never involved in a union activity before, but felt something had to be done.

32. I have personal knowledge of all of the foregoing and, if asked, could and would testify competently to all of these facts.

I declare under penalty of perjury of the laws of the United States and the State of Florida that the foregoing is true and correct.

This declaration was signed by me on April _14_, 2003 at _Milton, Florida_ (City and State).

_Gretchen Adams._

Gretchen Adams

Declaration of Gretchen Adams in Support of Plaintiffs' Motion for Class Certification     Case No. C-01-2252 MJJ

11-07-00

Mr. Jim Wilhem:

I have several questions and quite a few statements to make because of the recent circumstances at our store. My question is why should the management team in this store be on probation when upper management would not let us hire enough people to operate this brand new supercenter – including no experienced grocery people. Why should we be blamed for upper management's mistakes? We here at store level knew what to do but we were not provided the tools to take care of this volume – when one person is sick around here or doesn't show up for work (which is quite frequently considering the labor pool we have here) it is like a train going down hill with no brakes. You are blaming this management team but we feel it is your fault that we are in this mess. We have cried out for help time and again but with no permanent results. Over and over again we have said if you want this store right then get us the people. We were told over and over that we have enough people we just need to make them work. Even Chuck Webb told us when he was here (and I quote) "I feel so bad for you all, it makes me want to go put on a pair of jeans and help you stock".

Then to add insult to our injury you send in outside management and people that do not listen to us – they plug our modulars, put Christmas on endcaps it shouldn't be on – place product in all kinds of areas that it isn't suppose to be and tell us we need to live with the "creative merchandising" for awhile and all this time we know it is wrong and we will be left cleaning up the mess. We were told by Kendall to have a plan of action so we would be ready when the visitors came and then we were insulted when the first DM arrived and told us he was in charge because he was sent here to get this store "straight". Then on the follow up visit we get "ripped" for their poor decisions. NOT ONE PERSON and I do mean NOT ONE PERSON has come to any member of management in this store at any time and has asked WHAT CAN I DO TO HELP?

I know it is not our philosophy to set people up to fail but the way we all feel right now is BETRAYED. My second question is when was someone going to sit down with all of us and tell us that we are on probation? Why did we have to hear it through the "back door" and even our DM says that it was news to him. If you wanted a way to thoroughly break the moral of your managers here you have finally figured it out because everyone has mentioned leaving this company. Now I don't know about you but I believe in this corporation and I do not believe that we have good managers standing on every street corner and I would like to see us keep as many as possible. So what happened to our belief in RESPECT FOR THE INDIVIDUAL? Even when all of you came to this store for the follow up visit not once did you talk to any member of our management team – you talked to all the visitors – but not us and we would like to know why.

I don't think any of you understand what the management team has been through here – and the way we continually have to "pump" them up and tell them it will get better, it will get better. I have never been in a division where threats are a part of daily life and I

EXHIBIT A

have to tell you that it is getting very tiresome. You all wonder why Vegas is such a tough market – and why you can't seem to keep managers – I can tell you why. We work them to death and then threaten them all the time- everyone is afraid to lose their jobs. How would you like to hear "If you can't do the job – we'll get someone who can" or "Don't let them walk in her and find that or you'll be fired on the spot" or "How well do you like your job?" or "Do you want to be here next week?" or " I can't tell you to work your days off but if you don't have the coverage and your area isn't done I wouldn't want to be the one to explain that ". It isn't that Vegas is a tough market because we have "tough" markets everywhere – it's that we don't have Respect for the Individual with our management team and we are not given the tools we need to be successful by upper management.

Does anyone care that we received an award 2 weeks before the "now famous" visit from the warehouse for having the best receiving area in the territory? We haven't always been a disaster – just short on help.

I also thought we had a "rule" about not sending brand new trainees into a brand new supercenter. They are striving for excellence also but it is a whole lot tougher when they aren't completely aware of our culture and what to do. There are only 2 members of management in this store that have not given 110% to this company and this store. Every one of them has worked 6 and sometimes 7days a week because we are short-handed and the job needs to be done. They have risen to every occasion as it has cone along – and we realize that no one cares that we had 2 code blues with a total of 300+ shopping carts that had to be put back on Sun/Mon or that we were told we couldn't have a warehouse or that we had a drive by shooting scare on Tues and associates didn't want to come to work – then Don and Kendall walk through our front door. What do they say – timing is everything? But we won't tell you all that because with Wal-Mart there are no excuses!

This letter could go either way – you'll either make up excuses and fire me or you will praise me for stepping forward and being honest. But I do feel you owe this management team the courtesy of coming in and talking with everyone about the whole situation.

Thank you for taking the time to read this and whatever the outcome I remain……….

Respectfully yours,

*Gretchen Adams.*

Gretchen Adams
Store #2837