Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:      626.585.9600
Facsimile:      626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF SHIRLEY ERVINE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA  94105
Telephone:  415.597-7200
Facsimile:  415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA  94105
San Francisco, CA  94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
Telephone:  505.982-8533
Facsimile:  505.982.6698
set@tinklernm.com

ii

I, Shirley Ervine, declare:

1.    I have personal knowledge of each and every fact set forth in this Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

2.    I was employed by Wal-Mart, Inc. at Store No. 2099 in Paso Robles, California from August 8, 1994 through September 11, 2001. I am female.

3.    At the time of my application toWal-Mart for employment, I had significant retail management experience running garden centers. On my application and during my initial interviews, I expressly requested work in the garden center. I was told that a male had already been hired as head of the garden department so that this position was not available to me.

4.    After I was hired, Wal-Mart initially assigned me to the fabric department. During the seven years I worked at the Paso Robles store, the fabric department was comprised exclusively of female associates and there was never a male department manager.

5.    My initial rate of pay was $6.00 an hour. After my 90-day review, I was given a 25 cent raise so that I was now earning $6.25 an hour. During that first year, I was moved from the fabric department to the toy department to the garden department. In May 1995, I was given a merit raise of 25 cents for my excellent performance in the garden department. In July 1995, I received an "above standard" rating on my first annual evaluation and was given a 40 cent raise. This brought my pay rate to $6.90 an hour.

6.    While I was working in the garden department, I learned through the grapevine that the department manager, Steve Romo, was being moved out. The garden department manager was the position that I had first applied for. I still wanted it very much so I took my resume to Assistant Manager Michael Denham and told him that I was interested in the position. The job was not posted and I did not know any other way to make my interest in the position known.

7.      Despite having given my resume to Assistant Manager Denham and telling him expressly that I wanted the position and despite my excellent performance in the garden department, I was never interviewed for the job. Instead it was given to Troy Clark, a newly hired male associate who appeared to be about 25 years old. At the time, I had more than five years previous experience working in garden centers, including two years as Assistant Manager at Pacific Home Improvement, three years as a sales associate for Pacific Coast Garden Center, seasonal work with Tree Man, and approximately one year as a cashier at the Miramar Naval Air Station, which required knowledge of the various plants and garden products sold.

8.      In approximately September 1995, Assistant Manager Debbie Smith informed me that the department manager position was open in the pets department and asked me if I wanted the position. The job was not posted. I did not formally apply for the position or interview with anyone. I just told Assistant Manager Smith that I wanted the position and that is how I became department manager over the pet department. I received a 60 cent raise so that my hourly rate as a department manager was $7.50.

9.      In approximately May 1996, Store Manager Mike Martin asked me if I would be department manager over the garden department after the current manager moved out of that position. The job was not posted and I did not formally apply for the position or interview with anyone. I just told Store Manager Martin that I would accept the position and that is how I finally became department manager in the garden department. The Associate Commendation Form approving this move states "Shirley is being given another challenge of taking on dept. 16 because of the hard work you (sic) have done. Thank you. I appreciate it." (True and accurate copy attached as Ervine Exhibit A)  I received a 50 cent raise with this move which brought my hourly rate to $8.00

10.     One of my responsibilities as the garden department manager was selling soil, bark and statuary. This merchandise arrived by truck on pallets and needed to be unloaded in a corral. This often required the use of a forklift. During my employment at Wal-Mart, I observed many men being trained to drive the forklift, including but not limited to Assistant Manager John Gatlin, associates Marvin Lee and Harry Balsom, and associates Abel [last name unknown], Billy [last name unknown] and OJ [last name unknown] who were overnight stockers. When I asked Store Manager Nick Sigala to allow me to be trained on the forklift, he refused.

11.     After Store Manager Sigala denied me training to operate the forklift, I sought and obtained operator safety certification on my own from the company that serviced Wal-Mart's forklift, Graylift. (True and accurate copy attached as Ervine Exhibit B.) When I gave a copy of my Certificate of Achievement to Store Manager Sigala, he threw it on the desk and told me to leave his office. Throughout the time I ran the garden center, Store Manager Sigala continued to deny me training on, and use of, the forklift. As a result, I was forced to find a male associate to unload the pallets of soil, bark, and statuary from the delivery trucks whenever the delivery trucks did not provide that service. During the seven years I was employed at the Paso Robles store, I only observed one female associate operate the forklift and she was the Overnight Assistant Manager.

12.     During the time I was garden department manager, the Home Office in Bentonville recognized the Paso Robles garden center as No. 1 in the Company for sales of Rubbermaid Sheds and awarded the garden center $500. On January 26, 1998, Divisional Vice President Kendall Schwindt sent me a letter of congratulation, informing me that I had been selected to represent my district in the company-wide Lawn and Garden Seminar in Kansas City, Missouri. (True and accurate copy attached as Ervine Exhibit C.) At this end-of-the-year meeting, the Paso Robles garden center was listed as No. 1 in the Company for sales of Murray Log Splitters. I found it ironic that my Divisional Vice President considered me qualified enough to represent my district at a

4

Declaration of Shirley Ervine in Support of Plaintiffs' Motion for Class Certification          Case No. C-01-2252 MJJ

nation-wide company seminar while my Store Manager did not think me capable of operating a forklift.

13.    In July 1996 and July 1997, I received "above standard" performance evaluations as garden department manager. In July 1998, I was ranked as "standard." However, despite my consistently good performance during these three years and the superior ranking of the Paso Robles garden center when I was the department manager, I received only one merit raise for 25 cents an hour and what I considered to be only meager annual raises: 40 cents, 43 cents, and 37 cents, respectively. After four years with Wal-Mart, my pay rate was still under $10 an hour at $9.55.

