Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:     626.585.9600
Facsimile:     626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated, <br><br> Plaintiff(s) <br><br> v. <br><br> WAL-MART STORES, INC. <br><br> Defendant. | Case No. C 01-CV-2252-CRB <br><br> **DECLARATION OF EARNESTINE GORDON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Earnestine Gordon, declare:

1.   I am female and a current employee of Wal-Mart. I am African American and reside in Pittsburg, California

2. I have worked at the Wal-Mart store in Pittsburg, California, since 1992. I have worked both in Division 1, which is the main division, and in Division 6, which is the Tire and Lube Express (TLE) division. I was denied a raise when I was promoted to TLE Support Manager in 1998. I was denied information that would have allowed me to compete for a TLE Manager position, which I am very interested in and qualified for.

3.   I was hired in 1992 as a Cashier in Division 1 for the winter holiday season. In March 1993, I was promoted to permanent status. From 1992 to 1994, I worked in Division 1 as a Cashier, at the Courtesy Desk, and in Lay-Away. None of these positions were posted, and 1 was not interviewed. I was selected for each assignment by a manager.

4.   In 1994, a Division 1 Customer Service Manager position became available. The position was not posted, but I knew it was available because the employee who held the position had left. Assistant Manager Ricky Robinson gave me the promotion without an interview. As a Customer Service Manager, I trained and supervised Cashiers, handled customer complaints, and kept all customer service departments stocked with necessary supplies.

5.   In 1995, I was asked by Store Manager Rick Pace to return to the Courtesy Desk because the area was understaffed. I agreed, but I was unhappy to lose my supervisory duties. I started looking for a position elsewhere in the store.

6.   I saw a position for TLE Cashier posted near the time clock. Even though the position was not an hourly supervisory job, I was interested because it paid more money. 1 was also interested in working in the TLE Division because it is a smaller division and I believed I would have more opportunities to prove myself and gain promotions. I applied for the Cashier position and was hired in approximately May 1995 after an interview with TLE Manager Matt Steigert. Shortly after I took the TLE Cashier position, the new TLE Manager, Scott Thomas,

promoted me to Perpetual Inventory Specialist. I had not applied for the position. I held that position until approximately 1998, when my job title changed to TLE Department Manager. Although my job title changed, my job duties did not change substantially.

7.    In approximately March 1998, TLE Manager Marco Campbell promoted me to TLE Support Manager. The position was not posted, and I was not interviewed. Although my job duties increased substantially, as described below, I did not receive a raise when I was promoted, and TLE Manager Campbell described the change as a lateral move.

8.    As TLE Support Manager, my responsibilities included running daily computer reports, calculating time and service charges for automobile technicians, handling customer complaints, directing associates to the appropriate manager for specific issues, scheduling associates for work, and performing the duties of the TLE manager in his or her absence.

9.    Early in my career at Wal-Mart, I became interested in a management position with the company. In 1993, I wrote on my annual performance appraisal that my goal was to "become a manager of a department and go on from there." (True and correct copy attached hereto as Gordon Exhibit A.) After several years of merit raises, promotions, and "outstanding" performance evaluations, I knew that I had proved myself as a valued Wal-Mart employee and I believed I could win further promotions. On my annual performance appraisal for 1998, I commented that I wanted to "learn more about the duties of TLE Manager." (True and correct copy attached hereto as Gordon Exhibit B.)

10.    I never saw any written information about the job of TLE Manager. I never learned of a way to apply directly for the job of TLE Manager. I expressed interest in the TLE Manager position to three different TLE Managers during 1998 to 2002: Martin Vandenberg, Marie Perkins, and Michelle Notah. In response to my inquiries, all three managers told me that TLE Managers are required to relocate for training and placement. When I told each manager that my family responsibilities prevent me from relocating out of the Pittsburg area, each manager told me that the door to TLE management was closed.

