Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
   RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:      626.585.9600
Facsimile:      626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF TERESA HAWKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA  94105
Telephone:  415.597-7200
Facsimile:  415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA  94105
San Francisco, CA  94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Teresa Hawkins, declare:

1.      I am female and a former employee of Wal-Mart. I reside in Nevada.

2.      I worked as an Assistant Manager Trainee and Assistant Manager at a Wal-Mart store in Las Vegas, Nevada, from January 13, 2001, to September 19, 2001. During my employment at Wal-Mart, I learned that several men working the same job as me, at the same store where I worked, were paid more than I was paid. Also, I was passed over for promotion from Assistant Manager to the salaried position of People Manager in favor of a male employee with less experience in human resource matters.

3.      Prior to working at Wal-Mart, I had about seven years of management experience working for two different national home improvement retailers in Nevada and in California. In 2001, my mother had major surgery and I had to leave my job as an Assistant Manager at Lowe's Home Improvement Warehouse in Bakersfield, California, and return to Las Vegas. Upon my return to Las Vegas, I sought a position in management with Wal-Mart.

4.      To apply at Wal-Mart, I faxed a cover letter and my resume to Regional Personnel Manager Debbie Moody at the Wal-Mart Home Office in Bentonville, Arkansas. (True and correct copy attached hereto as Hawkins Exhibit A.) Ms. Moody interviewed me in Las Vegas for a position as a Management Trainee. During the interview, Ms. Moody told me that Wal-Mart would soon be adding salaried People Managers to its Supercenters and other high-volume stores. Ms. Moody told me the position was a salaried position for large stores with a lot of employees and/or for stores with "employee morale" problems. I told Ms. Moody that I would be interested in a People Manager position, especially given my previous experience in human resources.

5.      I then had a second interview, with District Manager Chuck Salby. Mr. Salby asked me where I saw myself in four years, and I told him I saw myself in a People Manager position. Shortly thereafter, I was offered a position as a Management Trainee, which I accepted.

DECLARATION OF TERESA HAWKINS IN SUPPORT                          Case No. C-01-2252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                                                2

6.    When I started management training, Brenda Belmonte, District Manager Salby's assistant, told me that all Assistant Manager Trainees at the same store earn the same salary. However, I saw payroll records as part of my training in the Personnel Office, and learned that four male management trainees at my store earned substantially higher salaries than I did. Kenneth Narter, Karl Moser, Vincent Santos, and Ronald Tedesko each earned a monthly base salary of about $2,200, compared to my $1,900 monthly salary. Mr. Narter, Mr. Moser, and Mr. Santos all started management training after I did. Mr. Tedesko started management training less than a month before I did.

7.    I used the Open Door to complain about my lower rate of pay to Co-Manager James Eble and to Store Manager Bob Knickerbocker, but I never received a satisfactory response. I do not know any legitimate explanation for the difference in our salaries.

8.    While I was a Management Trainee, I observed that the male trainees, including Bill Mikesell, Mr. Moser, and Mr. Santos, received more thorough training than I did. Specifically, I was frequently assigned to work in the Personnel Office or with the Cashiers during my training period. However, I observed male Assistant Managers in training sessions with various Assistant Managers or working through their Assistant Manager training manuals. The male Management Trainees received more training in the merchandising aspects of managing a store, which are essential skills for a Store Manager. I, however, received more limited training. I was also given an Assistant Manager training manual, which had spaces for the Store Manager to initial and indicate my progress. However, Mr. Knickerbocker never initialed my training manual. I observed that the training manuals of the men mentioned above were initialed by Store Manager Knickerbocker. I made several appointments with Mr. Knickerbocker to review my training manual, but he never kept an appointment with me to discuss my training.

9.    While I was a Management Trainee, I told Store Manager Knickerbocker that I was interested in the People Manager position, which I had originally learned about from Ms.

Moody. I told him that my career goal was to move into a human resources management position, and I described to him my previous experience in human resources. Mr. Knickerbocker told me he would discuss the promotion with District Manager Salby. Soon thereafter, I saw Mr. Salby at a meeting and asked him whether Mr. Knickerbocker had conveyed to him my interest in and qualifications for the People Manager position. Mr. Salby told me to schedule a meeting with Mr. Knickerbocker to review in detail my qualifications for the People Manager position, even though Mr. Salby already had my resume, which listed my previous experience in detail. See Hawkins Exhibit A. Mr. Knickerbocker never responded to my requests to schedule such a meeting. During the same period of time, I searched but could not find a written description of the job on Wal-Mart's internal computer system. I also never saw any open People Manager positions posted in the store or on the computer.

10.     I was promoted to Night Receiving Manager on about May 5, 2001. Store Manager Knickerbocker told me I was being assigned to the overnight shift because I had extensive experience in human resources and because that shift had "morale problems." I reminded Mr. Knickerbocker of my interest in the position of People Manager, and he told me I had to spend at least six months as a Night Receiving Manager before I could be considered for a People Manager position. I agreed, reluctantly, although I could not see the connection between the responsibilities of a Night Receiving Manager and a People Manager.

11.     While I worked as Night Receiving Manager, night shift employees asked me several times to tell Store Manager Knickerbocker that they wanted to use the Open Door policy to speak with him regarding concerns with their working conditions. The Open Door policy states that employees can make complaints to any manager with the knowledge that they will be listened to and that they will not be retaliated against. When I talked to Mr. Knickerbocker on their behalf, on one occasion he told me to tell them he was "too busy." On another occasion, Mr. Knickerbocker told me he was only willing to talk to the employees as a group. I also informed Mr. Knickerbocker after a female employee, Trina Durham, told me that other

employees were sexually harassing her. Mr. Knickerbocker told me that he was not going to investigate her complaint.

