Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
  RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:    626.585.9600
Facsimile:    626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF ANGELA HORTON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

Decl. of Angela Horton in Support of Plaintiffs' Motion for Class Certification          Case No. C 01-CV-2252-CRB

I, Angela Horton, declare,

1. I make this declaration on the basis of my personal knowledge and, if called as a witness, could and would testify competently to the facts in it.

2. I was an employee of Sam's Club from October 1996 until I left the company in July of 2000. In my nearly four years at Sam's Club, I worked in six different stores in two states (Minnesota and Wisconsin). Before joining Sam's Club, I was a petroleum lab specialist in the Wisconsin Army National Guard for five years while working in several different jobs, including as a child care provider and health aide.

3. At Sam's Club, my goal was to become a Fresh Area Assistant Manager. Fresh Area Assistant Managers are responsible for maintaining inventory level and product standards in the department, supervising and training workers, and ensuring compliance with sanitation requirements. I encountered repeated roadblocks in achieving this goal, including poor treatment by management, delayed entrance into the Management in Training program, and, once in that program, inadequate training on skills critical to running a Fresh Area department. When I finally obtained the position, I learned that I was paid substantially less than similarly-situated males. I was scapegoated for poor decisions made by the male General Manager. Ultimately, I left Sam's Club because of the poor management practices, which I believed endangered public health.

4. I was hired as a part-time produce/stocker in the Onalaska, Wisconsin club, making $6.00 an hour. After two months, I was promoted to a full-time team leader, where I remained for 16 months. During that time, I asked for forklift training in order to improve my job efficiency, but was told by Tim [Last Name Unknown], who ran the forklift and did the training, that I was too short and would not be able to see over the steering wheel. I protested to Meat Manager Ben Spanjers, who told me "he has a point, Ang."

5. In late Winter 1997, the "Spirit Committee," one of the company-sanctioned, employee-led committees to improve morale, hired a stripper for General Manager Jeff Marmer's birthday. The stripper performed in the store in front of all the employees and managers during the

DECLARATION OF ANGELA HORTON IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

mandatory morning staff meeting, stripping down to her bra and panties while dancing to music and mixing a cake on his lap. Although I felt the stripper was inappropriate and I was embarrassed by the display, I did not use the Open Door policy to protest this incident because I had overheard Meat Manager Spanjers call the women who did complain about the stripper a "bunch of whiners." I was afraid of being labeled a whiner, facing possible retaliation, and hurting my chances for promotion.

6. At my six-month review in March 1997, I wrote as my goals to "increase overall knowledge and skills within Fresh Department; advance to higher level of responsibility within merchandising or buying within Fresh." Attached hereto as Exhibit A is a true and correct copy of my March 1997 Sam's Club Associate Evaluation Form. Despite my clear request, my manager did not offer me any training. In order to achieve the goals I had laid out in my evaluation, for the next six months I taught myself by reading produce magazines, exploring Sam's Club merchandising reports on the computer and seeking out information from other employees, such as Quality Control Inspector Craig Millie. I also received a "Partner of the Month" award and several commendations for doing a good job increasing sales and putting together demos.

7. Before my one-year review scheduled for September 1997, General Manager Marmer approached me and asked me what my goals were. I told him I was interested in the Management in Training program and wanted more information about it. After explaining the program to me, he told me that I had a good chance of making it into the program. In September 1997, at my one-year review, I again spoke with Meat Manager Spanjers about my interest in the Management in Training Program so that I could become a Fresh Area Manager. He told me that he supported my goals. In addition, I wrote in the Associate's Career Goals section of my written evaluation, "desire to move up within fresh, receive training in meat, possibly fresh management." Attached hereto as Exhibit B is a true and correct copy of my September 1997 Sam's Club Associate Evaluation Form. General

DECLARATION OF ANGELA HORTON IN SUPPORT OF                    Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Manager Marmer left the store in late September and no one else spoke to me about my interest in the training program until November 1997.

