Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:     626.585.9600
Facsimile:     626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF STEPHANIE ODLE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

2.     I am thirty-one years of age, female and I was discriminated against by the male management of Wal-Mart who wrongfully denied me a promotion to Co-Manager, retaliated against me because I complained about gender discrimination and wrongfully discharged me to make available a managerial position for a male manager from another store.

3.     On November 21, 1991, I was hired by Wal-Mart as an hourly associate to work at the Sam's Club in Lubbock, Texas.

4.     I transferred to the Dallas, Texas, Sam's Club in 1992; to the Yuba City, California, Sam's Club in February 1993; and to the Vacaville, Califomia, Sam's Club in June 1993.

5.     When I applied for transfer to the Vacaville store to be closer to my husband who was in the U.S. Marines, stationed at Concord, California, I was told by Mr. David Blackwell, the Operations Assistant Manager for the new store in Vacaville, that he could not offer me a promotion to a full-time Check Out Supervisor (COS) position because I "made too much money." Even though I complained about this discrimination, in order to get the promotion, I was forced to take a $.50 per hour cut in my hourly rate. When I later helped out in the Personnel Department at the Vacaville store, I learned that two men who transferred when I did from the Yuba City store to the Vacaville store to become supervisors like me did not have their pay cut like mine was.

6.     In late 1993, I became the Cash Office Lead in the Accounting Office in the Vacaville store. I was promoted into the Assistant Manager training program in September 1994. There was a shortage of managers in Vacaville and nearby stores because Wal-Mart had just acquired a number of PACE stores, and many of the PACE managers had left. Openings for these positions were not posted, so I went to the Operations Assistant Manager and inquired about the opportunity to become a manager. I was referred to Mr. Bob Alderman, Director of Operations. I then met with Mr. Alderman to request a promotion, which Mr. Alderman approved.

7.     I relocated to Sacramento, California, to begin my assistant manager training at the Roseville, California, Sam's Club on September 4, 1994. After receiving only six of the 16 weeks of training, Mr. Alderman told me that he needed an Assistant Manager in the Receiving Department at the store in South Sacramento, California, so I accepted that position.

8.     The General Manager at the Sacramento store was Mr. Chris Udderman who told racial and sexually-oriented jokes at managers' meetings. When I attempted to get Mr. Udderman to approve raises for two women in the Claims Department to make their pay equal to the men

2

working in the Receiving Department, Mr. Udderman said, "Those girls don't need any more money; they make enough as it is."

9.    I reported Mr. Udderman's discriminatory conduct to Director of Operations Alderman, but apparently no action was taken. I was not interviewed about Mr. Udderman's conduct, and I was never told of any outcome. His inappropriate comments continued. Because nothing effective was done about Mr. Udderman's behavior, I requested a transfer to the Riverside, California, store and moved there in April 1995.

10.   After about a year at the Riverside store, I was asked by the District Director of Operations, Mr. Phil Goodwin, to do a special project relating to clubs with high inventory loss or "shrinkage." In 1996, while I was at the Riverside store, I learned that another male Assistant Manager in my store, Mr. Mario Arenales, was making over $10,000.00 more than me (his W-2 tax form was given to me by an hourly associate who discovered it left in the Receiving Office), yet he had less experience with Wal-Mart than me. I complained about this gender pay disparity to Mr. Goodwin.

11.   In response to my complaint, Mr. Goodwin said, "Mario supports his wife and his two kids." I told Mr. Goodwin, "I'm having a baby; I need to support my daughter." Mr. Goodwin then humiliated me by requiring me to provide him with my personal household budget so he could decide whether or not I deserved to receive pay equal to Mr. Arenales. I am unaware of a similar request ever being made of a male Assistant Manager. Nevertheless, I prepared my household budget and gave it to Mr. Goodwin and received a raise of only approximately $40.00 per week. This raise, of course, did not bring my salary anywhere near to parity with Mr. Arenales' salary.

12.   In March 1997, I transferred to one of the Sam's Clubs in Las Vegas, Nevada, as the Assistant Manager for the Merchandise Department. Within a few days after arriving in Las Vegas, I was called back to the Riverside store for a meeting with Mr. Carlos Doubleday, Director of Operations; Mr. Carl Brown, Regional Loss Prevention Manager; and Ms. Chris Schilling, an Assistant Manager at the Riverside store, who was present as a "witness." During this meeting, I was wrongfully accused of making incorrect audit entries "understating shrinkage", even though these entries had been approved at the time by Mr. Brown and by Mr. Goodwin. Other male General Managers in the region had made similar entries. At the end of the meeting, Mr. Doubleday asked Mr. Brown and Ms. Schilling to leave the room, and then, Mr. Doubleday told me that he believed

3

that I made the entries because Mr. Brown had told me to, adding, "I'm going to do everything I can to protect you." This later proved to be untrue.

