Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:     626.585.9600
Facsimile:     626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com
svarela@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

Decl. of Sue McFarland Ramirez in Support of Plaintiffs' Motion for Class Certification          Case No. C 01-CV-2252-CRB

I, SUE RAMIREZ, declare:

1.    I make this declaration on the basis of my personal knowledge, and, if called as a witness, could and would testify competently to the facts herein.

2.    I was employed by Wal-Mart, Inc. from August 1989 until September 2001. I am female. While I was employed by Wal-Mart, I was known as Sue McFarland.

3.    I began my career at Wal-Mart as a Customer Service Manager in the Wagner, Oklahoma. I moved on to be a District Assistant where I worked in approximately fifty stores. I was then a District Manager in the Shoes and Jewelry Specialty Division over seven stores. I spent my last three years with the Company as a Co-Manager at a Supercenter in El Paso, Texas. I was never disciplined at any time during my employment with Wal-Mart and my performance evaluations were always at least "above average," "exceeds expectations," or "outstanding." I was never offered a Store Manager position.

4.    I first applied to Wal-Mart after Store Manager Joe Swenson recruited me to apply for the Customer Service Manager (CSM) position at Store No. 63 in Wagner, Oklahoma. At that time, I had been the Store Manager of Arrow Printshop for five years and I believed Wal-Mart would offer me greater opportunities for advancement. In my initial interview with Personnel Manager Amy Prime, I expressed interest in a management career even though I knew I was applying for the CSM position. Ms. Prime did not provide me with any information about Wal-Mart's Management Training Program or how to apply for management opportunities. Instead I learned from Ms. Prime, and others after I started working, that you advanced at Wal-Mart by working your way up the ladder.

5.    I tried to do that at the Wagner store. However, there was no formal posting or application system for moving to positions within the store or seeking a promotion. Instead, I learned about open positions by observing, or hearing from co-workers, that certain employees were quitting or being fired, transferred or promoted. After about a year as CSM, I became the UPC Clerk simply

2

by asking male Store Manager Gary Dickens for the position when I learned it was vacant. I was "tapped on the shoulder" to be the UPC Assistant about a year later by the new male Store Manager, Mike Altemueller, when the current UPC Assistant left the position. Mr. Altemueller just asked me if I wanted the position and I said yes. I remained in this position for about eighteen months when I learned that a new district was being created and that the new District Manager was going to be housed in the Wagner store. I asked the current male Store Manager, Greg Epps, if he would recommend me to the District Manager to be the new District Assistant. The new District Manager, Carl Simpson, interviewed me and gave me the position. The job was not posted and I did not apply for it other than asking my Store Manager to tell the District Manager that I was interested in it.

6.      I was interested in getting a job at the District level because I believed it would offer me more advancement opportunities than the Wagner store had. After more than four years of employment at the store level, my pay rate had only increased from $5.25 to $7.70 per hour despite my good performance evaluations, various promotions, and merit raises. Moreover, I had observed that each of the jobs in the front end where I worked was comprised almost exclusively of women. I had also observed that the Store Manager had changed four times and each time a man had been transferred into the position. Finally, none of the Store Managers or Assistant Managers was mentoring me or in any way developing me for management opportunities.

7.      I was promoted to District Assistant in November 1993. This is an hourly position and my pay had to be increased twice to bring me up to the Company pay guideline of $8.80 an hour. My job duties included budgeting, doing audits in the individual stores' offices, and assisting the District Manager in the operational end of his work with the stores in his district.

8.      Mr. Simpson's district initially included about seven stores. However, the district was constantly changing as Wal-Mart expanded. My job duties required me to visit all the stores in the

3

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT          Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

district on a regular basis. This required extensive traveling. After about three years, Larry Wilcockson replaced Carl Simpson as the District Manager. The district continued to change and I was exposed to many different new stores. During the five years I was District Assistant, I also worked with District Managers Buddy Caldwell and David Carmen and had an opportunity to visit the stores in their district as well. I believe that I worked in over fifty stores while holding the position of District Assistant. I observed that each of the stores under District Managers Simpson, Wilcockson, Caldwell and Carmen operated similarly and followed the same policies and practices that I had learned as an associate in the Wagner store.

9.    As District Assistant, I reviewed the daily, weekly and monthly financial and personnel reports that the Home Office prepared for each of the stores in my district. These reports were available to me from the Company-wide computer system that linked each store to corporate headquarters. The District Manager would review these reports with each Store Manager in the district on a regular basis, either through an individual telephone call or store visit, or through weekly conference calls with all the Store Managers in the district, or during district-wide meetings held at various stores. I frequently attended these meetings and participated in the conference calls.

