Joseph M. Sellers (pro hac vice)
Christine E. Webber (pro hac vice)
Jenny R. Yang (pro hac vice)
Peter Romer-Friedman (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, D.C.  20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
   RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone:  626.585.9600
Facsimile:   626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@hadsellstormer.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA, DEBORAH GUNTER and CHRISTINE KWAPNOSKI, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | Case No:  C 01-2252-CRB <br><br> **DECLARATION OF SHARON REESE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

Decl. of Sharon Reese in Supp. of Plaintiffs' Motion for Class Certification    Case No. C 01-CV-2252-CRB

I, Sharon Reese, declare:

1. I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify to them.

2. I am female and reside in Los Angeles, California. I was an employee at Wal-Mart from January 2003 until November 2006. I worked at the Crenshaw store in Baldwin Park, Los Angeles, California (Store #2960) and then at the store in Torrance, California that we called "South Bay." During my employment, I worked as an hourly associate and as an hourly Department Manager and Support Manager.

3. My goal when I started working for Wal-Mart was to become an Assistant Manager. I have a very strong work ethic, and I worked really hard to achieve that goal. I repeatedly told my Store Managers, including Michael Hardaway, W.C. Morrison, and James Bendari, that I was very interested in becoming an Assistant Manager. I also received positive performance reviews and, in 2005, was honored by the company for being a Wal-Mart "Success Story." I was flown to Arkansas to receive that award and recognized at the annual shareholder meeting. Later that year, I was also asked by store managers to be a spokesperson for Wal-Mart and appear in a film that was shown on television and in other places to promote the company's public image.

4. Despite my strong job performance and interest in becoming a manager, I was never interviewed for or offered a promotion to a management-level position. I was never offered an opportunity of promotion into management or told what specific steps I needed to take to become eligible for promotion into management.

5. During my first year at Wal-Mart, in 2003, I worked primarily in the Toys department. I told Store Manager Michael Hardaway that I wanted to enter the management program and asked him what I needed to do to get there, but he gave me no specific advice; he just told me that if I successfully completed a full year in Toys, I would be promoted to Department Manager in that department. I worked hard and learned all kinds of things about the Toy department (and other areas of the

store) to prepare myself for promotion. In fact, even though I did not have the title of department manager, I actually did a lot of department manager duties during my first year. At the end of that year, the Toy department's sales were up and I received a good performance review. However, instead of promoting me, they gave the Department Manager job in Toys to a young male associate named Matthew [whose last name I don't remember], who had been working as a stocker in the basement and had no prior experience in that department, or anywhere on the sales floor. I actually had to train Matthew how to do the job. This experience was very disappointing and made me feel like my hard work and contributions to the company didn't matter.

6. After I complained about being passed over for the Department Manager position in Toys, which was a high-volume, high-sales department, I was given a Department Manager position in Pets, which was a smaller department with lower sales than Toys, and subsequently moved Stationery, which was understaffed and very unorganized. I had to work both the floor and the stock room for that department. Later, I was moved to the front end to work as a Support Manager for the cashiers, which was supposed to be a lateral move. Even though I got within one step away from being able to enter the management program, I was never given the chance to actually go.

7. Wal-Mart never posted openings for the management training program or for Assistant Manager positions. The only way you could get into management was by applying for the management training program at a store computer, agreeing to all the conditions and requirements, and then waiting for management to approve you and submit your name. I applied for the training program at least three or four times over my close to four-year tenure at Wal-Mart, but I never got in and was never interviewed for an Assistant Manager position.

8. Throughout the time I worked at Wal-Mart, I noticed that the people who worked as "overnighters" stocking shelves, who were mostly men, entered the

management training program much more quickly than other hourly employees, who were mostly women.

9. At both of the Wal-Mart stores where I worked, I saw a lot of gender segregation in department assignments. Most of the associates in electronics, tires and lube (TLC), the hardware department and garden center, and most of the managers at the stores in general were men. On the other hand, I don't recall ever seeing a man regularly assigned to the shoes, women's clothing, infants' clothing/baby supplies, fabric, bath and beauty, jewelry, or housewares departments. There were also very few male cashiers; I can recall only 2 male cashiers out of the approximately 50 cashiers that I must have worked with over the years, and only one male CSM. The courtesy/customer service area also was almost exclusively staffed by women.

