Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:    626.585.9600
Facsimile:    626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF CLAUDIA RENATI IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA  94105
Telephone:  415.597-7200
Facsimile:  415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654
jlarkin@impactfund.org

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA  94105
San Francisco, CA  94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM  87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM  87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Claudia Renati, declare:

1.    I make this statement on the basis of my personal knowledge and, if called as a witness, could and would testify competently to the facts herein.

2.    In 1993, I began working in a Pace Store in Roseville, CA that was bought soon after by Sam's Club. In 1994, while I was Marketing Membership Team Leader, the Regional Sales Manager Ken Elton left and I became responsible for running the region and doing all the ads and marketing programs. I completed all the tasks of a Regional Sales Manager for two years without the proper title or pay. When I asked Director of Operations Bob Alderman to promote me to this position, he refused because I had not gone through the management training program. When I asked about getting into the program, he told me that I would have to be willing to sell my house and move to Alaska. It seemed remarkable to me that the only way for me to obtain management training was to relocate to Alaska since there were many Sam's Clubs in California. I told him that I could not relocate to Alaska. Shortly thereafter, Mr. Alderman hired his neighbor, Michael Hasley to be the Marketing Manager. Mr. Hasley had no managerial experience and had not gone through the management training program. Mr. Hasley was hired to be my supervisor yet I was responsible for training him.

3.    By 1995, I had trained 10 associates in my area and was responsible for supervising 24 employees. I consistently spoke with General Manager Lovina Kirkpatrick about moving into other positions such as claims in order to improve my opportunities for promotions. Ms. Kirkpatrick was unresponsive. That same year, Mr. Hasley (Alderman's neighbor) left the Marketing Manager position. I again asked Mr. Alderman about moving into this position or into management training. Mr. Alderman told me that the position had been filled. He had hired another neighbor, a male, Kirby Jessen who was trained as a Microbiologist. He also had no management experience and had not gone through the management training program. Once again, I had to train a man who was hired to be my supervisor. Mr. Jessen quit one year later because he was unable to handle the responsibilities.

//

4.      I continued to inquire to Ms. Kirkpatrick and the new Director of Operations Phil Goodwin about opportunities to attend training classes in order to assist in my chances of getting promoted. Mr. Goodwin and Ms. Kirkpatrick told me that training classes were only available for managers.

5.      Throughout my career with Sam's Club, I always received "Above Standard" or "Exceptional" ratings on my evaluations and I continually expressed my interest in career advancement and the MIT program in my evaluations.

6.      By 2000, I had trained almost 20 managers in Marketing, all of whom were male, and many of whom never went through the management training program nor were never required to relocate. Some of the men I observed who got into management or the management training program without having to relocate were: Dan Dugger—started as a Meat Cutter in my store later than I did and is now a General Manager; Dennis Costa—promoted to Meat and Bakery Manager; Mike Medina—promoted to Bakery Manager; Ed Walker—promoted to General Manager; Rick Biegacki—promoted from Floor Team Leader to General Manager; Matt Johnson—promoted to Merchandise Manager; Larry Monroe—promoted from Team Leader to Merchandise Manager; Chad Hague—promoted from Floor Team Leader and is now Center Floor Manager. Even so, I continued to express an interest in advancing into management and was eager to learn all I could in order to increase my chances of promotion.

7.      In 2000 while still Marketing Team Leader, I was out for six weeks getting knee surgery. While I was out, Ms. Kirkpatrick and Regional Sales Manager Theresa Hagensen called to tell me that they were combining marketing departments and getting rid of my position. I asked about becoming Manager of the department that was being created but they told me that the position had been given to a male, Larry Turner. I was told I could return only as a Cashier, Meat Wrapper, Cart Runner or Telemarketer. I chose Meat Wrapper. Later that year, I was out sick for a few days due to a cold. When I returned, Meat Manager Jim Ross and Ms. Kirkpatrick informed me they had hired a young male, Rusty Ocheltree, to replace me as Meat Wrapper and that they were moving me to the Membership Desk. I discovered that my supervisor at the Membership Desk was someone

DECLARATION OF CLAUDIA RENATI IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

3

whom I had previously supervised for six years. I was extremely frustrated at the way I had been treated at Sam's Club, particular regarding career advancement. In September 2000, I left Sam's Club and noted in my Exit Interview that it was due to a lack of promotional opportunities.

8. In May 2001, Ms. Kirkpatrick contacted me and asked me to return to Sam's Club to sell credit at the Membership Desk. I specifically inquired about opportunities for future advancement, making it clear that this was a condition for my return. She assured me that, with my experience, I would definitely be given opportunities for promotion. I returned in June 2001 to sell credit.

9. In early 2002, I applied for a position for Photo Manager. I did not receive an interview and a male, Brett [last name unknown], who had no management experience and who had only been with Sam's Club for six months as a Cashier, got the position. A few months later, Brett left and the position came open again. The position was not posted. I spoke with Assistant Manager over the Photo Department Michael Hasley (Director of Operations Bob Alderman's neighbor who had originally been hired as Marketing Manager and who had since been promoted) about this position and he told me I was qualified and he offered me the position. About one month later, a male [name unknown], who transferred from another Sam's Club, was given the position. I spoke with Mr. Hasley about why I didn't get the position and he told me it was up to the General Manager. I spoke with Ms. Kirkpatrick and she just told me that the position had been filled.

