Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
  RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Telephone:    626.585.9600
Facsimile:    626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@ hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated, <br><br> Plaintiff(s) <br><br> v. <br><br> WAL-MART STORES, INC. <br><br> Defendant. | Case No. C 01-CV-2252-CRB <br><br> **DECLARATION OF BARBARA STEELE IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Barbara Steele, declare:

1.    I am a woman and a former employee of Wal-Mart. I reside in Arizona.

2.    I worked for Wal-Mart for 16 years as an hourly employee, an Assistant Manager, a Co-Manager, and a Store Manager. I held field management positions in several different states.

3.    I was hired in 1986 as an hourly employee at a Wal-Mart in Carthage, Missouri. Within a year and a half, I had been promoted to Department Manager and then to Support Manager. In approximately 1988, Store Manager Lou Amato asked me what my career goals were, and I told him I was interested in a management position. Mr. Amato told me that the District Manager's approval was required for me to join the Management Training Program, and he told me that he would recommend me to District Manager Dave Simpson. My co-worker Sherrie Lambeth also expressed interest in management during the same conversation, and Mr. Amato said he would recommend her also. I also expressed my interest in management on my 1988 performance evaluation, on which I received an above-standard rating: "My goal is ... to advance myself to the highest possible position." (True and correct copy attached hereto as Steele Exhibit A.)

4.    During the next year, Ms. Lambeth and I tried to arrange interviews with Mr. Simpson whenever he was in the store, but he was completely unresponsive. In autumn 1989, I asked Mr. Amato why my promotion was being delayed, and he told me that Mr. Simpson refused to recommend me or Ms. Lambeth for the Management Training Program because he did not believe women should have management positions.

5.    In October 1989, I was finally promoted into the Management Training Program by District Manager Jim Lund. Mr. Amato and Mr. Lund both told me that managers were required to be available to relocate anywhere in the country. I expressed my availability to work anywhere Wal-Mart needed managers.

///

6.    I was assigned to a store in Joplin, Missouri, for management training. When my training was complete, I again told District Manager Lund that I was willing to move my residence if necessary for an Assistant Manager assignment. Shortly thereafter, Regional Personnel Manager Marie Hughes offered me a position as Assistant Manager at a store in Atascocita, Texas, which I accepted.

7.    I worked as an Assistant Manager at the Atascocita store for two years, and was then transferred in 1992 to a store in Porter, Texas, where I worked another year as an Assistant Manager. By this time, I had been an Assistant Manager for three years, and I was becoming concerned that I would not be promoted to Store Manager, despite my positive evaluations and hard work.

8.    I called Regional Personnel Manager Hughes to tell her my career felt stalled. Ms. Hughes suggested that I take an assignment as Assistant Manager at a "problem store" in Silver City, New Mexico. I then spoke with that store's District Manager, Rick Klein, who told me that if I could get the store "under control," I would get promoted to Store Manager. I accepted the assignment.

9.    I started at the Silver City store in September 1993. During the two years I worked in Silver City, I was frequently assigned to set up new stores in other states, including North Dakota, South Dakota, and Missouri. I was always told that I needed to accept these "opportunities" in order to improve my chances for promotion. However, no matter how many such assignments I accepted, I continued to work as an Assistant Manager with no promotion in sight.

10.    I was finally promoted to Store Manager of a store in Winslow, Arizona, 1995, by District Manager Charles Balentine. I had been an Assistant Manager with positive evaluations and no coachings for six years.

11.    Throughout my career at Wal-Mart, I observed many male Assistant Managers obtain promotions to Store Manager after spending less time as an Assistant Manager than I had.

DECLARATION OF BARBARA STEELE IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

Case No. C-01-2252 MJJ

3

For example, Gary Freeman was promoted to Store Manager of the Atascocita, Texas store in 1990 after only three years as an Assistant Manager. Richard Bourget was promoted to Store Manager of a store in Scarborough, Maine, in 2000 after only three years as an Assistant Manager and nine months as a Co-Manager. I also learned that Sherrie Lambeth, my co-worker from Carthage, Missouri, spent ten years as an Assistant Manager before she was promoted to Store Manager.

12.    In the two years I was Store Manager in Winslow, my management team and I improved the store's overall performance rating from second or third-worst in the region to one of the top ten percent.

