Joseph M. Sellers (pro hac vice)
Christine E. Webber (pro hac vice)
Jenny R. Yang (pro hac vice)
Peter Romer-Friedman (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, D.C.  20005
Telephone:  202.408.4600
Facsimile:  202.408.4699
jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
   RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone:  626.585.9600
Facsimile:   626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@hadsellstormer.com

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Next Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA, DEBORAH GUNTER and CHRISTINE KWAPNOSKI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WAL-MART STORES, INC.,<br><br>Defendant. | Case No:  C 01-2252-CRB<br><br>**DECLARATION OF CHERI STOUT IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

Decl. of Cheri Stout in Supp. of Plaintiffs' Motion for Class Certification          Case No. C 01-CV-2252-CRB

I, Cheri Stout, declare:

1. I have personal knowledge of all of the foregoing and, if asked, could and would testify competently to all of these facts.

2. I am female and reside in California. I was an employee at Wal-Mart from 2000 until 2007. I worked in a Palmdale, California store (Store #1660). I started working as cashier. I worked as an inventory controller for approximately six months in 2001, and later returned to a cashier position. After applying several times, I eventually became a Customer Service Manager ("CSM"), but I returned to a cashier position before ending my tenure at Wal-Mart.

3. I really wanted to advance into Wal-Mart management. I told my superiors many times about my desire for promotion, and applied every time I learned there was an opening for a CSM position. I heard about openings from other people or from an information board in an employee hallway. In all, I estimate that I applied for a CSM position 11 times before I finally was promoted in 2002, but I was never told why I did not receive a promotion or what I needed to do to become promotable. The time when I finally was selected, I interviewed with a front end Assistant Manager, and then worked as a CSM for approximately 1.5 to 2 years before stepping down from the position because I had to take medical leave for some time. When I returned, I went back to being a cashier but worked exclusively at the courtesy desk, which was staffed almost exclusively by women.

4. Although I was interested in participating, I was never told how I could get into the management training program. In 2003, about a year after getting promoted to the CSM job, I inquired about the management training program to Assistant Manager Dawn Turner. She reacted negatively to me, and did not tell me what I needed to do to apply, or what the criteria were, or what I should do to prepare for the program.

5. A few months after my promotion to CSM, I was asked to train a recently promoted CSM named Michael Varelas. An Assistant Manager named Vivian had

previously told me Mr. Varelas had applied for the CSM position at the same time that I had when I was finally given the position, and that he had been ranked lower than me. Nonetheless, I observed that within 1 to 1.5 years of becoming a CSM, Mr. Varelas was promoted into the management training program, and then became an Assistant Manager. Even though I understood that relocation was supposed to be a requirement to enter the management program, when Mr. Varelas became an Assistant Manager, he was assigned to a store in a neighboring town, less than 10 miles away.

6. During my employment with Wal-Mart, I became aware that male employees, including those hired after me and in the same job position as me, were paid more than I was. This occurred while I was a cashier and also while I worked as a CSM.

7. Before becoming a CSM in 2002, I learned about the pay disparity between men and women by speaking to a male co-worker named James [last name unknown] who also worked as a cashier and told me he was earning significantly more than me. I believe he was making at least 50 cents to $1.00 more per hour than I was, at a time when I was making something around $8.00 per hour. I complained to Assistant Manager Clevan McCrae about the pay differential. Mr. McCrae explained that James earned more money than I did because he had a family to support.

8. I learned about the pay disparity between male and female CSMs when I filled in at another Wal-Mart store in the Victorville, CA area. It was in late October or early November 2003, around the time that a wildfire occurred in Southern California, causing a number of employees at the other location to miss work. I was part of a group of employees from the Palmdale store who helped to cover their shifts. They placed me in the Sporting Goods department and a male CSM from the Hesperia store helped me settle in. We got to talking and when he learned that I was also a CSM, we compared notes on our work and pay. He told me he had started

2

with Wal-Mart after I did, and was making about $1.50 more per hour than I was making at the time.  During another conversation with Michael Varelas, who I had trained and had been promoted to the CSM position after I was, I learned that he too made more than I did as a CSM, even though I had worked at the store for at least a year longer than Mr. Varelas at the time, and we were doing the same job.

9.  I noticed that certain departments at Wal-Mart were segregated by gender. For example, the tire and lube express, stocking, and unloading departments were predominantly male.  Toward the end of my time at Wal-Mart, around 2005 or 2006, I was placed at the lube express desk to cover for someone out on leave.  I learned the duties of the position, which included making keys, stocking shelves and selling batteries.  I really liked the job, so I inquired with Store Manager C.W. Jackson about getting the position permanently.  Mr. Jackson did not even bother interviewing me for the position; he just told me that a man would get the job because [he assumed] I did not know how to check a battery.  I actually knew very well how to check a battery—and jump start a car—but I was never even allowed to apply for the job.  I thought it was unfair that I did not get the chance to prove that I could do the job.  A man, who I do not believe had previously worked for Wal-Mart, was subsequently hired for the position.

I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct.  This declaration was signed by me on April 1, 2013 at Lancaster, California.

Cheri Stout