Joseph M. Sellers (Pro Hac Vice)
Christine E. Webber (Pro Hac Vice)
Jenny R. Yang (Pro Hac Vice)
Peter Romer-Friedman (Pro Hac Vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
West Tower, Suite 500
1100 New York Avenue
Washington, DC 20005
Telephone: 202.408.4600
Facsimile: 202.408.4699
Jsellers@cohenmilstein.com
cwebber@cohenmilstein.com
jyang@cohenmilstein.com
promerfriedman@cohenmilstein.com

Randy Renick [SBN 179652]
Anne Richardson [SBN 151541]
Cornelia Dai [SBN 207435]
HADSELL STORMER
    RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Telephone:    626.585.9600
Facsimile:    626.577.7079
rrr@hadsellstormer.com
arichardson@hadsellstormer.com
cdai@hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel Listed on Next Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA. DEBORAH GUNTER, CHRISTINE KWAPNOSKI, on behalf of themselves and all other similarly situated,<br><br>Plaintiff(s)<br><br>v.<br><br>WAL-MART STORES, INC.<br><br>Defendant. | Case No. C 01-CV-2252-CRB<br><br>**DECLARATION OF TAMARA ZUMBRUN IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

i

Steven L. Stemerman (SBN 067690)
Elizabeth A. Lawrence (SBN 111781)
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
Telephone: 415.597-7200
Facsimile: 415.597-7201
stemdcb@aol.com
elawrence@dcbsf.com

Noreen Farrell (SBN 191600)
Jennifer Reisch (SBN 223671)
EQUAL RIGHTS ADVOCATES
180 Howard Street, CA 94105
San Francisco, CA 94105
Telephone: 415.621.0672
nfarrell@equalrighs.org

Sheila Thomas (SBN 161403)
Law Office of Sheila Thomas
5260 Proctor Ave
Oakland, CA 94618
Telephone 510.339.1934
Facsimile: 510.339.3723
sheilayt@sbcglobal.net

Jocelyn D. Larkin (SBN 110817)
THE IMPACT FUND
125 University Avenue, Suite 102
Berkeley, CA 94710
Telephone: 510.845.3473
Facsimile: 510.845.3654
jlarkin@impactfund.org

Merit Bennett
THE BENNETT FIRM
460 St. Michaels Drive, Suite 703
Santa Fe, NM 87505
Telephone: 505.983.9834
mb@thebenettfirm.us

Steven Tinkler
THE TINKLER LAW FIRM
309 Johnson Street
Santa Fe, NM 87501
Telephone: 505.982-8533
Facsimile: 505.982.6698
set@tinklernm.com

ii

I, Tamara Zumbrun, declare:

1.      I am a female employee at the Wal-Mart Store in Mountain Home, Idaho. I began working at Wal-Mart in July, 2000. When I applied for the Management Training Program as a result of the January 2003 solicitation of applicants, I was told that there were additional, previously undisclosed requirements that barred me from qualification. I have experienced sexual harassment and retaliation for using the Open Door at Wal-Mart.

2.      From the time I applied at Wal-Mart, I was interested in becoming a part of Wal-Mart management. I wrote on my application that I was interested in management positions. See Tamara Zumbrun's Application Supplement, a true and correct copy hereto attached as Exhibit A. In addition, I told Assistant Manager Eric Wright (male) during my first interview that I was interested in a position as department manager and that I had interest in other management positions. In my second interview, I told Co-Manager Steve Payne (male) that I was interested in management positions.

3.      My first job at Wal-Mart was to help with store setup, because the Mountain Home store had not yet opened. After setup was complete, I became an overnight stocker.

4.      In October 2000, I received my 90-day performance evaluation from Assistant Manager Skip Davis (male). I told Mr. Davis during this evaluation that I wanted to join management.

5.      In January, 2001, I applied for a position as team lead for ICS with the hope that the position would lead to an opportunity to join the Management Training Program. Assistant Manager Skip Davis conducted the interview. He asked several gender-specific questions, including, "Being a female, what makes you more qualified for this job than a male employee?" In addition, I was told by Skip Davis that the ICS staff is mostly male and they might have a problem with a female boss. For over an hour, Mr. Davis required me to justify why he should give the promotion to a female instead of a male. Then he a chose a male employee, Tony Whitten, for the position.

6.      In February, 2001, I transferred to a cashier position. Co-Manager Steve Payne was my supervisor. Mr. Payne did not address female employees by their first names. Instead, he referred to female employees, including me, as "Babe," "Baby-Doll," or "Baby." In contrast, he addressed male

employees by their first names.

7. One night when Mr. Payne referred to a female co-worker as "Babe," I told him that his comment offended me. Mr. Payne only rolled his eyes and walk away.

8. I tried to use the Open Door to address my concerns of gender discrimination and sexual harassment. I contacted Assistant Manager Don Grist in September 2001, to again raise my concerns about Mr. Payne's sexual harassment and Mr. Davis' gender-specific questions. I told Mr. Grist that every time Mr. Payne talks to a female employee, he calls her "Babe," "Baby-Doll," or "Baby." Mr. Grist said that someday Mr. Payne would get in trouble for that, but did nothing to address the problem. I am unaware of any coaching or action taken as a result of my use of the Open Door. Mr. Payne and a co-worker Fred Hack (male) continued to call me and other females "Babe". Because the Open Door failed me, I began to look for an opportunity to move to another department.

