IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUKES, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | No. C 01-2252 CRB <br><br> **ORDER REQUIRING PREPARATION FOR HEARING** |

The Court ORDERS the parties to be prepared to respond orally to the questions set forth below at today's hearing.

Questions for the Plaintiffs

(1) What, exactly, is the "common mode of exercising discretion" underlying your disparate impact theory?

(2) What is the significance to your disparate impact theory of your evidence of Wal-Mart's culture and shared stereotypical views of women?

(3) Your reply brief appears to disclaim reliance on your anecdotes and culture/stereotype evidence as support for your disparate impact theory. What then, exactly, are you relying on?

(4) What is special about the three regions in the proposed class, as opposed to some other three, or four, or five regions? Did Wal-Mart internally group these regions

      together in any special way?  What evidence indicates that the way pay and promotion decisions were made in these regions was different than in other regions?

(5)    The Supreme Court already reviewed evidence of Wal-Mart's management structure and concluded that "[p]ay and promotion decisions at Wal-Mart are generally committed to local managers' broad discretion" with "limited corporate oversight." 131 S. Ct. at 2547.  What new evidence establishes that that upper-level regional management was actively and regularly involved—not just that they had formal authority to intervene, but that they were actually involved—in the individual promotion and pay decisions made by District and Store Managers?

(6)    Assuming Regional Vice Presidents and Personnel Managers effectively controlled the exercise of local managers' discretion, how many different individuals held those positions during the class period?  And for how many of those individuals do you offer evidence of bias or stereotypical thinking?  Assuming that the Court concludes that Store and District managers actually made the contested decisions, how many of those individuals were there?  For how many of them do you offer evidence of bias or stereotypical thinking?

(7)    Does your expert purport to identify any statistically significant disparity in promotion at the store level?  Is Wal-Mart correct that about three quarters of the stores showed no statistically significant disparity in pay at the store level?  If so, please comment on the Supreme Court's opinion on this subject.  See Dukes, 131 S. Ct. at 2555 ("[I]nformation about disparities at the regional . . . level does not establish the existence of disparities at individual stores . . . .  A regional pay disparity, for example, may be attributable to only a small set of Wal-Mart stores, and cannot by itself establish the uniform, store-by-store disparity upon which the plaintiffs' theory of commonality depends.") (emphasis added).

(8)    You identify five "specific employment practices."  Which one of those was not previously described—even if not labeled the same way—in your Supreme Court briefing and in Justice Ginsburg's dissent?

(9) The Supreme Court's opinion said managers' discretion was "broad," not "unfettered." Does that imply that the Court understood that Wal-Mart provided some general criteria for managers to consider in exercising their discretion?

(10) Was relocation a requirement for all of the promotion decisions you are challenging? Is there some evidence that some managers did post job openings, even before January 2002?

Questions for Wal-Mart

(1) Can a pattern of statistically insignificant disparities be evidence of disparate impact? Are you aware of any binding precedent on point?

(2) You fault Plaintiffs for not establishing that any of their proposed "specific employment practices" caused the alleged disparities. What would that evidence look like?

(3) Are you arguing that a shoulder-tap selection process is not a "specific employment practice" under the Supreme Court's opinion in Dukes, or just that the evidence does not support the existence of such a practice in this case across all class members throughout the class period?

(4) How do you distinguish McReynolds v. Merrill Lynch, 672 F.3d 482 (7th Cir. 2012), which concluded that Rule 23(b)(3) could be addressed through issue certification?

(5) Describe a Title VII class action that would satisfy Rule 23(b)(3) under the law as you have argued it.

**IT IS SO ORDERED.**

Dated: June 28, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE