1     GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099, tboutrous@gibsondunn.com
2     CATHERINE A. CONWAY, SBN 98366, cconway@gibsondunn.com
MICHELE L. MARYOTT, SBN 191993, mmaryott@gibsondunn.com
3     333 South Grand Avenue
Los Angeles, CA  90071-3197
4     Telephone:  213.229.7000
Facsimile:   213.229.7520
5

6     GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY, SBN 212532, mperry@gibsondunn.com
7     RACHEL S. BRASS, SBN 219301, rbrass@gibsondunn.com
555 Mission Street, Suite 3000
8     San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:   415.393.8306
9

10     Attorneys for Defendant WAL-MART STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA, DEBORAH GUNTER and CHRISTINE KWAPNOSKI,<br><br>          **Plaintiffs,**<br><br>     v.<br><br>WAL-MART STORES, INC.,<br><br>          **Defendant.** | CASE NO. C 01-2252-CRB<br><br>**WAL-MART STORES, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF CHRISTINE KWAPNOSKI ON HER SECOND CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing:**<br>Date:        June 5, 2015<br>Time:       10:00 a.m.<br>Place:      Courtroom 6, 17th Floor<br>Judge:     Hon. Charles R. Breyer |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 5, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-captioned court, located on the 17th Floor at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Wal-Mart Stores, Inc. ("Wal-Mart") will, and hereby does, move this Court under Federal Rule of Civil Procedure 56(b) for partial summary judgment in favor of Wal-Mart on the Second Claim for Relief asserted by plaintiff Christine Kwapnoski.  No genuine issue of material fact precludes entry of judgment against Ms. Kwapnoski on that claim.  Wal-Mart has separately moved for partial summary judgment on the First Claim for Relief asserted by Ms. Kwapnoski.  Wal-Mart thus seeks summary judgment on all claims asserted by Ms. Kwapnoski in the Fourth Amended Complaint.

This Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities in support of the Motion; the accompanying declarations of Rachel S. Brass, Lisa Riley, Paula Vaccaro, Tracy Englebrecht, Michelle Medlin, Mary Beth Lewis, and Donald Taylor; and such additional evidence and argument as the Court may consider at the hearing on this Motion.

Dated: April 10, 2015

THEODORE J. BOUTROUS, JR.
MARK A. PERRY
CATHERINE A. CONWAY
MICHELE L. MARYOTT
RACHEL S. BRASS
GIBSON, DUNN & CRUTCHER LLP

By:  */s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

Attorneys for Defendant WAL-MART STORES, INC.

1
2

**TABLE OF CONTENTS**

3

Page

4

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

5

III.    PROCEDURAL HISTORY ............................................................................ 2

6

IV.     FACTUAL BACKGROUND ........................................................................... 2

7

V.      ARGUMENT ........................................................................................... 10

8

       A.     Ms. Kwapnoski Is Judicially Estopped from Pursuing Most of Her Allegations ....... 11

9

       B.     Pay and Promotion ............................................................................ 12

10

              1.     Allegations of Conduct Before April 21, 2001 Are Untimely ....................... 12

11

              2.     Ms. Kwapnoski Has No Evidence of Pay or Promotion Discrimination ........ 13

12

       C.     Retaliation ...................................................................................... 20

13

              1.     The Vast Majority of the Employment Decisions that Ms. Kwapnoski
                     Challenges as Retaliatory Are Either Unexhausted or Untimely .................. 20

14

              2.     Ms. Kwapnoski Cannot Establish a *Prima Facie* Case of Retaliation or
                     Pretext with Respect to Any of the Challenged Employment Decisions ........ 22

15
16

VI.     CONCLUSION ......................................................................................... 25

17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ah Quin v. Cnty. of Kauai Dep't of Transp.*,
  733 F.3d 267 (9th Cir. 2013)................................................................................ 11

*Allen v. Mich. Dep't of Corr.*,
  165 F.3d 405 (6th Cir. 1999)................................................................................ 15

*Alvarado v. FedEx Corp.*,
  No. C 04-00098 SI, 2005 WL 2036026 (N.D. Cal. Aug. 23, 2005) .......................... 17

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................. 10

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)............................................................................................... 22

*Cannon-Stokes v. Potter*,
  453 F.3d 446 (7th Cir. 2006)................................................................................ 12

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000).............................................................................. 18

*Croker v. Boeing Co.*,
  437 F. Supp. 1138 (E.D. Pa. 1977) ...................................................................... 17

*Desert Palace, Inc. v. Costa*,
  539 U.S. 90 (2003)............................................................................................... 12

*Forsberg v. Pac. Nw. Bell Tel. Co.*,
  840 F.2d 1409 (9th Cir. 1988).............................................................................. 14

*Foster v. Arcata Assoc., Inc.*,
  772 F.2d 1453 (9th Cir. 1985).............................................................................. 13

*Freeman v. Oakland Unified Sch. Dist.*,
  291 F.3d 632 (9th Cir. 2002)................................................................................ 21

*Geldon v. S. Milwaukee Sch. Dist.*,
  414 F.3d 817 (7th Cir. 2005)................................................................................ 12

*Gonzalez v. Nat'l R.R. Passenger Corp.*,
  376 Fed. App'x 744 (9th Cir. 2010)...................................................................... 21

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001)......................................................................... 1, 11, 12

*Hay v. First Interstate Bank of Kalispel N.A.*,
  978 F.2d 555 (9th Cir. 1992).......................................................................... 11, 12

*Jones v. Flagship Int'l*,
  793 F.2d 714 (5th Cir. 1986)................................................................................ 16

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kennedy v. Allied Mutual Ins. Co.*,
   952 F.2d 262 (9th Cir. 1991).................................................................................................. 13

*Knight v. Brown*,
   485 Fed. App'x 183 (9th Cir. 2012).................................................................................... 14

*Lyons v. England*,
   307 F.3d 1092 (9th Cir. 2002).............................................................................................. 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................................................. 10

*McDonnell-Douglas Corp. v. Green*,
   411 U.S. 792 (1973)......................................................................................................... 1, 15

*Merrick v. Farmers Ins. Group*,
   892 F.2d 1434 (9th Cir. 1990).............................................................................................. 20

*Mondero v. Salt River Project*,
   400 F.3d 1207 (9th Cir. 2005).............................................................................................. 15

*Mooney v. Aramco Servs. Co.*,
   54 F.3d 1207 (5th Cir. 1995)................................................................................................ 12

*Moran v. Selig*,
   447 F.3d 748 (9th Cir. 2006)................................................................................................ 18

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)............................................................................................... 12, 13, 20, 21

*Pejic v. Hughes Helicopters, Inc.*,
   840 F.2d 667 (9th Cir. 1988)................................................................................................ 15

*Prado v. L. Luria & Son, Inc.*,
   975 F. Supp. 1349 (S.D. Fla. 1997) ..................................................................................... 17

*Ross v. Ada Cnty.*,
   730 F. Supp. 2d 1237 (D. Idaho 2010)................................................................................ 12

*Schaulis v. CTB/McGraw-Hill, Inc.*,
   496 F. Supp. 666 (N.D. Cal. 1980) ...................................................................................... 15

*Schuler v. Chronicle Broad. Co.*,
   793 F.2d 1010 (9th Cir. 1986).............................................................................................. 18

*Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*,
   No. C 10-4043 SBA, 2012 WL 3017541 (N.D. Cal. July 23, 2012) ........................................... 11

*Surrell v. Cal. Water Serv. Co.*,
   518 F.3d 1097 (9th Cir. 2008).............................................................................................. 12

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,*
   809 F.2d 626 (9th Cir. 1987)............................................................................... 10

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
   133 S. Ct. 2517  (2013) .................................................................................... 22

*Villiarimo v. Aloha Island Air, Inc.,*
   281 F.3d 1054 (9th Cir. 2002)..................................................................... passim

*White v. City of San Diego,*
   605 F.2d 455 (9th Cir. 1979)............................................................................ 15

*Yartzoff v. Thomas,*
   809 F.2d 1371 (9th Cir. 1987)........................................................................... 11

**Statutes**

42 U.S.C. § 2000e-5 ....................................................................................... 1, 12, 13

**Rules**

Fed. R. Civ. P. 56 ................................................................................................ 10

**Materials Previously Cited in This Case**

Dkt. 3, First Amended Complaint
   (filed June 19, 2001) .......................................................................................... 2

Dkt. 82, Third Amended Complaint
   (filed September 12, 2002)................................................................................... 2

Dkt. 169, Declaration of Christine Kwapnoski in Support of Plaintiffs' Motion for Class
   Certification
   (filed April 25, 2003) .................................................................................. passim

Dkt. 603, Declaration of Steven R. Crumpler In Rebuttal to Declarations of Named Plaintiffs
   Deborah Gunter, Betty Dukes, Christine Kwapnoski, Cleo Page, and Patricia Surgeson,
   and Designated Class Members Nancy Hom, Martha Kettle, and Diane Durfey (Under
   Seal)
   (filed June 12, 2003) ........................................................................................... 3

