GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099, tboutrous@gibsondunn.com
CATHERINE A. CONWAY, SBN 98366, cconway@gibsondunn.com
MICHELE L. MARYOTT, SBN 191993, mmaryott@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:     213.229.7000
Facsimile:     213.229.7520

GIBSON, DUNN & CRUTCHER LLP
MARK A. PERRY, SBN 212532, mperry@gibsondunn.com
RACHEL S. BRASS, SBN 219301, rbrass@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
Telephone:     415.393.8200
Facsimile:     415.393.8306

Attorneys for Defendant WAL-MART STORES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY DUKES, PATRICIA SURGESON, EDITH ARANA, DEBORAH GUNTER and CHRISTINE KWAPNOSKI, <br><br> Plaintiffs, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | CASE NO. C 01-2252-CRB <br><br> **WAL-MART STORES, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF BETTY DUKES ON HER SECOND AND THIRD CLAIMS FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Hearing:** <br> Date:       June 5, 2015 <br> Time:       10:00 a.m. <br> Place:      Courtroom 6, 17th Floor <br> Judge:      Hon. Charles R. Breyer |

1  TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on June 5, 2015, at 10:00 a.m., or as soon thereafter as the

3  matter may be heard, in Courtroom 6 of the above-captioned court, located on the 17th Floor at 450

4  Golden Gate Avenue, San Francisco, California 94102, defendant Wal-Mart Stores, Inc. ("Wal-

5  Mart") will, and hereby does, move this Court under Federal Rule of Civil Procedure 56(b) for partial

6  summary judgment in favor of Wal-Mart on the Second and Third Claims for Relief asserted by

7  plaintiff Betty Dukes.

8      No genuine issue of material fact precludes entry of judgment against Ms. Dukes on her Sec-

9  ond and Third Claims for Relief.  Wal-Mart has separately moved for partial summary judgment on

10  the First Claim for Relief asserted by Ms. Dukes.  Wal-Mart thus seeks summary judgment on all

11  causes of action asserted by Ms. Dukes in the Fourth Amended Complaint.

12      This Motion is based upon this Notice; the accompanying Memorandum of Points and Au-

13  thorities in support of the Motion; the accompanying declarations of Rachel S. Brass, Lisa Riley,

14  Paula Vaccaro, Tracy Englebrecht, Ryan Puryear, and Shastina Wilkins; and such additional evidence

15  and argument as the Court may consider at the hearing on this Motion.

16

17  Dated: April 10, 2015

18                          By:  /s/ Theodore J. Boutrous, Jr.
                                    Theodore J. Boutrous, Jr.
19

20                          THEODORE J. BOUTROUS, JR.
                            MARK A. PERRY
21                          CATHERINE A. CONWAY
                            MICHELE L. MARYOTT
22                          RACHEL S. BRASS
                            GIBSON, DUNN & CRUTCHER LLP
23
                            Attorneys for Defendant WAL-MART STORES, INC.
24

25

26

27

28

2

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III. BACKGROUND .................................................................................................. 3

  A.   Ms. Dukes' Employment at Wal-Mart from 1994 to 2000 .......................... 3

  B.   Ms. Dukes' First Charges of Discrimination ........................................... 6

  C.   This Lawsuit and Ms. Dukes' Continued Employment ................................ 7

  D.   The Fourth Amended Complaint ............................................................. 8

IV.  ARGUMENT ....................................................................................................... 9

  A.   Ms. Dukes Cannot Pursue Unexhausted or Time-Barred Allegations ....................... 10

  B.   Summary Judgment Is Warranted on Ms. Dukes' Properly Preserved Disparate
       Treatment Claim ................................................................................. 12

       1.   Summary Judgment Is Warranted on Ms. Dukes' Retaliation
            Allegations ................................................................................. 13

       2.   Summary Judgment Is Warranted on Ms. Dukes' Promotion
            Allegations ................................................................................. 18

       3.   Summary Judgment Is Warranted on Ms. Dukes' Pay Discrimination
            Allegations ................................................................................. 19

V.   CONCLUSION .................................................................................................. 25

i

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akers v. City of San Diego*,
   95 Cal. App. 4th 1441 (2002)........................................................................... 13, 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................... 9

*Austin v. Horizon Human Servs.*,
   No. CV-12-02233-PHX-FJM, 2014 WL 1053620 (D. Ariz. Mar. 19, 2014) ............... 18

*Bhan v. NME Hospitals*,
   929 F.2d 1404 (9th Cir. 1991)........................................................................... 9

*Blue v. Widnall*,
   162 F.3d 541 (9th Cir. 1998)........................................................................... 13

*Bodett v. CoxCom, Inc.*,
   366 F.3d 736 (9th Cir. 2004)........................................................................... 16

*Calloway v. Partners Nat'l Health Plans*,
   986 F.2d 446 (11th Cir. 1993)........................................................................... 10

*Clay v. Pac. Bell Tele. Co.*,
   No. 2:13-cv-1028, 2013 WL 5520013 (E.D. Cal. Oct. 3, 2013)............................... 23

*Cooper v. S. Co.*,
   390 F.3d 695 (11th Cir. 2004)........................................................................... 22

*Crawford v. Ind. Harbor Belt R.R. Co.*,
   461 F.3d 844 (7th Cir. 2006)........................................................................... 20

*Diyorio v. AT&T*,
   242 F. App'x 450 (9th Cir. 2007) ...................................................................... 15

*English v. Colo. Dep't of Corr.*,
   248 F.3d 1002 (10th Cir. 2001)........................................................................... 20

*Furnco Constr. Corp. v. Waters*,
   438 U.S. 567 (1978)........................................................................................... 25

*Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*,
   694 F.2d 531 (9th Cir. 1982)........................................................................... 25

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ................................................................................... 12, 14

*Hawn v. Executive Jet Mgmt., Inc.*,
   615 F.3d 1151 (9th Cir. 2010)........................................................... 2, 12, 13, 19

*Hein v. Or. College of Educ.*,
   718 F.2d 910 (9th Cir. 1983)........................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Int'l Broth. of Teamsters v. United States*,
    431 U.S. 324 (1977) ................................................................. 12, 18

*Jordan v. Clark*,
    847 F.2d 1368 (9th Cir. 1988) ................................................. 14

*King v. United Parcel Serv., Inc.*,
    152 Cal. App. 4th 426 (2007) ................................................. 15, 17

*Ledbetter v. Goodyear Tire & Rubber Co.*,
    550 U.S. 618 (2007) ................................................................. 10

*Lee v. Mid-State Land & Timber Co.*,
    285 F. App'x 601 (11th Cir. 2008) ......................................... 22

*Lewis v. Smith*,
    255 F. Supp. 2d 1054 (D. Ariz. 2003) ................................... 22

*Little v. Rep. Ref. Co.*,
    924 F.2d 93 (5th Cir. 1991) ..................................................... 22

*Mack v. ST Mobile Aero. Eng'g, Inc.*,
    195 F. App'x 829 (11th Cir. 2006) ......................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................. 9

*Maxwell v. Tucson*,
    803 F.2d 444 (9th Cir. 1986) ................................................... 21

*McDonnell-Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................. 2, 12, 13

*Mondero v. Salt River Project*,
    400 F.3d 1207 (9th Cir. 2005) ................................................. 18

*Mooney v. Aramco Servs. Co.*,
    54 F.3d 1207 (5th Cir. 1995) ................................................... 11

*Oates v. Discovery Zone*,
    116 F.3d 1161 (7th Cir. 1997) ................................................. 15

*Paige v. California*,
    102 F.3d 1035 (9th Cir. 1996) ................................................. 12

*Pejic v. Hughes Helicopters, Inc.*,
    840 F.2d 667 (9th Cir. 1988) ................................................... 18

*Piva v. Xerox Corp.*,
    654 F.2d 591 (9th Cir. 1981) ................................................... 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) ................................................................................................ 25

*Rangel v. Am. Med. Response West*,
No. 1:09-cv-01467-AWI-BAM, 2013 WL 1785907 (E.D. Cal. Apr. 25, 2013) ........... 16

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ................................................................................................ 14

*Rodriguez v. Airborne Express*,
265 F.3d 890 (9th Cir. 2001) ................................................................................... 12

*Ross v. Ada Cnty*,
730 F. Supp. 2d 1237 (D. Idaho 2010) .................................................................... 11

*Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*,
No. C 10-4043 SBA, 2012 WL 3017541 (N.D. Cal. July 23, 2012) ............................ 9

*Silvera v. Orange Cnty Sch. Bd.*,
244 F.3d 1253 (11th Cir. 2001) ............................................................................... 22

*Simpson v. Kay Jewelers*,
142 F.3d 639 (3rd Cir. 1998) ................................................................................... 20

*Spaulding v. Univ. of Wash.*,
740 F.2d 686 (9th Cir. 1984) ................................................................................... 22