14.    In approximately April or May 1999, TLE Manager Jill Sinclair asked me if I was interested in becoming a support manager in the Tire Lube Express center. This is an hourly position. I applied for this position on the computer. I interviewed with TLE Manager Sinclair and she later informed me that I received the position plus a 50 cent raise, which brought my hourly rate to $10.05.

15.    During the two years I worked in the TLE center, I was ranked either "above standard" or "meets expectations" on my evaluations but the annual raises I received were still less than I felt I deserved based on my performance: only 50 cents and 44 cents, respectively. I also received two merit raises, one for 25 cents and the other for 35 cents. After six years with Wal-Mart, my pay rate was $11.59 an hour.

16.    The TLE support manager position is the highest position I held with Wal-Mart and the last time anyone "tapped" me for promotion.

17.    None of my store managers ever talked to me about Wal-Mart's Management Training Program or offered me any other promotions. There was nothing posted anywhere in the store that informed interested employees on how to apply for management training or management opportunities. The Management Training Program was not discussed at the daily store meetings I

Declaration of Shirley Ervine in Support of Plaintiffs' Motion for Class Certification        Case No. C-01-2252 MJJ

attended. I never saw any application or was told how to apply for the Management Training Program or any other management opportunity.

18.    When I first became a Wal-Mart employee, I had retail management experience and I was interested in management opportunities at Wal-Mart. I was excited about making a career with a company as successful as Wal-Mart, a company in which I owned stock. However, after observing the number of assistant managers and management trainees assigned to the Paso Robles store and the frequency with which they transferred to other stores, I learned that Wal-Mart required its store level managers to relocate. Because I owned a home, had three children and a husband, I was not able to relocate.

19.    When a female management trainee who was visiting our store asked me how high in the Company I was planning on going, I told her a support manager position because they did not have to move. This woman did not refute my understanding of the relocation requirement and she definitely did not inform me that Wal-Mart had a "resident assistant manager" program that provides for the training and promotion of assistant managers within the same store.

20.    I did not learn about the "resident assistant manager" program until sometime in 2001, the last year of my employment with Wal-Mart. I learned about the program through the grapevine, not by having observed an Assistant Manager become an Assistant Manager through the resident assistant manager program. By then, I had become so disillusioned by the way I had been treated and the lack of opportunities for women at Wal-Mart that I decided there was no future for me there.

I declare under penalty of perjury of the laws of the United States and State of California that the foregoing is true and correct.

6

This Declaration was signed by me on *March 11, 2003* , 2003, at
*Atascadero Ca*.

*Shirley Ervine*
Shirley Ervine

S:\SHARE\LEGAL\Walmart\Declarations\shirley ervine class cert dec.doc

Declaration of Shirley Ervine in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

### Declaration of Shirley Ervine in Support of
### Plaintiffs' Motion for Class Certification

# EXHIBIT A

WMR-12 (REV. 7/94)

ASSOCIATE'S COMMENDATION FORM

NAME: Shirley Ervine    SS# 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 STORE # 2099
DATE HIRED: 8/8/94    POSITION: Department manager

This form is to be used to recognize any action for which an associate should be commended. Please give all the details, including dates.

Shirley is being given another chance if taking on Dept 16
Because of the hard work you have done
Thank you I Appreciate it.          50¢ Raise

If a change in position occurs, please fill out the following:

POSITION:       FROM: Dept. Mngr - 8        TO: Dept. mngr-16
DEPARTMENT:     FROM: _____      TO: _____
SALARY:         FROM: _____      TO: _____
STATUS:         FROM: ___F___P___T___      TO: ___F___P___T___
                ** F = FULL TIME ** P = PART TIME ** T = TEMPORARY **

ASSOCIATE SIGNATURE                          DATE: _____
MANAGER'S APPROVAL                           DATE: 5-22-96
EFFECTIVE DATE  5/27/96

COPIES TO ASSOCIATE'S PERSONNEL FILE

ERVINE EXHIBIT A

WMHO 911838
CONFIDENTIAL

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Shirley Ervine in Support of
## Plaintiffs' Motion for Class Certification

# EXHIBIT B

WMHO 911823
CONFIDENTIAL

# CERTIFICATE OF ACHIEVEMENT

Presented to

## Shirley Ervine

In Recognition of having successfully
completed all requirements for
Operator Safety Training Program



December 10, 1997.

Date

Gary Forrest

Instructor

**GRAYLIFT**
MATERIAL HANDLING PRODUCTS

ERVINE EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Shirley Ervine in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT C

# WAL★MART



WAL-MART STORES, INC
702 SW 8TH STREET
BENTONVILLE, ARKANSAS 72716

To:         SHIRLEY ERVINE
            Dist. 90  Store 2099    PASO ROBLES, CA          cc:   JON SIMS

From:       Kendall Schwindt, Div. 1A

Subject:    Kansas City Lawn & Garden Seminar

Date:       January 26, 1998

Congratulations on being selected to represent your District at the upcoming Lawn & Garden Seminar in Kansas City!

You will be learning valuable information that you will take back and present in a meeting to the other Lawn & Garden Associates in your District.

It is very important that you also communicate to your Regional Vice President any concerns or questions that you might have in regard to the information and material that you receive at this meeting. It is critical that you also share any ideas or suggestions you may have on improving the Lawn & Garden area with your Regional Vice President. This will allow us to continue to improve the seminars and to keep the Company on one direction.

Be sure you take good notes and are prepared to share this information when you return to your store.

L:\oper\common\jlcrock\kc lg-sg seminar merge/prw

ERVINE EXHIBIT C

WMHO 947042
CONFIDENTIAL