11.     No TLE Manager ever informed me of the Resident Manager Program, which I would have been interested in pursuing. I live with and care for my grandson, my mother, and my infirm husband, and my son and daughter frequently live with me as well. These responsibilities make it impossible for me to move away from the Pittsburg area. If I had been informed of the Resident Manager Program, I would have been very interested in pursuing a Manager job. If applications were available, I would have applied.

12.     Since 1998, when I was promoted to TLE Support Manager, the TLE Department has had five new TLE Managers. I have never been encouraged to apply for any of the TLE Manager positions, even though I have received many "outstanding" and "exceeds expectations" evaluations and I have frequently performed the duties of the TLE Manager when he or she was away.

13.     Wal-Mart had a short open application process for the Management Training Program in January 2003. Because I am currently the only morning Cashier in the TLE Department, I am not able to attend the morning meetings, where the application period was announced. If I had known about the application period, I would have applied for a resident management training position.

14.     On February 14, 2002, I was demoted to TLE Sales Associate because I was not available to work on Sundays because I attend church. My availability had never previously been a problem in the TLE Department. I currently remain a TLE Sales Associate.

///
///
///
///
///
///
///

15. I work in the same store as named plaintiff Betty Dukes. I have never heard other employees criticize Ms. Dukes' work performance. I have never had any complaints about Ms. Dukes' work performance.

16. I have personal knowledge of each and every fact set forth in the Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

I declare under penalty of perjury of the laws of the United States and State of California that the foregoing is true and correct.

This Declaration was signed by me on _Apric 7_____ (month and day), 2003, at _PITTSBURG, CALIFORNIA_____ (city and state).

_Earestine Gordon_
Earnestine Gordon

DECLARATION OF EARNESTINE GORDON IN SUPPORT            Case No. C-01-2252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                5

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Earnestine Gordon in Support of
## Plaintiffs' Motion for Class Certification

# EXHIBIT A

## WAL-MART PERFORMANCE REVIEW
## COURTESY DESK/LAYAWAY ASSOCIATE

NAME: Earnestine Gordon    TIME CARD #: 303.    OLD RATE: 5    NEW RATE: 6

ASSOCIATE #: 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    EFF DATE: 1-17-93.

TYPE OF REVIEW: (CIRCLE ONE)    90 DAY    6 MONTH    (ANNUAL)    SPECIAL    DATE OF REVIEW:

DATE OF HIRE: 11-17-92

INSTRUCTIONS: Circle the number for each performance rating that best fits the associate in each category.

RATING KEY:
5 – OUTSTANDING – Able to handle additional responsibility, area runs smoothly even in absence.
4 – EXCEEDS REQUIREMENTS – Searches for ways to improve a situation, able to perform job function with little supervision.
3 – MEETS REQUIREMENTS – Consistent in performance, completes all assigned tasks, area runs smoothly and in order.
2 – BELOW REQUIREMENTS – Not consistent in performance, requires great deal of supervision.
1 – NOT ACCEPTABLE – Work never up to Wal-Mart standards, unable to complete tasks assigned.
N/A – . Does not apply to this associate.