12.    I personally complained to Mr. Knickerbocker while I was Night Receiving Manager because a male stocker named Mo (last name unknown) had continued to sexually harass me despite having been verbally coached by management for harassing me. Mo wrote me sexually explicit notes, followed me around the store, commented on my mode of dress, and waited for me in the parking lot after my shift. Mr. Knickerbocker told me that he would not investigate my complaint and that I should "sit down with him" myself. I also observed that Mr. Knickerbocker refused to investigate when several female Cashiers complained of sexual harassment by Mo.

13.    In late May or early June 2001, District Manager Salby announced at an Assistant Managers' meeting that he had selected Assistant Manager Dennis Talley for promotion to a new People Manager position at our store. The People Manager position was not posted, nor was I informed that the position was available. I was astonished that, even though three different managers knew of my interest and qualifications, I was not even given the chance to interview for the People Manager position.

14.    The hourly Personnel Manager at our store, Marilyn Wall, later told me that Mr. Talley had no personnel experience. He had previously only worked as a Wal-Mart merchandising manager, whereas I had experience as a human resources manager from my prior employment. I also learned that Mr. Talley never worked six months as Night Receiving Manager, which I had been told was required.

15.    I was terminated in September 2001 while on an approved medical leave of absence. I used the Open Door to complain in writing about my termination to District Manager Salby and to Michael Walker in the Bentonville Home Office. I never received a response as to why I had been terminated, which is a violation of the company's Sundown Rule. The Sundown Rule requires managers to respond the same day to any complaint by an employee or customer.

DECLARATION OF TERESA HAWKINS IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

5

16.     I filed a charge of discrimination against Wal-Mart with the State of Nevada Equal Rights Commission in February 2002, charging retaliation and discrimination based on gender and disability. I was later forced to drop the charge because I was in the hospital with a serious illness when the statute of limitations passed.

17.     I would consider returning to a management position at Wal-Mart, if I could be sure that my salary would be equal to that of male employees with similar experience working the same job and that my career opportunities would not be limited by gender-based stereotypes.

18.     I have personal knowledge of each and every fact set forth in the Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

I declare under penalty of perjury of the laws of the United States and State of Nevada that the foregoing is true and correct.

This Declaration was signed by me on 04/13/03 (month and day), 2003, at Las Vegas, NV (city and state).

Teresa Hawkins

DECLARATION OF TERESA HAWKINS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Teresa Hawkins in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT A

11/13/2000 18:18   7025399591           TERESA HAWKINS           056058#06

=== COVER PAGE ===

TO:      501-273-4780

FROM:    Teresa Hawkins

    FAX:

    TEL: 702-638-9591

        PAGE[S] TO FOLLOW

COMMENT:

    DSMOODY Region 2



WMHO 912245
CONFIDENTIAL

**HAWKINS EXHIBIT A**

11/13/2000  18:18    7825389591                    TERESA HAWKINS                    05/09/00 /06

6170 W. Lake Mead Blvd. #169
Las Vegas, Nv. 89108
October 9, 2000

To Whom It May Concern,

I believe my experience and solid record of achievement make me an ideal candidate for
a position in your company.

I have over 7 years of management experience working for national home improvement
retailers. I began as a cashier supervisor in 1992 in Las Vegas, NV. In 1993, I transferred
to Fresno, CA. in order to open a new store. I was then promoted to Customer Service
Manager and was trained in all areas of operations and administrative duties. In 1995, I
was promoted to Assistant Store Manager. I received advanced training in Human
Resources, labor law, employee relations, substance abuse, discrimination issues and loss
prevention. Due to a family illness, I have returned to the Las Vegas area and am looking
for a satisfying and fulfilling career.

Prior to my employment in retail, I was employed in the Hotel/Casino field. My basic job
duties included customer service and heavy cash handling.

I attended the University Of Kentucky and majored in Nursing. I attended a week long
manager training course in San Francisco that covered various business topics,
motivating others and achieving personal success. Shortly thereafter I was notified that
my employees had nominated me for Fresno's Business Woman Of The Year. I was not
fortunate enough to win but was very proud of finishing in the top percentile.

Please contact me at 702-638-9591 or 702-221-7071 if you require additional
information.

Thank you for your consideration and I look forward to hearing from you soon.

Sincerely,
Teresa Hawkins

WMHO 912246
CONFIDENTIAL

11/13/2000  18:10    7026389591        TERESA HAWKINS                05 PAGE 06

8170 W. Lake Mead Blvd.    Phone 702-838-8591
#108                       Message 702-221-7071
Las Vegas, NV. 89106

# Teresa Hawkins

**Work experience**

02/2000 – 10/2000  Lowe's Home Improvement Warehouse

**Assistant Manager**

- Understand and implement business tactics (e.g., merchandising), Training, coaching, and developing new associates, Opening/closing store, Hiring of associates as necessary, Providing and inspiring service to customers, Leading others and building a team to achieve results, Control inventory and time in order to achieve results, Conduct orientations for new associates, Complete understanding of all operational areas of the store, Ability to understand and respond to all financial reports, Ensure adequate scheduling of associates by utilizing labor management reports, Write associate performance reviews, Loss prevention and shrink control, Maintain associate personnel files.

1995-1996  Home Depot

**Assistant Manager**

Responsibilities included all of the above

1992-1995 Home Depot

**Customer Service Manager**

Provide assistance to cashiers and respond to all questions regarding cash register transactions, Supervise the front end of the store, Approve voids, checks, etc., Ensure adequate scheduling, Monitor customer flow activity at the front entrance of the store, Understand all areas of the return desk and special order desk, Ensure all front end associates are trained to provide excellent customer service.

**Education**

Bourgade High School
University Of Kentucky
Certificate, Home Depot Manager Training

WMHO 912247
CONFIDENTIAL