8. I expressed my interest in the training program to the new General Manager Catie Conneally in November. General Manager Conneally told me that Director of Operations Michael Matheson would interview me the next time he was in the store. When he arrived at the store soon after, he told me that the process had changed. He explained that there was no formal application process. Instead, the general managers at each store would identify associates who should be considered for promotion, and then those associates would take part in a series of interviews in the Twin Cities.

9. I was excited to begin this process. I repeatedly asked General Manager Conneally and Regional Fresh Merchandiser Bruce Burlson about when I would be interviewed for the training program. Finally, I used the Open Door to question the delay, yet I still heard nothing about the interviews or the program. In February 1998, I was finally interviewed for the Management in Training program by Regional Sales Manager Doug Persley, Duluth's General Manager Jim Caeser, Divisional Personnel Director Diana Eldridge, and St. Louis Park's General Manager Tim Kotiranta. I was chosen for the program and began training in Onalaska in March.

10. The Management in Training program for Fresh Managers consisted of being trained by a Fresh Manager for several months and reading self-taught training materials. Meat Managers Spanjers was assigned to train me, but he actually did very little of that training. He had associates Don Witt and Donovan Scott train me on how to cut meat and he spent very little time training me on how to run the department. I had observed three other trainees, Don Lindstrom, Jerry Swanda and Jenny Trombley, go through the program before me and they received more training on how to structure the department, including how to manage staffing, payroll and ordering. Instead Meat Manager Spanjers spent most of his time training Team Leader Chris Forde (male), who was not even a trainee, on how to run the department. Although I recognized the importance of being trained to cut meat, I felt that these

4

DECLARATION OF ANGELA HORTON IN SUPPORT OF                Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

management skills were far more important, particularly if I wanted to advance further in the company. Based on his behavior during the training and throughout my time at the Onalaska store, I believe that Meat Manager Spanjers was not truly committed to my training or my success and had chosen to groom the male employees instead. Spanjers specifically told me that, because of my physical size, I would not be able to handle the physical work of the position. Even if this had been true, which it was not, it did not explain why he did not train me on other critical management functions such as ordering and staffing. My belief was reinforced by comments made by Chris Forde and tolerated by Spanjers. He often referred to me as "little woman," and I once overheard him calling Jenny Trombley "broad." I protested these comments to General Manager Conneally and Meat Manager Spanjers, but the behavior did not stop.

11. In June 1998, I was promoted to Fresh Manager for Meat and Produce and was sent to the St. Cloud store to set up the fresh department, which was being added to the club. Because construction had not yet begun on the Meat and Produce department there, I worked in three Twin Cities clubs until construction began on the department in October 1998. While I was working at the three Twin Cities clubs, I trained many of the new Fresh Managers. Even after the Meat and Produce department at the St. Cloud store opened, I continued to have responsibility for training new Fresh Managers even after the St. Cloud store opened. While training them on how to calculate their monthly profit and loss statements, I discovered that many of these individuals, including Don Lindstrom and Doug Thompson, were paid $5000 to $10,000 more than I was for the Fresh Manager position. I protested this discrepancy with General Manager Kevin Shields who spoke with Regional Director Michael Matheson, who in turn spoke with Divisional Director Michael Miller in December 1999. In January 2000, I got a $2000 raise, which management later called a "market adjustment." My salary was still well below the amount that the male Fresh Managers were making, even though I was training them how to do their jobs.

DECLARATION OF ANGELA HORTON IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

5

12. Once I began working full-time in the St. Cloud as Meat Manager, I was not allowed to make many decisions about which products to merchandise and promote, and how many workers to hire. Instead, General Manager Kevin Shields told me to stock products that I felt would not sell or be profitable, and told me to hire more employees than I felt necessary. As a result, my department did not run at a profit. I expressed my concerns about the way the department was being run to General Manager Shields who told me that I would not be held responsible for the loss of profit. I also registered my disagreement with the General Manager's merchandising decisions to Co-General Manager Neil Gwynne and Director of Operations Matheson, who told me to follow General Manager Shield's orders. Finally, I raised my concern with Fresh Merchandiser Carl Kramer. Although Fresh Merchandiser Kramer agreed with me, I did not see any follow up from these complaints.