13. In April 1997, I was aggressively questioned by my General Manager in Las Vegas, Mr. Ben Dolan, and by the District Director of Operations, Mr. Hank Geerling, about the same audit entries. I was then unfairly given a written "Decision Making Day", the penultimate discipline short of termination, for audit entries that I had been instructed to make by my male supervisors in California. To my knowledge, neither Mr. Brown nor any of the male General Managers who had made similar audit entries were ever disciplined. I feel that the men used me as a scapegoat to cover for their mistakes.

14. After I received this unfair and discriminatory written discipline, I used the Open Door and met with Mr. David Simpson, the Regional Vice President, who did not listen to what I had to say and did nothing but belittle me and treat me in a very condescending manner. Mr. Simpson did nothing whatsoever to remove the unfair discipline from my personnel file. In fact, Mr. Simpson told me, "You no longer have a position in Las Vegas; there is no position for you in Southern California. You do have a position with the company; however, it has to be where there is an opening. We will no longer create a position for you . . . Phil Goodwin has a position, and if I were you, I would take that position." Mr. Goodwin was still the Director of Operations for the Sacramento area, and I had no choice but to accept that position. Before I reported to the Sacramento store in the fall of 1998, I had to take a several-month medical leave of absence because I was emotionally decimated from the demeaning and discriminatory treatment I had endured from my male supervisors.

15. In the fall of 1999, I was transferred to the Sherman, Texas, store. Ms. Stephanie Selinger was the General Manager. After a few months, Mr. Bill Smithson became the General Manager of the store, and I became Assistant Manager of Merchandise.

16. Before Mr. Smithson had arrived at the store, Ms. Selinger and I had submitted a written proposal to Mr. Larry Alderson, Director of Operations, demonstrating that closing the tire shop earlier, at 7:00 p.m. instead of 8:30 p.m., would save Wal-Mart millions of dollars. Mr. Alderson rejected our proposal. However, after Mr. Smithson took over as General Manager, Mr. Smithson made the identical suggestion to Mr. Alderson who, this time, approved it. When I asked Mr. Smithson how he had convinced Mr. Alderson to change his mind when he had only recently

4

rejected the suggestion when made by Ms. Selinger and myself, Mr. Smithson said, "I guess it's a man thing." When I asked, "What does that mean?", he replied, "Take it for what it's worth." I immediately knew from his remarks and the way he said them to me that Mr. Smithson had no respect for women. I also knew that Mr. Alderson would only implement a cost-saving suggestion if it was made by a man, not a woman.

17.    On March 13, 1999, I was on vacation and stopped into the store to cash a check. Mr. Smithson came up to me and said, "If I'd known you were back in town, I would have had you work today." I told him he could not make me work because I was still on vacation. He then said, "I'm the General Manger, I can do whatever I want to do." I never saw him treat male managers with such disrespect.

18.    On May 6, 1999, I was helping out at the front end and refunded a tax overcharge to a regular business customer in the amount of $250.00. I did not ask him to show proof of purchase since he was required to sign a tax refund log and because Mr. Smithson had previously made a large refund to a regular customer based solely on the customer's word. After the customer left, I realized that I did not have the refund slip and had used the wrong code for the transaction, so I immediately informed the accounting office of my mistake and told them how to correct it.

19.    Approximately one week later, I was accosted by Mr. Chuck Roberts, a Wal-Mart loss prevention investigator, who insultingly implied that I had stolen the $250.00. I was placed on suspension and told to "go home" while he contacted the customer to verify the transaction and that the customer had actually received the refund money. Mr. Roberts told me that it would only take him a "couple of hours" to contact the customer. I waited at home for at least five days before being cleared of suspicion of theft.

20.    Even though Mr. Roberts finally verified that the customer did receive his $250.00 refund, I was not even allowed to set foot back into the store. On May 20, 1999, Mr. Smithson and Mr. Roberts met me at a Wal-Mart store across the street from the Sam's Club, and gave me a written "Decision Making Day" discipline because I had "circumvented refund procedures." They told me that I could never re-enter the Sherman store and that I had to relocate to a Sam's Club in either Lubbock or Amarillo, Texas. I chose Lubbock.