10.    I observed that my own job was gender-segregated. I did not meet any male District Assistants during the five years I was a District Assistant and I did not met any after I left that position. I also observed that men holding jobs with much less responsibility, such as grocery stocker or a grocery department manager, were paid more than I was. Despite an outstanding evaluation my last year as a District Assistant, my hourly rate was still only $11.50 an hour in 1996, seven years after I began my career at Wal-Mart. I wrote on my 1996 evaluation, as I had written on earlier evaluations, that I was interested in advancing in the Company: "Enjoy my job, working with Larry and each of the stores. Would like to continue to learn operations and more merchandising skills.

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-012252 MJJ

4

Want to understand all company functions. Definitely want to grow with Company." (Attached hereto as Ramirez Exhibit A is a true and accurate copy of my 1996 annual performance evaluation.)

11. In May 1997, I talked with District Manager Wilcockson about my future with the Company. He told me that the only way to get promoted would be to become a salaried member of management. By now I was very well qualified for a management position and eager to move up. My ultimate goal was to become a Regional Personnel Manager. Mr. Wilcockson was supportive and several days later the male Regional Personnel Manager, Rod Thurston, called me. We discussed the job responsibilities of an assistant manager and he asked me to take a drug test. As soon as the results were in, Mr. Thurston told me that I was being promoted to Assistant Manager at Store No. 41 in Bartlesville, Oklahoma. The position was not posted and I did not apply for it. I was paid an annual salary of approximately $29,500. However, I was told not to transfer to the Bartlesville store until I had finished opening up several new Supercenters in my district and assisting the Regional Loss Prevention team with high shrink issues. I was also instructed to begin reporting to male Store Manager Rick Rubiken in the Bartlesville store and to complete the Assistant Manager Training Program through Wal-Mart's computer-based learning system.

12. Several months later, before I ever transferred to the Bartlesville store as an Assistant Manager, the Regional Manager for the Jewelry and Shoes Specialty Division, Cindy Marsh, visited the District Office looking for Assistant Managers interested in going into the Specialty Division Management Training Program. I started talking to her about it and indicated that I was interested in that opportunity. I was next interviewed by the Divisional Manager for the Jewelry and Shoes Specialty Division, Jim Wake, and accepted into the program. I was sent to train with a female District Manager, Jody McAnnally, in the Tulsa area.

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    Case No. C-012252 MJJ

5

13.    I completed the Jewelry and Shoes Specialty Division District Manager Training Program in October 1997. I was promoted to District Manager in the St. Louis, Missouri area after Divisional Manager Wake called me about the opening. I went to corporate headquarters in Bentonville, Arkansas for further interviews. Mr. Wake informed me that I was being promoted. My salary only increased to approximately $32,000. I was required to relocate my home to St. Louis, Missouri to begin training. As District Manager in the Jewelry and Shoes Specialty Division, my duties included ensuring that the seven stores in my district were operationally correct regarding the inventory and staffing of the Jewelry and Shoe Departments, and controlling shrink in these departments due to theft. I held this position for about ten months. My direct supervisor was the Regional Manager over the Jewelry and Shoes Specialty Division. At first this was Ional Duval. Later, the position was filled by a male, Lenny Fulcher. The Regional Manager reported to the Divisional Manager, Greg Wake. This is the same reporting structure used by the main Wal-Mart stores.

14.    During the time I was a District Manager in the Specialty Division, I observed that the Jewelry and Shoe Departments in each of my stores operated similarly and followed the same policies and practices as the other departments in the Wal-Mart store even though they were technically in the Specialty Division. Thus, I used the same Company guidelines and forms for hiring, evaluating, promoting, disciplining and terminating employees in the Specialty Division as had the District Managers I worked for when I was a District Assistant. I also attended the same Company-wide year-end and holiday meetings in Bentonville that the non-Specialty Division managers attended.

15.    As a District Manager in the Specialty Division, I had available to me the same daily, weekly and monthly reports from corporate headquarters regarding the financial and personnel

6

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT                    Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

operations of the Jewelry and Shoe Departments in each of my stores as I had used when I was a District Assistant. I would review these reports with the Jewelry and Shoe Department Managers in my stores on a regular basis through telephone calls, store visits, or district-wide meetings held at various stores.