10. In my experience and observation, men were typically assigned to the departments with the highest sales, like electronics and hardware, while women were assigned to the departments with less volume or lower margins. I know this because the store managers would go over sales, and I saw and educated myself about the printouts of sales reports so I could understand what they meant. The departments where men worked were also much less likely to be understaffed than the "women's" departments; they usually had all the staff they needed, and managers would even pull people from other departments to help if those departments were short-staffed. This was definitely not the case in departments that were predominantly female, including Stationery, where I usually had to work alone as the Department Manager, and only got one associate to help me part-time (temporarily) during the peak back-to-school period, when it was extremely busy. I saw the same patterns at both of the stores where I worked, and it was one of the main reasons why I complained to corporate about Wal-Mart's unfair treatment of women in 2005.

11. When I expressed interest in being cross-trained in different areas of the Crenshaw store in order to learn and increase my chances of being promoted into management, the male Assistant Managers would not help me or provide the training.

12. During my employment with Wal-Mart, I believe that male employees in the same positions as me, with less time on the job, were paid more than I was. I became aware of this in 2004, when I was talking to a co-worker named Matthew [last name unknown], the associate who had started as a daytime stocker and was then promoted to Department Manager in Toys, about our pay. At the time, I had been working for Wal-Mart for about a year and a half, and had gotten good performance reviews, and was in a Department Manager position. Matthew had started around the same time as me, and I had to train him how to do the Department Manager job in Toys. Yet I was making about $1 per hour less than he was making (my hourly wage was about $9 while his was about $10). I was never told by management that there was something I needed to do to be paid the higher rate as Matthew or other male employees in my same position.

13. In approximately April or May of 2005, when I was honored by Wal-Mart for being a "Success Story" and flown to Arkansas to be recognized at the shareholder meeting, and actually talked to a member of the Walton family – I believe it was the CEO – who told me to call him if I had any complaints or issues. However, my efforts to contact Home Office management backfired.

14. Throughout my employment at Wal-Mart, I felt a strong negative attitude toward women (and especially toward women like me who complained about unfair treatment) coming from managers throughout the district where I worked. In approximately June 2005, I called the Wal-Mart 1-800 number to complain about how male employees were treated better than women and were getting more associates in their departments, while women got insufficient support. Nobody in management ever addressed my complaint about this issue. In fact, after I made it

4

known to managers at Crenshaw that I had issues with Wal-Mart's unfair treatment of women, I was called a "corporate snitch" by the Store Manager during a meeting, in front of my co-workers. This really upset me, and told me that I had to keep my mouth shut about discrimination issues if I wanted to stay employed or get ahead in the company.

15. After the meeting where I was called a "corporate snitch," I put in for a transfer and was reassigned to the South Bay store, in Torrance. When I got there, an Assistant Manager named Robert Eubanks told me that I needed to "watch [my] back" because the managers there knew about my complaints, and would be looking for a way to get rid of me or put me in a situation where I would be set up to fail.

16. Nonetheless, at the South Bay store, I continued to express my interest in promotion into management to the Store Manager, James Bendari. Mr. Bendari assigned me to a Support Manager position in the front and gave me the keys to the store so that I could open and close, which normally was an Assistant Manager's duty. I applied for the management trainee program for the third or fourth time in about April 2006, and Mr. Bendari told me that I would get into the program that time. However, a few weeks later, when I asked Mr. Bendari about the status of my application to the management training program, he told me I was "too animated" and would not be getting into the program after all.

17. While I worked at Wal-Mart, I heard negative comments from Wal-Mart managers about women and black people. Specifically, I remember hearing Bernie, a white male District Manager, make negative remarks about black and female employees during his visits to the Crenshaw store. On one of his visits, I heard him tell a group of Assistant Managers that women weren't as reliable as men because they have children to take care of. On another occasion in 2004, I saw him walking down the hall on the fourth floor (which was reserved for employees only) with a group of Assistant Managers and heard him say to them, "I don't want these ghetto

people working in my store." By "*ghetto people,*" I understood he was referring to black people (African Americans), like me.

I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct. This declaration was signed by me on April 4th, 2013 at Los Angeles, California.

Sharon Reese

Decl. of Sharon Reese in Supp. of Plaintiffs' Motion for Class Certification, Case No. CV 01-2252 CRB