10. I spoke with Director of Operations Phil Goodwin again about my desire to move into management and the fact that I had spent nine years working at Sam's Club with little advancement. All of my evaluations (including those before I left in 2000 and after my return in 2001) were excellent. I had also never received any coachings. Mr. Goodwin then asked me if I could stack 50-pound bags of dog food. When I told him I could not repeatedly lift 50 pounds, he told me there was nothing he could do for me because, before I could become a manager, I would have to be Floor Team Leader and that requires stacking 50-pound bags of dog food. I know of several males, including Mr. Hasley and Mr. Jensen who never had to become Floor Team Leader and stack 50-pound bags of dog food before going into management. I had also never seen any written job

description with this lifting requirement nor do I believe that one exists. I believe that this was an excuse for keeping me from advancing.

11.     In April 2002, after repeated attempts to move up at Sam's Club, I again spoke with Ms. Kirkpatrick about career advancement. In that conversation, she conceded that it was unlikely that I was going to advance in my career at Sam's Club. I tried to speak with her again a month later but she stated she was too busy. I left Sam's Club in August 2002 and made it clear that I was leaving Sam's Club due to a lack of promotional opportunities. Attached hereto as Exhibit A is a true and correct copy of my Exit Interview dated August 28, 2002.

I declare under penalty of perjury of the laws of the United States and State of _California_ that the foregoing is true and correct.

This Declaration was signed by me on _March 11_, 2003, at _my home 5501 Gethecty Post Hill, CA_

_Claudia Renati_

Claudia Renati

# EXIT INTERVIEW

WMF-20 REVISED 6/01

An Exit Interview is to be conducted for all Associates leaving the employment of Wal★Mart Stores, Inc. DATE OF TERMINATION MUST BE THE LAST DAY WORKED, EXCEPT IN CASES OF A LEAVE OF ABSENCE, OR 3 DAYS UNREPORTED ABSENCE.

Associate Name_ Claudia Renati,_ Social Security No. _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_

Associate ID No._ 1047_ Facility/Dept./Store #_ 992/6621_ ☒ Hourly ☐ Management

Actual Last Day Worked_ 8/19/02_ Vacation Avail (Mgmt. Only)_

Updated Address and Phone Number:_ 5561 Bettaway Rd, Pilot Hill, CA 95664_
(530) 823-1105

Detailed Statement of Termination. This Section Needs To Be Completed By The Associate for Voluntary Termination or By The Manager/Supervisor for Involuntary Termination. (Please be specific.)

_____

_____

_____

| VOLUNTARY TERMINATION (Eligible to re-apply) | INVOLUNTARY TERMINATION (Eligible to re-apply) |
|---|---|
| 03 ⸰ Not Available For Work (NVL) | 37 ___ Misconduct w/Coachings (CON) |
| 04 ___ Failure to Return From L.O.A. (NRL) | 47 ___ Excessive Absences and/or Tardies (EAT) |
| 05 ___ Refused Offer of Work (ROW) | 53 ___ Insubordination (INS) |
| 06 ___ Job Abandonment/Three Days Unreported Absence (DUA) | 55 ___ Inability to Perform Job (IPJ) |
| 10 ___ To Leave the Area (LTA) | 66 ___ 1ª Violation of Fraternization Policy (FVP) |
| 16 ___ Child Care/Dependent Care Issues (CHI) | 75 ___ Deceased (Call Profit Sharing & Life Ins.) (DEA) |
| 17 ___ Due to Health (DTH) | 92 ___ Lack of Work (Job Eliminated, Location Closed, Reduction of Force) (LOW) |
| 20 ___ Work Hours (HRS) | 97 ___ End of Temporary Assignment (ASC) |
| 21 ___ Salary (PAY) | |
| 22 ___ Working Conditions (WOR) | |

Detailed list (left column continued):
- 24 ___ Benefits (BEN)
- 25 ✓ Career Opportunities (PRM)
- 28 ___ Supervisor (SUP)
- 29 ___ Walked Off Job (WOJ)
- 30 ___ Stay at Home (SAH)
- 31 ___ Attend School (EDU)
- 85 ___ Retirement (RTD)
- 106 ___ Failure to Produce Employment Documents in a Timely Manner (FTP)

## INVOLUNTARY TERMINATION (Mandatory No Rehire)

- 78 ___ Gross Misconduct - Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets)(GMI)
- 79 ___ Gross Misconduct - Other (GMO)
- 99 ___ 2ⁿᵈ Violation of Fraternization Policy (FRA)
- 107 ___ Falsification of Employment Documents (FED)

Re-Hire Recommended ☐ Yes ☐ No (Explain-General Comments) _____

_____

The following Wal★Mart property must be collected at the time of Exit interview: (Please check all that apply)
( ) Badge    ( ) Discount Card (s)    ( ) Weight Belt    ( ) Other_____
( ) Smock    ( ) Company Credit Cards/Phone card    ( ) Box Cutter

NOTE: To be considered for re-employment, you must re-apply. Your previous work record with Wal★Mart will be reviewed. The Company assumes no obligation to contact you for possible re-employment.

C. Renati    8-28-02

ASSOCIATE                    DATE          SALARIED MEMBER OF MANAGEMENT          DATE

HOURLY SUPERVISOR            DATE          FACILITY MANAGER                        DATE

Contact phone numbers for Terminating Associates:

| | | |
|---|---|---|
| COBRA | Continuation of Benefits | (800) 421-1362 |
| DISCOUNT CARD – RETIREE | Application Information | (501) 273-4664 |
| LIFE INSURANCE ( must call within 31 days of the date coverage ends) | Conversion of Benefits | (800) 421-1362 |
| PROFIT SHARING | Account Information | (501) 273-4664 |
| RESOURCES FOR LIVING | Counseling Service | (800) 825-3555 |
| STOCK OWNERSHIP | Account Information | (800) 438-6278 |
| 401K | Account Information | (888) WMT401K |
| | | (888) 968-4015 |

WMHO 897175

EXHIBIT A