13.    In 1997, I obtained a transfer as a Store Manager to a larger store in Lewiston, Idaho. In the two years that I was Store Manager in Lewiston, my management team and I improved the store's overall performance rating in the region from the bottom quarter to the top quarter.

14.    Nonetheless, in 1999, District Manager Alan Schamber demoted me to Assistant Manager and transferred me to a store in Yakima, Washington, for allegedly backdating the evaluation date for one of my employees. I felt strongly that my demotion for such a minor infraction was unfair, and I used the Open Door to complain to Regional Vice President Bob Erickson. Mr. Erickson told me that the demotion would stand but that I could start applying for promotion again to Store Manager after 90 days.

15.    Over the next three years, I applied more than twenty times for Store Manager positions using Wal-Mart's new computerized Management Career Selection system. I was never reinstated to a Store Manager position. I learned that many of the Store Manager positions that I applied for went to men with equal or lesser qualifications than I had. In 2000, Richard Bourget was chosen over me for promotion to Store Manager in Scarborough, Maine. Mr. Bourget had only three years' experience as an Assistant Manager and nine months' experience as a Co-Manager. I had four years' experience as a Store Manager and six years' experience as

an Assistant Manager. Also, In 2000, John Clifton was chosen over me for promotion to Store Manager in Salem, Oregon, even though Mr. Clifton had only five years' experience as an Assistant Manager and less than one year's experience as a Co-Manager. Also, in 2000, James Sexton was chosen over me for promotion to Store Manager in Edmond, Oklahoma, even though Mr. Sexton had only four years' experience as an Assistant Manager and two years' experience as a Co-Manager. Also in 2000, Michael Kelly was chosen over me for promotion to Store Manager in Vancouver, Washington, even though he had only two years' experience as a Store Manager.

16.    I also saw male employees, who had been demoted or terminated for more serious misconduct than I had been accused of, granted promotions in violation of the 90-day rule. For example, Mr. Schamber, the District Manager who had demoted me, was terminated for fraternizing with a female Store Manager shortly after my demotion. He applied for and received the position of Store Manager at a store in Vancouver, Washington, even though fewer than 90 days had passed since his termination. I had just passed the 90-day mark, and I also applied for that Store Manager position. I never received an explanation as to how Mr. Schamber had access to the Management Career Selection system during a period when he was not a Wal-Mart employee.

17.    In total, I know that men with equal or lesser qualifications than I had received most of the Store Manager positions I applied for via the Management Career Selection system. I never received any information about why I was not chosen, other than a form letter via Wal-Mart's internal e-mail system stating that another applicant had been offered each position. During this time period, my evaluations were consistently "above standard" or "exceeds expectations."

18.    After my demotion, I worked as an Assistant Manager in Yakima for one year. In approximately 2000, Store Manager Shannon Horton (male) asked District Manager Don Schulties, in my presence, why I had not been promoted to Store Manager. Mr. Schulties replied,

"Home Office won't let me re-promote her." When I heard Mr. Schulties' comment, I finally realized that I was unlikely to ever regain a position as Store Manager. However, because I was the sole wage earner for my family, I continued to work at Wal-Mart for another two years as Grocery Co-Manager. During that time, I continued to use the Management Career Selection system to apply for Store Manager positions, but I was never promoted to Store Manager.

19. In January 2003, District Manager Dennis McMillan told me that he was assigning me the position of Co-Manager of Softlines and the Front End in addition to my existing position of Grocery Co-Manager. No raise was included with this "offer." To me, the message was clear: I was qualified to do all the difficult work of store management, but I was not ever going to obtain a promotion back to the level and salary rate of Store Manager.

20. I left Wal-Mart in late January 2003, out of frustration with Wal-Mart's failure to promote me. I am a Store Manager at Fry's Grocery in Arizona.

21. In my 16 years at Wal-Mart, I never worked with a female Store Manager, and I only knew of one other female Store Manager. I never worked with or knew of any female District Managers.

22. I have personal knowledge of each and every fact set forth in the Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

I declare under penalty of perjury of the laws of the United States and State of Arizona that the foregoing is true and correct.

This Declaration was signed by me on *April 18, 2003* (month and day), 2003, at *Phoenix, Arizona* (city and state).