9. Shortly after speaking to Assistant Manager Don Grist, I began receiving different treatment at Wal-Mart. I was disciplined for minor violations for which male employees were not ordinarily disciplined. On September 22, 2001 I received a coaching for profanity when I used the word "damn" in the employee break room. I routinely heard male employees use far worse profanity in front of management and customers while they were outside together on cigarette breaks. In addition, I heard Tony Whitten call a female employee, Bobby Dimick a "f***ing bitch," and he did not receive a coaching. In fact, within months he was promoted to department manager of ICS, the position for which I had applied and interviewed. In October 2001, I was given a "decision day," the most severe discipline at Wal-Mart short of termination, for misjudging the timing of my paycheck deposit, which resulted in one of my personal checks failing to clear at Wal-Mart. Don Kingsley, a male employee, bounced eight checks before he was even coached, a less severe form of discipline. Another male, Kim Cummings, also bounced a check at Wal-Mart but he was not given a decision day.

10. According to Wal-Mart policy, as a result of the decision day I was ineligible for promotion to any position for one year.

11. After I received my September coaching I asked my Customer Service Manager (CSM), Joyce Frye, for a merit raise, and she said that it would be no problem. However, Tammy Epley, the

Declaration of Tamara Zumbrun In Support of Plaintiffs' Motion for Class Certification       Case No. C-01-2252 MJJ

other lead CSM later told me that it was not possible for me to get a merit raise because I had an active written coaching in my file.

12.    The Photo Center was very short staffed when I arrived, and so we all had to work very hard to keep up with the workload. All of the Associates at the Photo Lab were female, except for one. He was on a leave of absence. Another female employee, Christian Compton, and I joined together to ask for a merit raise from our Co-Manager Jim Payne. Mr. Payne just laughed at us.

13.    In October 2002, I was promoted to lab specialist in the Photo Center. For this promotion, I was supposed to receive a .25 cent raise, according to my Assistant Manager in the Photo Lab, Laura Sauer. As of April 2003, I still have not received the raise.

14.    In January 2003, there was a flyer placed by the time clock in our store advertising the Management Training Program. According to the flyer, any employee could apply for a position in the Management Training Program. The application period was for a limited time, approximately one week or a little less. In my two and one half years at Wal-Mart, I had never known of any other opportunity to apply for the Management Training Program. As I had been interested in joining management from the commencement of my employment at Wal-Mart, I applied. I completed the application over the pipeline, Wal-Mart's computerized information network which has online applications for some job positions. I met all of the prerequisites for the program.

15.    My Store Manager, Pat Cochran, interviewed me for the position on March 6, 2003. He told me that I was not ready to become a Management Trainee. He told me that I needed to spend some time as a department manger and then as a Support Manager first. Mr. Cochran told me that I had another two years of employment at Wal-Mart before I would be ready. Meanwhile, according to the pipeline application, I had met all the requirements necessary to apply for the position. I had not been asked on my application about whether I had held positions as a department manager or Support Manager.

16.    Mr. Cochran further elaborated and said that I needed experience with the Telzon, Wal-Mart's handheld inventory and pricing computer, and that I needed experience with modular set-up, which is building and displaying items on Wal-Mart display units. I had experience in both of these

Declaration of Tamara Zumbrun in Support of Plaintiffs' Motion for Class Certification        Case No. C-01-2252 MJJ

areas. I reminded Mr. Cochran that I used the Telzon everyday in the Photo Center and reminded him that my first job at Wal-Mart was to set-up the modulars. That did not change his mind. He continued to tell me that it would be another two years before I would be qualified for the Management Training Program.

17.    Throughout my interview Mr. Cochran asked me if I was willing to relocate to enter the Management Training Program. Every time he asked me, I told him yes, but he continued to ask.

18.    Despite this discouragement from Store Manager Cochran, I continue to be interested in joining the Management Training Program at Wal-Mart. I have received no information from Wal-Mart indicating if there will be another opportunity to apply for the program. I have received no encouragement from Store Manager Cochran, and he has not made any effort to provide to me the experience he stated I needed before I could be trained to be a Wal-Mart manager.

19.    As of March 2003 I am still working in the photo lab at Wal-Mart. Of approximately eight Assistant Mangers in our store, only three are female. When the store opened in the late summer of 2000, only one Assistant Manager in the store, out of eight, was female.

I have personal knowledge of each and every fact set forth in the Declaration, and if called to testify as a witness in this matter, I could and would competently testify to each of these facts.

I declare under penalty of perjury of the laws of the United States and State of Idaho that the foregoing is true and correct.

This Declaration was signed by me on ___April 14___, 2003, in the City of

_____, State of Idaho.

Tamara Zumbrun

49:C:\Documents\cafc-walm dec supp class cert.doc
02/06/2003 3:34:38 PM

Declaration of Tamara Zumbrun in Support of Plaintiffs' Motion for Class Certification    Case No. C-01-2252 MJJ