Dkt. 631, Declaration of John Keane In Support of Defendant's Ex Parte Application
   Requesting Consideration of Additional Admissions By Plaintiff Kwapnoski That Her
   Only Salaried Positions Were Not Properly Classified As Salaried Exempt and the Fact
   That The Pay Status For Such Positions Has Been Converted To Hourly
   (filed March 25, 2004) .................................................................................. 6, 14

Dkt. 634, Order Granting In Part and Denying In Part Motion for Class Certification
   (filed June 21, 2004) ......................................................................................... 20

iv

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

Dkt. 649, Declaration of Class Representative Christine Kwapnoski in Support of Plaintiffs'
    Opposition toWal-Mart's Motion for a Stay

4

    (filed September 3, 2004)..................................................................................... 3, 13, 14

5

Dkt. 767, Fourth Amended Complaint
    (filed October 27, 2011) ............................................................................................ passim

6

7

Dkt. 932-1, Exhibit 37 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification
    (filed May 31, 2013) ........................................................................................................ 19

8

9

Dkt. 945-23, Exhibit 38 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) .................................................................................................... 4, 18

10

11

Dkt. 945-47, Exhibit 70 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed May 31, 2013) ........................................................................................................ 17

12

13

Dkt. 945-48, Exhibit 80 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) ...................................................................................................... 2, 3

14

15

Dkt. 945-49, Exhibit 81 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) .................................................................................................... 5, 17

16

17

Dkt. 945-50, Exhibit 82 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) ........................................................................................... 4, 5, 17, 18

18

19

Dkt. 945-51, Exhibit 83 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) .................................................................................................... 5, 17

20

21

Dkt. 945-52, Exhibit 84 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) .................................................................................................... 5, 17

22

23

Dkt. 945-53, Exhibit 85 to the Declaration of Rachel S. Brass In Support of Wal-Mart Stores,
    Inc.'s Opposition to Plaintiffs' Motion for Class Certification (Under Seal)
    (filed June 14, 2013) .................................................................................................... 5, 17

24

25

26

27

28

v

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3    During Christine Kwapnoski's long career at Sam's Club, she was among the highest paid

4    hourly associates at her club, and advanced to hourly and then salaried management.  She was given

5    preferential treatment every step of the way, including a special fixed schedule.  Despite her well-

6    documented failures to adhere to company policy, and her rude and abusive behavior toward fellow

7    associates, supervisors, and members alike, Ms. Kwapnoski was treated with exceptional leniency.

8    And yet she alleges that Wal-Mart engaged in pervasive intentional sex discrimination and retaliation

9    against her during the pendency of this lawsuit.  The undisputed evidence does not support her con-

10   tention and requires entry of judgment for Wal-Mart.

11   As an initial matter, all of Ms. Kwapnoski's claims alleged or exhausted before she filed an

12   EEOC charge on October 19, 2011 are barred under the doctrine of judicial estoppel because she

13   failed to disclose this lawsuit or those earlier claims in a bankruptcy proceeding.  *Hamilton v. State*

14   *Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).  Moreover, many of Ms. Kwapnoski's allega-

15   tions are statutorily barred as untimely and unexhausted because they were not alleged in timely filed

16   EEOC charges.  *See* 42 U.S.C. § 2000e-5(e)(1).  As to those few allegations properly before the

17   Court for resolution, Ms. Kwapnoski cannot establish a *prima facie* case of sex discrimination in pay,

18   promotion, or retaliation, much less "specific and substantial" evidence of pretext.  *See McDonnell-*

19   *Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

20   1054, 1062 (9th Cir. 2002).  The Court should therefore grant partial summary judgment to Wal-Mart

21   on Ms. Kwapnoski's Second Claim for Relief.

22

**II.      STATEMENT OF ISSUES TO BE DECIDED**

23   1.  Whether Ms. Kwapnoski is judicially estopped from pursuing claims alleged or exhausted

24   before October 19, 2011, because she failed to disclose this lawsuit in a bankruptcy proceeding.

25   2.  Whether Ms. Kwapnoski is statutorily barred from pursuing any allegations that were not

26   timely presented to an administrative agency or this Court.

27   3.  Whether Ms. Kwapnoski's claim of intentional discrimination fails because she cannot es-

28   tablish a *prima facie* case of sex discrimination in pay, promotion, or retaliation.

1

### III.    PROCEDURAL HISTORY

On June 19, 2001, Betty Dukes filed a class action complaint against Wal-Mart alleging discrimination in pay and promotions.  *See* Dkt. 3.  Ms. Kwapnoski filed a charge of sex discrimination with the EEOC on February 15, 2002 and joined this lawsuit as a named plaintiff in the Third Amended Complaint in September 2002.  Dkt. 82 ¶ 67.  On May 16, 2005, she filed a second charge with the EEOC, which for the first time alleged retaliation claims with respect to annual evaluations, scheduling, and certain disciplinary actions.  Decl. of Rachel S. Brass in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Brass Decl.") Ex. 24 at 2.  On October 19, 2011, Ms. Kwapnoski filed a third EEOC charge alleging retaliation.  Brass Decl. Ex. 25 at 2.  Plaintiffs filed a Fourth Amended Complaint on October 27, 2011.  Dkt. 767 ("4AC").

### IV.    FACTUAL BACKGROUND

Ms. Kwapnoski worked for Sam's Club for 28 years, from 1986 through 2014.  She was initially hired as a cashier in Grandview, Missouri, and transferred to Concord, California, as an hourly associate eight years later.  4AC ¶¶ 110, 112.  Prior to 2004, each Sam's Club generally had the organizational structure outlined below.  *See* Brass Decl. Ex. 26, Dep. Tr. of Christine Kwapnoski (June 5, 2002) ("Kwapnoski Dep. I") 309:7-20, Ex. 33 at 4.



General Manager Alan Oshier promoted Ms. Kwapnoski to Center Section Team Lead, which is essentially a department head, in November 1999.  Dkt. 945-48 (Under Seal); Brass Decl. Ex. 28, Dep. Tr. of Mark Bosler (May 15, 2002) ("Bosler Dep.") 19:9-15.  On March 11, 2000, she was again

2

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

promoted to Lead Auditor, a position that reported directly to the General Manager.  Dkt. 945-48.

Ms. Kwapnoski admits that while she was an hourly associate, her approach to promotional opportunities consisted of "just hoping . . . something would open" and that her "job performance would be enough to put [her] there."  Kwapnoski Dep. I 67:7-13.  When given the opportunity to express her long term goals, Ms. Kwapnoski simply wrote:  "retire."  *Id.* at 311:14-312:18, Ex. 34.  At various points in time, she also expressed her disinterest in moving to management; as a result, she was not considered for a promotion to Receiving Area Manager that was given to Dion Denes.  Brass Decl. Ex. 29, Dep. Tr. of Alan Oshier (June 18, 2002) ("Oshier Dep.") 118:3-12.  After that position was filled, Ms. Kwapnoski expressed an interest in becoming Receiving Area Manager, and she was promoted to the next open position.  *Id.* at 118:10-12, 123:18-124:6; Kwapnoski Dep. I 164:17-165:1.

As an hourly associate, Ms. Kwapnoski received various merit and annual raises from male and female managers.  *See, e.g.*, Kwapnoski Dep. I 88:5-22, 95:14-18, 97:20-98:9, 222:20-224:6, 265:16-266:7, Exs. 5, 23, 32.  As a result, she was the highest paid hourly associate in Concord by 2001.  Dkt. 649 (Decl. of Christine Kwapnoski (Sept. 3, 2004) ("Kwapnoski 2004 Decl.")) ¶ 2; *see also* Dkt. 603 (Decl. of Steven R. Crumpler (Under Seal) (June 12, 2003)) ¶ 10; Kwapnoski Dep. I 121:5-122:1 (two of the three highest earning associates were women).



**Hourly Pay History**



Ms. Kwapnoski received above standard evaluations as an hourly associate, and she was consistently praised for her job knowledge and initiative.  *See, e.g.*, Brass Decl. Ex. 30 at 81-91.  But, as her 1998 review noted, "[o]ne's success [at Sam's Club] is based on their ability to work with other people."  *Id.* at 89; *see also* Brass Decl. Ex. 32, Dep. Tr. of Diana Eldridge (Oct. 10, 2002) ("Eldridge Dep.") 171:5-172:3, 225:22-226:8 (leadership capacity and communication skills are key considera-

3

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

tions for promotions to management).  This is an area in which Ms. Kwapnoski admittedly struggled.

Kwapnoski Dep. I 103:16-104:21 (admitting that "people skills" will "always be an issue for me");

*see also id.* at 294:11-298:7 (acknowledging that communication issues are a consideration for pro-

motion); Brass Decl. Ex. 27, Dep. Tr. of Christine Kwapnoski (Jan. 13, 2015) ("Kwapnoski Dep. II")

166:16-20 (acknowledging attending anger management classes).  Her evaluations consistently iden-

tified, as areas for improvement, ███████████████████████████████████████████████████

████████████████████████████.  *See, e.g.,* Brass Decl. Ex. 30 at 82, 87 ████████████████

████████████████████████████████████████████████████████████████████████████████████

██████.