*Stanley v. Univ. of S. Cal.*,
178 F.3d 1069 (9th Cir. 1999) ........................................................................... 21, 22

*Sumerlin v. AmSouth Bank*,
242 F. App'x 687 (11th Cir. 2007) ........................................................................... 21

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.3d 626 (9th Cir. 1987). .................................................................................... 9

*Texas Dep't of Comm'y Affairs v. Burdine*,
450 U.S. 248 (1981) ................................................................................................ 12

*Turman v. Greenville Indep. Sch. Dist.*,
No. 03-CV-1786-B, 2005 U.S. Dist. LEXIS 43044 (N.D. Tex. Mar. 18, 2005) ........... 11

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013) ............................................................................................ 14

*Vasquez v. County of Los Angeles*,
349 F.3d 634 (9th Cir. 2003) ................................................................................... 12

*Villiarimo v. Aloha Island Air, Inc.*,
281 F.3d 1054 (9th Cir. 2002) ........................................................................... 14, 15

iv

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Warpenburg v. Target Corp.*,
    No. 1:06-cv-00829-RLYTAB, 2007 WL 2993988 (S.D. Ind. Oct. 11, 2007) ............................ 20

*Williams v. Tucson Unified Sch. Dist.*,
    316 F. App'x 563 (9th Cir. 2008) .................................................................................... 15

*Yartzoff v. Thomas*,
    809 F.2d 1371 (9th Cir. 1987) ........................................................................................ 15

*Zipes v. Trans World Airlines, Inc.*,
    455 U.S. 385 (1982) ....................................................................................................... 10

**Statutes**

42 U.S.C. § 2000e-2 ............................................................................................................. 12

42 U.S.C. § 2000e-5 .................................................................................................... 2, 10, 11

Cal. Gov't Code § 12940 ...................................................................................................... 13

Cal. Gov't Code § 12960 ...................................................................................................... 10

Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3 Stat. 5 .................................. 10

**Rules**

Fed. R. Civ. P. 56 .................................................................................................................. 9

**Materials Previously Filed In This Case**

Dkt. 1, Complaint
    (filed June 8, 2001) ........................................................................................................ 7

Dkt. 3, First Amended Complaint
    (filed June 19, 2001) ...................................................................................................... 7

Dkt. 40, Second Amended Complaint
    (filed December 26, 2001) ............................................................................................. 7

Dkt. 82, Third Amended Complaint
    (filed September 12, 2002) ............................................................................................. 7

Dkt. 133, Declaration of Betty Dukes in Support of Plaintiffs' Motion for Class Certification
    (dated Mar. 25, 2003) ................................................................................................. 3, 8

Dkt. 603, Declaration of Steven R. Crumpler In Rebuttal to Declarations of Named Plaintiffs
    Deborah Gunter, Betty Dukes, Christine Kwapnoski, Cleo Page, and Patricia Surgeson and
    Designated Class Members Nancy Hom, Martha Kettle, and Diane Durfey (Under Seal)
    (filed June 12, 2003) ...................................................................................................... 8

v

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Dkt. 604, Declaration of Cynthia Mosley In Rebuttal to Declaration of Named Plaintiff Betty
    Dukes
    (filed June 12, 2003) ................................................................................................... 24

Dkt. 634, Order Granting In Part and Denying In Part Motion for Class Certification
    (filed June 21, 2004) ................................................................................................... 13

Dkt. 767, Fourth Amended Complaint
    (filed October 27, 2011)......................................................................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

For nearly fifteen years, Betty Dukes has been the lead plaintiff in this lawsuit in which she alleges she was the victim of intentional discrimination during her employment at Wal-Mart, where she still works to this day.  Throughout the long history of this litigation, however, the merits of Ms. Dukes' allegations have never been tested.  It is now time for this Court to finally declare that Ms. Dukes' allegations lack—and always have lacked—any legal or factual basis.

Based on the evidence adduced throughout this litigation, it is clear that Ms. Dukes has no viable claim of intentional discrimination.  For the period encompassed by this lawsuit, Ms. Dukes worked as a Greeter and her pay rate has at all times fairly reflected her duties and performance.  Indeed, she cannot identify any similarly situated male employee who was paid more than she was; nor does she have any evidence that any identified Wal-Mart manager took adverse action against her because of her sex (or, for that matter, any other prohibited reason).  Accordingly, Wal-Mart moves for partial summary judgment on Ms. Dukes' Second (sex) and Third Claims for Relief (retaliation), in which she alleges intentional discrimination in employment in violation of Title VII and California law.[1]

To be sure, Ms. Dukes has ascribed discriminatory motives to several of her supervisors over the years—both women and men, of various races—for virtually any decision with which she disagrees, even where she admits engaging in wrongdoing.  But her own testimony confirms that she has no basis to argue that she was treated *differently* than other employees because of her race or her sex.  Her theory has shifted from race-based discrimination to sex-based discrimination; in many cases, she does not even try to articulate the bases of her grievances.  The time for such vague and unsupported insinuations and accusations is now over: Ms. Dukes is obligated to come forward with *evidence* to substantiate her claims, but she cannot because there is no such evidence.  The undisputed

---

[1]  The First Claim for Relief, against which Wal-Mart has moved separately for summary judgment, purports to plead a Title VII class claim reliant on both a disparate impact theory and pattern-or-practice method of proving intentional discrimination.  Dkt. 767 ¶ 148.

1

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

facts reveal a very different story: Ms. Dukes has been promoted, demoted, commended and disciplined, by supervisors of both sexes, according to her performance and her actions. No anti-discrimination laws have even been implicated, much less intentionally violated, on this record.

As a threshold matter, the vast majority of Ms. Dukes' allegations are not properly before the Court because she failed to exhaust her administrative remedies as to them (which include any claim based on race accruing prior to June 1, 1999, any claim based on sex accruing prior to July 26, 2000, any claim of pay discrimination accruing prior to June 14, 2003, and her claim that Wal-Mart discriminated against her when she was not chosen for the Management Training Program in 2003). 42 U.S.C. § 2000e-5. Thus, the only claims requiring resolution by this Court are Ms. Dukes' retaliation claim under the California Fair Employment and Housing Act ("FEHA"), Ms. Dukes' failure to promote claim under FEHA and Title VII, and Ms. Dukes' pay claim under Title VII, which is limited to sex discrimination. With respect to these claims, summary judgment is warranted because Ms. Dukes cannot establish a *prima facie* case of intentional discrimination. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973); *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

The Court should therefore grant partial summary judgment to Wal-Mart on Ms. Dukes' Second and Third Claims for Relief.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether allegations based on actions that occurred more than 300 days before Ms. Dukes filed her EEOC charge or one year before she filed her DFEH complaint are time-barred.

2.   Whether allegations based on actions not raised in Ms. Dukes EEOC charge or DFEH complaint are precluded for failure to exhaust administrative remedies.

3.   Whether Ms. Dukes can prove that her August 1999 demotion for violating the company's ▮▮▮▮▮ policies was actually retaliation for an earlier complaint about a supervisor.

4.   Whether Ms. Dukes can prove that she was denied any promotion that went to an equally or less qualified person of another race or sex.

5.   Whether Ms. Dukes can prove that, between June 2003 and the present, she was paid less than a similarly situated male employee because she is a woman.

### III.   BACKGROUND

**A.   Ms. Dukes' Employment at Wal-Mart from 1994 to 2000**

On April 26, 1994, Betty Dukes applied for a part-time position at the Pittsburg, California Wal-Mart (Store 1615).  Decl. of Rachel S. Brass in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Brass Decl.") Ex. 1, Dep. Tr. of Betty Dukes (March 20, 2002) ("Dukes Dep. I") at 50:12-51:1 & Ex. 1; Decl. of Tracy Englebrecht in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Englebrecht Decl.) Ex. A.  At the time of her application, Ms. Dukes had no recent retail experience.  Dukes Dep. I 33:18-34:9, 35:17-35:22, 37:10-37:18, 50:12-51:1, 65:12-65:13, 68:16-69:10 & Ex. 2.  In May 1994, Wal-Mart offered her a position as a part-time Cashier—her preferred position—with a schedule that accommodated her desired availability.  *Id.* at 58:6-64:7, 63:15-63:19, 69:15-69:21 & Ex. 2; Dkt. 133 (Decl. of Betty Dukes (Mar. 25, 2003) ("Dukes Decl.")) ¶ 3.

Ms. Dukes received her first written coaching for improvement in March 1996 ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Dukes Dep. I at Ex. 12.  A coaching is Wal-Mart's formal term for corrective or disciplinary action.  Decl. of Lisa Riley in Supp. of Wal-Mart's Mots. for Partial Summ. J. ("Riley Decl.") Exs. W-X, Coaching for Improvement policies.  A coaching can be either "verbal" or "written."  *Id.*  At that time, verbal coachings had no negative employment consequences, but an associate who received a written coaching was ineligible for promotion for one year. *Id.* Ex. T, Job Announcement Policy.  Ms. Dukes thus became ineligible for a promotion until March 1997.  Dukes Dep. I 170:3-171:4.