| KEY END RESULT | MEASURES OF ACCOMPLISHMENT | RATING |
|---|---|---|
| * LAYAWAYS DONE ACCURATELY | * All items boxed and labeled | 5 4 3 2 1 (N/A) |
| | * Layaway tickets reconciled daily and balanced with cash report | 5 4 3 2 1 (N/A) |
| | * No receipt refund maintained | 5 4 3 2 1 (N/A) |
| | * All defective slips done correctly and completely | 5 4 (3) 2 1 N/A |
| | * Maintains sales tax exempt records | 5 4 (3) 2 1 N/A |
| | * Maintains damaged/stolen log | 5 4 3 2 1 (N/A) |
| * ALL DEADLINES MET | * Duplicate tickets and paidout tickets matched and filed daily | 5 4 3 2 1 (N/A) |
| | * Pulls and cancels outdated layaways with management approval | 5 4 3 2 1 N/A |
| | * Bins checked monthly for correct and clean layaway area | 5 4 3 2 1 (N/A) |
| * JOB KNOWLEDGE IS GOOD | * Follows all layaway, refund and exchange policies | 5 4 3 2 1 (N/A) |
| | * Authorized charges done using approval list from manager | 5 4 (3) 2 1 N/A |
| | * Charge log kept updated | 5 4 (3) 2 1 N/A |
| | * Rainchecks written for merchandise sold out | 5 4 (3) 2 1 N/A |
| | * Supplies ordered with managers approval | 5 4 3 2 1 (N/A) |
| * KEY CONTROLS CHECK LIST IS FOLLOWED | * Refund ticket totals reconciled to refund total on the daily register reading | 5 4 3 2 1 (N/A) |
| | * Total of each void/error correction sheet reconciled to the total on the daily register reading on each register | 5 4 3 2 1 (N/A) |
| * SAFETY | * Area kept clean of all foreign objects and liquids | 5 4 (3) 2 1 N/A |
| | * Maintenance associate contacted for any spill which can not be removed without assistance | 5 4 (3) 2 1 N/A |
| | * Layaway area zoned, no boxes in the aisles | 5 4 3 2 1 (N/A) |
| * CUSTOMER SERVICE | * Greets all customers with a friendly smile | 5 4 (3) 2 1 N/A |
| | * Thanks customers by name when possible | 5 4 (3) 2 1 N/A |

ADD THE TOTAL OF ALL RATINGS $\underline{9}$ DIVIDE BY TOTAL NUMBER OF RATINGS THAT APPLY = $\underline{3.0}$

PERFORMANCE RATING

1). Describe overall performance (Punctuality, dependability, flexibility, attitude, etc...):

Earnestine is friendly + courteous. She is flexible + will work where ever she is needed.

2). Describe areas which need improvement:

Earnestine needs to work on following instruction given by CSM's + Management. She needs to work on keeping the Service Desk Neater.

3. Associate Comments:

I WOULD LIKE TO BE TRAINED ON MORE DETAILED FUNCTIONS OF AT THE COURTESY DESK, AS WELL AS THE CSM FUNCTIONS AND LAY AWAY. MY GOAL IS TO BECOME A MANAGER OF A DEPT. AND GO FROM THERE.

Earnestine Gordon    10. 6. 92    _____

ASSOCIATE SIGNATURE    SUPERVISOR SIGNATURE

WMHO 734915
CONFIDENTIAL

GORDON EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Earnestine Gordon in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT B

# ASSOCIATE EVALUATION

| NAME: Earnestine Gordon | POSITION: 1050 |
|---|---|
| SS#: 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    STORE: 1615 | AREA OF RESPONSIBILITY: 10 |
| REVIEW PERIOD: annual | CURRENT PAY RATE: 10.02 |
| FROM: 11-17-92   TO: 11-17-98 | NEW PAY RATE: 10.62 |

☐ 90 DAY          ☒ OUTSTANDING     ☐ STANDARD

☒ ANNUAL   ☐ FOLLOW-UP     ☐ ABOVE STANDARD   ☐ BELOW STANDARD

◆ PERSONAL DEVELOPMENT ◆

**1. RESPECT FOR THE INDIVIDUAL:**     (List strengths & areas of improvement)
- Servant Leadership    • People Development    • Honesty & Integrity Always    • Empowering Others
- Confidentiality    • Creates & supports a working environment that embraces the diverse backgrounds of others.

EARNESTINE IS AN EXTREMELY UNIQUE INDIVIDUAL WHOS HONESTY
AND PEOPLE SKILLS ARE SUPERIOR.