13. After Kramer left the company, his replacement, Fresh Merchandiser Jim Hancock, held a meeting with me, General Manager Shields and itinerant Fresh Merchandiser Spanjers to discuss the department's lack of profit. At that meeting, Shields told Hancock that I was running the department according to his direction. Hancock and Spanjers told me to cut staff and product. Shields still did not express agreement with Hancock on how to run the department. Confused about whose direction to follow, I cut some product, but for the most part continued to follow General Manager Shields' orders. At my six-month evaluation in September, I got a standard score despite the fact that my department had lost nearly $80,000 dollars.

14. Six months later, five days before my one-year evaluation, I got a verbal coaching from Merchandise Manager Ralph [Last Name Unknown] about the lack of profitability in my department. Johnson and Shields were present for this coaching. When I explained to Merchandise Manager Ralph [Last Name Unknown] that I was running the department at Shields' direction, Shields became upset, saying loudly, "don't try to turn this back on me now" and slamming a chair under his desk. At my evaluation, I got a substandard score.

DECLARATION OF ANGELA HORTON IN SUPPORT OF                                    Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

15. In May, I noticed that General Manager Shields was flirting with several female associates, Vicki [Last Name Unknown], Jennifer [Last Name Unknown], and Pepper [Last Name Unknown]. I saw that he took them out to lunch and spent a lot of time hanging out with them. Shields often did not return his pages and did not check in with employees in the Meat Department before closing the store. Some of the employees told me that he inadvertently locked the employees in the Meat Department in the store and they had to leave out the receiving dock platform. I spoke with Co-General Manager Johnson and told her that I felt this flirting was interfering with Shields doing his job properly. Johnson told me she had received complaints from several associates. I did not see any changes as a result of these complaints.

16. Two weeks after complaining to Johnson about Shields, I was demoted for "bad leadership," and for running an unprofitable department. In fact, my department had turned a profit in March, April and May 2000. I was replaced by a male, Dave Donnick, who later told me that Divisional Director Miller commended him for the three months of profit that had actually occurred under my leadership.

17. I immediately protested my demotion through the Open Door with Director of Operations Matheson. Matheson told me that he thought my demotion was the right decision and that he had already decided to transfer me back to the Onalaska store. I told him that I did not want to go back to the Onalaska store so he instead transferred me to the Northside Milwaukee store. In the Northside store, I first noticed sanitation problems in the meat department. I complained to two different assistant managers about the issues. Jeff Lemay, Regional Fresh Merchandiser also overlooked these problems.

18. One month later, I was transferred to the West Allis store to promote their rotisserie program. Over the next few weeks, I observed many sanitation violations at this store as well, and was extremely concerned about the food handling practices. I complained to the West Allis new General Manager Michael Hitz about the sanitation and food handling violations, but nothing

DECLARATION OF ANGELA HORTON IN SUPPORT OF                    Case No. C-01-2252 MJJ
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

was done.  Not wanting to take part in serious health code violations and feeling like I was not being taken seriously, I decided to leave the company.

I declare under penalty of perjury of the laws of the United States and of the State of Wisconsin that the foregoing is true and correct.

This declaration was signed by me on _April 12th_, 2003 at Watertown, Wisconsin.

Angela Horton

DECLARATION OF ANGELA HORTON IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

8

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Angela Horton in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT A

SWC 502 (8-90)

**SAM'S CLUB**
**ASSOCIATE EVALUATION FORM**

Hired. 10-22 96
Due - 3-24 97
Date of Review: 5-22-97

Name *Angela Horton*                    Social Security No. 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

**REASON FOR THIS EVALUATION** (Circle one or more)

1 - 90-day Evaluation        2 - Periodic Review (6 month)    3 - Pay Increase-Anniversary
4 - Promotion                5 - Pay Increase-Merit           6 - Demotion
7 - Transfer                 8 - Warning (Probation)          9 - Termination

This form has been developed to help you fairly and factually evaluate your hourly associates' ability to perform their job functions. Be sure you are thorough, truthful, factual and fair on the evalution and discuss the positive and negative points.