21.    In early April 1999, before I was falsely accused of mishandling the tax refund, I had interviewed on the telephone with Mr. Shawn Baldwin, Director of Operations, for a Co-Manager

5

position in Tulsa, Oklahoma. Mr. Baldwin said I was a strong candidate for the position and told me he would get back to me. Some time afterward, Mr. Alderson came into the store and told me that he heard I was going to get the job and that Mr. Baldwin should be contacting me to tell me. Mr. Smithson later told me that Mr. Alderson had indicated to him that I was going to get the position and asked me if I had heard anything yet. On May 19, 1999, after I had been suspended by Mr. Smithson, I called Mr. Baldwin who told me that a male General Manager from Florida was stepping down from his position "for personal reasons"and assuming the Co-Manager position in Tulsa which I should have gotten. I believe that Mr. Smithson sabotaged my promotion opportunity by unfairly suspending me and disciplining me even though Wal-Mart had verified that the refund I had made had actually occurred. Mr. Smithson simply did not want me to get the Co-Manager job in Tulsa because I am a woman.

22.    I reported to the Lubbock store in June 1999. The General Manager was Mr. Duke Parrish.

23.    On October 7, 1999, Mr. Parrish invited the three male Assistant Managers, Keith Musick, Jerry Ratliff and Ron Torres, to take a "skills assessment test" to assess their ability to perform the duties of General Manager. I was excluded from this opportunity to demonstrate my ability to perform as a General Manager, a position I had been seeking for a long time.. I approached Mr. Parrish and said, "How come the three guys get to take it [the skills assessment test] and I don't? Why can't one of the guys not take it and I can?" Mr. Parrish said there were only three tests which had been designated for only these three managers. I believe I was never allowed an opportunity to take this test because I am a woman.

24.    On October 15, 1999, I discovered that Mr. Parrish failed to deposit approximately $3,000.00 in cash he had received for the sale of a company forklift and had instructed that the cash instead be placed in the office safe which was in violation of Wal-Mart's policy. I immediately directed the accounting office associate to deposit the money and made a report of Mr. Parrish's policy violation to Ron Torres, the Assistant Manager in charge of the store in Mr. Parrish's absence.

25.    On October 16, the very next day, the store implemented a new "elite membership" upgrade program, and I was responsible for training the store's employees regarding the new procedure. I gathered several employees together to demonstrate the new system. Since there was no one to use as an example to demonstrate how to upgrade their membership to an elite

6

membership, we searched the computer for an employee for whom it would cost very little to upgrade their membership, based upon a proration of their existing membership value. Our research revealed that an Assistant Manager, Keith Musick, would only have to spend $13.74 to upgrade his existing membership to an elite membership. Using him as an example for demonstration purposes, I showed the employees how to accomplish the upgrade process. I then instructed an associate in the accounting office how to reverse the transaction if, when we spoke with Keith, he did not want the upgrade. I also reported what had happened to Mr. Torres, the acting General Manager at the time. I later informed Mr. Musick what we had done, and he said he would let me know later that day whether or not he wanted the upgraded membership. Instead of hearing back from Mr. Musick later that day, Mr. Parrish called me into his office because apparently Mr. Musick had complained about me using his membership account as a training example, and Mr. Parrish said he would have to consult with Mr. Alderson about "what action to take." Mr. Torres was also present and denied that I had informed him about the situation when it occurred. The next day, Mr. Parrish told me, "I talked with Larry [Alderson]; we have decided that we are going to terminate you for violation of company policy."

26. After being terminated by Mr. Alderson and Mr. Parrish, I learned from Ms. Suzanne Austin, an hourly associate at the Sherman store, that a male manager in a Phoenix, Arizona, Sam's Club, Wayne Backus, had already departed the Phoenix store on October 15, 1999, the day before my supposed "violation of company policy" on October 16, to move to Lubbock to replace me. I then recalled a telephone conversation between Mr. Parrish and Mr. Backus I had overheard on October 3, wherein Mr. Parrish told Mr. Backus, "Don't worry, I'll talk to Larry [Alderson]; he'll make room."