16.     After about six months in the District Manager position, I decided that I wanted to return to the main Wal-Mart division because it had become clear to me that the Specialty Division was also segregated by gender and that my current position was not such a good stepping stone for achieving my goal of Regional Personnel Manager. In particular, I observed at the district level that women were assigned almost exclusively to the Jewelry and Shoes Division while men were most often assigned to the Tire Lube Express Division, the Pharmacy, and the Photo Lab.

17.     I called the Regional Personnel Manager who had promoted me to Assistant Manager, Rod Thurston, and told him that I was interested a co-manager position. I was really worried that the District Manager position in Jewelry and Shoes would be a dead end for my career. Mr. Thurston and I discussed the responsibilities of the co-manager position, base pay, and the fact that I would need to relocate to another store. About four months later, Mr. Thurston informed me that I could begin co-manager training at Store No. 271 in Eureka, Missouri.

18.     I transferred to the Eureka store and trained for approximately three months under male Store Manager Bud Gardner. In approximately November 1998, Regional Personnel Manager Thurston called me about an open co-manager position at Store No. 2612 in El Paso, Texas. We discussed whether El Paso would be a good place for me and my daughter and the moving arrangements. I told him that I was interested in the position so long as I did not have to relocate again until after my daughter graduated from high school, which would be in May 2000, about

7

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT            Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

eighteen months away. I was recently divorced and very much wanted a stable environment for my daughter.

19.    Mr. Thurston called me back a day or two later and told me that I definitely had the job in El Paso. This job was not posted and I did not apply for it. I did not interview with anyone else besides Mr. Thurston. However, I would not have accepted the El Paso position if I had not understood from Mr. Thurston that the District Director in El Paso had agreed that I would not need to relocate until after my daughter graduated.

20.    In approximately January 1999, after I had been working as a Co-Manager for approximately five months, Store Manager Lorenzo Nava told me that District Manager Rick Klein had told him that I was promotable and that I should start looking for a Store Manager position. I started looking for an open Store Manager position at this time but I also reminded Store Manager Nava and District Manager Klein that I could not look outside the El Paso area.

21.    Over the next eighteen months, at least five Store Manager positions became available in the El Paso area in Stores Nos. 512, 500, 964, 1015, and 2612. Three of these positions were not posted and one was posted for a mere 24 hours before it was filled. I was not allowed to apply and/or was not considered for any of these positions, as detailed below.

22.    In the fall of 1999, I learned through the grapevine that the current male Store Manager of Store No. 512, Rick Espino, was leaving. I wanted to apply for the job but it was not posted on Wal-Mart's Management Career Services computerized program. I called District Manager Klein to let him know that I was interested in the position but he was not in so I left a message with his Assistant that I needed to speak with him. I also expressed my interest in the position to my Store Manager, Lorenzo Nava. Mr. Nava told me that Wal-Mart was filling the position with a male Co-Manager from Houston, David Watts. District Manager Klein never

8

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT        Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

returned my phone call and shortly after my conversation with my Store Manager, David Watts did, in fact, become the Store Manager in Store No. 512.

23.    During this same time period, I also learned through the grapevine that Store No. 500 was losing its current Store Manager. Again, the job was not posted on the Wal-Mart computer so I called District Manager Klein to let him know I was interested. He was not available but I left a message with his Assistant requesting him to call me. I never received a call from Mr. Klein and later learned that Rick Espino, the former Store Manager at Store No. 512, had transferred there.

24.    Some time later but before my daughter graduated, another male Store Manager, James Zepeda, left Store No. 964. As before, I wanted to apply for this position but it was not posted on Wal-Mart's computer. I called District Manager Klein to apply for the job but he was again unavailable and never returned my call. I learned later that another male, Jose ("Harvey") Ayala, got the job.

25.    I was extremely upset that District Manager Klein had not advised me of, allowed me to apply for, or interviewed me for any of the positions discussed above so I decided to use Wal-Mart's "open door" policy to discuss my concerns with the Regional Personnel Manager Tom Gallegos. I met with Mr. Gallegos privately during a company-wide meeting in Bentonville and informed him that I thought I had not been treated fairly when I was not interviewed for these three positions, that I was aware of an upcoming opening for a Store Manager in the El Paso area at Store No. 1015, and that I would like an opportunity to apply for it. I understood from his response that I should go ahead and apply and that I would be considered. However, the very next day, District Manager Klein approached me and told me that he knew I had been petitioning for a store and that he did not appreciate it. I understood from this that District Manager Klein did not want me to apply for the position and that if I did, I would not be considered.