*Barbara Steele*
Barbara Steele

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

## *Betty Dukes v. Wal-Mart Stores, Inc.*

## Case No. C 01-CV-2251-CRB

## Declaration of Barbara Steele in Support of Plaintiffs' Motion for Class Certification

# EXHIBIT A

*Will ille*

WMP-1
Rev: 9-85

WAL-MART STORES, INC.
ASSOCIATE EVALUATION FORM

Date of Review: _____

Name _Barbara Steel_    Social Security No. _____

*12-4-86*

REASON FOR THIS EVALUATION (Circle one or more)

1 - 90-day Evaluation          2 - Periodic Review (6 month)   3 - Pay Increase-Anniversary
4 - Promotion                  5 - Pay Increase-Merit          6 - Demotion
7 - Transfer                   8 - Warning (Probation)         9 - Termination

This form has been developed to help you fairly and factually evaluate your hourly associates' ability to perform their job functions. Be sure you are thorough, truthful, factual and fair on the evaluation and discuss the positive and negative points.

The form is divided into two parts. The first is an evaluation of the associate's general job performance. The second part, on an insert sheet, is related to the technical skills and specific job responsibilities, and will differ with each job classification. Please attach these two documents before filing the evaluation in the personnel file.

## JOB PERFORMANCE

(CIRCLE NUMBER OF RATING WHICH DESCRIBES ASSOCIATE'S PERFORMANCE)

INITIATIVE - The degree to which the associate acts independently in new situations; the extent to which he/she sees what needs to be done and does it without being told.

| 5 | == 4 == | 3 | 2 | 1 |
|---|---|---|---|---|
| Little or no supervision needed. Highly resourceful and aggressive. | Thinks and acts independently. Resourceful in new situation. | Initiative is satisfactory. Requires average supervision. | Requires frequent instructions. Needs close supervision. | Must be told everything to do. Takes no personal initiative. |

COMMENTS: _Barb is a very good self starter, needs very little Mgt. supervision takes pride in her dept works to improve her sales._

PRODUCTIVITY - The actual work output of the associate relative to other associates. Consider what he/she actually produces rather than what the associate is capable of producing.

| 5 | == 4 == | 3 | 2 | 1 |
|---|---|---|---|---|
| Definitely a top producer. | Produces more than most; above average. | Average output; definitely meets requirements. | Low output; below average. | Extremely low output; definitely not average. |

COMMENTS: _Hard worker takes the job and run's with it._

STEELE EXHIBIT A

CONFIDENTIAL                    WMHO1035129

WMP-13

**EFFORT** - The degree to which the associate does his/her best to be a top associate (without regard to how effective he/she may be). Consider conscientiousness and motivation.

| 5 | ==4== | 3 | 2 | 1 |
|---|---|---|---|---|
| Intensely moti-vated. Exerts maximum effort. | Exerts more effort than most. A hard worker. | Satisfactory effort; average motivation. level. | Low motivation could perform much better than he/she does. | Exerts effort only when he/she is forced to do so. |

COMMENTS: Works to help with freight in not only her dept but any where else willing to do any job given, and does it well.

**DEPENDABILITY** - The extent to which the associate can be depended upon to be available for work and to do it properly. The degree to which he/she is reliable, trustworthy and persistent.

| 5 | == 4 == | 3 | 2 | 1 |
|---|---|---|---|---|
| Completely reliable highly persistent finishes a job at any cost to him/herself. | More reliable than average; usually per-sists in spite of difficulty. | Trustworthy and reliable; needs average direction; about average in persistence. | Sometimes unreliable; avoids responsi-bility; satisfied to "get by". | Usually unreliable; does not assume responsibility; gives up easily. |

COMMENTS: Barb works hard to get her notes done, and has a good work attendance record. She will stay extra to help with problem freight. Will come in extra to do special promo's for her dept.

**JOB KNOWLEDGE** - Knowledge of the techniques, processes, procedures, products, equipment and materials required to do the job.

| 5 | == 4 == | 3 | 2 | 1 |
|---|---|---|---|---|
| Authoritative knowledge of his/her own work and superior knowledge of. related jobs. | Well-informed about his/her own job and related jobs. | Satisfactory knowledge of his/her job and sufficient knowledge of related jobs. | Minimum knowledge for doing his/her job. | Lacks knowledge to perform work properly. |

COMMENTS: Well read about her dept knows her sales numbers well, very good at new displays or setting a counter.