     As Ms. Kwapnoski continued to work on her people skills, Mr. Oshier promoted her to Re-

ceiving Area Manager.  Kwapnoski Dep. I 164:17-165:1; Oshier Dep. 187:7-19.  At that time, her

store-leading hourly pay was already ██████████████ for her new position.  Kwapnoski Dep. I

120:14-18; Oshier Dep. 151:6-152:6; Decl. of Lisa Riley in Supp. of Wal-Mart's Mots. for Partial

Summ. J. ("Riley Decl.") Ex. M at 2.  Mr. Oshier and the Director of Operations, Phil Goodwin,

therefore obtained permission to pay her ██████████.  *See* Brass Decl. Ex. 33, Dep. Tr. of Ben Do-

lan (July 18, 2002) ("Dolan Dep.") 165:15-172:4.  This meant she was ████████████████ in

2002 and 2003.  *Id.* at 171:2-172:4.

     Sam's Club trains its Assistant Manager candidates through its Management in Training

("MIT") program.  Bosler Dep. 67:11-68:4.  In 2002, at the Concord club, the General Manager and

the Director of Operations recommended and selected candidates.  *See* Kwapnoski Dep. I 289:3-15;

Dkt. 945-23 (Under Seal), Dep. Tr. of Michael Miller (Apr. 4, 2013) ("M. Miller Dep.") 202:17-22.

     In  Spring  2002,  Ms. Kwapnoski  discussed  the  MIT  program  with  Mr. Goodwin  and

Mr. Oshier.  Dkt. 169 (Decl. of Christine Kwapnoski (Apr. 18, 2003) ("Kwapnoski 2003 Decl."))

¶ 17.  They told her that she needed to be an Area Manager for a year before they would consider her

for the promotion.  *Id.*  Shortly thereafter, Mr. Goodwin offered Ms. Kwapnoski the position of Front

End Area Manager because he believed it would be "a good step so [she] could see a greater portion

of the Club before [going] into the training program."  Kwapnoski Dep. I 284:18-285:4, 290:17-

291:11; Dkt. 945-50 (Under Seal).

4

Although it was not a prerequisite for promotion, Receiving Area Managers were often offered an opportunity to work in the front end before joining the MIT program so they could gain more management experience.  Eldridge Dep. 54:23-55:17, 171:5-172:3, 225:22-226:8; Oshier Dep. 95:10-96:5; *see also* Bosler Dep. 55:4-56:23, 59:11-16 (stressing the importance of experience in all areas of the club).  This was a particularly important step for Ms. Kwapnoski because it would have allowed her to further develop her communication and management skills.  *See* Dolan Dep. 183:20-184:11; Brass Decl. Ex. 35, Dep. Tr. of Phil Goodwin (June 26, 2002) ("Goodwin Dep.") 54:8-23; Kwapnoski Dep. I 280:11-283:1, 292:15-18 (acknowledging that the Front End position involved "a lot more" customer and associate contact); Dkt. 945-50.

Despite recognizing that this was a stepping stone to further promotion, Ms. Kwapnoski declined the position because it did not " ████████████████████ Dkt. 945-50; Kwapnoski Dep. I 287:7-288:12, 290:17-291:11.  She told management that she would be interested "[s]ometime after the summer."  *Id.* at 291:12-14; *see also* Dkt. 945-50.

In November 2002, Ms. Kwapnoski wrote a letter to Mr. Oshier and Ms. Teresa Haagensen (Co-Manager of the club), asking to step down from salaried management, in part, so she could earn more money by working overtime.  Dkt. 945-49 (Under Seal).  At that time, she also noted that she would not be able to attend the MIT program because she could " ████████████████████ ████████████████████.  Dkt. 945-51 (Under Seal); Dkt. 945-52 (Under Seal); *see also* Kwapnoski 2003 Decl. ¶ 22 (admitting that in the "last year," meaning 2002 to 2003, she had "not wanted to move my home on short notice and more than once").

The new Director of Operations, Ross LeDoux, accommodated her ████████████████ ████████  by offering her an opportunity to attend the MIT program in nearby Vacaville; Ms. Kwapnoski requested time to consider the offer.  Dkt. 945-51; Dkt. 945-52.  In January 2003, Mr. LeDoux and Mr. Oshier followed up with Ms. Kwapnoski, promising that she would receive a cost-of-living adjustment while she trained in Vacaville, and she would be able to return to a club in her same region " ████████████████████."  Dkt. 945-53 (Under Seal).  Ms. Kwapnoski responded that this was " ████████████."  *Id.*  She agreed to accept the position, thanking her managers for " ████████████████████."  *Id.*

5

1    In January 2003, Ms. Kwapnoski began the MIT program.  4AC ¶ 116.  Upon its completion,

2  she became Bakery Manager (an Assistant Manager position) at her home club in Concord, and she

3  received a raise.  *Id.* ¶ 118; Brass Decl. Ex. 30 at 80.  With the promotion, however, came additional

4  duties and burdens that did not sit well with Ms. Kwapnoski.  For example, she complained that her

5  "general manager refused to let [her] have any time off during the week after Christmas . . . so that

6  [she] could be with [her] children."  Brass Decl. Ex. 24 at 2.  As an hourly associate, she had come to

7  expect this time off; but the holiday season was a particularly busy time of year for Assistant Manag-

8  ers, which generally prohibited holiday-season vacations.  *See* Decl. of Mary Beth Lewis in Supp. of

9  Wal-Mart's Mot. for Partial Summ. J. against Christine Kwapnoski ("Lewis Decl.") ¶ 10.

10    In January 2004, Ms. Kwapnoski participated as a claimant in the settlement reached in *Lewis*

11  *v. Wal-Mart Stores, Inc.*, Case No. 1126312 (Cal. Super. Ct.), declaring that her position as Bakery

12  Manager was improperly classified as a salaried exempt position because "[she] believe[d] that [she]

13  spent more than one-half of [her] time performing the same type of non-managerial tasks as [her]

14  hourly subordinates."  *See* Dkt. 631 at 5.  In February 2004, the Bakery Manager position was reclas-

15  sified to an hourly Bakery Supervisor.  *See* Riley Decl. ¶ 26, Ex. P at 3.  On February 4, 2006,

16  Ms. Kwapnoski's position was again reclassified to an hourly Bakery Manager, an Area Manager po-

17  sition.  *See* Riley Decl. ¶ 26, Ex. Q at 4.  She was again paid ▇▇▇▇▇▇▇ for this position.  *See*

18  Brass Decl. Ex. 38.  Due to the ability to earn overtime, Ms. Kwapnoski made significantly more

19  money in these positions than as a salaried manager.  *See* Brass Decl. Ex. 36 at 4-10 (showing over-

20  time (OT) earnings beginning in March 2004).

21    In 2007, Ms. Kwapnoski applied for and was promoted to Fresh Assistant Manager, a salaried

22  manager position.  *See* Decl. of P. Vaccaro in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Vac-

23  caro Decl.") ¶ 8.  With this promotion, she received another raise.  *See* Brass Decl. Ex. 37 at 3, 4

24  (showing promotion to Fresh Assistant Manager on April 14, 2007, and corresponding increase to bi-

25  weekly salary of ▇▇▇▇▇).

26    Ms. Kwapnoski struggled with managing hourly associates.  For example, in 2004, ▇▇▇

27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Decl. of Michele Med-

28  lin in Supp. of Wal-Mart's Mot. for Partial Summ. J. against Christine Kwapnoski ("Medlin Decl.")

6

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

Ex. 3 at 2-3.  In addition, a Manager Detail Report indicated that she ███████████ ██████ in May 2004.  Brass Decl. Ex. 30 at 68-70 (██████████████████ ███████████████████).  Wal-Mart received numerous complaints about Ms. Kwapnoski's treatment of hourly associates, including complaints that she had made discrimina-tory statements ██████████████████ and that she ██████ harassed and retali-ated against a coworker after he ended a romantic relationship between them.  *See*, *e.g.*, Medlin Decl. ¶ 3, Exs. 1, 2.

Wal-Mart hired an outside consultant, Nancy Isenburg, to conduct an investigation into these complaints.  *See* Medlin Decl. ¶ 4, Ex. 4.  Following a thorough investigation, Ms. Isenburg issued a report ██████████████████████████.  Medlin Decl. Ex. 4 at 9-16.  As a result, Ms. Kwapnoski was coached for violating Wal-Mart's ethics policy and policy against inappropriate conduct (but not for violating the fraternization policy) in September 2004.  Brass Decl. Ex. 31 at 1-2.