Shortly after Ms. Dukes received the coaching, Store Manager Beth Raps transferred her from the Garden Center to the primary cashier station in the front of the store.  While Ms. Dukes' pay, seniority, schedule, and hours were not affected, Ms. Dukes was unhappy because the front of the store was "more intense."  *Id.* at 131:10-20, 131:21-132:18, 147:7-15, 149:3-150:5.  Ms. Dukes alleges that in 1996 she expressed interest to Assistant Manager Michael Lancaster in being promoted to Customer Service Manager ("CSM"), an hourly position primarily involving the supervision of cashiers. *Id.* at 168:15-169:21.  In June 1997, only a few months after she regained eligibility for promotion, Ms. Dukes was promoted to a CSM position.  *Id.* at 177:4-178:20; Dukes Decl. ¶ 8.

In September 1997, Ken Cagle replaced Beth Raps as Store Manager.  Dukes Dep. I 202:2-14.

3

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

1  Around the same time, a woman named Leilani Barrett was promoted to "Head CSM" based on the

2  recommendations of Assistant Manager Chuck Thomas and Ms. Raps.  Brass Decl. Ex. 5, Dep. Tr. of

3  Ken Cagle (Apr. 17, 2002) ("Cagle Dep.") at 265:20-266:6; Dukes Dep. I 203:1-21.  Ms. Barrett had

4  been a CSM for more than a year when she was promoted; Ms. Dukes had been a CSM for approxi-

5  mately three months.  Englebrecht Decl. Ex. D, Barrett's Employment History; *id.* Ex. A, Dukes'

6  Employment History.  Ms. Dukes complained that Ms. Barrett was ████████████████ of her

7  performance.  Dukes Dep. I 208:17-22, 209:3-13.  Mr. Cagle made numerous attempts to resolve the

8  differences between Ms. Dukes and Ms. Barrett, ████████████████████████████████

9  ███████████████████████████  *See* Cagle Dep. 258:20-25, 259:15-261:2, 262:3-25.

10  Despite these efforts, Ms. Dukes complained to District Manager Chuck Salby about both Ms. Barrett

11  and Mr. Cagle in November 1997 and told him that she believed they were discriminating against her

12  based on her race.  Dukes Dep. I 223:21-224:7.

13       In early 1998, Ms. Dukes ████████████████████████████, which caused

14  significant problems in ensuring sufficient supervision over cashiers.  Cagle Dep. 270:10-19.  As a

15  result, Ms. Dukes received a written coaching from Assistant Manager Tamara Perkins on February

16  13, 1998.  Dukes Dep. I 210:15-210:22 & Ex. 16.  Ms. Dukes complained to Mr. Cagle about the

17  coaching (Cagle Dep. 270:10-271:12) and, in response, Mr. Cagle reduced the coaching to a verbal

18  coaching.  *Id.* at 268:21-269:1; Dukes Dep. I 211:19-212:16; Brass Decl. Ex. 3, Feb. 1998 Verbal

19  Coaching Notes.  Ms. Dukes was satisfied by Mr. Cagle's resolution of her complaint.  Dukes Dep. I

20  213:1-213:3.

21       One month later, Ms. Dukes received another written coaching from Assistant Manager

22  Tamara Perkins, this time for violating company ██████ policies.  Brass Decl. Ex. 4, Mar. 31,

23  1998 Coaching.  As a CSM, Ms. Dukes had cash register keys that allowed the register drawer to be

24  opened without a corresponding sale.  Dukes Dep. I 220:15-21.  Wal-Mart policy allows only author-

25  ized associates, such as CSMs and Assistant Managers, to use the cash register keys and specifically

26  prohibits cashiers from using these register keys; violation of this policy is grounds for immediate

27  termination.  Decl. of Shastina Wilkins in Supp. of Wal-Mart's Mot. for Partial Summ. J. against Bet-

28  ty Dukes ("Wilkins Decl.") ¶ 5; Decl. of Ryan Puryear in Supp. of Wal-Mart's Mot. for Partial

4

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

1    Summ. J. against Betty Dukes ("Puryear Decl.") ¶ 3.  Ms. Dukes ████████████████

2    ████████████████████████████████████████████████████████████████████████████

3    ████.  Dukes Dep. I 217:20-219:10.  In addition, even though one of her primary responsibilities was

4    to supervise operations in the front of the store (Brass Decl. Ex. 12, CSM Job Description), Ms.

5    Dukes ███████████████████████████████████████████████████████  *Id.* at

6    213:16-214:2, 218:18-20.  As a result of the coaching, Ms. Dukes was ineligible for a promotion until

7    March 1999.  ████████████████████████████████████  *Id.* at 216:11-19.

8    ██████████████████████████  *Id.* at 217:3-5.  ██████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   Cagle Dep. 272:11-273:3, 274:21-276:15; Dukes Dep. I 215:7-215:22.  Accordingly, ████████

11   ████████████████  Brass Decl. Ex. 4, Mar. 31, 1998 Coaching.

12        In June 1999, when Ms. Dukes called in sick for a shift, Mr. Cagle cautioned her that it was

13   important that, as a supervisor, she show up for her shifts as much as possible.  Cagle Dep. 256:17-

14   25.  Ms. Dukes was offended by Mr. Cagle's comments and complained to Loss Prevention District

15   Manager Charles Chibante because she believed Mr. Cagle had acted unprofessionally.  Dukes Dep. I

16   278:11-280:3.  Mr. Cagle later apologized to Ms. Dukes.  *Id.* at 279:12-13.

17        On August 7, 1999, after her shift had ended and while off-the-clock, Ms. Dukes purchased

18   items from the sporting goods register.  *Id.* at 253:9-22.  Ms. Dukes paid for her items by check, but,

19   to receive cash back, she wrote the check in an amount greater than the purchase price.  *Id.* at 255:5-

20   7.  The cashier forgot to provide Ms. Dukes her change before closing the cash register drawer.  *Id.* at

21   255:8-17.  Instead of waiting for a CSM or other manager to open the register to correct the mistake

22   in accordance with Wal-Mart policy, Ms. Dukes ██████████████████████████████

23   ████████████████████████████████████████████████  *Id.* at 255:19-257:22.

24   ████████████████████████████████████████████████████.  *Id.*

25   ████████████████████████████████████████████████████████████████████████████

26   ████████████████████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████  *Id.* at 258:16-259:8.

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████ Cagle Dep. 286:17-288:5, 290:8-291:9. Mr. Cagle was

3 troubled by Ms. Dukes' lack of judgment, especially since she was a CSM responsible for maintain-

4 ing the integrity of Wal-Mart's ████████ systems and was aware of the consequences of ████████

5 ████████████████████████████████████████████ *See id.* at 290:8-

6 291:20. Each policy violation was considered gross misconduct and a terminable offense. *Id.* at

7 288:14-16, 293:3-13; Puryear Decl. ¶¶ 4-5. Given the gravity of the situation, before deciding what

8 disciplinary action to take, Mr. Cagle asked his supervisor, District Manager John Scantlin, to weigh

9 in on the appropriate course of action. Cagle Dep. 290:8-292:6. Mr. Scantlin also asked Vince Mar-

10 tinez, the Regional Personnel Manager, to give input. *Id.* Although the offense was clearly punisha-

11 ble by termination, Mr. Scantlin and Mr. Martinez directed Mr. Cagle to demote Ms. Dukes instead.

12 *Id.* at 297:6-8. Ms. Dukes was demoted from CSM on August 14, 1999 and chose to accept a Cashier

13 position. Dukes Dep. I 237:9-14, 272:11-15.

14 **B.     Ms. Dukes' First Charges of Discrimination**

15       On June 1, 2000, Ms. Dukes filed a complaint with the California Department of Fair Em-

16 ployment and Housing ("DFEH"). Brass Decl. Ex. 6, Dukes' June 1, 2000 DFEH Complaint

17 ("Dukes' DFEH Complaint"). In the DFEH Complaint, Ms. Dukes alleged that she was discriminat-

18 ed and retaliated against by Mr. Cagle because of her race. She checked boxes indicating her belief

19 that she had been "demoted" and "denied promotion," but did *not* check the box indicating that she

20 was "denied equal pay." *Id.*

21       Ms. Dukes stayed in the Cashier position for more than a year-and-a-half after filing her

22 DFEH complaint and then took a leave of absence in April 2001. On May 22, 2001, while on leave,

23 Ms. Dukes filed a charge with the EEOC alleging that she was discriminated and retaliated against

24 because of her race *and* sex. Brass Decl. Ex. 7, Dukes' May 22, 2001 EEOC Charge ("Dukes' 2001

25 EEOC Charge"). Specifically, Ms. Dukes alleged that she "experienced harsh and discriminatory

26 treatment" from Ms. Barrett and Mr. Cagle, and that when she complained about this treatment, she

27 received a retaliatory demotion. *Id.* at 2. Ms. Dukes further alleged that because of "previous dis-

28 criminatory treatment by Wal-Mart management" toward herself and other female associates, she was

6

1   discouraged from seeking open promotional opportunities. *Id.* at 3. Like her DFEH Complaint, the

2   EEOC Charge contained *no* allegations of discrimination in pay. *See id.* at 1-4.

3   **C.      This Lawsuit and Ms. Dukes' Continued Employment**

4           On June 8, 2001, Ms. Dukes filed a single-plaintiff lawsuit against Wal-Mart alleging race-

5   based discrimination in violation of the California FEHA. Dkt. 1. The core allegation in that com-

6   plaint was that Ms. Barrett and Mr. Cagle had taken adverse employment actions because of her race.