**2. SERVICE TO OUR CUSTOMERS (INTERNAL & EXTERNAL):** (List strengths & areas of improvement)
- Quality Always    • 10-Foot Rule    • Dress Code (name badge, vest, smock, etc.)
- Satisfaction Guaranteed (consistently meets or exceeds the Customer's needs).

EARNESTINE DEMONSTRATES CUSTOMER SERVICE TO OUR ASSOCIATES AS WELL
AS THE CUSTOMERS, CONSISTENTLY. SHE IS A LEADER AND A ROLE
MODEL WHO EVERYONE LOOKS TO FOR LEADERSHIP.

**3. STRIVE FOR EXCELLENCE (JOB SPECIFIC PERFORMANCE):** (List strengths & areas of improvement)
- Continuous Improvement    • Results-Driven    • Associate Accountability    • Store Within A Store
- Competitive Position    • Expense/Budget Responsibility    • Productivity    • Innovative    • Follow-up

EARNESTINE CONTINUES TO SHOW A GREAT INTEREST IN TRACKING
SALES FOR THE UNIT. THIS IS AN AREA WHERE EARNESTINE CAN
GROW IN TOWARDS WHATEVER SHE DESIRES.

**4. COMMUNICATION:**     (List strengths & areas of improvement)
- Expresses ideas clearly & concisely, written or verbal    • Asks questions when message is unclear
- Actively listens to, and keeps others informed

EARNESTINE IS A GREAT LISTENER AND COMMUNICATOR WHO
UNDERSTANDS DIRECTION VERY WELL. SHE ALSO COMMUNICATES THE
DEPARTMENTS PRIORITIES CLEARLY, VERBALLY AND WRITTEN.

10-17-98
A

WMHO 734898
CONFIDENTIAL

**GORDON EXHIBIT B**

**5. TEAMWORK / FLEXIBILITY:**    (List strengths & areas of improvement)
• Dependable (i.e. attendance, punctuality)   • Works well with others   • Promotes & maintains all safety requirements

EARNESTINE IS A TEAM PLAYER WHO IS VERY DEPENDABLE
AND IS THE BACKBONE OF OUR TLE UNIT.

**6. INITIATIVE / SENSE OF URGENCY:**    (List strengths & areas of improvement)
• Meets deadlines without daily direction  • CBL training complete   • Plans & organizes workload to react to changes

EARNESTINE SHOWS GREAT INITIATIVE TOWARDS DOING THE PAPERWORK.
EARNESTINE CAN IMPROVE HER URGENCY WHEN TAKING CARE
OF THE SALESFLOOR. COMMUNICATING THE URGENCY TO EVERYONE
CONSISTENTLY AS A SUPPORT MANAGER.

**◆OVERALL STRENGTHS◆**    Bullet-point comments are recommended

RESPECT FOR THE INDIVIDUAL
SUPERIOR CUSTOMER SERVICE
COMPETITIVENESS

**◆AREAS OF IMPROVEMENT◆**    Bullet-point comments are recommended

SENSE OF URGENCY ON THE SALES FLOOR.

**◆ASSOCIATE COMMENTS / GOAL SETTING◆**
List goals that will aid in your personal development & impact your area of responsibility. Attach additional pages if necessary.

| OBJECTIVES | MEANS OF MEASUREMENT |
|---|---|
| TO LEARN MORE ABOUT THE RESPONSIBILITIES OF THE TLE MANAGER | |
| BECOME MORE AGGRESSIVE IN LEARNING "PROFS" AND THE SALES REPORT. | |
| CONTINUE WORKING TOWARDS PERFECTION IN ALL AREAS OF MY JOB. | |

SIGNATURES:

| Associate's Signature: | EARNESTINE GORDON (Print Associate's Name) | 10-19-98 Date |
| Supervisor's Signature | MARTIN VANDENBER (Print Supervisor's Name) | 10-19-98 Date |
| Manager/Director Signature | (Print Mgr/Dir Name) | Date |

WMHO 734899
CONFIDENTIAL