The form is divided into two parts. The first is an evaluation of the associate's general job performance. The second part, on an insert sheet, is related to the technical skills and specific job responsibilities, and will differ with each job classification. Please attach these two documents before filing the evaluation in the personnel file.

**JOB PERFORMANCE**

(CIRCLE NUMBER OF RATING WHICH DESCRIBES ASSOCIATE'S PERFORMANCE)

**INITIATIVE** - The degree to which the associate acts independently in new situations; the extent to which he/she sees what needs to be done and does it without being told.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Little or no supervision needed. Highly resourceful and aggressive. | Thinks and acts independently. Resourceful in new situation. | Initiative is satisfactory. Requires average supervision. | Requires frequent instructions. Needs close supervision. | Must be told everything to do. Takes no personal initiative. |

COMMENTS: *Angela on her own chooses her damage items that appeal to members. She builds and displays on her own sucker standards & bananas. The items come in, she doesn't complain, she gets to it & after to end for sale & demos. - furnitures, patio, etc.*

**PRODUCTIVITY** - The actual work output of the associate relative to other associates. Consider what he/she actually produces rather than what the associate is capable of producing.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Definitely a top producer. | Produces more than most; above average. | Average output; definitely meets requirements. | Low output; below average. | Extremely low output; definitely not average. |

COMMENTS: *Works very hard. So smooth & hands-on when her rule get done, get it stocked in a timely manner. Produce has looked better than ever. Even if I'm not there & never question what there is here when I'm not around. Does ___ to ___ as I, __ 5, done - ___.*

CONFIDENTIAL

WMHO 104301

EXHIBIT A

JUDGMENT - The extent to which the associate makes decisions which are sound. Freedom from impulsiveness and immaturity in his/her thinking. Ability to base his/her actions on fact rather than emotion.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Unusual rational powers; astute in analyzing facts and solving problems; no impulsive decisions. | Better than average judgment; very mature and sound in his/her thinking. | Generally thinks rationally; not immature or illogical; has healthy respect for facts. | Sometimes fails to consider facts and makes error of judgment the average person would avoid. | Frequently makes judgments which are unsound; immature in thinking and judging. |

COMMENTS: _She does a nice job of judging things on her own. Rarely do I have to change displays onto lessen her internal arriving quantities. She usually knows if she isn't sure she asks, a very fair thinker. Makes very rational decisions based on the facts presented before her. Knows what needs to be done and takes proper channels to the ___ exists in explaining (reasoning) things well before it happens (someday) down day in and ___

SAFETY - The development of work habits that prevent injury & loss, and promote ___ cleanliness. The observation of rules, laws and regulations regarding safety and cleanliness.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Innovates safety ideas; observes all rules and regulations; has obtained the maximum level of cleanliness. | Goes out of his/her way to promote safety and cleanliness. | Observes all safety rules and regulations. Takes necessary steps to ensure cleanliness. | Oberserves some rules but needs definite improvement to meet safety and/or cleanliness standards. | Does not observe any rules or regulations concerning safety and/or cleanliness. |

**CONFIDENTIAL**

COMMENTS: _Uses proper ___ techniques, keeps a neat, straight, + clear deck free of trash + debris that could cause a member/kitchen accident. Wears weight belt, keeps cooler organized + reports from demo staff to contaminate food product. She should wash demo + utensils, and ___ They are in. Doesn't eat her confection product that could taint customer relations. - Keeps her pallets straight + need. ___

COURTESY TOWARDS CUSTOMERS - Respect, consideration, cooperation for the needs and wants of the customer.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Shows definite ability to detect the needs and wants of the customer; promotes customer cooperation. | Shows above average consideration and respect for the customer. | Is considerate and respectful toward customer; is cooperative in helping them fulfill their needs. | Indifferent toward customer; requires instruction on the importance of courtesy toward customers. | Has exhibited some rudeness toward customer; immediate change to correct this situation must be made. |

COMMENTS: _Good P.R. relation with ___. Angela creates excitement in her ___ with her trademark demos. ___ sure to ?? if a member has a question in another ___ she walks them to the product in question or to a partner that can ___ important._

WPK/FMS207-S/G2B6M-3

WMHO 104302

## EVALUATION SUMMARY

1. Identify what you consider to be areas that require improvement. List how these areas are to be improved and time limits within which improvements should be recognized. If you have any problems with attendance, it should be covered here.