27. Because my termination was so obviously discriminatory and unfair, I then used the Open Door and called Mr. Greg Spragg, the Regional Vice President. Mr. Spragg told me that he had been told that I rang up Mr. Musick's membership because I "felt pressure to get an elite membership," which I told Mr. Spragg was totally false. I then confronted Mr. Spragg with the fact that Mr. Backus was already on his way to the Lubbock Store to take my job. Mr. Spragg admitted that he had authorized Mr. Backus' transfer and that the Lubbock store would then have more managers than were required for a store of its size. Mr. Spragg then said that he was going to send a person from loss prevention to contact me. I never heard from loss prevention, but I did receive

7

a call from Mr. Steve Rodriguez, the Regional Personnel Manager. I told him about the harmless training exercise that had occurred. On October 29, 1999, I received a call from Mr. Spragg who said he was going to uphold my termination.

28.    I believe I was terminated because I am a woman, because I complained to Mr. Parrish about gender discrimination regarding his refusal to allow me to take the skills assessment test, because I challenged Mr. Parrish's authority when I reported his failure to deposit the cash sale funds in accordance with Wal-Mart policy, and because Wal-Mart had already made the decision to replace me with a male manager from Arizona and therefore needed to fabricate a reason to terminate me.

29.    Since I knew that I had been discriminated against because of my gender, I filed a Charge of Discrimination with the EEOC through my attorney on October 25, 1999. See Exhibit A attached hereto and incorporated herein. I filed an EEOC Charge of Discrimination form, dated January 4, 1999 [sic 2000]. See Exhibit B attached hereto and incorporated herein. I filed an Amended Charge of Discrimination with the EEOC, dated April 3, 2000. See Exhibit C attached hereto and incorporated herein.

30.    If I could be assured that I could work at Wal-Mart free from gender discrimination and retaliation, with equal opportunity for promotion and pay, I would consider re-employment with Wal-Mart as a manager.

I declare under penalty of perjury of the laws of the United States and the State of Oklahoma, that the foregoing is true and correct.

This Declaration was signed by me on April 10, 2003, at Tulsa, Oklahoma.

Stephanie Odle

8

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Stephanie Odle in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT A

# DONALD E. CUMMINGS
## Attorney at Law
2435 20th Street
P.O. Box 47
Lubbock, Texas 79408

(806) 762-8503
Fax # (806) 762-8564

October 22, 1999

RECEIVED
Oct 25  4 05 PM '99
EL PASO OFFICE
EEOC

U.S.Equal Employment Opportunity Commission
El Paso Area Office
4172 N. Mesa, Bldg. C, Suite 100
El Paso, Texas 78229

Via fax to: (915) 832-4026 and via
regular mail

Re:   Charge of Discrimination - Stephanie M. Odle, Lubbock, Texas

Gentlemen:

I am representing Stephanie M. Odle, who has retained me to file a charge
of discrimination against SAM'S CLUB, a Division of Wal-Mart, Inc.  Due to
certain time constraints relating to my client's situation, please consider this
letter, which has been verified by my client, below, as a formal charge of
discrimination against SAM'S CLUB.

The pertinent facts relating to my client and her charge are as follows:

| | | |
|---|---|---|
| 1. | Name of complaining party: | Stephanie Odle |
| 2. | Name of employer: | SAM'S CLUB |
| 3. | Address of employer: | 4304 S. Loop 298<br>Lubbock, Texas 79407 |
| 4. | Discrimination complained of: | Under Title VII - sex/gender<br>discrimination |
| 5. | Date of birth of complaining<br>Party: | 10/26/71 |
| 6. | Social Security Number of<br>complaining party: | 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 |
| 7. | Latest date that discrimination<br>occurred: | 10/22/99 |
| 8. | Earliest date that discrimination | |

**EXHIBIT**

A

WMHO 202420

occurred:                    2/19/99

9.    Statement of facts regarding discrimination charge:

Ms. Stephanie Odle began working for Sam's Club in November 1991 as an hourly Associate. Her beginning employment was at the Sam's Club location in Lubbock, Texas, the address of which is stated above. From there, she has been transferred to several different locations, but has recently been transferred back to Lubbock, Texas from Sherman, Texas. Her position at the Sherman Sam's Club was as Assistant Manager for Merchandise. Her position at the Lubbock Sam's Club has been as Assistant Manager for Sales and Marketing.

In connection with Ms. Odle's employment at the Sherman, Texas Sam's Club, she was discriminated against when she was required to move to Lubbock, Texas, and denied a promotion as a Co-Manager of the Tulsa, Oklahoma Sam's Club facility. This discriminatory act was based upon a charge made by Sam's Club supervisory personnel that she had circumvented some refund procedures in dealing with a customer. In fact, this procedure was not unusual, and her employment should not have been adversely affected.