9

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT                    Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

26.    Unlike the prior Store Manager openings described above, the vacancy at Store No. 1015 was posted on the computer. However, the notice advised only current store managers to apply and it remained on the computer for only one day. Although I had expressed my interest in this position to Regional Personnel Manager Gallegos, I did not apply on the computer because I was not a store manager. Later I learned that a female Co-Manager, Liz Gonzalez, had been promoted to this position.

27.    The day after I returned from a vacation after my daughter's graduation, District Manager Klein told me that I needed to apply for stores outside the El Paso area or step down from my position as Co-Manager. Although I was applying to stores outside of El Paso, I told District Manager Klein that I still preferred to remain in the El Paso area as I had made a new life in El Paso. I did not feel my request to remain in El Paso was unreasonable given that I had already relocated on numerous occasions for the Company and the El Paso area was a growing market for Wal-Mart. Also, I did not observe District Manager Klein insisting that the male Co-Managers in his district leave El Paso or step down. When I complained to my Store Manager about how differently Mr. Klein was treating me, Mr. Nava responded that it was to be expected since I was not part of the "good 'ole boy" network. Later I learned from another female Co-Manager in the district, Sheryl Sink, that District Manager Klein had told her that she needed to find a store outside of El Paso or be demoted. Although Ms. Sink had been working at different stores in the El Paso area since 1984 when she first joined Wal-Mart management, and although she was the primary caretaker for her ailing mother, she was not promoted to a store manager position until she relocated to Store No. 829 in Santa Fe, New Mexico.

28.    My daughter graduated in May 2000. Over the next year, I applied for store manager positions in Kingsport, Tennessee; Tucson, Arizona; Hilo, Hawaii; Alamagordo, New Mexico; Santa

10

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Fe, New Mexico; Las Vegas, Nevada; Sulphur Springs, Texas and Tahlequah, Oklahoma. Although I was interviewed over the phone for some of these positions, I was not selected for any of them.

29. Sometime in early summer 2001, I was recruited by KMart to join their Company as a Store Manager in El Paso. I shared this information with my Store Manager, Lorenzo Nava. Shortly thereafter, the new male Regional Personnel Manager, Brian Cabal, and the Regional Vice President, David Carmen, called me and asked me why I was considering going to another Company. I shared with them my frustration at the limited opportunities I was experiencing in trying to achieve my goal of being a Store Manager at Wal-Mart. They assured me that, if I stayed with Wal-Mart, I would have an opportunity to apply for the next store that opened in El Paso. I told them that I would trust their word and stay. Relying on their representation that I would be considered for a Store Manager position in the El Paso area, I turned down the job with KMart.

30. The next Store Manager position to open in El Paso was at my own store, No. 2612, when Mr. Nava left his employment with Wal-Mart. The job was posted and I applied. Even though I was in charge of the store during the weeks after Mr. Nava left, I was not even interviewed for the position. It was given to another male, Roy Mendoza.

31. I called Regional Personnel Manager Cabal to complain that I had been denied an interview. I reminded him that I had turned down an opportunity and that I hoped I had not made a grave mistake. He responded that he hoped I had not, too. Meanwhile, District Manager Klein continued to pressure me to move out of his district or step down. Several months later I left Wal-Mart to take a Store Manager position at KMart because it was clear to me that I was not going to be promoted to a Store Manager position in El Paso or anywhere else in the country, much less reach my goal of becoming a Regional Personnel Manager.

11

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT                    Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

32.     After I left Wal-Mart, at least three male Co-Managers in Mr. Klein's district were allowed to remain in their stores as Co-Managers and not demoted for failing to obtain a Store Manager position:  Dale Schier, Willie Huerta, and Fernie [LNU].  I believe District Manager Klein denied me the position of a Store Manager in his district because I am a woman.

I declare under penalty of perjury of the laws of the United States and State of _TEXAS_____ that the foregoing is true and correct.