**COOPERATIVENESS** - Willingness to work harmoniously with others in getting a job done. Readiness to observe and conform to the policies of management. Maintenance of an attitude toward others that makes working together comfortable.

| X ==5== | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Extremely cooperative stimulates work and good attitudes in others. | Goes out of his/her way to cooperate and get along. | Cooperative; gets along well with others; has a good attitude. | Indifferent; makes no effort to cooperate. | Extremely negative and hard to get along with. |

COMMENTS: Works well with fellow associates, has a very good attitude toward Mgt.

CONFIDENTIAL                    WMHO1035130

WMP-12

**JUDGMENT** - The extent to which the associate makes decisions which are sound. Freedom from impulsiveness and immaturity in his/her thinking. Ability to base his/her actions on fact rather than emotion.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Unusual rational powers; astute in analyzing facts and solving problems; no impulsive decisions. | Better than average judgment; very mature and sound in his/her thinking. | Generally thinks rationally; not immature or illogical; has healthy respect for facts. | Sometimes fails to consider facts and makes error of judgment the average person would avoid. | Frequently makes judgments which are unsound; immature in thinking and judging. |

COMMENTS: Barb is a good sound thinker uses good judgement .

SAFETY - The development of work habits that prevent injury & loss, and promote cleanliness. The observation of rules, laws and regulations regarding safety and cleanliness.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Innovates safety ideas; observes all rules and regulations; has obtained the maximum level of cleanliness. | Goes out of his/her way to promote safety and cleanliness. | Observes all safety rules and regulations. Takes necessary steps to ensure cleanliness. | Obeserves some rules but needs definite improvement to meet safety and/or cleanliness standards. | Does not observe any rules or regulations concerning safety and/or cleanliness. |

COMMENTS: Needs to make sure all step ladders, carts of freight are put away before going to break or lunch.

COURTESY TOWARDS CUSTOMERS - Respect, consideration, cooperation for the needs and wants of the customer.

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| Shows definite ability to detect the needs and wants of the customer; promotes customer cooperation. | Shows above average consideration and respect for the customer. | Is considerate and respectful toward customer; is cooperative in helping them fulfill their needs. | Indifferent toward customer; requires instruction on the importance of courtesy toward customers. | Has exhibited some rudeness toward customer; immediate change to correct this situation must be made. |

COMMENTS: Barb is very good in this area she will help in any way in any dept and will go find the answer if she dose not have it.

CONFIDENTIAL

WMHO1035131

WMP-12

## EVALUATION SUMMARY

1. Identify what you consider to be areas that require improvement. List how these areas are to be improved and time limits within which improvements should be recognized. If you have any problems with attendance, it should be covered here.

   To make sure the dept has either herself or Linda in it to help the customers at all times , and someone working the carts at all times.

2. Identify what you consider to be the major strengths of the associate. These could be personal attributes, job performance or technical skills.

   Hard worker, cares about the qualty of work she puts out, help other dept. mangers with m.u. m.d.'s or any else she can. Comes in to help promote her dept after hours, ( but is on the clock!)

3. Discuss improvement made by associate since last review as related to recommendations for improvement.
   Barb will receive a early raise due to her performance, it is not due till 12/4/88    THANKS FOR YOUR HARD WORK!!!!!

## CAREER GOALS

What are the associate's career goals? Does he/she desire to achieve higher job responsibilties with the company? These comments should be made by the associate.

My goal is to keep a steady increase in sales in my dept and to learn as much as possible about the running of Wal-Mart and to advance myself to the highest possible position I can capable of.

## ASSOCIATE COMMENTS

Wal-Mart is a company which strongly believes in the "Open Door Policy" and we encourage the associate to make any comments on this evaluation. If you have questions or problems, feel free to discuss them with your supervisor. (Use blank sheet of paper for additional comments)

I appreciate receiving a good evaluation and knowing I have management that observes what goes on in the store. I really enjoy working for Wal-Mart more than any job I have ever held. (Thanks)

New Rate of Pay $ 5.00                    Effective Date 9/25/88

_Barbara D. Steel Will_        _Hardesty_     - 9-26-88
Associate            Supervisor           Date Signed

CONFIDENTIAL                          WMHO1035132