This coaching also noted that Ms. Kwapnoski had ██████████████████ ██████████████.  *See id.* at 1. In her position as Bakery Manager—and later as a Fresh Assistant Manager—Ms. Kwapnoski was tasked with ensuring compliance with food and safe-ty standards.  It was her responsibility to "[m]aintain and monitor fresh product standards, including spoils and dated product," and to "[a]ddress[ ] any Associate poor performance issues."  Brass Decl. Ex. 39 at 1.  Food safety at Sam's Club was monitored through internal operational audits and Global Food Safety Audits ("GFSA"), which were conducted by a third-party vendor.  Lewis Decl. ¶ 6. Ms. Kwapnoski's departments ██████████████████ ██████████████.  *Id.*  For example, the Concord club had some of the ████████████████████████ between September 2003 and Au-gust 2004.  *See*, *e.g.*, Medlin Decl. ¶ 12, Exs. 5-7.  In addition, ██████████ ██████████████.  *See*, *e.g.*, Brass Decl. Ex. 40; Lewis Decl. ¶ 7.

Ms. Kwapnoski was periodically coached about these infractions.  *See* Kwapnoski Dep. II 105:9-17 (██████████████████████████████).  As previously mentioned, her ██████████████████.

1   Brass Decl. Ex. 31 at 1-2. ███████████████████████████████████████

2   ████████████████████████████████████████████████████ *Id.* at 3-4.

3   █████████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████. *Id.* at 3.

5   Rather than █████████████████████████████████████████████████████

6   ██████████████. *See id.* at 1

7   ████████████████████████████████████████; *id.* at 3 ████████████

8   █████████████████████████████████████████████████████████████████

9   ████████████████████████████████████████).

   Ms. Kwapnoski's annual reviews reflected these difficulties. She received a below expecta-
tions rating in February 2004. *See* Brass Decl. Ex. 30 at 48-51. Although she acknowledged that
"[t]his was a very informative review and a learning experience" (*id.* at 51), her performance did not
substantially improve and she received another below expectations rating in March 2005. *See id.* at
45-47. This rating was consistent with those generally given to Assistant Managers with ████████
████████ during a fiscal year. *See* Lewis Decl. ¶ 8.

   Although Ms. Kwapnoski continued to ████████████████████████████████, her
ratings on performance evaluations improved between Fiscal Years 2006 and 2008. *See*, *e.g.*, Brass
Decl. Ex. 30 at 32-44. Between January 2008 and January 2009, however, Ms. Kwapnoski received
███████████████████████████████████. *See* Brass Decl. Ex. 31 at 5-10. In Fiscal Year
2009, the Concord club received "███████████████████████████████ on several
objective financial measures, on which all Assistant Managers are evaluated. *See* Brass Decl. Ex. 30
at 25-29. Ms. Kwapnoski also received ████████████████ ratings on several individual perfor-
mance metrics due to █████████████████████████████████████████████████
████████████████████████." *Id.* at 27-28. The evaluation noted that Ms. Kwapnoski
████████████████████████" *Id.* at 27. She received an overall rating of ████████
████████ on her annual evaluation, and she did not receive an annual raise. *See id.* at 29; Brass Decl.
Ex. 37 at 4. Although Ms. Kwapnoski commented that the evaluations for Fresh Assistant Managers

"should be far more area specific" to better reflect the skills she brought to the table, she did not complain that this evaluation was discriminatory or retaliatory in any way.  Brass Decl. Ex. 30 at 29.

On July 7, 2008, Ms. Kwapnoski filed a voluntary petition for bankruptcy in the Northern District of California.  Brass Decl. Ex. 41.  In the schedule of property filed with the bankruptcy court, Ms. Kwapnoski was required to list "contingent and unliquidated claims of every nature."  *Id.* at 9.  She listed "none."  *Id*.  The Statement of Financial Affairs further required her to "[l]ist all suits and administrative proceedings to which [she] is or was a party within one year immediately preceding the filing of this bankruptcy case."  *Id.* at 31.  She listed only a breach of contract case, failing to disclose the existence of this lawsuit.  *See id.*  At no point during the bankruptcy proceedings did she seek to amend these disclosures.  On October 19, 2008, the Bankruptcy Court entered a final decree discharging Ms. Kwapnoski's debts.  Brass Decl. Ex. 42.

In 2009, Wal-Mart investigated allegations of serious misconduct by Ms. Kwapnoski.  First, Wal-Mart investigated a possible wage and hour violation after Ms. Kwapnoski deleted a clock-punch for one of her hourly associates.  *See* Brass Decl. Ex. 25 at 2.  Second, as required by Wal-Mart's anti-harassment policy, Wal-Mart investigated allegations that Ms. Kwapnoski had discriminated against Hispanic employees.  *See id.*; Riley Decl. ¶ 38, Ex. DD at 3 (requiring Wal-Mart to "promptly and thoroughly investigate any report of a possible violation of this Policy").  Ms. Kwapnoski was not disciplined as a result of either of these investigations.  She received ratings of "meets expectations," and corresponding raises, in Fiscal Years 2010-2013.  *See* Brass Decl. Ex. 30 at 1-24, Ex. 37 at 4.

Ms. Kwapnoski's management pay history is summarized in the graph below:

**Management Pay History**

In 2011, due to a lack of management coverage, Club Manager Donald Taylor scheduled Ms. Kwapnoski to work more than six consecutive days on several occasions after she took two lengthy vacations in July.  *See* Vaccaro Decl. ¶ 9; Decl. of Donald Taylor in Supp. of Wal-Mart's Mot. for Partial Summ. J. against Christine Kwapnoski ("Taylor Decl.") ¶ 7.  After she ███████ ██████████████, Wal-Mart conducted a thorough investigation, but ultimately concluded that her schedule reflected a "lack of management coverage."  *See* Vaccaro Decl. Ex. 1 at 2.  Indeed, other Assistant Managers were required to work similar schedules.  *See, e.g.*, Brass Decl. Ex. 43 at 9-12 (████████████ scheduled to work 13 consecutive days with a company picnic and one day off in August 2011); *id.* at 13-14 (████████ scheduled 10 days with one day off in January 2012).

Although Assistant Managers are typically required to work both opening and closing schedules, Wal-Mart accommodated Ms. Kwapnoski's request that she receive a special schedule of 4:00 a.m. to 2:00 p.m. daily ██████████████████████.  Taylor Decl. ¶ 4.  Although no other ██████████ received such an accommodation in her club, which required other Assistant Managers to take on additional closing shifts, Ms. Kwapnoski was allowed to keep this schedule throughout most of her tenure as an Assistant Manager.  *See, e.g.*, Brass Decl. Ex. 43 at 2-3 (threatening to quit if given a closing schedule like other Assistant Managers).

Ms. Kwapnoski was terminated in March 22, 2014 as part of a company restructuring, and she signed a separation agreement.  Kwapnoski Dep. II 12:2-19.

## V.    ARGUMENT

Summary judgment is proper because Ms. Kwapnoski cannot demonstrate that there is a "genuine issue as to any material fact" regarding her individual claims. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[T]he record taken as a whole could not lead a rational trier of fact to find for [Ms. Kwapnoski]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).  Despite her highly generalized assertions of discrimination and retaliation, this Court may only consider "rational or reasonable" inferences in her favor.  *See, e.g.*, *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (internal quotation marks omitted).  "[I]nferences are not drawn out of the air, and it is [Ms. Kwapnoski's] obligation to produce a factual predicate from which the inference may

1   be drawn." *Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*, No. C 10-4043 SBA, 2012 WL 3017541,

2   at *4 (N.D. Cal. July 23, 2012).

3        The majority of Ms. Kwapnoski's allegations are barred under the doctrine of judicial estop-

4   pel because she failed to disclose this lawsuit in her bankruptcy.  Many of the alleged instances of

5   discrimination and retaliation are further barred by Title VII's exhaustion requirement and statute of

6   limitations.  Even if not barred, Ms. Kwapnoski has failed to demonstrate a *prima facie* case of dis-

7   crimination or retaliation, much less evidence of pretext, making summary judgment appropriate.

8   *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987).

9   **A.    Ms. Kwapnoski Is Judicially Estopped from Pursuing Most of Her Allegations**

10       The Bankruptcy Code imposes upon a bankruptcy debtor "an express, affirmative duty to dis-

11  close all assets, including contingent and unliquidated claims."  *Hamilton*, 270 F.3d at 785.  This duty

12  to disclose continues throughout the duration of the bankruptcy proceedings.  *Id.*  Contingent claims,

13  of course, include lawsuits.  *See id.*

14       It is undisputed that Ms. Kwapnoski failed to disclose the existence of this lawsuit in the

15  bankruptcy proceedings she initiated in 2008.  Brass Decl. Ex. 41 at 9, 31.  In representing that she

16  had no contingent and unliquidated claims against any entity, Ms. Kwapnoski made a representation

17  to the bankruptcy court that she had no claim against Wal-Mart at that time.  Under the clear law of

18  the Ninth Circuit, she is therefore judicially estopped from asserting against Wal-Mart any claim that

19  should have been, but was not, disclosed in her bankruptcy proceeding.  *Hamilton*, 270 F.3d at 783

20  (holding that "a party is judicially estopped from asserting a cause of action not raised in a [bankrupt-

21  cy] reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements");

22  *see also Hay v. First Interstate Bank of Kalispel N.A.*, 978 F.2d 555 (9th Cir. 1992).