7   The Complaint included *no* allegations of discrimination in pay. *Id.*

8           Ms. Dukes returned from her leave of absence in mid-June 2001 and shortly thereafter was

9   transferred to the Greeter position ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dukes Dep. I 300:6-14, 302:5-303:8. As a Greeter, her

11  limited job duties included welcoming customers, opening the door for them when appropriate and

12  possible, offering customers shopping carts, attaching return tickets to merchandise entering the store,

13  wiping down carts, and being knowledgeable about emergency and safety procedures. Brass Decl.

14  Ex. 9 at 3, Greeter Job Description.

15          On June 19, 2001, shortly after returning from leave, Ms. Dukes filed the First Amended

16  Complaint, which expanded her allegations to include Title VII sex-based discrimination claims. Ms.

17  Dukes amended the allegation contained in her original complaint—*i.e.*, that Ms. Barrett and Mr. Ca-

18  gle discriminated against her because of her race—to delete the word "race," leaving an allegation

19  that she was subject to some sort of vague "discriminatory treatment." Dkt. 3 ¶ 30. Ms. Dukes' alle-

20  gations remained largely unchanged through the Second and Third Amended Complaints filed in

21  2001 and 2002 respectively. Dkts. 40, 82. None of these complaints contained any allegation that

22  Ms. Dukes had been discriminated against with respect to her hourly pay.

23          On April 9, 2004, Ms. Dukes filed a second administrative charge with the EEOC alleging for

24  the first time that several "similarly situated" male associates with less seniority were receiving a

25  higher hourly wage. Brass Decl. Ex. 8, Dukes' April 9, 2004 EEOC Charge ("Dukes' 2004 EEOC

26  Charge"). Specifically, Ms. Dukes alleged that Carl Kirkland and Isidro Francisco, who were both

27

28

7

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

1   Greeters, were paid more than she was.  *Id.* at 2.[2]

2       In her declaration in support of plaintiffs' 2003 motion for class certification, Ms. Dukes al-

3   leged for the first time that her application for Wal-Mart's Management Training Program ("MIT")

4   had been rejected.  Dukes Decl. ¶ 18.  Specifically, Ms. Dukes alleged that she began an online appli-

5   cation for the MIT in January 2003.  *Id.*  She attempted to sign up through the intranet, but Wal-Mart

6   would not accept her application because "there was a limit on [her] availability."  *Id.*

7       In April 2004, ████████████████████████████, Ms. Dukes moved from exit to entrance

8   Greeter, and she still works as a Greeter today.  Brass Decl. Ex. 10; *id.* Ex. 2, Dep. Tr. of Betty Dukes

9   (Feb. 18, 2015) ("Dukes Dep. II") at 393:13-19.  Ms. Dukes received regular pay raises throughout

10  her years as a Greeter.  *See* Englebrecht Decl. Ex. A, Dukes Employment History; Decl. of Paula

11  Vaccaro in Supp. of Wal-Mart's Partial Mots. for Summ. J. ("Vaccaro Decl.") ¶ 3.  She hit the ███

12  ███ for her position in 2013.  *See* Brass Decl. Ex. 11, Feb. 17, 2015 Letter from J. Yott to C. Webber;

13  Vaccaro Decl. ¶ 6.

14  **D.      The Fourth Amended Complaint**

15      On October 27, 2011, Ms. Dukes and others filed the operative Fourth Amended Complaint

16  (Dkt. 767 ("4AC" or the "Complaint")).  Ms. Dukes' allegations remain nearly unchanged, with the

17  primary difference from the Third Amended Complaint being the inclusion—for the first time—of

18  sex-based pay discrimination allegations and the assertion that Ms. Dukes' application to the MIT

19  was rejected because "she could not unconditionally agree to scheduling prerequisites."  4AC ¶¶ 99-

20  100.  Ms. Dukes asserts three causes of action in the operative complaint:  The First Claim for Relief

21  alleges disparate impact discrimination under Title VII; the Second Claim for Relief alleges disparate

22  treatment discrimination and retaliation under Title VII; and the Third Claim for Relief alleges race

23  discrimination and retaliation under FEHA.  4AC ¶¶ 143-161.  Wal-Mart has separately moved for

24  partial summary judgment on the first; the other two are addressed in this motion.

25

26  _____

27  [2]  Ms. Dukes refers to "Francisco Isidro" in her 2004 EEOC Charge, but the employee to which she
    is referring is "Isidro Francisco."  *See* Dkt. 603 (Decl. of Steven R. Crumpler (Under Seal) (June
28  12, 2003) ¶ 7 & Ex. B.

8

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

# IV.   ARGUMENT

Summary judgment is proper when there is "no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine issue* of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases added).  No genuine issue of material fact exists with respect to a claim or claims "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotations omitted).  Movants need not necessarily put on evidence to negate their opponents' claims; they may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any affidavits, show the absence of a genuine issue of material fact.  *Bhan v. NME Hospitals*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Where the moving party demonstrates the absence of genuine issues of material fact, the opposing party "must produce *specific evidence* through affidavits or admissible discovery material, to show that the dispute exists."  *Id.* (emphasis added).  Only "rational or reasonable" inferences are drawn in favor of the non-moving party.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.3d 626, 631 (9th Cir. 1987); *Sedell v. Wells Fargo of Cal. Ins. Servs., Inc.*, No. C 10-4043 SBA, 2012 WL 3017541, at *4 (N.D. Cal. July 23, 2012).

Many of Ms. Dukes' allegations are barred because she failed to timely exhaust her administrative remedies.  This failure precludes her from pursuing any allegations based on race discrimination accruing prior to June 1, 1999; any allegations based on sex discrimination accruing prior to July 26, 2000; any allegations of wage discrimination accruing prior to June 14, 2003; and any allegations relating to promotion into the MIT.

The only allegations that are properly before the Court for resolution are (1) Ms. Dukes' allegation that the August 1999 demotion was retaliatory in violation of FEHA; (2) Ms. Dukes' allegation that Wal-Mart unlawfully failed to promote her under FEHA and Title VII; and (3) Ms. Dukes' allegation that she was paid less than similarly situated male employees from June 2003 to the present in violation of Title VII.

Wal-Mart is entitled to summary judgment on each of Ms. Dukes' timely and properly pre-

9

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

served allegations because she cannot establish a *prima facie* case of intentional discrimination as to any of them.  With respect to her 1999 demotion from the CSM position, the evidence establishes that Ms. Dukes was disciplined because she violated Wal-Mart ███████ policies.  Ms. Dukes cannot establish a *prima facie* case for her failure to promote allegations because she was ineligible for promotion during much of the relevant period ████████████, she did not apply or express interest in the positions about which she complains, and she cannot seriously argue that she was discouraged from applying because of her gender or race in light of all of the women and African Americans who held the positions at issue.  As to her hourly pay, the evidence shows that Ms. Dukes was paid more than most men who held the same position during the same time period—and she has failed to identify any proper comparators who were paid more than she was.

**A.    Ms. Dukes Cannot Pursue Unexhausted or Time-Barred Allegations**

A Title VII claimant must file an EEOC charge within 300 days of the allegedly discriminatory conduct, and file suit in federal court within 90 days of receiving a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449 (11th Cir. 1993).  "Congress intended [this Title VII] filing period to operate as a statute of limitations" (*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)), and prescribed intentionally "short deadlines."  *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 630-31 (2007), *superseded on other grounds by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6.  California's FEHA similarly prescribes that an administrative complaint must be filed with the DFEH within one year of any allegedly discriminatory conduct. Cal. Gov't Code § 12960(d).

Ms. Dukes filed her DFEH complaint alleging discrimination on the basis of race on June 1, 2000.  Dukes' DFEH Complaint.  Accordingly, any allegations of race discrimination prior to June 2, 1999 (one year before Ms. Dukes filed her charge) are time-barred.  Cal. Gov't Code § 12960(d). Likewise, Ms. Dukes filed her first EEOC charge on May 22, 2001 alleging discrimination and retaliation because of her race and, for the first time, her sex.  Dukes' 2001 EEOC Charge.  Therefore, any allegations of sex discrimination prior to July 26, 2000 (300 days before Ms. Dukes filed her charge) are also time-barred.  42 U.S.C. § 2000e-5.