_[handwritten text]_

2. Identify what you consider to be the major strengths of the associate. These could be personal attributes, job performance or technical skills.

_[handwritten text]_

3. Discuss improvement made by associate since last review as related to recommendations for improvement.

_[handwritten text]_

## CAREER GOALS

What are the associate's career goals? Does he/she desire to achieve higher job responsibilties with the company? These comments should be made by the associate.

_[handwritten text]_

## ASSOCIATE COMMENTS

Wal-Mart is a company which strongly believes in the "Open Door Policy" and we encourage the associate to make any comments on this evaluation. If you have questions or problems, feel free to discuss them with your supervisor. (Use blank sheet of paper for additional comments)

New Rate of Pay _[handwritten]_  Effective Date 3-23-97

_Associate_  _Supervisor_  Date Signed 3/23/97

**CONFIDENTIAL**

WPK/FMS207-5/0286M-4

WMHO 104303

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

### Declaration of Angela Horton in Support of
### Plaintiffs' Motion for Class Certification

# EXHIBIT B

SWC 502 (8-90)

(4.11)

**SAM'S CLUB**
**ASSOCIATE EVALUATION FORM**

Hired 10-24-96
Due - 9-24-97
Date of Review: _____

Name __ANGELA HORTON__    Social Security No. _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_

<u>REASON FOR THIS EVALUATION</u> (Circle one or more)

1 - 90-day Evaluation       2 - Periodic Review (6 month)    3 - Pay Increase-Anniversary
4 - Promotion               5 - Pay Increase-Merit           6 - Demotion
7 - Transfer                8 - Warning (Probation)          9 - Termination

This form has been developed to help you fairly and factually evaluate your hourly associates' ability to perform their job functions.  Be sure you are thorough, truthful, factual and fair on the evalution and discuss the <u>positive</u> and <u>negative</u> points.

The form is divided into two parts.  The first is an evaluation of the associate's general job performance.  The second part, on an insert sheet, is related to the technical skills and specific job responsibilities, and will differ with each job classification. Please attach these two documents before filing the evaluation in the personnel file.

## JOB PERFORMANCE

### (CIRCLE NUMBER OF RATING WHICH DESCRIBES ASSOCIATE'S PERFORMANCE)

<u>INITIATIVE</u> - The degree to which the associate acts independently in new situations; the extent to which he/she sees what needs to be done and does it without being told.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Little or no supervision needed. Highly resourceful and aggressive. | Thinks and acts independently. Resourceful in new situation. | Initiative is satisfactory. Requires average supervision. | Requires frequent instructions. Needs close supervision. | Must be told everything to do. Takes no personal initiative. |

COMMENTS: _Angie is very resourceful & aggressive to get when she Dr. B is good at getting products to the provertimele + create attractive displays. Once in a great while will.. again need repair or crooked but minor._

<u>PRODUCTIVITY</u> - The actual work output of the associate relative to other associates. . Consider what he/she actually produces rather than what the associate is capable of producing.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Definitely a top producer. | Produces more than most; above average. | Average output; definitely meets requirements. | Low output; below average. | Extremely low output; definitely not average. |

COMMENTS: _Angie is a hard worker. She performs her job at a high level, and she take pride in what she does. Angie is trying in getting trucks put away, & doing the best w/ the truck but she strives Glad to have Angie is my dept._

**CONFIDENTIAL**

WMHO 104304

EXHIBIT B

EFFORT - The degree to which the associate does his/her best to be a top associate (without regard to how effective he/she may be). Consider conscientiousness and motivation.

| (5) | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Intensely motivated. Exerts maximum effort. | Exerts more effort than most. A hard worker. | Satisfactory effort; average motivation. level. | Low motivation could perform much better than he/she does. | Exerts effort only when he/she is forced to do so. |