The present situation involving Ms. Odle is that she has been at the Lubbock Sam's Club for approximately three months after she was required to transfer from Sherman, Texas. While she has been in Lubbock, she has undergone close scrutiny by the male managers of Sam's Club, which recently resulted in her being placed on administrative leave with pay, following a charge against her by the male managers that she had violated company policy when she had mis-rung a $13.74 amount while she was instructing three hourly employees in a new procedure. This happened on October 16, 1999, and was all fully explained to them. There was no money missing nor any other type of loss to the store.

She was initially terminated on October 19, 1999 by the General Manager of the store, Duke Parish, and Larry Alderson, the Director of Operations, to whom Mr. Parish report to for the region. She was "reinstated" by Greg Spragg, Regional Vice President for Sam's Club, pending further investigation.

Ms. Odle has learned that another assistant manager is being brought to Lubbock from an Arizona Sam's Club, who had stepped down as a general manager of a store in order to move back to Lubbock. The normal contengent of assistant managers at a store is not more than four (4) and with this transfer, the store would have had five, including Ms.Odle. This individual is a

WMHO 202421

male who has family ties and other ties to the Lubbock area. Ms. Odle believes that the reason for her treatment is pretextual.

Ms. Odle has other evidence of discriminatory treatment of females that likewise indicate a pattern or practice of discrimination toward females in management positions.

Consequently, please consider this letter as a formal charge of discrimination against Sam's Club, a Division of Wal-Mart, Inc., in accordance with the facts and information as are provided herein.

Please note that I am faxing a copy of this letter to your offices for you to formally set up a file on this charge immediately. Please return a notification to me that you have received this letter and the charge number assigned to this matter. Additionally, please forward all correspondence pertaining to my client's charge to me at the above address, or contact me by telephone at the number on this letterhead.

Sincerely yours,

DONALD E. CUMMINGS
DEC:rt

STATE OF TEXAS            §

COUNTY OF LUBBOCK        §

BEFORE ME, the undersigned authority, on this day personally appeared STEPHANIE ODLE, who first being duly sworn by me stated that every statement contained in this letter is true and correct.

STEPHANIE M. ODLE

WMHO 202422

SWORN AND SUBSCRIBED BEFORE ME, by Stephanie M. Odle on this the 22nd day of October, 1999.



RENE TADLOCK
Notary Public, State of Texas
My Commission Expires 4-30-2001

Notary Public in and for
the State of Texas

cc:  Sam's Club, Lubbock, Texas
     via fax to: (806) 793-0258

cc:  Sam's Club Administrative Office
     Bentonville, Ark - via fax to:
     (501) 277-5991

WMHO 202423

WMHO 202424

DONALD E. CUMMINGS
P.O. BOX 47
2435 20TH STREET
LUBBOCK, TEXAS 79408-0047



U.S. Equal Employment Opportunity Commission
El Paso Area Office
4172 N. Mesa, Bldg. C, Suite 100
El Paso, Texas 78229

73902X1418 54

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Stephanie Odle in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT B

JAN-21-00 12:26 PM    MS. CLUB                    18067    '258

## CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA ☒ EEOC | 361A00154 |

| Texas Human Rights Commission | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| Ms. Stephanie Odle | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 3707 37th Street, Lubbock, TX 79412 | | 10/26/1971 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Sam's Club | Cat D (501 +) | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 4304 S. Loop 298. Lubbock. TX 79407 | | 303 |

| NAME | TELEPHONE NUMBER (Include Area Code) | |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (specify)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 05/20/1999 | 10/29/1999 |
| ☒ CONTINUING ACTION | |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I.    A.  On May 20, 1999, I was forced to move from Sherman, Texas, to the Lubbock, Texas Store.
    B.  On May 20, 1999, I was denied a promotion as Co-manager of the Tulsa, Oklahoma Store.
    C.  On October 16, 1999, I was suspended and placed on administrative leave with pay, following a charge against me by the male managers that I had violated company policy when I had mis-rung a $13.74 amount while I was instructing three hourly employees in a new procedure.
    D.  On October 19, 1999, I was terminated by the General Manager of the store, Duke Parish, and Larry Alderson, the Director of Operations, to whom Mr. Parish reports to for the region   A few days later I was reinstated by Gregg Spragg, Regional Vice President, pending further investigation.
    E.  On October 29, 1999, I was discharged from my job of Assistant Manager for Sales and Marketing.