This Declaration was signed by me on __April 11_____, 2003, at

_____ .

Sue McFarland Ramirez

S:\SHARE\LEGAL\Walmart\Declarations\Sue McFarland Ramirez class cert declaration.doc

12

DECLARATION OF SUE MCFARLAND RAMIREZ IN SUPPORT                Case No. C-012252 MJJ
OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Sue McFarland Ramirez in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT A

$90\frac{4}{23}$

## ASSOCIATE EVALUATION

| | | |
|---|---|---|
| NAME _Lee McFarland_ | POSITION | 991/604 |
| SS# 479-66 9561  STORE: 576 | AREA OF RESPONSIBILITY: | |
| REVIEW PERIOD: | CURRENT PAY RATE: | 10.55 |
| FROM: 8/6/89  TO: 8/6/96 | NEW PAY RATE: | 11.18 |

☐ 90 DAY          ☑ OUTSTANDING     ☐ STANDARD

☒ ANNUAL   ☐ FOLLOW-UP    ☐ ABOVE STANDARD  ☐ BELOW STANDARD

### ✦PERSONAL DEVELOPMENT✦

**1. RESPECT FOR THE INDIVIDUAL:**   (List strengths & areas of Improvement)
• Servant Leadership   • People Development   • Honesty & Integrity Always   • Empowering Others
• Confidentiality      • Creates & supports a working environment that embraces the diverse backgrounds of others.

1. highest level of confidentiality
2. always a servant leader to our stores
3. Ensures that Evals are always on time

**2. SERVICE TO OUR CUSTOMERS** (INTERNAL & EXTERNAL): (List strengths & areas of Improvement)
• Quality Always   • 10-Foot Rule   • Dress Code (name badge, vest, smock, etc.)
• Satisfaction Guaranteed (consistently meets or exceeds the Customer's needs).

1. Lee does an outstanding job of dealing with customer complaints, rarely needs input from me, always follows-up to the end.
2. Always practices the 10-foot rule + always dresses professional

**3. STRIVE FOR EXCELLENCE** (JOB SPECIFIC PERFORMANCE): (List strengths & areas of Improvement)
• Continuous Improvement   • Results-Driven   • Associate Accountability   • Store Within A Store
• Competitive Position   • Expense/Budget Responsibility   • Productivity   • Innovative   • Follow-up

1. Exceptional follow-up for the customers + associates
2. always strives for improvement, continues to learn new areas so she can help the store improve
3. high productivity level - requires little or no direction from me.

**4. COMMUNICATION:**   (List strengths & areas of Improvement)
• Expresses Ideas clearly & concisely, written or verbal   • Asks questions when message is unclear
• Actively listens to, and keeps others informed

1. always clear + direct
2. Listens well and gets all the facts from both associates + customers
3. always responds back with follow-up.

**RAMIREZ EXHIBIT A**

CONFIDENTIAL

WMHO1034656

**5. TEAMWORK / FLEXIBILITY:**   (List strengths & areas of improvement)
• Dependable (i.e. attendance, punctuality)  • Works well with others  • Promotes & maintains all safety requirements

1. _Always dependable & very flexable, does what ever it takes_
2. _Sue goes out of her way to work with stores and associates and is not intimidated by tough Store Director_

**6. INITIATIVE / SENSE OF URGENCY:**   (List strengths & areas of improvement)
• Meets deadlines without daily direction  • CBL training complete  • Plans & organizes workload to react to changes

1. _100% complete on CBL_
2. _always ahead of deadlines and keeps me on Time as well_
3. _Stays organized and always help stores stay on top of deadlines_

**◆ OVERALL STRENGTHS ◆**   Bullet-point comments are recommended

1. _Sense of urgency & Follow-up_
2. _Servant Leader to stores & associates_
3. _Outstanding Job of handling customers_
4. _Integrity, Confidentialy, Dependability, always_

**◆ AREAS OF IMPROVEMENT ◆**   Bullet-point comments are recommended

1. _Continue to learn new areas of operations_
2. _train a back-up associate_

**◆ ASSOCIATE COMMENTS / GOAL SETTING ◆**
List goals that will aid in your personal development & impact your area of responsibility. Attach additional pages if necessary.

| OBJECTIVES | MEANS OF MEASUREMENT |
|---|---|
| _Enjoy my job, working with Larry and each of the stores. Would like to continue to learn operations & more Merchandising skills. Want to understand all company functions. Definitely want to grow with Company_ | |

**SIGNATURES:**

| | | |
|---|---|---|
| _Sue McFarland_ | _Sue McFarland_ | _6-17-96_ |
| Associate's Signature | (Print Associate's Name) | Date |
| _Larry Williockson_ | LARRY WILLIOCKSON | _6-15-96_ |
| Supervisor's Signature | (Print Supervisor's Name) | Date |
| Manager/Director Signature | (Print Mgr/Dir Name) | Date |

CONFIDENTIAL

WMHO1034658