23       When the plaintiff-debtor has not reopened the bankruptcy to correct her nondisclosure, a

24  "presumption of deliberate manipulation" applies as a matter of law, and bad faith is inferred so long

25  as the debtor had knowledge of the facts giving rise to her claims during the pendency of her bank-

26  ruptcy.  *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 272-73 (9th Cir. 2013).  In 2008,

27  Ms. Kwapnoski was a named plaintiff in one of the largest class actions ever certified, about which

28  she was a regular participant in an intense media campaign, and she had already filed an EEOC

11

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

1    charge alleging retaliation.  She thus has no plausible claim that she was unaware of this lawsuit.

2          In entering a final decree discharging Ms. Kwapnoski's debts, the Bankruptcy Court accepted

3    her representation that she had no pending claims other than the breach of contract case.  Brass Decl.

4    Ex. 41; *see Hay*, 978 F.2d at 557 (conformation of plan constituted sufficient acceptance so as to

5    permit judicial estoppel); *Hamilton*, 270 F.3d at 784 (same).    The law does not permit

6    Ms. Kwapnoski to derive an unfair advantage because she received bankruptcy protection on the rep-

7    resentation that she had little to no assets, deceiving the court and her creditors.  *Hamilton*, 270 F.3d

8    at 785 (courts "invoke judicial estoppel to protect the integrity of the bankruptcy process" and to de-

9    ter debtors from shirking their disclosure obligations under the Bankruptcy Code); *Cannon-Stokes v.*

10   *Potter*, 453 F.3d 446, 448 (7th Cir. 2006) ("[T]he doctrine of judicial estoppel raises the cost of ly-

11   ing" and "induces debtors to be truthful in their bankruptcy filings.").

12         Accordingly, Ms. Kwapnoski should be judicially estopped from asserting any claims alleged

13   and exhausted by the EEOC charges she had filed prior to her bankruptcy.  She next filed an EEOC

14   charge alleging retaliation in October 2011, and therefore the only allegations that can be considered

15   by this Court are those encompassed by that charge.

16   **B.      Pay and Promotion**

17         Judicial estoppel aside, many of Ms. Kwapnoski's allegations are time-barred; and the rest

18   have no evidentiary support.

19                  **1.      Allegations of Conduct Before April 21, 2001 Are Untimely**

20         In California, "[a] person seeking relief under Title VII must first file a charge with the EEOC

21   within . . . 300 days of the alleged unlawful employment practice."  *Surrell v. Cal. Water Serv. Co.*,

22   518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)).  A civil action is limited to

23   conduct set forth in that plaintiff's EEOC charge.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S.

24   101, 104-05 (2002); *see also Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005).

25   A named plaintiff who files her own EEOC charge is bound by the time limitations associated with

26   that charge and may not coattail on any other person's charge.  *Mooney v. Aramco Servs. Co.*, 54

27   F.3d 1207, 1223-24 (5th Cir. 1995), *overruled on other grounds Desert Palace, Inc. v. Costa*, 539

28   U.S. 90, 90-91 (2003); *see also Ross v. Ada Cnty.*, 730 F. Supp. 2d 1237, 1253 (D. Idaho 2010).

12

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

1   Ms. Kwapnoski filed her first charge alleging discrimination in pay and promotions with the

2   EEOC on February 15, 2002.  4AC ¶ 115.  As a result, any allegations of conduct before April 21,

3   2001 are time-barred.

4   Because she obtained the salaried Receiving Area Manager position on June 30, 2001 (Kwap-

5   noski Dep. 271:6-20), and she does not allege that she was passed over for any promotions between

6   April and June 2001, all promotion claims related to the period in which she was an hourly associate

7   are time-barred.  That includes any allegation related to the Team Lead and Area Manager positions.

8   In addition, because none of Ms. Kwapnoski's EEOC charges complain about a failure to promote

9   above the Assistant Manager position, she cannot raise such claims here.  *See Morgan*, 536 U.S. at

10  113 (holding that Title VII precludes recovery for discrete acts of discrimination that occur outside

11  the statutory time period).

12  Ms. Kwapnoski's pay allegations as an hourly associate are similarly time-barred absent evi-

13  dence that any alleged pay disparity continued after April 21, 2001.  *See* 42 U.S.C. § 2000e-

14  5(e)(3)(A).  In April 2001, however, Ms. Kwapnoski was the highest paid hourly associate in her

15  club.  Kwapnoski 2004 Decl. ¶ 2; *see also* Kwapnoski Dep. I 121:5-122:1.  Thus, any exception to

16  the 300-day limit for certain pay claims is of no moment in this case.

17  ### 2.  Ms. Kwapnoski Has No Evidence of Pay or Promotion Discrimination

18  There is no evidence demonstrating that Ms. Kwapnoski suffered intentional discrimination

19  on account of her sex with respect to pay or promotions.  The standards for a Title VII claim of inten-

20  tional discrimination are set forth in the motion for summary judgment as to Plaintiff Betty Dukes at

21  12-13, filed concurrently herewith, and incorporated here.

22  ***Ms. Kwapnoski has no evidence of pay discrimination.***  To establish a *prima facie* case of

23  pay discrimination, Ms. Kwapnoski "bear[s] the initial burden to show that:  (1) the work of the em-

24  ployees of one sex required the exercise of substantially equal skill, effort, and responsibility and was

25  performed under working conditions similar to that of employees of the opposite sex; and (2) the pay

26  to men and women was unequal."  *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1465-66 (9th Cir.

27  1985) (citations omitted), *overruled on other grounds by Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d

28

13

262 (9th Cir. 1991).  That she cannot do for the simple reason that no similarly situated male employee was paid more than her during her entire tenure at Wal-Mart:

- In April 2001, Ms. Kwapnoski was the highest paid hourly associate in her club.  Kwapnoski 2004 Decl. ¶ 2; *see also* Kwapnoski Dep. I 121:21-122:1.  Throughout her career at the Concord club, she received various merit and annual raises until she entered salaried management.  *See*, *e.g.*, Kwapnoski Dep. I 88:5-22, 95:14-18, 222:20-224:6, 266:3-7, Exs. 5, 23.

- After her promotion to management in June 2001, her managers sought an exemption to pay her above the ███████████████ for her position.  *Id.* at 120:14-18, 335:13-17, 384:16-22 (admitting that the ███████ was nondiscriminatory).  No male Area Manager made more.  Brass Decl. Ex. 34, Dep. Tr. of Paula Vaccaro (March 13, 2015) ("Vaccaro Dep.") 119:11-16.

- No male trainee made more than she did in the MIT program.  *Id.* at 47:15-48:15, Ex. 4.

- Ms. Kwapnoski has not identified any similarly situated male who made more than she did as an hourly Bakery Supervisor and Bakery Manager.  *See* Riley Decl. ¶ 26, Exs. P at 3, Q at 4 (providing a different pay scale for these positions).  Indeed, in 2006, Ms. Kwapnoski was once again paid at the maximum corporate rate.  Brass Decl. Ex. 38 at 2.

- The only Assistant Managers who were paid more than her when she held Assistant Manager positions had significantly more management experience or tenure, or had previously worked in higher paying positions.  Accordingly, they were paid more under Wal-Mart's gender neutral compensation plans.  *See* Vaccaro Dep. 122:10-128:11, 153:23-165:20.

Ms. Kwapnoski alleges that two male Assistant Managers—Jim Padilla and Brian Lothamer—made more than she did after her promotion to Bakery Manager.  Kwapnoski Dep. II 46:7-48:23.  But both of these Assistant Managers had significantly longer tenure in higher paid positions, accounting for any difference in pay.  Riley Decl. ¶ 25.  Mr. Lothamer had held the Assistant Manager position since 1995, as well as a higher paying Co-Manager position from 1998 to 1999, and Mr. Padilla had worked as a Meat Manager for Wal-Mart since 2000.  Brass Decl. Ex. 44 at 2, Ex. 47 at 2.  *See Knight v. Brown*, 485 Fed. App'x 183, 184 (9th Cir. 2012).

Moreover, Ms. Kwapnoski cannot argue that Assistant Managers are proper Title VII comparators for the Bakery Manager position.  Ms. Kwapnoski gave sworn testimony that her position as Bakery Manager was improperly classified as an exempt Assistant Manager position because she spent more than half her time performing the same work as the hourly employees she supervised.  Dkt. 631.  Indeed, the Bakery Manager position was a "totally different job" with "different responsibilit[ies]" from other Assistant Managers.  Eldridge Dep. 56:3-57:6; Dolan Dep. 202:7-204:16.  As a result, the job duties of a Bakery Manager were not "substantially equal" to other Assistant Managers.  *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1414, 1418 (9th Cir. 1988) ("In assessing a

14

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

1  plaintiff's claim of substantial equality between jobs, a court should rely on actual job performance

2  and content rather than job descriptions, titles, or classifications. . . .").