A named plaintiff who files her own EEOC charge is bound by the time limitations associated

10

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF BETTY DUKES – CASE NO. C-01-2252-CRB

with that charge and may not coattail on any other person's charge. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1223-24 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003); *see also Ross v. Ada Cnty.*, 730 F. Supp. 2d 1237, 1253 (D. Idaho 2010) ("a plaintiff [who] has filed [her] own EEOC charge . . . may not rely upon another claimant's charge and is limited to relying upon [her] own EEOC charge").

Accordingly, the vast majority of allegations in Ms. Dukes' operative complaint related to promotion or retaliation are now time-barred because she failed to file an administrative charge until more than 300 days after the decisions she now complains of:

- Ms. Dukes' allegation that she was retaliated against when she was coached for returning late from her breaks on February 13, 1998. 4AC ¶ 89.

- Ms. Dukes' allegation that she was retaliated against when she was coached for giving her CSM supervisor keys to a cashier on March 31, 1998. *Id.*[3]

- Any other allegations of promotion discrimination based on race prior to June 1, 1999 or based on sex prior to June 26, 2000.[4]

Moreover, Ms. Dukes did not file *any* EEOC charge alleging discrimination in *pay* until April 9, 2004. *See* Dukes' 2004 EEOC Charge. Accordingly, any claim of pay discrimination accruing prior to June 14, 2003 is time-barred. 42 U.S.C. § 2000e-5(f)(1). Indeed, Ms. Dukes' 2004 EEOC charge lists the first date on which any discrimination occurred as "April 2003," meaning that even if claims before that date are not barred based on the date of her charge (and they are), she still failed to exhaust her administrative remedies with respect to any such claim because she did not provide Wal-Mart with appropriate notice that her grievances extended back beyond April 2003. *See Turman v. Greenville Indep. Sch. Dist.*, No. 03-CV-1786-B, 2005 U.S. Dist. LEXIS 43044, at *7-8 (N.D. Tex. Mar. 18, 2005) (finding that plaintiff failed to exhaust administrative remedies for conduct occurring prior to "earliest date of discrimination" listed on EEOC charge).

---

[3] At deposition, Ms. Dukes denied that the February and March 1998 coachings were retaliatory: "Q. Were the acts of retaliation those two disciplinary write-ups that you received in February and March of 1998? A. No." Dukes Dep. I 371:12-15.

[4] In addition to the fact that claims related to such promotion decisions are now time-barred, to the extent any is meant to underlie a Title VII or DFEH claim, summary judgment is warranted because Ms. Dukes failed to include these employment decisions in her Complaint.

11

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF BETTY DUKES – CASE NO. C-01-2252-CRB

Finally, Ms. Dukes' allegation that she was denied entry to the MIT program in 2003 is barred because she failed to exhaust her administrative remedies as to this event.  None of Ms. Dukes' administrative charges refers to her incomplete MIT application, or charges discrimination with respect to the MIT program.  "Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust."  *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001).  Ms. Dukes' 2003 allegations related to the MIT program could not have been "reasonably expected to grow out of the charge of discrimination" complaining only about decisions with regard to hourly positions.  *Paige v. California*, 102 F.3d 1035, 1042 (9th Cir. 1996); *see* Dukes' 2001 EEOC Charge; Dukes' DFEH Complaint.

**B.     Summary Judgment Is Warranted on Ms. Dukes' Properly Preserved Disparate Treatment Claim**

Disparate treatment discrimination occurs where an employer "treats some people less favorably than others because of their race, color, religion, sex, or national origin."  *Int'l Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *see also* 42 U.S.C. § 2000e-2(a).  Plaintiffs proceeding under a disparate treatment theory are required to prove that the defendant "intentionally discriminated" against them.  *Texas Dep't of Comm'y Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  Intentional discrimination may be proved by either direct or indirect (circumstantial) evidence.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  *Id.* (internal quotation marks omitted).

Where a plaintiff attempts to set forth indirect evidence of discrimination, as in this case, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.  *See Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010); *see also Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (California courts also apply the *McDonnell Douglas* framework to discrimination claims under FEHA).  "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes."  *Id.*  Accordingly, analysis of Ms. Dukes' race-based claims relies on federal and state cases applying both Title VII and FEHA.

12

To survive a summary judgment motion, the plaintiff "must first establish a *prima facie* case of employment discrimination." *Hawn*, 615 F.3d at 1155. To establish a *prima facie* case, the plaintiff must "offer evidence that gives rise to an inference of unlawful discrimination." *Id.* at 1156. If the plaintiff establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1155 (internal quotation marks omitted). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the adverse employment action] are mere pretext for unlawful discrimination." *Id.* She must produce evidence of facts that either "directly show[] a discriminatory motive" or show[] that the employer's explanation for the challenged action is "not credible." *Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998).

The elements of a *prima facie* case vary depending on the challenged employment action. *See McDonnell Douglas*, 411 U.S. at 802 n.13. Ms. Dukes' disparate treatment claim has three variations: retaliation, failure to promote, and unequal pay. Ms. Dukes cannot meet her burden on any of them.

### 1.    Summary Judgment Is Warranted on Ms. Dukes' Retaliation Allegations

Ms. Dukes alleges that her August 14, 1999 demotion by Ken Cagle for violating multiple Wal-Mart ███████ policies was unlawful. The Complaint alleges that this demotion constituted retaliation under FEHA (4AC ¶ 91; Cal. Gov't Code § 12940(h)), and Ms. Dukes has testified that she believes the demotion was racially motivated (Dukes Dep. I 277:10-13)). She has not, however, put forward any evidence of racial animus on behalf of Ken Cagle or anyone else at Wal-Mart. *See id.* at 277:10-278:10. Moreover, retaliation claims were not part of the class action. *See* Dkt. 634 at 5 n.4 ("Plaintiffs allege class-wide discrimination only in terms of pay and promotion—not . . . retaliation"). As explained below, Ms. Dukes' retaliation claim fails because she cannot establish a *prima facie* case and, even if she could, her demotion was based on legitimate business reasons.

To establish a *prima facie* case of retaliation, "the plaintiff must show (1) that he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action." *Akers v. City of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002). If an employee is able to establish a *prima facie*

13

case, "the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action." *Id.* The employer's burden is to go forward with additional evidence; it does not take on a burden of persuasion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Guz*, 24 Cal. 4th at 354 ("California courts look to pertinent federal [Title VII] precedent when applying ... [FEHA]."). "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation 'drops out of the picture,' and the burden shifts back to the employee to prove intentional retaliation." *Id.*

Ms. Dukes' theory of retaliation appears to be based on her prior complaint to management regarding Mr. Cagle's insensitivity (in June 1999) as well as her subjective perception of racial bias on Mr. Cagle's part. But she cannot establish the requisite "causal link" between her complaint about Mr. Cagle and Mr. Cagle's later decision—made in consultation with District and Regional management—to demote her for violating multiple ████████ policies. After being given incorrect change by a cashier on August 7, 1999, Ms. Dukes, who was off the clock, decided that she did not want to wait for a CSM to open the register drawer so that the cashier could give her the correct change. Dukes Dep. I 253:9-255:22. Instead, ████████████████████████████████████ ████████ *Id.* at 255:19-257:22. ████████ ████████ and forwarded the information to his District Manager, who in turn involved the Regional Personnel Manager. Mr. Cagle's superiors ultimately decided that Ms. Dukes should be demoted rather than terminated. Cagle Dep. 286:15-288:16, 290:8-292:6.

To establish causation, a plaintiff must show that "engaging in the protected activity was one of the reasons for" the adverse employment action and that the action would not have been taken "but for such activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064-65 (9th Cir. 2002) (internal quotation marks omitted). Unlike a discrimination claim, a plaintiff must prove that retaliation was the "but for" cause of discrimination, not simply a motivating factor. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (rejecting motivating factor test in retaliation claim). Causation *may* be established by "an inference derived from circumstantial evidence, such as . . . the proximity in time between the protected action and the allegedly retaliatory employment decision" or the employer's knowledge that the plaintiff engaged in protected activities. *Jordan v. Clark*, 847 F.2d

14

1  1368, 1376 (9th Cir. 1988) (internal quotation marks omitted); *Yartzoff v. Thomas*, 809 F.2d 1371,

2  1376 (9th Cir. 1987).  But "[i]f a plaintiff relies solely on the proximity in time inference to support

3  the causation prong, that proximity in time must be 'very close.'" *Williams v. Tucson Unified Sch.*

4  *Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008).