COMMENTS: _This is a three onto Angie comes well, demos, occasional A-m samples at meetings, religious ent circle audits and Monday produce reports. Angie helps in other areas where needed ith complaint. Angie takes on liabilities time to fix, computer challenged._

DEPENDABILITY - The extent to which the associate can be depended upon to be available for work and to do it properly. The degree to which he/she is reliable, trustworthy and persistent.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Completely reliable highly persistent finishes a job at any cost to him/herself. | More reliable than average; usually persists in spite of difficulty. | Trustworthy and reliable; needs average direction; about average in persistence. | Sometimes unreliable; avoids responsibility; satisfied to "get by". | Usually unreliable; does not assume responsibility; gives up easily. |

COMMENTS: _Angie is generally dependable. Occasional schedule adjusting as well as a few. Is not coming in once. Needs to be more aware of the schedule & who covers in when. Angie's work quality is not ever in question at all_

JOB KNOWLEDGE - Knowledge of the techniques, processes, procedures, products, equipment and materials required to do the job.

| (5) | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Authoritative knowledge of his/her own work and superior knowledge of related jobs. | Well-informed about his/her own job and related jobs. | Satisfactory knowledge of his/her job and sufficient knowledge of related jobs. | Minimum knowledge for doing his/her job. | Lacks knowledge to perform work properly. |

COMMENTS: _Angie with change in policies & procedure. She focus P.I. adjustment & calls OC. Keeps me informed about all types opportunities. Step outry & audits work. Need to follow through decrease liabilities by deleting items, anyway knows on quality & sizes & market of produce._

COOPERATIVENESS - Willingness to work harmoniously with others in getting a job done. Readiness to observe and conform to the policies of management. Maintenance of an attitude toward others that makes working together comfortable.

| 5 | 4 | (3) | 2 | 1 |
|---|---|---|---|---|
| Extremely cooperative stimulates work and good attitudes in others. | Goes out of his/her way to cooperate and get along. | Cooperative; gets along well with others; has a good attitude. | Indifferent; makes no effort to cooperate. | Extremely negative and hard to get along with. |

COMMENTS: _Angie has well and knows Manny understand who come during all for is the item this are has known who they need to be for is anyone_

CONFIDENTIAL

WMHO 104305

## EVALUATION SUMMARY

1. Identify what you consider to be areas that require improvement. List how these areas are to be improved and time limits within which improvements should be recognized. If you have any problems with attendance, it should be covered here.

_Working DFL everyday. Do we? Given 5 or 10 days of apples? Could we? what would it take? Stand back & take "aliders" off - notice things you would normally notice & fix them. Always search for a better way to get to the next level._

2. Identify what you consider to be the major strengths of the associate. These could be personal attributes, job performance or technical skills.

_Strong drive to get things prioritized & done correctly. Angie knows & has a good sense of urgency. Angie is strong w/ basic functions and has very good knowledge overall of the job._

3. Discuss improvement made by associate since last review as related to recommendations for improvement.

_Backroom - done a lot to keep it clean + straight - Thank-you! Overall organization from cooler to line to back room has been a great turnaround!_

## CAREER GOALS

What are the associate's career goals? Does he/she desire to achieve higher job responsibilties with the company? These comments should be made by the associate.

_Desire to move up within Fred, receive training in meat possibly Fresh mgmt. This last year in Produce has been a huge learning + growth opportunity. Thanks for the challenge & positive feedback!_

## ASSOCIATE COMMENTS

Wal-Mart is a company which strongly believes in the "Open Door Policy" and we encourage the associate to make any comments on this evaluation. If you have questions or problems, feel free to discuss them with your supervisor. (Use blank sheet of paper for additional comments)

New Rate of Pay _+ 40 ¢_          Effective Date _____

_____          _____          _9-22-97_
Associate                          Supervisor                          Date Signed

**CONFIDENTIAL**                   _Angie - what next? what are your goals? Appreciate your efforts & you personally i - th. dept and_

WMHO 104306

WPK/FMS207-S/0286M-4