II.    A through D - No reason given for this treatment.
    E.  I was discharged by Greg Spragg, Regional Vice President.  I was told that it was for "violation of company policy".

III.  I believe that I was discriminated against because of my gender, female, in violation of Title VII of the Civil Rights Act of 1964, as

** Text is Continued on Attached Sheet(s) **

| ☐ I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Agency Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 1/4/99                                    Stephanie Odle   Date            Charging Party | Stephanie Odle |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) 01-04-00 |
| | ms michelle Lange |

EEOC FORM 5 (Rev. 06/88)

EXHIBIT
B

CONFIDENTIAL WMH0004990

Nov 12 10:09 1999  CP Initials _____  Chg # 361A00154, Attachment Page 1

----------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
----------------------------------------------------------------------

amended, when I was subjected to adverse terms and conditions of
employment, denied a promotion, disciplined, and discharged.

I also believe that I was retaliated against by being discharged after
I complained of gender discrimination to the main office, in violation
of Title VII, Section 704(a), of the Civil Rights Act of 1964, as
amended.

CONFIDENTIAL. WMHO004991

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

*Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

**Declaration of Stephanie Odle in Support of
Plaintiffs' Motion for Class Certification**

# EXHIBIT C

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA<br>☒ EEOC | AMENDED<br>361A00154 |

| Texas Human Rights Commission | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Stephanie Odle | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 3707 37th Street, Lubbock, TX 79412 | | 10/26/1971 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Sam's Club | Cat D (501 +) | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 4304 W. Loop 289, #8270, Lubbock, TX 79407 | | 303 |

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 05/14/1999 | 10/29/1999 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I.  A.    On May 14, 1999, I was suspended for five days pending an investigation concerning a refund I had made to a customer.
B.  On May 20, 1999, I was given the most severe form of discipline at Sam's Club even though management was aware that I did, in fact, give a $250.00 refund to the customer at no loss to Sam's Club.
C.  On May 20, 1999, I was forced to move from Sherman, Texas to the Lubbock, Texas Store.
D.  On May 20, 1999, I was denied a promotion as Co-manager of the Tulsa, Oklahoma store.
E.  On October 16, 1999, I was suspended and placed on administrative leave with pay, following a charge against me by the male managers that I violated company policy when I misrung a $13.74 amount while I was instructing three hourly employees in a new procedure.
F.  On October 19, 1999, I was terminated by the General Manager of the store, Duke Parish and Larry Alderson, the Director of Operations, to whom Mr. Parish reports for the region. A few days later I was reinstated by Gregg Spragg, Regional Vice President, pending further investigation.
G.  On October 29, 1999, I was discharged from my job of Assistant Manager for Sales and Marketing and was replaced by an existing male manager who transferred from an Arizona Sam's Club.
H.  The "glass ceiling" has been the common experience of all women throughout Wal-Mart who want to or apply to become a manager or who want to or apply to advance within management, due at Wal-Ma

JANE WIGGINBOTTOM
Cleveland County
Notary Public in and for
State of Oklahoma

** Text is Continued on Attached Sheet(s) **

☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

NOTARY *(When necessary to meet State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*Stephanie Odle*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Month, day and year)*

4/3/00    *Stephanie Odle*
Date    Charging Party *(Signature)*

EEOC FORM 5 *(Rev. 08/99)*

RESPONDENT'S COPY

EXHIBIT
C

CONFIDENTIAL WMHO004910

Mar 14 09:28 2000  CP Initials _____  Chg # , Attachment Page 1

---
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
---

longstanding practice of not treating women equally with regard
to promotions to management positions.

II.  A. through D.-- No reason given for this treatment.
E.  I was discharged by Greg Spragg, Regional Vice President. I was
told that it was for "violation of company policy."

III.  I believe that I was discriminated against because of my
gender, female in violation of Title VII of the Civil Rights Act
of 1964, as amended, when I was subjected to adverse terms and
conditions of employment, denied a promotion, disciplined and
discharged.

I also believe that I was retaliated against by being
discharged after I complained of gender discrimination to the main
office, in violation of Title VII, Section 704(a), of the Civil
Rights Act of 1964, as amended.

Women are discriminated againstbecause of their gender, female,
in violation of Title VII of the Civil Rights Act of 1964, as
amended, and are subjected to adverse terms and conditions of
employment.

CONFIDENTIAL, WMHO004911