3      Even if Ms. Kwapnoski could establish a *prima facie* case, Wal-Mart had several legitimate

4  business reasons for its decisions, as explained above, and Ms. Kwapnoski has introduced no evi-

5  dence to show that these are pretext for discrimination.  Her pay claims as both an hourly associate

6  and a salaried manager are the result of Sam's Club policies that are both legitimate and gender neu-

7  tral.  Ms. Kwapnoski has introduced no evidence, much less "specific and substantial" evidence of

8  pretext with respect to these policies.  *Villiarimo*, 281 F.3d at 1062.

9      ***No Evidence of Promotion Discrimination.***  To establish a *prima facie* case of failure to

10  promote, an employee must show that: (1) she belongs to a protected class; (2) she applied and was

11  qualified for the position she was denied; (3) she was rejected despite her qualifications; and (4) the

12  employer either filled the position with an employee not of plaintiff's class, or continued to consider

13  other applicants whose qualifications were comparable to plaintiff's after her rejection.  *Pejic v.*

14  *Hughes Helicopters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988); *see also Mondero v. Salt River Project*,

15  400 F.3d 1207, 1211 (9th Cir. 2005) (same).

16      Ms. Kwapnoski was repeatedly promoted.  Indeed, Ms. Kwapnoski cannot point to a single

17  instance in which she was *ever* rejected for *any* position for which she applied or expressed interest

18  after April 21, 2001.  Absent such evidence, her *prima facie* case fails.  *See McDonnell Douglas*, 411

19  U.S. at 802; *see also Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 410 (6th Cir. 1999) (affirming

20  summary judgment for employer where employee could not show that he was rejected for a position);

21  *White v. City of San Diego*, 605 F.2d 455, 458-59 (9th Cir. 1979) (no *prima facie* case because plain-

22  tiff was not rejected or barred from consideration for promotion); *Schaulis v. CTB/McGraw-Hill, Inc.*,

23  496 F. Supp. 666, 671 (N.D. Cal. 1980) ("[Plaintiff] simply cannot escape from the fact that she was

24  not rejected for a job.").  Ms. Kwapnoski's allegations about specific promotions do not change her

25  failure to develop evidence of a *prima facie* case.

26      ***The Time-Barred Team Leader Allegation.***  Ms. Kwapnoski alleges that several male associ-

27  ates received Freezer Team Lead and Dock Team Lead over her "[w]hen [she] was working as the

28  freezer/cooler associate."  Kwapnoski 2003 Decl. ¶ 9.  But any allegations before December 26,

15

1998, are indisputably time-barred.  *See* Decl. of Tracy Englebrecht in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Englebrecht Decl.") Ex. E at 5 (indicating that Ms. Kwapnoski worked in the receiving office as of August 15, 1998).

***The Time-Barred Receiving Area Manager Allegation.***   During her deposition, Ms. Kwapnoski admitted that Mr. Oshier and Mr. Goodwin "haven't been promoting men over women" with respect to the Area Manager, Management Trainee, or Assistant Manager positions.  *See* Kwapnoski Dep. I 338:6-20.  This admission ends her promotion claims.  Ms. Kwapnoski, nonetheless, asserts that she should have been selected for the Receiving Area Manager position when it was awarded to her predecessor Dion Denes.  *See id.* 272:4-17, 273:12-18, 274:8-11.  Even if not time-barred, Ms. Kwapnoski cannot establish a *prima facie* case with respect to this promotion.

Ms. Kwapnoski was not considered for the Receiving Area Manager position because she had recently explained that she was no longer interested in seeking a promotion to management.  *See*, *e.g.*, Oshier Dep. 118:3-12 (explaining Ms. Kwapnoski was not considered because she had expressed that she "didn't want to be in management"), 123:18-124:6; *see also* Goodwin Dep. 153:14-21.  Absent evidence that she actually applied for the promotion, or that Sam's Club "had some reason or duty to consider her for the post," her claim fails.  *Jones v. Flagship Int'l*, 793 F.2d 714, 724 (5th Cir. 1986).  After Mr. Denes received the position, Ms. Kwapnoski expressed her interest and was selected for the next opening.  Oshier Dep. 118:3-118:12, 123:18-124:6; 4AC ¶ 113.

Moreover, Mr. Denes was the best qualified candidate for this position due to his good reviews, communication, and people skills.  *See* Oshier Dep. 147:17-148:12.  By contrast, "[t]here were still things . . . [Ms. Kwapnoski] needed to work on before she could [be promoted]."  *Id.* at 149:18-150:2.  For example, she struggled with her communication and people skills, a key component of any salaried management position.  *See*, *e.g.*, *id.* 121:6-23; Brass Decl. Ex. 30 at 81-90.  As a result, Mr. Denes was not similarly situated to Ms. Kwapnoski, and he was promoted on the basis of legitimate and nondiscriminatory reasons.

***Management Trainee.***  Ms. Kwapnoski alleges that she should have been allowed to participate in the MIT program earlier in her career.  *See also* Kwapnoski Dep. I 165:6-20 (admitting that Mr. Oshier needed time "to see how [her] job performance was" before promoting her, but alleging

16

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

that he "probably could have promoted [her] a year earlier than he did" into the MIT program).  But while she allegedly expressed general interest in the MIT program, she also plainly indicated to management that she was not interested in the position that was available.  This lack of interest in the actual position ends her claim.  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (plaintiff must show he "applied for and was qualified for *an available position*") (emphasis added).

In 2002, the MIT program was not located at Ms. Kwapnoski's club.  Dkt. 945-51; Dkt. 945-52.  And she was unwilling to commute to nearby Vacaville to train.  *See* Kwapnoski 2003 Decl. ¶ 22; Dkt. 945-47 (Under Seal) (showing Ms. Kwapnoski's ███████████████████ ██  When she finally decided that she was willing to commute, she took two months to accept the promotion.  Dkt. 945-51; Dkt. 945-52; Dkt. 945-53.

Ms. Kwapnoski also sent clear signals that she was not in fact interested in any promotion.  She openly explored resigning her Receiving Area Manager position so that she could earn overtime, and she declined to accept the Front End Area Manager position as a "stepping stone" into the MIT program.   Dkt. 945-49; Dkt. 945-50; Kwapnoski Dep. I 284:18-285:4, 288:7-12, 290:17-291:11.  These actions are inconsistent with the unambiguous expression of interest required to demonstrate that management had a duty to consider her for the MIT program.  *See, e.g.*, *Alvarado v. FedEx Corp.*, No. C 04-00098 SI, 2005 WL 2036026, at *12-13 (N.D. Cal. Aug. 23, 2005) (granting summary judgment to employer on plaintiff's discrimination claim for failure to promote where employer offered position to plaintiff after he applied, but plaintiff turned down the position); *Prado v. L. Luria & Son, Inc.*, 975 F. Supp. 1349, 1356 (S.D. Fla. 1997) (granting summary judgment on Title VII claim because, *inter alia*, plaintiff refused a promotion she had been offered); *Croker v. Boeing Co.*, 437 F. Supp. 1138, 1197 (E.D. Pa. 1977) (entering judgment against plaintiff whose "rejection of other promotion opportunities" rebutted any inference of discrimination).

Moreover, Ms. Kwapnoski was not qualified for the MIT program when she originally expressed interest.  Kwapnoski 2003 Decl. ¶ 17.  Ms. Kwapnoski must prove that she "possessed the minimum qualifications for the position[]" or that "[her] qualifications were comparable with those of the persons awarded the position."  *Lyons*, 307 F.3d at 1113-14 (internal quotation marks omitted).  In the Spring of 2002, however, she had not been in her new management position (Receiving Area

17

1  Manager) for a year.  4AC ¶ 113 (promoted to Receiving Area Manager in June 2001); *see also* M.

2  Miller Dep. 208:3-22 (noting qualifications for MIT include "supervisory experience" and "company

3  experience").  Ms. Kwapnoski admits that she was informed of this requirement (Kwapnoski 2003

4  Decl. ¶ 17; 4AC ¶ 113), and she has identified no similarly-situated Receiving Area Manager who

5  was promoted without meeting it.

6      In addition, although Ms. Kwapnoski was "doing a good job" in her position as Receiving Ar-

7  ea Manager, even she "admit[ted] that she [was] working on her people skills and relationships and

8  maintaining a positive attitude."  Goodwin Dep. 22:7-14.  Ms. Kwapnoski needed to work on these

9  "opportunities" before she could be promoted into the MIT program.  *Id.* at 53:1-54:23. *See also id.* at

10  22:7-24:9; Oshier Dep. 182:3-186:20, 198:15-23 (explaining that he had ████████████████

11  ████████████████████████████).  Ms. Kwapnoski nonetheless declined an offer to

12  become the Front End Area Manager, a position which would have helped her to develop these skills.