5      Ms. Dukes cannot prove causation on this record.  More than a month and a half had passed

6  between Ms. Dukes' complaint about Mr. Cagle in June and her coaching on August 14, 1999; and in

7  the interim Ms. Dukes indisputably violated ███████████ policies.  Moreover, the un-

8  disputed record establishes Mr. Cagle informed his District Manager, John Scantlin, and his Regional

9  Manager, Vince Martinez, of Ms. Dukes' misconduct and, while recommending termination, asked

10  *them* to make the ultimate decision concerning the appropriate discipline. Cagle Dep. 290:8-291:24.

11  Even if Ms. Dukes could prove that Mr. Cagle was biased or otherwise motivated to take action

12  against her, the involvement of higher-level managers breaks the causal chain between her complaint

13  and her subsequent demotion. *Oates v. Discovery Zone*, 116 F.3d 1161, 1172-73 (7th Cir. 1997) (no

14  evidence of causation where supervisor communicated policy violation to higher-level manager who

15  made decision to discharge plaintiff).

16      Even if Ms. Dukes could establish a causal connection between her complaint regarding Mr.

17  Cagle and her subsequent demotion, she must also prove that her complaint was based on a "reasona-

18  ble belief" that Wal-Mart had engaged in an unlawful employment practice, *i.e.*, intentional race dis-

19  crimination. *Diyorio v. AT&T*, 242 F. App'x 450, 452 (9th Cir. 2007) (affirming summary judgment

20  against plaintiff on retaliation claim where plaintiff failed to demonstrate any basis for reasonable

21  belief that her employers discriminated against her).  But she has no evidence, direct or indirect, of

22  racial animus on the part of Mr. Cagle or any other Wal-Mart manager.  She may have thought Mr.

23  Cagle was biased against her, but a "plaintiff's subjective beliefs in an employment case do not create

24  a genuine issue of fact; nor do uncorroborated and self-serving declarations." *King v. United Parcel*

25  *Serv., Inc.*, 152 Cal. App. 4th 426, 433 (2007); *see also Villiarimo*, 281 F.3d at 1061 ("this court has

26  refused to find a 'genuine issue' where the only evidence present is 'uncorroborated and self-serving

27  testimony").

28      Even if Ms. Dukes could point to sufficient evidence to establish a *prima facie* case of retalia-

15

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

1  tion, summary judgment is warranted because she was disciplined and demoted for legitimate (and

2  compelling) reasons:  there is no dispute that she violated multiple company policies ███████

3  ████████████████████████████████████████████ because she was then a CSM responsible

4  for supervising the cashiers and enforcing the very ████████████████████████.

5  "Violation of company policy is a legitimate, nonretaliatory reason for terminating an employee."

6  *Rangel v. Am. Med. Response West*, No. 1:09-cv-01467-AWI-BAM, 2013 WL 1785907, at *24 (E.D.

7  Cal. Apr. 25, 2013) (citing *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 744-45 (9th Cir. 2004)).

8      First, Ms. Dukes performed ███████████████, which is considered a serious integrity

9  issue at Wal-Mart. Wilkins Decl. ¶ 2.  The proper procedure when a register needs to be opened and

10  "no sale" is to take place is to call a CSM or Manager, who can open the drawer with their key:  "On-

11  ly a CSM or member of management should perform this function."   Riley Decl. ¶ 13 & Ex. C,

12  FG902 (Effective 1995); *id.* Ex. E, OAG302 (Effective 2000); *id.* Ex. D, FG902 (Effective 2000).

13  Indeed, Ms. Dukes' *own* testimony confirms that the cashier on whose register she performed the

14  transaction ████████████████████████████████████████████████████████

15  ████████████████████████████████████████. Dukes Dep. I 258:16-259:8.

16  Making matters worse, Ms. Dukes was at the time a CSM and therefore well aware of the importance

17  of the ████████ policies.

18      Second, Ms. Dukes ████████████████████, another violation of Wal-Mart pol-

19  icy.  *See* Riley Decl. ¶ 19 & Ex. L, Wal-Mart 1998 Employee Handbook.  Purchasing items on her

20  own time, she was in the position of a customer, not an employee.  It would be unthinkable (and ar-

21  guably criminal) for a customer to reach over and open a register full of cash, ████████████

22  ████████████.

23      And third, Ms. Dukes ████████████████—a stand-alone ground for termination

24  because it raises a serious question of integrity.  *Id.* Ex. B, FG202 (Effective 1995) ("No Cashier is to

25  handle a transaction for:  Themselves[; ]Their family members[;] Their friends[.]  **Never put your-**

26  **self in a position where your integrity could be questioned.**" (emphasis in original)).  Wilkins

27  Decl. ¶ 4 (serious integrity issue and grounds for termination in itself); Puryear Decl. ¶ 5.  Given that

28  Ms. Dukes was at the time a CSM in charge of supervising cashiers and enforcing these policies, it is

16

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

unsurprising that her Regional and District managers chose to remove her from that position. One of the duties of the CSM position is "ensur[ing] that the Company's register procedures are followed." Brass Decl. Ex. 12 at 1, CSM Job Description. Ms. Dukes intentionally, openly, and unapologetically demonstrated through her conduct that she was unfit to discharge that duty, ███████████████ ██████████████████████. That District and Regional managers generously elected to demote rather than immediately terminate her belies any suggestion of intentional discrimination.

Ms. Dukes previously testified that she believes other employees in the store performed ████ ████████████████ and were not disciplined. Dukes Dep. I 414:7-24. There is no evidence of this other than Ms. Dukes' uncorroborated testimony, which will not suffice. Moreover, given that she was CSM at the time and responsible for enforcing ██████████ policies, her supposed knowledge of such transactions only establishes that she was in further dereliction of her duties by not putting an end to the practice or informing her supervisors of it. Indeed, Ms. Dukes admits that she does not know if any manager was ever made aware of the ████████████ she claims she witnessed. Dukes Dep. I 414:7-24. Moreover, she provides neither context nor timing for her "everybody was doing it" defense. At one point, ██████████████ were used in the Pittsburg Store, but, prior to August 1999, management—including Store Manager Ken Cagle—was working diligently to end the practice and enforce proper register operation. Wilkins Decl. ¶ 3; *see also* Dukes Dep. I 258:16-259:8. Ms. Dukes can adduce no evidence to the contrary and thus cannot establish pretext. *Id.*

Ms. Dukes violated *multiple* Wal-Mart policies in addition to performing ██████████████████ ██████████████████████. But as a CSM, it was her job to set an example for cashiers. ████████████████████████████████████████████████ ████████████████████████████████████████████████ Dukes Dep. I at Ex. 21. Even if a ████████████████ might have been tolerated if engaged in by a lower level employee (a fact Ms. Dukes cannot prove), it was not acceptable for a CSM in charge of ██████████ policies to brazenly violate those very policies in front of a cashier under her supervision. Put simply, the fact that Ms. Dukes received a disciplinary demotion after violating three Wal-Mart policies (a decision made by two managers she *never* complained about) cannot establish retaliation. *See King*, 25 Cal. App. 4th at 433-34 ("[P]laintiff's evidence must relate to the motivation of

17

1  the decision makers to prove, by nonspeculative evidence, an actual causal link between prohibited

2  motivation and the [adverse employment action.]").

3       Summary judgment should be entered on Ms. Dukes' allegations regarding her demotion.

4       **2.      Summary Judgment Is Warranted on Ms. Dukes' Promotion Allegations**

5            **a.      Hourly Management Promotions**

6       Ms. Dukes has no direct evidence of discrimination in promotion, and therefore she must

7  show that she applied and was qualified for the position she was denied as part of her *prima facie*

8  case. *Mondero v. Salt River Project,* 400 F.3d 1207, 1211 (9th Cir. 2005); *Pejic v. Hughes Helicop-*

9  *ters, Inc.*, 840 F.2d 667, 672 (9th Cir. 1988). Ms. Dukes cannot do so. She admits that she was ineli-

10  gible for promotion between August 14, 1999 and August 14, 2000 ███████████████

11  ████████ (4AC ¶ 93; Dukes Dep. I at Ex. 21; Riley Decl. Ex. T, Job Announcement Policy), and

12  summary judgment is therefore warranted on any failure to promote claim accruing during this time

13  period. *See Austin v. Horizon Human Servs.*, No. CV-12-02233-PHX-FJM, 2014 WL 1053620, at

14  *2-3 (D. Ariz. Mar. 19, 2014). Ms. Dukes also admits that she did not apply or express interest in

15  any of the hourly positions she has identified. 4AC ¶ 94; Dukes Dep. II 352:7-19 (admitting in

16  March 2002 that she has not "tr[ied] to get promoted" since Arturo Mireles became the Store Manag-

17  er); Brass Decl. Ex. 13 at 2, Mireles' HPRO (Mr. Mireles became Store Manager in February 2000);

18  *see also* Brass Decl. Ex. 14, Dep. Tr. of Arturo Mireles (June 5, 2002), at 174:12-15, 174:25-175:6;