13  Dkt. 945-50; Dolan Dep. 183:20-184:11; Eldridge Dep. 54:23-55:17.[1]

14      Ms. Kwapnoski has identified 10 males, including Dion Denes (discussed above), who she al-

15  leges were discriminatorily promoted before she was (Brass Decl. Ex. 54 at 3), but she cannot estab-

16  lish a *prima facie* case with respect to any of them.  First, any claims with respect to the promotions

17  of Josh Reynolds, Tyler Whitney, Bryce Sherman, and Roy Matherly are unequivocally time-barred.

18  *See* Brass Decl. Exs. 48 at 2, 51 at 2, 49 at 2, 45 at 2 (showing each was promoted before Decem-

19  ber 26, 1998).  Second, none of the remaining men were similarly situated to Ms. Kwapnoski "*in all*

20  *material respects.*"  *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (internal quotation marks

21  omitted) (emphasis added).

---

23  [1]  Ms. Kwapnoski's personal belief that this was an unnecessary lateral move cannot create a genu-
ine issue of material fact.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000)

24  ("subjective personal judgments of . . . competence alone do not raise a genuine issue of material
fact") (internal quotation marks omitted); *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011

25  (9th Cir. 1986) (same).  The undisputed evidence shows that Wal-Mart viewed experience as a
Front End Area Manager as an important stepping stone to promotions for Receiving Area Man-

26  agers generally, and more specifically for Ms. Kwapnoski, who needed to develop her people
management skills.  *See, e.g.*, Eldridge Dep. 54:23-55:17, 171:5-172:3, 225:22-226:8; Oshier

27  Dep. 95:10-96:5.  "[W]here the plaintiff does not even attack the selection criteria as having a
disparate impact on the protected class, [the court] will not second guess the selection criteria

28  used by an employer."  *Coleman*, 232 F.3d at 1289 (internal quotation marks omitted).

---

18

- Marc Arnold was promoted to Meat Trainee in 2006, long after Ms. Kwapnoski completed the MIT program. *See* Brass Decl. Ex. 52 at 2. Ms. Kwapnoski has not alleged she wanted or was qualified for this position. *See* Eldridge Dep. 164:2-18 (explaining that for "fresh managers," Sam's Club typically looked for "experience possibly in that field"); Bosler Dep. 77:19-23 (explaining that the Meat Manager is typically selected from the Meat Lead).

- Joshua Wilson was hired into the MIT program after completing a college degree under an official Sam's Club initiative, whereby college graduates were recruited for and placed in management positions. Kwapnoski 2003 Decl. ¶ 17; Bosler Dep. 68:14-69:24 (describing First in Line Program); Dkt. 932-1, Ex. 37, Dep. Tr. of Dawn Miller (Jul. 17, 2002) 153:20-159:25 (same).

- Michael Montgomery was promoted to Front End Area Manager, a position in which Ms. Kwapnoski did not express interest (and turned down when it was offered). Brass Decl. Ex. 46 at 2.

- Paul Cortopassi was promoted into the MIT program after holding the Front End Area Manager position. Brass Decl. Ex. 53 at 2. As a Front End Area Manager, Mr. Cortopassi had a broader scope of responsibility than Ms. Kwapnoski. *See, e.g.*, Dolan Dep. 183:20-184:11.

- Chris Ward was promoted into the MIT program after serving as both a Receiving and Front End Area Manager. Brass Decl. Ex. 50 at 2.

As a result, none of the identified men were similarly situated to Ms. Kwapnoski, and their promotions cannot serve as *prima facie* evidence of discrimination.

Other factors distinguish Ms. Kwapnoski from her selected comparators. For example, she passed up opportunities to take positions that would have provided her more customer and associate contact to help her develop the important people skills with which she admittedly struggled. She chose to decline other opportunities because of "███████████████" and her inability to attend the necessary MIT program at another club. And in light of her experience and admitted struggles with important people skills, her managers concluded that she needed to spend at least a year as Receiving Area Manager before moving into the MIT program. *See* Kwapnoski 2003 Decl. ¶ 17; Dolan Dep. 183:20-184:11; Goodwin Dep. 22:7-24:9.

In the face of these legitimate and nondiscriminatory business considerations, Ms. Kwapnoski must establish "specific and substantial" evidence of pretext. *Villiarimo*, 281 F.3d at 1062. She cannot do as she is unable to tie any evidence of discriminatory animus to any specific adverse employment action. Ms. Kwapnoski has made much in the past of her allegation that Mr. Oshier told her she needed to "'doll up,' to wear some makeup, and to dress a little better" a few months *after* her promotion to Receiving Area Manager. Kwapnoski 2003 Decl. ¶ 16. But these isolated statements are not linked to any specific promotion decision and do not provide specific and substantial evidence of pre-

19

text.  *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) ("'stray' remarks are insuf-ficient to establish discrimination"); 4AC ¶ 114 (alleging that she asked her store manager about join-ing the MIT program "[a]fter a year as a receiving area manager").  Moreover, during this time peri-od, Ms. Kwapnoski did not follow the management dress code and her appearance was not always professional.  *See also* Kwapnoski Dep. I 356:2-357:10, Ex. 42 (admitting that she failed to adhere to the dress code); Brass Decl. Ex. 30 at 79 ███████████████████████████████████████████████████████████████████████████ Kwapnoski 2003 Decl. ¶ 16 (excusing her appearance because "[she] worked in the receiving area of the club at the time, which is a hot and dirty job with little, if any, contact with the public").  In light of these facts, Mr. Oshier's (alleged) comments may have been tactless, but they were not actionable.  For this rea-son too, her claim fails.

**C.    Retaliation**

>    **1.    The Vast Majority of the Employment Decisions that Ms. Kwapnoski Challenges as Retaliatory Are Either Unexhausted or Untimely**

"[E]ach retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and "only incidents that took place within the timely filing period are action-able."  *Morgan*, 536 U.S. at 114.  Ms. Kwapnoski's retaliation allegations were not part of the *Dukes* class complaint, *see* Dkt. 634 at 5 n.4, and therefore she had an obligation to file a separate EEOC charge to pursue them.  She did so, twice, on May 16, 2005 and October 19, 2011, and her retaliation claims are limited to the timely allegations found in those charges (and, in light of her bankruptcy filing, only the latter).

These two charges encompass only five timely allegations of retaliation.  The first four are in her 2005 EEOC charge.  There, Ms. Kwapnoski timely alleged that Wal-Mart had retaliated against her by (1) investigating claims that she had sexually harassed a coworker and discriminated against Hispanic employees, (2) coaching her after the investigation substantiated these allegations, (3) coaching her in December 2004 after 22 out-of-date items were found in her department during a Regional Operational Audit, and (4) "giv[ing] [her] a score of 2.9, one tenth of a point short of the 3.0 needed to receive a raise" on her March 2005 evaluation.  *See* Brass Decl. Ex. 24 at 2.  The remaining

two allegations in that charge were not timely as they concern conduct occurring more than 300 days before the filing.  Those include the allegations that (1) she did not receive raises in the three preceding years because she received below expectations evaluations and (2) she was denied a vacation in December 2003.  The last timely allegation is in her 2011 EEOC charge.  There, Ms. Kwapnoski timely alleged that her Club Manager had retaliated against her by scheduling her to work more than six days in a row in 2011.  *See* Brass Decl. Ex. 25 at 2.  Her other allegations concerning evaluations, raises, and disciplinary actions occurring before December 2010 are untimely.



Notably, as demonstrated by the chart above, Ms. Kwapnoski's position and managers changed numerous times during this period.  She, therefore, cannot fairly argue that her 2005 EEOC charge provided sufficient notice to Wal-Mart that she would challenge as retaliatory each and every evaluation and disciplinary action indefinitely regardless of the surrounding circumstances and the identity of the decision makers involved.  *See Morgan*, 536 U.S. at 113 (explaining that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (considering as part of the exhaustion analysis "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred" (internal quotation marks omitted)); *Gonzalez v. Nat'l R.R. Passenger Corp.*, 376 Fed. App'x 744, 745 (9th Cir. 2010).

21

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

There is no unfairness in this long-established rule; Ms. Kwapnoski's current counsel represented her for the purposes of drafting these EEOC charges, and thus there is no argument that holding her to those charges now would in any way be inequitable.  Accordingly, judgment should be entered against Ms. Kwapnoski to the extent her retaliation claims are untimely or unexhausted.