19  Dukes Dep. I 140:13-18, 533:20-534:4, 557:10-12.

20       To the extent Ms. Dukes alleges that she was discouraged from applying for multiple hourly

21  management positions after her demotion on August 14, 1999 (4AC ¶¶ 93-94, 95, 96), her claim can-

22  not survive summary judgment. Where a plaintiff has not applied or expressed interest in promotion,

23  she has to show that a "consistently enforced discriminatory policy" would have resulted in the "hu-

24  miliation or explicit and certain rejection" on account of her protected status. *Teamsters*, 431 U.S. at

25  365. Ms. Dukes cannot even come close, having *acknowledged* that she was aware of numerous

26  women and African Americans who were promoted in the Pittsburg Store, including several whom

27  she *complains about* in the Fourth Amended Complaint. *See* 4AC ¶¶ 92 (complaining that Rosa Tre-

28  vino (female) was promoted to Support Manager in August 2000), 96 (complaining that Kevin Sims

18

1  (African American) and Kendal Dimery (African American) held the role of Department Manager);

2  *see also* Dukes Dep. I 76:6-77:8, 210:10-211:4, 229:4-9, 232:4-5, 238:12-21, 298:6-16 (acknowledg-

3  ing that at least five Assistant Manager positions were held by women between 1994 and 2002); *id.* at

4  96:7-97:6, 106:2-15, 373:9-20 (acknowledging that several department manager positions were held

5  by women); Dukes Dep. II 437:16-438:11 (testifying that, "[s]ince the lawsuit of 2001 was filed, I

6  have seen the rise of women in management at my store, as well as reported around the country").

7  Indeed, from December 26, 1998 through December 31, 2002, 23 women held CSM positions in the

8  Pittsburg Store, and 44 women held Department Manager positions.  Englebrecht Decl. ¶ 9; Vaccaro

9  Decl. ¶ 7.  During that same time, at least 12 African Americans held one of those positions (includ-

10  ing Ms. Dukes).  Englebrecht Decl. ¶ 9; Vaccaro Decl. ¶ 7.  The undisputed facts establish that Ms.

11  Dukes did not have, and could not have had, a reasonable belief that any application for promotion

12  would have been met with certain rejection based on her race or sex.

13            **b.      Management Training Program**

14        Ms. Dukes also alleges that she attempted to apply to the MIT program (salaried manager

15  training) through an online application process that became available in January 2003, but that her

16  application was not accepted because she could not unconditionally agree to scheduling prerequisites.

17  4AC ¶ 99.  As discussed above, this allegation is barred for failure to exhaust her administrative rem-

18  edies.  In all events, however, her allegations with respect to the MIT program fail to state a Title VII

19  claim as a matter of law because her application was rejected for gender-neutral, "legitimate, nondis-

20  criminatory reason[s]."  *Hawn*, 615 F.3d at 1155.  To be considered for the MIT program, all appli-

21  cants had to review and accept several "Management Trainee . . . Position Requirements."  Riley

22  Decl. Ex. A at 10, MIT Online Application.  Among these was a willingness to work a "[v]aried

23  schedule to include all shifts (days, evenings, overnight, weekends, holidays)."  *Id.*  Throughout the

24  entirety of her employment, Ms. Dukes has ███████████████████████████████████████████

25  ██████████████████████████████████████████████████████████████████  which she has

26  not conveyed to anyone at Wal-Mart since 1994.  Dukes Dep. I 68:12-69:14, Dep. Ex. 2; Dukes Dep.

27  II 400:24-401:21.  And Ms. Dukes has no evidence this neutral reason was pretext for discrimination.

28            **3.      Summary Judgment Is Warranted on Ms. Dukes' Pay Discrimination Allegations**

19

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF
BETTY DUKES – CASE NO. C-01-2252-CRB

Ms. Dukes alleged wage discrimination for the first time in her April 2004 EEOC charge. Dukes' 2004 EEOC Charge. Specifically, she alleged she had been discriminated against on the basis of her sex because Carl Kirkland and Isidro Francisco, two Greeters in Store 1615, were paid at a higher hourly rate than she received. *Id.* As an initial matter, it is nonsensical to suggest that Wal-Mart would intentionally discriminate against Ms. Dukes—the lead plaintiff in a high profile case— in her individual pay *after* this lawsuit was filed and *during* its long march toward resolution. In any event, Wal-Mart is entitled to summary judgment on Ms. Dukes' claim of unequal pay.

By comparing herself to Messrs. Francisco and Kirkland, and *only* Messrs. Francisco and Kirkland, Ms. Dukes simply ignores the fact that she has been paid *more* than most men in her position throughout her employment. "A plaintiff 'cannot pick and choose a person [s]he perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than [s]he.'" *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1012 (10th Cir. 2001) (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 642 (3rd Cir. 1998)); *Hein v. Or. College of Educ.*, 718 F.2d 910, 916 (9th Cir. 1983) ("If it should turn out that Dr. Campbell earns *more* than males performing substantially equal work, it is axiomatic that the Equal Pay Act does not afford her relief."); *see also Warpenburg v. Target Corp.*, No. 1:06-cv-00829-RLYTAB, 2007 WL 2993988, at *10-12 (S.D. Ind. Oct. 11, 2007) (citing *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846-47 (7th Cir. 2006)).

During the period of time encompassing Ms. Dukes' properly preserved pay allegations, Ms. Dukes has worked only as a Greeter; and during that same time period, Ms. Dukes has been paid more than *at least* 15 of her male colleagues who held the same position at the same time. Englebrecht Decl. ¶ 8; *id.* Ex. C, Mar. 17, 2015 Letter from J. Yott to C. Webber; Vaccaro Decl. ¶ 6. Indeed, during the relevant time period only one male Greeter (Lorenzo Skinner) was consistently paid more than Ms. Dukes (Englebrecht Decl. ¶ 8; *id.* Ex. C, Mar. 17, 2015 Letter from J. Yott to C. Webber; Vaccaro Decl. ¶ 6), and he was paid more based on his previously held positions and experience, not his sex (Puryear Decl. ¶ 2).

20

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF BETTY DUKES – CASE NO. C-01-2252-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13



Brass Decl. Ex. 15 at 10, Expert Report of Denise Neumann Martin, dated Mar. 17, 2015.

Even if this Court could follow Ms. Dukes' lead and ignore the dozens of men in the same po-
sition paid less than Ms. Dukes over the course of her career and focus, as she has proposed, on a few
hand-picked comparators, Ms. Dukes cannot make out a *prima facie* case of wage discrimination.
"In a typical wage discrimination case, the plaintiff bears the initial burden to show that: (1) the work
of the employees of one sex required the exercise of substantially equal skill, effort, and responsibil-
ity and was performed under working conditions similar to that of employees of the opposite sex; and
(2) the pay to men and women was unequal."  *Piva v. Xerox Corp.*, 654 F.2d 591, 598 (9th Cir.
1981); *Maxwell v. Tucson*, 803 F.2d 444, 446 (9th Cir. 1986) (to make a *prima facie* case of unequal
pay under Title VII, a plaintiff must meet the standards of the Equal Pay Act).  To determine whether
two jobs are substantially equal, courts ask whether the jobs of the plaintiff and male comparators
share a "'common core'" of tasks. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999).[5]

---

[5]  While the Ninth Circuit has extrapolated this Equal Pay Act framework onto Title VII claims,
most federal courts of appeals impose a more rigorous burden on plaintiffs in proving that a par-
ticular employee is a proper comparator.  In those courts, rather than show only a common core of
tasks, plaintiffs must prove that a comparator is "nearly identical to the plaintiff."  *Sumerlin v.
AmSouth Bank*, 242 F. App'x 687, 690 (11th Cir. 2007).  Among other factors, the proposed
*(Cont'd on next page)*

A plaintiff also "must show some evidence of intentional discrimination in addition to evidence of a wage disparity for similar work." *Lewis v. Smith*, 255 F. Supp. 2d 1054, 1061 (D. Ariz. 2003) (citing *Spaulding v. Univ. of Wash.*, 740 F.2d 686, 700-01 (9th Cir. 1984), *overruled on other grounds by Antonio v. Wards Cove Packing Co.*, 810 F.2d 1477 (9th Cir. 1987) (*en banc*)).   A defendant "may rebut a *prima facie* case by showing that the disparity in pay is a "differential based on any . . . factor other than sex." *Stanley*, 178 F.3d at 1075.   "Where the defendant demonstrates that a pay differential was based on a factor other than sex, the employee may prevail by showing that the employer's proffered nondiscriminatory reason is a 'pretext for discrimination.'" *Id.* at 1076.