### 2.   Ms. Kwapnoski Cannot Establish a *Prima Facie* Case of Retaliation or Pretext with Respect to Any of the Challenged Employment Decisions

With respect to the timely and exhausted allegations, and to the extent that she is not judicially estopped from pursuing them, Ms. Kwapnoski cannot establish a *prima facie* case of retaliation or demonstrate that Wal-Mart's legitimate, nondiscriminatory reasons for the challenged employment actions were mere pretext.  To establish a *prima facie* case of retaliation, a plaintiff must show: "1) [she] engaged in a protected activity; 2) [she] suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo*, 281 F.3d at 1064.  Proof of an adverse employment decision requires a plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  To demonstrate the requisite causal link, the plaintiff "must establish that . . . her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).  If the plaintiff establishes a *prima facie* case, "then *McDonnell Douglas* burden-shifting is appropriate." *Villiarimo*, 281 F.3d at 1064.

Ms. Kwapnoski cannot establish a *prima facie* case of retaliation because, aside from her baseless speculation, she has adduced no evidence to show that her protected activity was a but-for cause for any of the challenged employment actions.  In addition, Wal-Mart took each of these employment actions for legitimate, nondiscriminatory reasons, and there is no evidence of pretext.

***2005 EEOC Charge.***  Ms. Kwapnoski cannot survive summary judgment on her claim that Wal-Mart retaliated against her by investigating claims that she ███████ harassed a coworker and discriminated against Hispanic employees in late 2003 and early 2004.  Consistent with its facially neutral policy of promptly and thoroughly investigating all complaints under its Anti-Harassment

22

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND CLAIM FOR RELIEF OF
CHRISTINE KWAPNOSKI – CASE NO. C-01-2252-CRB

Policy (*see* Riley Decl. ¶ 38, Exs. BB at 3, CC at 3), Wal-Mart hired Ms. Isenburg, an outside consultant, to conduct an investigation into specific coworker complaints regarding what are, if true, potential violations of state and federal antidiscrimination laws. Although Ms. Kwapnoski testified that she "honestly believed that" one of the complainants (her former paramour) "[had been] put in the Club to . . . trump up charges" against her, she admitted that she had no knowledge about the circumstances of his hire. Kwapnoski Dep. II 57:9-58:19. Moreover, Ms. Kwapnoski testified that he subsequently admitted to making the allegations because "he was afraid that he had feelings for [her], and he didn't know how to handle those." *Id.* at 59:4-61:14. As Ms. Kwapnoski admits, Wal-Mart had a duty to investigate these claims. *See id.* at 193:11-194:11 (admitting that she was unaware of any situation where Wal-Mart did not follow its normal policy for investigating complaints relating to her); Riley Decl. ¶ 38, Ex. BB at 3 ("All complaints must be investigated"); Ex. Z at 9 (same). Given these admissions, Ms. Kwapnoski has no cognizable claim.

Nor can she meet her burden with respect to the coaching that followed the independent investigation. Following a thorough investigation, Ms. Isenburg submitted a detailed report concluding that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████. *See* Medlin Decl. Ex. 4 at 8-16. As a result of these findings, Ms. Kwapnoski was coached on September 2, 2004 for violating Wal-Mart's ethics, discrimination, and conduct policies. Brass Decl. Ex. 31 at 1; Riley Decl. Ex. CC at 4 ("Every substantiated instance of harassment/discrimination/inappropriate conduct will be addressed through the Coaching Policy"). There is no question that Wal-Mart policy prohibited the conduct ██████ ███████████████████████. Riley Decl. Ex. Z at 8-9 (prohibiting fraternization, harassment/inappropriate conduct, and discrimination); Ex. HH at 1 (prohibiting fraternization "subject to immediate termination"); Ex. BB (prohibiting harassment and other inappropriate conduct). And she has adduced no evidence to show that her EEOC charge, and not her pattern of violating company policy, was the actual but-for cause of this disciplinary action. *See Villiarimo*, 281 F.3d at 1063

1  ("[C]ourts only require than an employer honestly believed its reason for its actions, even if its reason

2  is foolish or trivial or even baseless.") (internal quotation marks omitted)); *id.* at 1065 ("A nearly 18–

3  month lapse between protected activity and an adverse employment action is simply too long . . . to

4  give rise to an inference of causation.").

5       Nor can Ms. Kwapnoski establish a *prima facie* case or pretext with respect to her ████████

6  ████████████████████████████.  Although Ms. Kwapnoski alleges that this coaching was

7  retaliatory, ████████████████████████████████  *See* Brass Decl.

8  Ex. 31 at 3.  During her deposition, Ms. Kwapnoski confirmed that she ████████████████

9  ████████████████████████████████████████████████████████

10  ████████████████████████████████████████.  *See* Kwapno-

11  ski Dep. II 76:20-79:14.  Given her further admission that she was ████████████████

12  ████████████████ (*id.* at 136:6-12), this claim cannot survive summary judgment.

13       Finally, Ms. Kwapnoski cannot establish a *prima facie* case of retaliation with respect to her

14  2005 evaluation, which accurately reflects these and other performance shortfalls.  Ms. Kwapnoski

15  alleges that her below expectations rating was retaliatory because "she had never received such low

16  scores before she joined the lawsuit as a named plaintiff."  4AC ¶ 117.  But Ms. Kwapnoski had also

17  never held the position of Assistant Manager before she joined this suit.  As her own testimony

18  demonstrates, her responsibilities vastly expanded when she became Bakery Manager, and she was

19  forced to learn a host of new tasks.  Kwapnoski Dep. II 35:21-36:17; Brass Decl. Ex. 39.  Given the

20  differences in job responsibilities, her evaluations as an hourly employee cannot provide a proper

21  comparison for or predictor of her later performance.  Moreover, the undisputed evidence demon-

22  strates that her below expectations rating was consistent with those given to other Assistant Managers

23  with ████████ ████████████  *See* Lewis Decl. ¶ 8.

24       ***2011 EEOC Charge.***  Ms. Kwapnoski also cannot establish a *prima facie* case with respect to

25  the scheduling claims alleged in her 2011 EEOC charge.  After she came back from a 9-day vacation,

26  Mr. Taylor scheduled Ms. Kwapnoski to work eight days in a row in July of 2011.  *See* Englebrecht

27  Decl. ¶ 12; Vaccaro Decl. ¶ 9 (indicating that she worked for only 12 days in July and was off from

28  July 2 through July 10, and then again from July 16 through July 24).  In August, Ms. Kwapnoski

was scheduled to work more than six days in a row for inventory.  *See* Brass Decl. Ex. 43 at 9-11.  Although she complained that she was scheduled to work 11 days in a row, she was in fact given Saturday, August 27, off because she was working overnight on Friday.  *Id.* at 7.  In addition, she was not scheduled to work on Sunday, August 21.  Instead, like all Assistant Managers, she was required to attend the company picnic.  *Id.* at 10.  Finally, in October 2011, Ms. Kwapnoski was initially scheduled to work 10 days in a row, but her schedule was changed to give her an additional day off.  *See id.* at 15-17; Vaccaro Decl. Ex. 1 at 39-40.

Ms. Kwapnoski has produced no evidence indicating that this schedule had anything to do with her participation in this lawsuit.  In addition, Ms. Kwapnoski's schedule cannot be considered to be a materially adverse employment action.  The undisputed evidence shows (1) that each time Ms. Kwapnoski complained about her schedule, she was given additional time off (*see, e.g.*, 4AC ¶ 123), (2) she took several long vacations in July, which required her to work more consecutive days in a row when she returned (*see* Vaccaro Decl. ¶ 9; Taylor Decl. ¶ 7), (3) Wal-Mart investigated her claims and found that her schedule was due to lack of management coverage (*see* Vaccaro Decl. Ex. 1 at 2), and (4) other managers were asked to work for a similar number of days in a row (*see* Brass Decl. Ex. 43 at 9-11, 13-14).  Notably, these scheduling complaints arose more than a decade after this lawsuit was first filed.  *See Villiarimo*, 281 F.3d at 1065.

Moreover, the evidence demonstrates that the same individuals whom she accuses of retaliating against her also bent over backwards to accommodate her scheduling requests.  *See, e.g.*, Taylor Decl. ¶ 4 (not requiring her to work closing shifts); Vaccaro Decl. Ex. 1 at 34 (granting an extra day off during New Year's); Brass Decl. Ex. 43 at 1, 2 (granting request for Saturdays off ████████ ████████████).  Given this undisputed evidence, Ms. Kwapnoski cannot demonstrate a *prima facie* case of retaliation or that Wal-Mart's nondiscriminatory reasons for her schedule were pretext.

## VI.    CONCLUSION

For the foregoing reasons, this Court should grant Wal-Mart's Motion for Summary Judgment, entering judgment against Ms. Kwapnoski on the Second Claim for Relief.

1 | Dated:  April 10, 2015

2 |                               By:   */s/ Theodore J. Boutrous, Jr.*
3 |                                         Theodore J. Boutrous, Jr.

4 |                               THEODORE J. BOUTROUS, JR.
   |                               MARK A. PERRY
   |                               CATHERINE A. CONWAY
5 |                               MICHELE L. MARYOTT
   |                               RACHEL S. BRASS
6 |                               GIBSON, DUNN & CRUTCHER LLP

7 |                               Attorneys for Defendant WAL-MART STORES, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28