In deposition, Ms. Dukes identified a handful of men (adding to the two she identified in the Complaint) on whom she purports to base her wage discrimination claim:  Carl Kirkland, Isidro Francisco, "Alvaro" in Maintenance, Ronald Petrie, and William Martines.  *See* Dukes Dep. II 474:1-18, 476:16-477:19, 491:3-15, 493:11-25.  But Ms. Dukes cannot prove her claim of intentional discrimination in pay by comparing herself to any of those men.[6]

The most glaring deficiencies with Ms. Dukes "comparators" include her failure to identify those whose work was substantially equal or whose wages were unequal.  First, Ms. Dukes' respon-

---

*(Cont'd from previous page)*

comparators for a pay claim should have "similar levels of experience" and "similar levels of seniority" (*Cooper v. S. Co.*, 390 F.3d 695, 743, 745 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)), similar responsibilities (*Lee v. Mid-State Land & Timber Co.*, 285 F. App'x 601, 606 (11th Cir. 2008)), similar specialized training (*Mack v. ST Mobile Aero. Eng'g, Inc.*, 195 F. App'x 829, 843 (11th Cir. 2006)), and should be subject to the same supervisor (*see Silvera v. Orange Cnty Sch. Bd.*, 244 F.3d 1253, 1261 n.5 (11th Cir. 2001)). *See also, e.g., Little v. Rep. Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (comparator not "nearly identical" where reviewed by different supervisors).  Wal-Mart respectfully submits that the standard articulated by the Ninth Circuit is wrong and that the Supreme Court would agree if given the opportunity to resolve the issue.  Under either standard, however, none of the employees Ms. Dukes identifies is a proper comparator.

[6]  In connection with the noticed 30(b)(6) deposition, Ms. Dukes also indicated she may try to compare herself to any male employees in her same pay group, which includes more than 100 alleged comparators.  Brass Decl. Ex. 16 at 1, Jan. 6, 2015 Letter from C. Webber to M. Maryott; Englebrecht Decl. Ex. B, Mar. 12, 2015 Letter from J. Yott to C. Webber at Ex. A.  Identifying comparators based solely on titles or classifications is inconsistent with the law in this and other Circuits.  *See Stanley*, 178 F.3d at 1074 (explaining that comparator and plaintiff must have same tasks and responsibilities); *Cooper*, 390 F.3d at 743 (explaining that, among other factors, proposed comparators should have similar levels of experience and seniority); *Little*, 924 F.2d at 97 (holding that comparator was not "nearly identical" where reviewed by different supervisors).

sibilities as Greeter, which included welcoming customers, opening the door for them, attaching return tickets to merchandise entering the store, and wiping down carts (Brass Decl. Ex. 9 at 3, Greeter Job Description), were not substantially equal to those of Maintenance Associate, Sales Associate, or Pharmacy OTC Manager, Department Manager, or Tire & Lube Express Manager:

| Maintenance Associate Alvaro Moran | Sales Associate Ronald Petrie | Pharmacy OTC Manager Ronald Petrie | Sporting Goods and Tire & Lube Express Department Manager William Martines |
|---|---|---|---|
| "Ensuring OSHA guidelines are being followed properly for: (i) Hazard communications; (ii) Lockout/Tagout; (iii) Bloodborne pathogens," and "[m]aintaining proper use of extension cords."[7] | "Operate handheld/SMART terminal" "Verify price differences and missing item information between the register and salesfloor."[8] | "Ensure the stable stacking of merchandise" "Setting modular layouts on time" "Developing plans for handling and reducing overstock."[9] | "Maintaining proper inventory levels" "Planning, assigning and directing work" "Training and coaching" associates.[10] |

Second, men she identifies were not paid unequally. For example, Mr. Martines not only worked in a supervisory position while Ms. Dukes did not, she admits he had two years additional tenure at Wal-Mart. Dukes Dep. II 494:1-13; Englebrecht Decl. Ex. B, Martines' Employment History; *see Clay v. Pac. Bell Tele. Co.*, No. 2:13-cv-1028, 2013 WL 5520013, at *2 (E.D. Cal. Oct. 3, 2013) (where alleged comparator "had seniority over plaintiff, the employees are not similarly situated"). Similarly, in all but two weeks of the time period covered by Ms. Dukes' 2004 EEOC Charge, Ms. Dukes was paid more than Mr. Kirkland. Prior to June 29, 2003, Ms. Dukes received a raise of ███ per hour and was paid *more* than Mr. Kirkland until his termination at the end of August 2003. *Compare* Englebrecht Decl. Ex. A, Dukes' Employment History *with id.* Ex. C, Kirkland's Employment History;

---

[7]  Brass Decl. Ex. 17 at 1, 3, Maintenance Associate Description; Englebrecht Decl. Ex. B, Moran Employment History.

[8]  Brass Decl. Ex. 18 at 1, Sales Associate Job Description; Englebrecht Decl. Ex. B, Petrie's Employment History.

[9]  Brass Decl. Ex. 19 at 5, "OTC" Job Description.

[10]  *Id.* Ex. 20 at 4-5, Department Manager Job Description; Wilkins Decl. ¶ 6.

23

WAL-MART'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SECOND AND THIRD CLAIMS FOR RELIEF OF BETTY DUKES – CASE NO. C-01-2252-CRB

Vaccaro Decl. ¶ 4.  *Infra* p. 11 (pay claim time-barred prior to June 14, 2003).  And when Mr. Kirkland *was* paid more than Ms. Dukes, he was paid more because of a "factor other than sex."  He made less than Ms. Dukes until he was transferred to a position in Parking Lot Security, which carried a significant ███████████████████ due to the competitive rate for security and loss prevention personnel in Northern California.  Puryear Decl. ¶ 2; Brass Decl. Ex. 21, Kirkland's Commendation Form; Englebrecht Decl. Exs. A and B; Vaccaro Decl. ¶ 4.  After he transferred to the Greeter position, he continued to work part-time as a Security Associate and was allowed to keep his pay premium.  Dkt. 604 (Decl. of Cynthia Mosley (Under Seal) (June 12, 2003)) ¶ 4.  Similarly, during multiple periods, Ms. Dukes was paid more than Mr. Francisco, including from at least September 21, 2003 through the present (the vast majority of the period for which Ms. Dukes brings a timely pay discrimination claim).  *Compare* Englebrecht Decl. Ex. A, Dukes' Employment History *with id.* Ex. C, Francisco's Employment History; Vaccaro Decl. ¶ 5.  *Infra* p. 11 (pay claim time-barred).  When he was paid more, the reason was a "factor other than sex."  He received merit raises on October 5, 2001 for "excellent customer service and dependability," which brought his pay above Ms. Dukes' pay.  He received another merit raise on September 30, 2002 for "[o]utstanding performance and dedication to our store," which again brought his pay above Ms. Dukes until she surpassed him in pay in June 2003.  *Compare* Englebrecht Decl. Ex. A, Dukes' Employment History *with id.*  Ex. C, Francisco's Employment History; Vaccaro Decl. ¶ 5; Brass Decl. Ex. 22, Francisco's Commendation Form.

Brass Decl. Ex. 15 at 11, Fig. 2, Expert Report of Denise Neumann Martin, dated Mar. 17, 2015.

Although the complaint prepared by lawyers on her behalf is cast in terms of sex discrimination, Ms. Dukes' sworn testimony makes clear that her real grievance with Wal-Mart is that *all* Greeters—male or female—are underpaid. *See* Dukes Dep. II 506:14-507:2 ("We all feel that we're underpaid and overworked. . . . I think that's a general norm in the work environment, whether you are male or female . . . we feel that we could be paid more than what we are paid, especially when you're aware of the company's revenues, that they have the access and the means to pay us more."), 507:3-17 (Q:   "[D]id you have discussions among your friends that people weren't being paid enough?"   A:   "Yes, we'd discuss that we would like to have been making more on an hourly basis to better our living conditions.").  That is not a Title VII claim, but an argument about economic policy. It is not the Court's role to act as a super-personnel department and second-guess a business's economic decisions.  *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989) (plurality) (recognizing "Congress' unwillingness to require employers to change the very nature of their operations in response to the statute"); *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 555 (9th Cir. 1982) (explaining that federal courts are not in "the business of prescribing detailed, objective and mandatory" guidelines for companies); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978) ("Courts are generally less competent than employers to restructure business practices, and unless mandated to do so by Congress they should not attempt it.").

Ms. Dukes was paid more than nearly all of the male employees who held the same position as her during the relevant time period.  Her failure to identify any proper comparator who was paid more than her is fatal to her pay discrimination claim.

## V.   CONCLUSION

For the foregoing reasons, this Court should grant this Motion for Partial Summary Judgment on Ms. Dukes' Second and Third Claims for Relief.

1    Dated: April 10, 2015

2                                   By:  */s/ Theodore J. Boutrous, Jr.*

3                                         Theodore J. Boutrous, Jr.

4                                THEODORE J. BOUTROUS, JR.
   MARK A. PERRY
   CATHERINE A. CONWAY

5                                MICHELE L. MARYOTT
   RACHEL S. BRASS

6                                GIBSON, DUNN & CRUTCHER LLP

7                                Attorneys for Defendant WAL-MART STORES, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28